FILED 23 OCT '23 15:57 USDC-ORP

True copy _____

# United States District Court

## For the

## District of Oregon

## Portland Division

|  |  |
|---|---|
| James E. Jacobson, Jr. | Case No. 3:23-CV-1551-HZ |
| Plaintiff | |
| | Complaint for an Injunction and Money Damages for Violation of Civil Rights, including the Fair Housing Act, 42 U.S.C. § 3601, *et seq*.: The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; and Financial Abuse of An Elderly or Disabled Person, ORS 124.100, *et seq*. |
| -vs- | |
| The State of Oregon; AH Gresham Park, LLC, a foreign LLC, registered in Oregon as a Utah Company; and AH Albion House, LLC, A domestic Utah Company. | **DEMAND FOR JURY TRIAL** |
| Defendant(s) | |

**COMPLAINT AND REQUEST FOR INJUNCTION**

1. **The Parties to This Complaint**

   A. **The Plaintiff**

   | | |
   |---|---|
   | Name: | James E. Jacobson, Jr. |
   | Street Address: | 805 NE Kane Dr, Apt 109B |
   | City and County: | Gresham, Multnomah County |
   | State and Zip Code: | Oregon, 97030 |
   | Telephone No. | (503) 740-0676 |
   | E-mail Address | jim.jacobson@live.com |

Plaintiff existed on Social Security Disability as his sole source of income with his SSD application having an effective date in 2004. Plaintiff is currently a disabled person on Social Security because SSD is automatically converted at age 65. Plaintiff is currently 68 years old. In either case, any increases in Plaintiff's income is exclusively determined by the annual Social Security COLA increases calculated by the Federal Government which calculates its COLA increases based on the Consumer Price Index for the third fiscal quarter (only) excluding inflation due to energy and housing. In the past year COLA increases for Social Security recipients was in the range of 7.8 %, which was one of the highest annual increase on record. For 2024, COLA increases are estimated to be in the range of 3.8%.

Plaintiff is a person having one or more qualified disabilities protected under the Americans with Disabilities Act, which include a spinal injury resulting in periodic paralysis and as such, Plaintiff is unable to pack or move anything. If Plaintiff relocates, that can only be accomplished with the assistance of professional movers.

Plaintiff has been a resident of the State of Oregon since 1992 and has been a resident at Gresham Park Apartments since 2019, or approximately four years.

COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION

**2.    The Defendants(s)**

**Defendant No. 1**

| | |
|---|---|
| Name: | The State of Oregon |
| Title: | Attorney General for the State of Oregon |
| Street Address: | 100 Justice Building |
| City and County: | Salem, Marion County |
| State and Zip Code: | Oregon, 97310 |

**Defendant No. 2**

The defendant AH Gresham Park, LLC, is incorporated in the State of Oregon as a Foreign LLC, Oregon Business Registry No. 1756101-96, namely it is registered as a Utah Company, and has its principal place of business in the State of Oregon, at the address below:

| | |
|---|---|
| Name: | AH Gresham Park, LLC, a Foreign Utah Company |
| Street Address: | 6218 N. Concord Ave |
| City and County: | Portland, Multnomah County |
| State and Zip Code: | Oregon, 97217 |
| Telephone No. | (503) 489-5152 |
| | |
| Registered Agent: | Universal Registered Agents |
| Street Address: | 698 12th St. SE, Ste 200 |
| City and County: | Salem, Marion County |
| State and Zip Code: | Oregon, 97301 |

COMPLAINT AND COMPLAINT AND
                                                    REQUEST FOR INJUNCTION

**Defendant No. 3**

The defendant AH Albion House, LLC is incorporated under the laws of the State of Utah as a Domestic Limited Liability Company, Utah Business Registry No. 11465326-0160, having its principal place of business in Oregon as shown below.   The Utah Secretary of State Business Registry does not show any physical address for AH Albion House, LLC in the State of Utah.

| | |
|---|---|
| Name:             ` | AH Albion House, LLC, a Domestic Utah Company |
| Street Address: | 6218 N. Concord Avenue |
| City and County: | Portland, Oregon, Multnomah County |
| State and Zip Code: | Oregon, 97217 |
| Telephone No. | (503) 489-5152 |
| | |
| Registered Agent: | Universal Registered Agents |
| Street Address: | 2005 East 2700 South Ste 200 |
| City and County: | Salt Lake City, Salt Lake County |
| State and Zip Code: | Utah, 84109 |

Defendants AH Gresham Park, LLC and AH Albion House, LLC collectively are the current owners and operators of Gresham Park Apartments, located in Gresham, Oregon, where Plaintiff currently resides.  TMG Property Management Services NW, LLC of Vancouver, WA acts as the day-to-day manager of Gresham Park Apartments on behalf of Defendants AH Gresham Park, LLC and AH Albion House, LLC.

**II. Basis for Jurisdiction**

A. Basis For Jurisdiction based on a Federal Question

    I.      Jurisdiction is proper under Article VI, Clause 2 of the United States Constitution, the "Supremacy Clause", which states that:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the

COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION

Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Federal law is the supreme law of the land and that state laws that conflict with federal laws are invalid.

Plaintiff is challenging the validity of SB608[1] (2019) and HB 2001-B[3] (2023), and Oregon Revised Statutes, (ORS) Chapter 90, *et seq* (2023), including ORS 90.323 (and related provisions[2]) effective January 2023, which provides that rent increases may not be in an amount greater than seven percent (7%) plus the Consumer Price Index for All Urban Consumers, West Region (All Items) as published by the Bureau of Labor Statistics of the United States Department of Labor in September of the previous calendar year, above the existing rent, which for 2023 is in the range of an eye-watering 14%, or approximately double the COLA increases provided by the Federal Government, It is not only inherently discriminatory against persons on a fixed income, namely elderly, vulnerable and disabled persons, it is discriminatory in fact. The Oregon Statute is also invalid because it achieves an opposite result than its stated purpose.

Plaintiff is challenging the validity of HB 2001-B[3], Oregon Revised Statutes Chapter 90., et seq. (2023), including ORS 90.394, ORS 105.115, et seq., ORS 105.137, and Chapter 13, (2023 Laws), Effective March 29th 2023. It is not only inherently discriminatory against persons on a fixed income, namely elderly, vulnerable and disabled persons, it is discriminatory in fact. The Oregon Statute is also invalid because it achieves the exact opposite result than its stated purpose.

II.    Jurisdiction is proper under 28 U.S.C. § 1331, a case arising under Constitutional or federal laws or treatises. This case presents a federal question, although the court is being asked to exercise its supplemental jurisdiction over certain Oregon laws and statutes related to this matter.

III.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3), which grants federal district courts jurisdiction over all civil actions arising under the laws of the United States.

COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION

IV.     Title VII of Civil Rights Act of 1968 (Fair Housing Act), as amended, 42 U.S.C.
        § 3601, *et seq*.:

     i.     Plaintiff alleges violation of his right to **Fair Housing**: this landlord is
          treating Plaintiff unfairly in terms of rent, security deposits, or other
          terms of tenancy;

     ii.    Plaintiff alleges violation of his right to **Equal Housing**:  Plaintiff alleges
          this landlord is discriminating against Plaintiff on the basis of race, color,
          religion, national origin, sex, familial status, or disability; and

     iii.   Plaintiff further alleges violation of his right to **Protection from**
          **Discrimination** on the basis of disability.

V.      Plaintiff is alleging violation of his rights under the Americans with Disabilities
        Act, Title I of the Americans with Disabilities Act of 1990, as amended, 42
        U.S.C. § 12101 *et seq*. **(ADA):**

     i.     Plaintiff alleges violation of his right to **Equal Access to Housing** on the
          basis of disability;

  ii.    Plaintiff alleges violation of his rights to **Reasonable Modifications.**
          **a.** The landlord is required to provide Plaintiff with reasonable
             modifications that allow Plaintiff to use and enjoy his housing; and

     iii.   Plaintiff alleges violation of his rights to **Reasonable Accommodations**.
          a.  This landlord is required to make reasonable accommodations that
             allow Plaintiff to use and enjoy his residence.    This may include
             making changes to the physical structure of the housing unit,
             providing assistive devices or services, or *modifying the policies and*
             *procedures* of the landlord.

VI.    **Basis for Supplemental Jurisdiction:  Oregon Revised Statutes ORS 124.100,** *et seq.***; ORS 125.658(1)(a); ORS 127.535**

ORS 125.658(1)(a) defines **financial abuse** as:

Any act or omission that results in the unlawful or unauthorized control, appropriation, or use of money or property belonging to an older person or person with a disability.

This law applies to all landlords, regardless of the size of their rental property. Even if a landlord's rental increase is within the legal limits, it may still be considered financial abuse if the increase is excessive or unconscionable. An excessive or unconscionable rental increase is one that is so high that it is unfair or oppressive to the tenant.

Plaintiff alleges this landlord's rental increase violates Oregon State Law regarding financial abuse because it is excessive and unconscionable. In the context of landlord-tenant law, financial abuse occurs when a landlord raises rent to an amount that is unaffordable for the tenant, especially if the tenant is on a fixed income or has a disability. In these cases, the landlord is taking advantage of the tenant's vulnerability and exploiting him for their own financial gain.

Oregon law prohibits landlords from raising rent above certain limits. For example, currently landlords cannot raise rent more than 7% plus the West Coast consumer price index from the previous calendar year, or in the current calendar year, yielding an eye-watering permissible rent increase of 13.9% for this calendar year vs. the 7.8% provided under Federal law for elderly and disabled persons on a fixed income.

Even if a landlord's rental increase is within the legal limits, it can still be considered financial abuse if the increase is excessive or unconscionable. An excessive or unconscionable rental increase is one that is so high that it is unfair or oppressive to the tenant.

COMPLAINT AND COMPLAINT AND
                                                        REQUEST FOR INJUNCTION

ORS 124.100, *et seq.,* is the Oregon law that defines elder abuse and financial abuse. It also allows victims of elder abuse and financial abuse to bring lawsuits against their abusers. ORS 124.100 defines elder abuse as any act or omission that results in physical or emotional harm, neglect, or financial exploitation of an elder person. An elder person is defined as a person who is 65 years of age or older.

ORS 124.100, *et seq.,* also defines financial abuse as any act or omission that results in the wrongful taking or appropriation of money or property of a vulnerable person. A vulnerable person is defined as an elder person or a person with a disability who is susceptible to force, threat, duress, coercion, persuasion, or physical or emotional injury because of the person's physical or mental impairment.

A landlord who raises the rent of a tenant on a fixed income by 13.9% may be considered to be engaging in financial abuse, even if the increase is within the legal limits. This is because the Plaintiff is not be able to afford the increase, which will force Plaintiff to move out, go into debt or become homeless.

In the present matter, the landlord is attempting to raise your rent beyond cost-of-living increases provided by the federal government to persons on social security, and this action is discrimination. It creates a preferred "super-class" of investors in multi-family properties and provides them with a guaranteed minimum return on annual rent increases, at the expense of, and with total disregard to, the rights of individuals in a constitutionally protected class, namely the elderly and/or disabled and/or vulnerable persons.

### 3. The Amount in Controversy

The amount in controversy is more than $75,000.00, not counting interest and costs of court because actual direct damages are in the range of $100,000.00, and Plaintiff is claiming treble damages as provided under Oregon law, which also allows Plaintiff to claims amounts for indirect damages for emotional distress, which are typically 3 times direct damages and when trebled and combined with direct damages suggest Plaintiff is entitled to claim damages in the range of $1,000,000.00, without accounting for punitive damages that may be awarded by the court.

### III. Statement of Claim

The events described herein principally occurred in Oregon, namely at Gresham Park Apartments, located at 805 NE Kane Dr., Gresham, Oregon 97030, and at every multi-family rental property in the State of Oregon.

### a) State of Oregon

Plaintiff is challenging the validity of SB608[1] (2019) and HB 2001-B[3] (2023), and Oregon Revised Statutes, (ORS) Chapter 90, *et seq* (2023), including ORS 90.323 (and related provisions[2]), that became effective January 2023, which provides that rent increases may not be in an amount greater than seven percent (7%) plus the Consumer Price Index for All Urban Consumers, West Region (All Items) as published by the Bureau of Labor Statistics of the United States Department of Labor in September of the previous calendar year, above the existing rent, which for 2023 is in the range of an eye-watering 14%, or approximately double the COLA increases provided by the Federal Government for recipients of Social Security.

Oregon Revised Statutes, (ORS) Chapter 90, *et seq* (2023) represents one of the most misguided and uninformed pieces of legislation of all time. It should be re-captioned "The Landlord Protection Act".

The State of Oregon's new rental "control" legislation is precipitating the next major wave of homelessness in the State of Oregon, particularly with respect to the elderly and/or disabled and/or vulnerable person, who have no ability to generate additional income beyond that provided through Social Security.

Moreover, providing landlords an inflation protected, guaranteed rate of return for multi-family properties (at the expense of elderly and/or disabled and/or vulnerable persons), will actually drive an entire class of protected persons into housing instability, it will have no measurably positive impact on affordable housing. (The main limitation on affordable housing inventory is actually the planning and permitting process used in the tri-county area known as "Metro" which includes Plaintiff's residence).

In Oregon, given the outsized guaranteed rates of return for multi-family housing investments, the Oregon Multi-Family real estate market has become dominated by corporate

entities having no connection with the State of Oregon.  In the case of Plaintiff's current residence, since at least as early as 2015, Gresham Park Apartments has been owed by at least two separate California REITS, and is currently owned and controlled by a Utah Company (and managed by another company based in Washington State.  These entities have no interest other than extracting the maximum return for their investors and are utterly devoid of any sort of empathy or compassion for its residents.  Gresham Park Apartments does not have "residents" per se.  Captives and/or prisoners are more accurate descriptions.

There are numerous other issues.  Real estate investments are typically classified as being "speculative" in nature.  ORS Chapter 90, *et seq*. (2023) is believed to be the first legislation in the country to convert the speculative nature of real estate investing into an investment vehicle with a guaranteed minimum rate of return.  It is truly unprecedented.

By way of comparison, the average rate of return for the NASDQ stock exchange for the past 30 years is approximately 10%.  the average rate of return for the S&P 500 for the past 30 years is approximately 9.9 %.

The only inflation protected invest vehicle in the domestic market are inflation protected T-Bills sold by the US Treasury, which trade a reduced rate of return for stability and protection from erosion due to inflation. (The only other contemporary example of inflation protected investments are various crypto-currency products marketed by off-shore crypto-exchanges and have been found to be largely fraudulent.)

Historically, property values rise and fall based on current market conditions.  The "Oregon Formula" provides an inflation protected guaranteed rate of return which can never drop below 7%, and is almost always guaranteed to produce double digit rates of return, and accordingly, when applying the "Oregon Formula" will produce "permissible" annual rental increases that are more than double the COLA increases provided by the Federal Government.

Neither is this a temporary issue.  COLA increases for 2024 have already been announced and are in the range of 3.5%.  For 2024, the "Oregon Formula" is estimated to produce "permissible" rent increases in the range of 12.5%.

Both SB 608 (2019) and HB2001-B (2023) are both declare a "housing emergency" as the basis for the new legislation.  The fact is that the greater Portland area, including Multnomah County, have been in a state of a "declared housing emergency" since 2016.  Is the "housing emergency" improving in any measurable way?  No.  The current legislation actually makes the situation worse.

The following charts, tables and graph are intended to demonstrate just how corrosive the "Oregon Formula" will be over time, if not corrected.

**Social Security Cost-Of-Living Adjustments [42 U.S.C. 415]\***

| Year | COLA | Year | COLA | Year | COLA |
|------|------|------|------|------|------|
| 1975 | 8.0 | 1995 | 2.6 | 2015 | 0.0 |
| 1976 | 6.4 | 1996 | 2.9 | 2016 | 0.3 |
| 1977 | 5.9 | 1997 | 2.1 | 2017 | 2.0 |
| 1978 | 6.5 | 1998 | 1.3 | 2018 | 2.8 |
| 1979 | 9.9 | 1999[a] | 2.5 | 2019 | 1.6 |
| 1980 | 14.3 | 2000 | 3.5 | 2020 | 1.3 |
| 1981 | 11.2 | 2001 | 2.6 | 2021 | 5.9 |
| 1982 | 7.4 | 2002 | 1.4 | 2022 | 8.7 |
| 1983 | 3.5 | 2003 | 2.1 | 2023 | 3.2 |
| 1984 | 3.5 | 2004 | 2.7 |  |  |
| 1985 | 3.1 | 2005 | 4.1 |  |  |
| 1986 | 1.3 | 2006 | 3.3 |  |  |
| 1987 | 4.2 | 2007 | 2.3 |  |  |
| 1988 | 4.0 | 2008 | 5.8 |  |  |
| 1989 | 4.7 | 2009 | 0.0 |  |  |
| 1990 | 5.4 | 2010 | 0.0 |  |  |
| 1991 | 3.7 | 2011 | 3.6 |  |  |
| 1992 | 3.0 | 2012 | 1.7 |  |  |
| 1993 | 2.6 | 2013 | 1.5 |  |  |
| 1994 | 2.8 | 2014 | 1.7 |  |  |

Table 1

Prior to 1975, Social Security COLA increases were determined by a vote of congress. Since 1975, Social Security COLA increases have **averaged 2.68%**, with zero increases provided in 2009, 2010, and 2015. Recall that the "Oregon Formula" can never fall below a minimum of 7% even if inflation is zero.

COMPLAINT AND COMPLAINT AND
                                        REQUEST FOR INJUNCTION

Table 2 shows the future value of $1,000 after each year for 20 years with a **3% annual compound interest rate.**

| Year | Future Value |
|------|--------------|
| 1 | $1,030.00 |
| 2 | $1,060.90 |
| 3 | $1,092.73 |
| 4 | $1,125.51 |
| 5 | $1,159.27 |
| 6 | $1,194.06 |
| 7 | $1,229.92 |
| 8 | $1,266.89 |
| 9 | $1,304.99 |
| 10 | $1,344.26 |
| 11 | $1,384.73 |
| 12 | $1,426.43 |
| 13 | $1,469.40 |
| 14 | $1,513.66 |
| 15 | $1,559.27 |
| 16 | $1,606.23 |
| 17 | $1,654.58 |
| 18 | $1,704.36 |
| 19 | $1,755.61 |
| 20 | $1,808.34 |

Table 2

In summary, if a person is presently receiving Social Security benefits of $1000.00/mo., using historical data, that benefit should increase to about $1800.00/mo. after a 20-year period, assuming COLA increases in the range of 3%.

COMPLAINT AND COMPLAINT AND
                                    REQUEST FOR INJUNCTION

Table 3 shows the future value of $1,000 after each year for 20 years with a 14% annual compound interest rate.

| Year | Future Value |
|------|-------------|
| 1 | $1,140.00 |
| 2 | $1,295.60 |
| 3 | $1,469.86 |
| 4 | $1,665.12 |
| 5 | $1,884.40 |
| 6 | $2,131.40 |
| 7 | $2,410.52 |
| 8 | $2,726.67 |
| 9 | $3,085.88 |
| 10 | $3,494.58 |
| 11 | $3,960.34 |
| 12 | $4,491.97 |
| 13 | $5,100.56 |
| 14 | $5,798.21 |
| 15 | $6,598.27 |
| 16 | $7,516.32 |
| 17 | $8,570.23 |
| 18 | $9,780.35 |
| 19 | $11,169.63 |
| 20 | $12,764.81 |

Table 3

In summary, if a person is presently paying rent of $1000.00/mo., using the "Oregon Formula", that rent should increase to about $12,764.00 after a 20-year period, assuming the "Oregon Formula" increases in the range of 14%. At the same time, a person receiving Social Security over that same 20 year period will be receiving benefit payments in the range of $1800.00. That is a differential of over $10,000.00 and there is nothing in the Oregon Revised Statutes that addresses the impact this is having on elderly, disabled and/or vulnerable persons that the State has an obligation to protect.

COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION





Figure 1

**b) AH Gresham Park, LLC,** *et al*.

Plaintiff has been a resident at Gresham Park Apartments through three changes in ownership, passing through about 10 separate Limited Liability Companies spread across three States over four years.

According to the Business Registry maintained by the Secretary of State for the State of Oregon, Plaintiff located the following companies who have owned and or controlled Gresham Park Apartments in the course of Plaintiff's possession and control of Apt 109, Gresham Park Apartments:

| Owner/Operator | Dates | | Entity Type | Notes |
|---|---|---|---|---|
| Gresham Park Apartments, LLC | 2015 | present | Oregon DLLC | **NOT** current owner |
| BLF Holdings, LLC | 2013 | present | Irvine, California DLLC | Manager and only member of above |
| Brian Fritterer Revocable Trust (held for the benefit of Mr. Brian Fritterer; single member and trustee, namely Mr. Fritterer). | 2013 | ongoing | | |
| Gresham Park II, LLC | 2017 | | Oakland, California FLLC | |
| Gresham Park, LLC | 2017 | | Oakland, California FLLC | |
| AH Albion House, LLC | 2020 | | | |
| AH Gresham Park, LLC | 2020 | | **"A Utah Company"** | **NO DBA** |

COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION

Plaintiff has not had a residential lease since he has been in actual possession of unit 109B in 1989. The current owner does not have a key to Plaintiff's unit. Plaintiff has made several failed attempts to secure a lease over the past several years.

Plaintiff selected Gresham Park Apartments based on a few criteria:

1. Cost

2. Ramp leading to entrance (in anticipation of an electric scooter);

3. Ramp access from garage to apartment;

4. Working area on back patio; and

5. Working area in garage.

6. Location on the urban growth boundary. In Multnomah County, Kane Drive defines the urban growth boundary, so the risk of gentrification was thought to be minimal.

All of the above have been thwarted by the present owners of Gresham Park Apartments.

**i.      Failure to Accommodate**

As of now, Plaintiff has been waiting for a formal accommodation regarding the simple reassignment of a parking space to provide ramp access to Plaintiff's Apartment. That request is now at least four years old.

Plaintiff received a Notice of Rent increase dating back to March 2023 and has been trying to engage the landlord in a discussion since that time. Defendants are attempting to impose the maximum rental increase permissible under the new law, and aft four years, this landlord demands for increased rent have finally exceeded Plaintiff's ability to pay. Plaintiff requested an adjustment to that increase as an accommodation under the American's with Disabilities Act, which was explicitly refused. According to the current owners of Gresham Park Apartments, they are simply raising the rent "as required under the new law". The present owners feign ignorance of any of Plaintiff's rights arising under Federal Law, including the Americans with Disabilities Act.

The message from this landlord was "pay up or move out".

**ii.     Habitability/Access**

The common grounds of Gresham Park Apartments have never been maintained in a safe condition, particularly during the winter months. Plaintiff's residence is located near Multnomah

Falls, close to the entry to the Columbia River Gorge.  As such, the winter months can usher in severe weather and snow is quite common in this area.  For example, The current owners of Gresham Park Apartments make no effort whatsoever to manage snow removal, and there have been at least two years where Plaintiff could not access his vehicle parked in a garage blocked by a chest high snow drift.  Plaintiff has been denied access and use of his vehicle for weeks at a time and precisely when the vehicle is needed most urgently.

Over the summer of 2023, Plaintiff's apartment was inspected by the City of Gresham, who cited the landlord for a half dozen violations regarding habituality, which the landlord was required to correct.  The bottom line is that Plaintiff's unit has not met community standards regarding habitability for nearly the entire duration of Plaintiff's occupancy, and Plaintiff is entitled to a refund of all sums tendered as rent for an uninhabitable unit dating back to the day Plaintiff became a resident of Gresham Park Apartments.

### iii.    Discrimination, Harassment, Retaliation

The management of Gresham Park Apartments has been engaged in a pattern of harassment and retaliation in their attempt to force Plaintiff to move out of Gresham Park Apartments.  Plaintiff has received at least four Notices of Eviction in the past month alone.

### iv.    Fraud and Overcharges:

When TMG Property Management Services NW took over the day-to-day operation of Gresham Park Apartments in 2020, a host of unauthorized fees and charges began to appear and Plaintiff continues to dispute the amounts, some of which are clearly fraudulent (i.e., Plaintiff asserts that Defendants have no right to assert a $150.00 late fee against rental assistance through Medicare.) (charges for utilities literally doubled overnight without justification).

### v.    (uncompensated) Casualty Claims

Plaintiff has suffered approximately $30,000.00 in uncompensated casualty claims caused by the various employees and/or contractors of Gresham Park Apartments.

a)    Plaintiff suffered casualty losses from a contractor hired by Gresham Park Apartments to replace decks, and in the process the contractor took Plaintiff's property into their possession and which was never returned.

b) A roofing contractor was removing asphalt tiles from the garage building while Plaintiff was working in his vehicle. Without looking, the contractor hurled a pile of asphalt tiles from the roof and which landed with some force on the hood of Plaintiff's car.

vi. **Modifications**

Over the past four years, Plaintiff has undertaken the costs of modifications necessary in view of Plaintiff's disabilities. In the event Plaintiff is compelled to relocate, plaintiff should be entitled to recover the costs of these modifications which would have to be re-implemented in any new residence. The cost of those modifications is estimated to be in the range of $40,000.00.

## IV. Irreparable Injury

Plaintiff is at immediate risk of irreparable Injury because this Landlord has issued multiple Notice of Eviction for Non-Payment of rent. These Notices of Eviction are nothing more than acts of intimidation and harassment, but fundamentally, it has raised Plaintiff's level of concern to the point of contacting adult protective services because the current situation is unsafe and untenable.

Plaintiff is at immediate risk of homelessness.

Plaintiff has now been expressly informed by two Oregon government agencies that individuals in Plaintiff's situation are being advised to move to another State. Plaintiff currently lacks to funds or physical ability to relocate anywhere and should not have to.

The current Oregon Landlord Tenant Law is precipitating a mass migration of a protected class out of the State of Oregon.

COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION

**V. Relief**

1. Oregon SB 608 (2019) as implemented in Oregon's Landlord Tenant Act is unconstitutional and Plaintiff is seeking injunctive relief from its further implementation because it conflicts with Federal Law. Plaintiff is asking the court to ultimately declare SB 608 as invalid.

   It achieves the exact opposite result than its stated purpose.

2. Oregon HB 2001 (2023) as implemented in Oregon's Landlord Tenant Act is unconstitutional and Plaintiff is seeking injunctive relief from its further implementation because it conflicts with Federal Law. Plaintiff is asking the court to ultimately declare HB 2001 as invalid.

3. Even if SB 608 and/or SB 2001 is valid, Plaintiff is seeking injunctive relief against the current owners of Gresham Park Apartments from imposing rent increases in excess of COLA increases allowed under Federal Law.

4. Plaintiff is seeking monetary damages in the amount of $1.2 million dollars in financial damages as outlined above.

5. Plaintiff is seeking actual damages from the owners of Gresham Park Apartments in the amount of not less than $100,000.00 which Plaintiff is entitled to treble under Oregon Law. These actual damages include amounts paid for an uninhabitable unit now for at least four years. Plaintiff is entitled to claim non-economic damages in the amount of not less than $300,000.00 which when combined with direct damages and trebled, Plaintiff is entitled to a minimum of 1.2 million dollars under Oregon law. Plaintiff also spent about $20,000.00 simply to move into Gresham Park Apartments, and is now faced with another round of re-location expenses.

6. Plaintiff is entitled to claim actual and non-economic damages due to casualty losses inflicted on Plaintiff, by contractors of Defendant(s), estimated to be in the range of $30,000.00

COMPLAINT AND COMPLAINT AND
                                        REQUEST FOR INJUNCTION

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an inproper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if so identified, will likely have evidentiary support after a reasonable investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.  For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in dismissal of my case.

Dater of signing: ___10/23/2023___

Signature of Plaintiff: _____

Printed Name of Plaintiff: James E. Jacobson, Jr.

COMPLAINT AND COMPLAINT AND
                                              REQUEST FOR INJUNCTION

FOOTNOTES

1. https//olis.oregonlegislature.gov/liz/2019R1/Measures/Overview/SB608

2. ORS 90.100, 90.220, *90.323*, 90.427, 90.600, 90.643, 90.675, and 105.124

3. https://olis.oregonlegislature.gov/liz/2023R1/Measures/Overview/HB2001

COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION