True copy _____

# United States District Court

### For the

### District of Oregon

### Portland Division

| | |
|---|---|
| James E. Jacobson, Jr. <br> Plaintiff <br><br><br> -vs- <br><br><br> The State of Oregon; Tina Kotek in her capacity as the Governor of the State of Oregon and in her prior capacity as Speaker of the Oregon House of Representatives (group 1); and, AH Gresham Park, LLC, a foreign LLC, registered in Oregon as a Utah Company; AH Albion House, LLC, A domestic Utah Company; and TMG Property Management Services NW, LLC, a foreign LLC, registered in Oregon as a Washington State Company, jointly and severally (group 2) <br> Defendant(s) | **Case No. 3:23-CV-1551-HZ** <br><br> *First Amended Complaint for an Injunction and Money Damages for Discrimination and Violation of Civil Rights, including rights protected under the Fourteenth Amendment to the Constitution of the United States;  the Fair Housing Act, 42 U.S.C. § 3601, *et seq*.: The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; Financial Abuse of An Elderly or Disabled Person, ORS 124.100, *et seq.*; Discrimination against a disabled person in violation of § 504 of the Rehabilitation Act of 1973, 87 Stat. 394, as amended, 29 U. S. C. § 794., for violation of ORS Chapter 90., et seq., and Negligence <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT AND REQUEST FOR INJUNCTION

## SHORT SUMMARY OF (FIRST) AMENDED COMPLAINT

1.   Plaintff's (First) Amended Complaint is submitted as a responsive pleading and a complete Reply to the Motion(s) to Dismiss under FRCP 12(b)(6) filed by each of the respective Defendants in this case.  As such, Plaintiff's (First) Amended Complaint is Amended as a Matter of Course as provided in FRCP 15(1)(B).  Any amendments submitted herewith are submitted for the purposes of clarification and should not be construed as an admission to any of the issues raised in the respective Defendant(s) Motion(s) to Dismiss under FRCP 12(b)(6).

2.   Plaintiff continues to allege that he is a disabled person having multiple disabilities and is in a protected class as defined under both State and Federal law.  In anticipation of filing Plaintiff's (First) Amended Complaint, Plaintiff filed his Motion for Filing Documents Under Seal which was supported by about 22 pages of protected Medical Records, and which is incorporated herein by reference.  (See: Dckt 25).  Plaintiff's status as a person having one or more qualified disabilities should be indisputable in view of the foregoing.

    a.   Note:  It is generally settled law that Plaintiff (and any person receiving SSD) is entitled to a presumption that he is incapable of earning supplemental income due to his qualified disability.

3.   Plaintff's (First) Amended Complaint names two additional defendants.  Tina Kotek was added in her official capacity a the Governor for the State of Oregon due to certain issues raised in the Motion to Dismiss filed on behalf of the State.  TMG Property Management Services NW, LLC was described in Plaintiff's prior Complaint as an actor, but was not named as a Defendant in Plaintiff's prior complaint.  They have now been promoted to a named Defendant because Plaintiff has determined that they are an essential party where joinder is required pursuant to FRCP Rule 19.

4. **This is a case of first impression.  Oregon is the first State and only State in the United States to impose state-wide discriminatory legislation that was initially characterized as rental control "necessitated due to a declared state of emergency and housing crisis". Recently, Plaintiff noticed a shift in terminology in favor of the term "rental stabilization". This discriminatory legislation converts a certain class of real estate, namely rental properties, from a speculative asset into an inflation protected investmemt asset protecting landlord investment income while authorizating rental increases having an clearly discriminatory disparate impact on Plaintiff and any other disabled personal living on a fixed-income determined by a Federally administered program.**

    a. **This discriminatory legislation institutionalizes rent increases that were considered outrageous just 3 years ago, and still are when compared to national averages.**

    b. **This discriminatory legislation that has a disparate discriminatory impact on a clearly identified protected class and has a discriminatory impact that can be calculated down to a decimal point.**

    c. **Plaintiff is distinguished from other tenants who are better equipped to absorb economic shocks because they have jobs, and presumably wages are adjusted for inflation over time.**

5. **Plaintiff lives in rental property that is owned by a multi-state real estate investment company (fund)  based in Utah and is operated by a property management company based in Washington State, collectively "The Landlord".  In this case "The Landlord" is seeking to impose rental increases taking full advantage of Oregon's new discriminatory legislation and refuses to acknowledge obligations imposed under The Fair Housing Act as well as the Americans with Disabilities Act.  The Landlord has refused Plaintiff's Requests for Accomodation regarding numerous items, including an accommodation regarding rent increases that are inherently discriminatory, and The Landlord's increasingly aggressive acts of harrasement and retialiation fall well within the definitions regarding Financial Abuse as defined under ORS 124.100.**

(FIRST AMENDED) COMPLAINT AND
REQUEST FOR INJUNCTION

**6.**     **The Parties to This Complaint**

    **A. The Plaintiff**

| | |
|---|---|
| Name: | James E. Jacobson, Jr. |
| Street Address: | 805 NE Kane Dr, Apt 109B |
| City and County: | Gresham, Multnomah County |
| State and Zip Code: | Oregon, 97030 |
| Telephone No. | (503) 740-0676 |
| E-mail Address | jim.jacobson@live.com |

Plaintiff is a person having one or more qualified disabilities.  Plaintiff is in a "protected class" protected against discrimination under State and Federal Law.  Plaintiff exists on Social Security Disability as his sole source of income with his SSD application dating back to 2004.  Plaintiff is currently a disabled person on Social Security because SSD is automatically converted at age 65. Plaintiff is currently 68 years old.

Plaintiff is a disabled person within the meaning of the Americans with Disabilities Act; is within a defined "protected class"; and covered by the anti-discrimination protections proscribed under the Fair Housing Act, and as a "vunerable person" within the meaning of ORS 124.100.

In any case, any increases in Plaintiff's income is exclusively determined by the annual Social Security COLA increases calculated by the Federal Government which calculates its COLA increases based on the Consumer Price Index for the third fiscal quarter (only) excluding inflation due to energy and housing.  In the 2023 COLA increases for disabled Social Security recipients were limited to approximately  7.8 %, which was one of the highest annual increase on record.  In the State of Oregon, in most cases, Oregon landlords were permitted rental increases in the range of 14.6%

For 2024, Social Security COLA increases are 3.1%, while Oregon Landlords are purportedly permitted rent increases as high as 10%.  In other words, over the course of a few years, Oregon's discriminatory legislation implemented  under ORS Chapter 90, as revised, have demonstrated that the State's formula for so called "rent" stabilization will always produce a result that, at least as a matter of Oregon's current implementation of ORS Chapter 90, will always be more than double the COLA increases provided under Federal law.   As measured from the 12-month period for March 2023 to March 2024, Oregon landlords were permitted a whopping rental increase in excess of 24%

Oregon will in fact achieve some degree of "rent" stabilization by simply wiping an entire protected class off the map.  The continued implementation of this legislation, as demonstrated further

(FIRST AMENDED) COMPLAINT AND
REQUEST FOR INJUNCTION

below, results in an illegal "disparate impact" resulting in illegal discrimination against Plaintiff and similarly situated individuals.  It is truly unconscionable.

With respect to the amounts Social Security received by Plaintiff, in a prior pleading, the State has taken the position essentially stating that "poverty" is not a recognized disabity.  While that sounds good, it is also irrelevant.  Plaintiff is not claiming "poverty" as a disability.

For the record, and for the purposes of analysis, at the time Plaintiff was forced into retirement due to medical reasons, he had already contributed the lifetime maximum required under the laws of the United States.  Consequently, Plaintiff is supposed to be receiving monthly payments at the absolute maximum permissible under the Social Security laws of the United States.

Plaintiff's monthly budget is a "Zero Sum Gain" which means that a dollar allocated for one purpose can only be spent by taking that dollar out of a fixed sum, and so it cannot be allocated for any other purpose.  Plaintiff has no ability to increase that fixed sum, so that the State's discriminatory legislation operates as a direct tax on Plaintiff's Federal Benefits that increase at annual rate that is so high, it will consume Plaintiff's entire income in just a few years.

(FIRST AMENDED) COMPLAINT AND
                              REQUEST FOR INJUNCTION

Plaintiff's income is calculated on the basis of a qualified disability. Disability drives income. Plaintiff is not claiming the Fixed Income provided by the Federal Government is the cause of Plaintiff's disabilitie(s).

Again, for the purposes of analysis, Plaintiff receives benefits not only under Social Security. Plaintiff receives health insurance benefits, in part, through Federally Funded Medicare; Plaintiff also receives Medicaid from the State of Oregon on the basis of disability and *employment* status. While administered by the State, funding is provided by the Federal Government. Plaintiff's on-going employment status is funded by a program administered by the State of Oregon, with Funds provided by the Federal Government.

Plaintiff's multiple qualified disabilities protected under the Americans with Disabilities Act derive from two major life events:

1.    Plaintiff's last job title was "Director of Strategic Investments" for Intel Corporation, and was earning a steady annual income measured in over 7 figures, after rapidly rising through the ranks over a 13-year career with Intel.

Plaintiff was in the course of an ordinary business trip and flew from Portland Oregon and landed in Newark, NJ around 5:30 am on 9/11/2001. Plaintiff secured a rental car and drove directly to Intel's sales office of the 30th floor of the World Trade Center; Plaintiff was subsequently blown-up and buried alive in the rubble of WTC I, after which he remained buried until he was rescued about 8 days later.

Plaintiff Social Security Disability benefits were granted because Plaintiff is a "Victim of Domestic Terrorism", which has resulted in recurrent, episodic PTSD, Anxiety, and so on, which taken alone are well within the scope of the Americans with Disabilities Act.

Starting in late 2010, Plaintiff suffered a Traumatic Brain Injury due to blunt force trauma to Plaintiff's skull and a nearly four-inch scar and indentation are clearly visible to this day. Over the following months, Plaintiff began experiencing dizzy spells and seizures, culminating in a catastrophic fall resulting in a severed spine in Plaintiff's cervical area. Plaintiff was completely paralyzed and hospitalized for over two-months after that fall. Plaintiff experienced  a total of about 9 events requiring in-patient hospitalization between 2011-2012.

Plaintiff continues to suffer severe mobility limitations, including irregular occurrences of "periodic paralysis" that usually occur a few days a month.   Plaintiff is unable to pack or move anything.  If Plaintiff relocates, that can only be accomplished with the assistance of professional

movers.  In view of recent events, it is clear that Plaintiff's current living situation is increasingly hostile and untenable, if not outright dangerous.

Plaintiff's personal financial resources are presently exhausted because of the continuous erosion of a fixed income that has not kept pace with inflation.

Plaintiff has been a resident of the State of Oregon since 1992 and has been a resident at Gresham Park Apartments since 2018, or approximately six years.

In view of on-going harrasement and less than accommodating acts by the owners/operators of Gresham Park Apartments, Plaintiff would rather not continue to reside at Gresham Park Apartments due to on-going concerns regarding Plaintiff's personal safety.  However, due to physical and financial limitations, Plaintiff is trapped in his current living situation.

(FIRST AMENDED) COMPLAINT AND
                         REQUEST FOR INJUNCTION

7.    **The Defendants(s)**

Governor Tina Kotek is now named as a Defendant in her official capacity as the Governor for the State of Oregon and in her prior role as Speaker of the House, because she is uniquely responsible for the discriminatory legislation which is the subjuct matter of this Amended Complaint.

As far as Plaintiff can determine after a diligent investigation (with the help of the State Law Librarian), the initial concepts behind Oregon's Statewide Landlord Protection Act, now implented in ORS Chapter 90, were first introduced by HB608 introduced in late 2019, and according to the legislative history HB608, one of the principal authors and sponsors of HB 608 was then Representative Tina Kotek.  Ms Kotek also advanced HB608 through the floor and on to the Senate in her role as Speaker of The House.  HB608 then evolved into SB1001, which is now the basis for the discriminatory legislation complained of herein, since first introducing, HB608, Ms. Kotek was successfully elected to the Governor's office and so by her signature, Ms Kotek was able to sign her own bill into law.  Plaintiff was not aware that a single person could act as a member of the legislative branch, and the sign her own work product into law as the representative of the executive branch.

If Ms. Kotek were a member of the Oregon State Bar, a case could be made that Ms. Kotek should have had an obligation to avoid the appearance of a conflict.

However, Ms Kotek may be an accomplished legislator or administrator, but she is not a lawyer, she is not an economist, and she apparently is lacking in math skills.  According to her own bio, Ms. Kotek has an undergraduate degree in religious studies.  She also has an advanced degree in religious studies and international studies.

There is nothing in Ms. Kotek's academic background that suggests she is even remotely qualified to understand the economic impact of her discriminatory legislation.  It is also clear that Governor Kotek has no intention of implementing any actions to correct the discriminatory aspects of her legislation, based on her disclosure of her agenda for the upcoming Legislative Session beginning in February 2024.

Presumably, Ms. Kotek is at least skilled enough to solict comments from experts, and provide ample time for public comment.  Plaintiff repeatedly attempted to engage any of the government representatives listed as having an association with this legislation, without success,

(FIRST AMENDED) COMPLAINT AND
                                        REQUEST FOR INJUNCTION

because there was effectively no legislative session in 2023, due to the republican walkout over gun control.  In 2022 – 2023, government offices were closed due to covid.

There may have been some limited public interaction over zoom calls, but Plaintiff was not invited.  Any opportunity for public comment does not appear in the legislative history.

Finally, Governor Kotek is listed as a party in this case because she has the authority to correct the discriminatory legislation described in this complaint. Governor Kotek has the power to suspend the discriminatory legislation through a simple executive order.

**Defendant No. 1**

| | |
|---|---|
| **Name:** | **Tina Kotek, in her official capacity as the Governor of the State of Oregon, and in her prior capacity as Speaker of the Oregon House of Representatives** |
| **Title:** | **Governor** |
| **Street Address:** | **The Office of the Governor** |
| | **900 Court Street, Suite 254** |
| **City and County:** | **Salem, Marion County** |
| **State and Zip-Code** | **Oregon, 97301-4047** |

**Defendant No. 2**

| | |
|---|---|
| Name: | The State of Oregon |
| Title: | Attorney General for the State of Oregon |
| Street Address: | 100 Justice Building |
| City and County: | Salem, Marion County |
| State and Zip Code: | Oregon, 97310 |

Note:  In the Caption, Defendant 1 and Defendant 2 are designated as "group 1" because apart from potential Attorney Fees, Plaintiff IS NOT asserting money damages against the State or any of its employees/officials as individuals.

Plaintiff has made every effort to engage Governor Kotek directly and had attempted to schedule a meeting with Governor Kotek as early as June 2023 in an effort to avoid the necessity of this lawsuit. (*See*:  Exhibit 100)

(FIRST AMENDED) COMPLAINT AND
                    REQUEST FOR INJUNCTION

Plaintiff IS asserting money damages against the remaining defendants, designated in the caption as "group 2."

(FIRST AMENDED) COMPLAINT AND
                                                     REQUEST FOR INJUNCTION

**Defendant No. 3**

  The defendant AH Gresham Park, LLC, is incorporated in the State of Oregon as a Foreign LLC, Oregon Business Registry No. 1756101-96, namely it is registered as a Utah Company, and has its principal place of business in the State of Oregon, at the address below:

| | |
|---|---|
| Name: | AH Gresham Park, LLC, a Foreign Utah Company |
| Street Address: | 6218 N. Concord Ave |
| City and County: | Portland, Multnomah County |
| State and Zip Code: | Oregon, 97217 |
| Telephone No. | (503) 489-5152 |
| | |
| Registered Agent: | Universal Registered Agents |
| Street Address: | 698 12th St. SE, Ste 200 |
| City and County: | Salem, Marion County |
| State and Zip Code: | Oregon, 97301 |

11    (FIRST AMENDED) COMPLAINT AND
             REQUEST FOR INJUNCTION

**Defendant No. 4**

The defendant AH Albion House, LLC is the owner of record of AH Gresham Park , LLC, who is the title holder of Record for Gresham Park Apartments where Plaintiff has resided since well before the property was sold to the current owners.  In fact, Plaintiff has lived at Gresham Park Apartments for now three prior owners, each of whom are a poster child for major flaws inherent in Governor Kotek's discriminatory legislation.

AH Albion House, LLC is actually constituted as a real estate investment fund. *See*: https://www.albion.house/.  AH Albion House actually owns and operates properties in multiple States, including Gresham Park Apartments, in Gresham, OR, St. John's Apartments in Vancouver, WA; Pinewood Commons Apartments in Gresham, OR; Garden View Apartments in Vancouver, WA and Wellington Court in Vancouver.  In each of the properties mentioned above, on the website for AH Albion House, photographs are prominently displayed and for the most part designate at least one unit marked "Office", and in the case of Gresham Park Apartments, the "office" maintains regular office hours open to the public.

**According to their website:**

> "Albion House is first and foremost a real estate investment firm that acquires, renovates, and modernizes **outdated** multifamily properties in select markets across the Western United States.
>
> Our broad range of experience in commercial real estate investment management *enables us to give accredited investors a premium risk-adjusted return, while safeguarding principal, by acquiring recession-resistant and inflation-protected real estate assets in investor-friendly partnerships.* "

In the Motion to Dismiss filed on behalf of AH Albion House, LLC, these defendants argue they are not subject to the provisions of the Fair Housing Act or the Americans With Disabilities Act.

As provided under Title III of the Americans with Disabilities Act:

- § 36.201: Applies to public accommodations and requires them to remove architectural barriers in existing facilities "where readily achievable." This can include multi-family dwellings with common areas like laundry facilities or swimming pools.
- § 36.401: Deals with new construction and alterations of public accommodations and mandates compliance with specific accessibility standards.

**Under the Fair Housing Act**

(FIRST AMENDED) COMPLAINT AND
                    REQUEST FOR INJUNCTION

- § 3604(f)(3)(B): Prohibits discrimination based on disability in housing, which applies to landlords and includes:

  o Refusal to rent or sell

  o Different terms or conditions

  o Failure to make reasonable modifications

  o Eviction

Govenor Kotek has apparently concluded that by converting mutli-family properties into an inflation protected asset will somehow benefit the Oregon economy by providng a financial incentive for owners of multi-family properties to build more units.  AH Albion House is the perfect example of why that does not work.  AH Albion House is a Utah Company and it exists for the sole stated purpose of serving its investors.  The prior two owners of Gresham Park Apartments were both Real Estate Investement Trusts based out of Southern California.

Plaintiff reviewed the entire website for AH Albion House.  They exist for the sole purpose of making a profit for themselves and their investors.  Plaintiff is not able to locate a single mention of tenants, such as any commitment to social responsibility.  It does not exist.

AH Albion House exists for the sole purpose of making a profit, and when those profits are accrued and/or distributed, those funds are exported to UTAH.  Oregon  obtains no practical benefit from the legions of out-of state entities organized for the purpose of aggregating groups of multi-family properties across the State of Oregon, for the sole purpose of exporting Oregon's prosperity to States other than Oregon.

Plaintiff has encountered so many REITS operating in the State of Oregon, that its seems as though this is actually the norm.  Most multi-family properties, particularly around Multnomah County, are owned by out-of State entities.  Converting every multi-family property in the State of Oregon from a speculative asset into an inflation protected asset will do absolutely nothing to fix Portland's deepening housing crisis.

The defendant AH Albion House, LLC is incorporated under the laws of the State of Utah as a Domestic Limited Liability Company, Utah Business Registry No. 11465326-0160, having its principal place of business in Oregon as shown below.   The Utah Secretary of State Business Registry does not show any physical address for AH Albion House, LLC in the State of Utah.

Name:              `          AH Albion House, LLC, a Domestic Utah Company

Street Address:           6218 N. Concord Avenue

City and County:          Portland, Oregon, Multnomah County

(FIRST AMENDED) COMPLAINT AND
                                                        REQUEST FOR INJUNCTION

State and Zip Code:          Oregon, 97217

Telephone No.                (503) 489-5152


Registered Agent:            Universal Registered Agents

Street Address:              2005 East 2700 South Ste 200

City and County:             Salt Lake City, Salt Lake County

State and Zip Code:          Utah, 84109

Defendant No. 5

     Defendant TMG Property Management Services NW, LLC is incorporated under the laws of the State of Washington, having its principal place of business located in Vancouver, WA. It operates as a foreign LLC in the State of Oregon, Registry No. 570225-93.


Name:                        TMG Property Management Services NW, LLC

Street Address:              7710 NE Vancouver Mall Dr.

City and County:             Vancouver, Clark County

State and Zip Code:          Washington, 98662

Telephone No.:


Registered Agent:            Carmen Villarma

Street Address:              Pacific Corporate Center, 15350 Sequoia Pkwy, #200

City and County:             Portland, Multnomah

State and Zip Code:          Oregon, 97224

Telephone No:


     Defendants AH Gresham Park, LLC and AH Albion House, LLC collectively are the current owners of Gresham Park Apartments, located in Gresham, Oregon, where Plaintiff currently resides. TMG Property Management Services NW, LLC of Vancouver, WA acts as the day-to-day operator of Gresham Park Apartments on behalf of Defendants AH Gresham Park, LLC and AH Albion House, LLC. The acts of AH Gresham Park, LLC and AH Albion House, LLC and TMG Property Management Services NW, LLC are indivisible and thus these parties are named as defendants, jointly and severally.


(FIRST AMENDED) COMPLAINT AND
                           REQUEST FOR INJUNCTION

## II. Basis for Jurisdiction

    A.  Basis For Jurisdiction based on a Federal Question

        I.     Jurisdiction is proper under Article VI, Clause 2 of the United States Constitution, the "Supremacy Clause", which states that:

        "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Federal law is the supreme law of the land and that state laws that conflict with federal laws are invalid.

        II.     Jurisdiction is proper under the Fourteenth Amendment of the Constitution of the United States, the Fair Housing Act, 42 U.S.C. §§ 3601-3631 and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 as well as 29 U. S. C. § 794.

            a.  Plaintiff has specifically alleged that he continues to suffer illegal discrimination caused by discriminatory legislation that results in violation of Plaintiff's Civil Rights; Rights under the Americans with Disabilities Act which provides a private right of action irrespective of so called "Soverign Immunity" provided under the Eleventh Amendment to the Constitution of the United States.

                i.  28 CFR §35.178 State immunity: A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this Act. In any action against a State for a violation of the requirements of this Act, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

Plaintiff has specifically alleged that he continues to suffer illegal discrimination that rises to the level of Final Abuse under ORS 124.100, *et seq.*

The States Eleventh Amendment immunity to suit does not apply to lawsuits brought under ORS 124.110. The only exceptions are expressly enumerated under ORS

124.115, and suits against the State are not excluded.  Furthermore, the Statute expressly provides the Courts with the authority to issue the injunctive relief sought by Plaintiff.

Plaintiff is challenging the validity of SB608[1] (2019) and HB 2001-B[3] (2023) , and Oregon Revised Statutes, (ORS) Chapter 90, *et seq* (2023), including ORS 90.323 (and related provisions[2]) effective January 2023, which provides that rent increases may not be in an amount greater than seven percent (7%) plus the Consumer Price Index for All Urban Consumers, West Region (All Items) as published by the Bureau of Labor Statistics of the United States Department of Labor in September of the previous calendar year, above the existing rent, which for 2023 was in the range of an eye-watering 14%, or approximately double the COLA increases provided by the Federal Government,  It is not only inherently discriminatory against persons on a fixed income, namely elderly, vulnerable and disabled persons, it is discriminatory in fact.

The Oregon Statute is also invalid because it achieves an opposite result than its stated purpose. In fact, it makes the problem worse.

Plaintiff is challenging the validity of HB 2001-B[3], Oregon Revised Statutes Chapter 90., et seq. (2023), including ORS 90.394, ORS 105.115, et seq., ORS 105.137, and Chapter 13, (2023 Laws), Effective March 29th 2023.  Collectively, they are inherently discriminatory against persons on a fixed income, namely elderly, vulnerable and disabled persons.  The Oregon Statute is also invalid because it achieves the exact opposite result than its stated purpose.

III.     Jurisdiction is proper under 28 U.S.C. § 1331, a case arising under Constitutional or federal laws or treatises.  This case presents a questions in which the Federal Courts have original jurisdiction., although the court is being asked to exercise its supplemental jurisdiction over certain Oregon laws and statutes related to this matter.

IV.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3), which grants federal district courts jurisdiction over all civil actions arising under the laws of the United States.

Title VII of Civil Rights Act of 1968 (Fair Housing Act), as amended, 42 U.S.C. § 3601, *et seq*.:

i.     Plaintiff alleges violation of his right to **Fair Housing**: this Landlord is treating Plaintiff unfairly in terms of rent, security deposits, or other terms of tenancy;

    ii.    Plaintiff alleges violation of his right to **Equal Housing**:  Plaintiff alleges this landlord is discriminating against Plaintiff on the basis of race, color, religion, national origin, sex, familial status, or disability; and

    iii.    Plaintiff further alleges violation of his right to **Protection from Discrimination** on the basis of disability.

V.    Plaintiff is alleging violation of his rights under the Americans with Disabilities Act, Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* **(ADA):**

    i.    Plaintiff alleges violation of his right to **Equal Access to Housing** on the basis of disability;

ii.    Plaintiff alleges violation of his rights to **Reasonable Modifications.**

    **a.**  The landlord is required to provide Plaintiff with reasonable modifications that allow Plaintiff to use and enjoy his housing; and

    iii.    Plaintiff alleges violation of his rights to **Reasonable Accommodations**.

    a.  This landlord is required to make reasonable accommodations that allow Plaintiff to use and enjoy his residence.   This may include making changes to the physical structure of the housing unit, providing assistive devices or services, or ***modifying the policies and procedures*** of the landlord.

VI.    **Basis for Supplemental Jurisdiction:  Oregon Revised Statutes ORS 124.100,** *et seq.***; ORS 125.658(1)(a); ORS 127.535**

ORS 125.658(1)(a) defines **financial abuse** as:

Any act or omission that results in the unlawful or unauthorized control, appropriation, or use of money or property belonging to an older person or person with a disability.

This law applies to the State as well as all landlords, regardless of the size of their rental property. Even if a landlord's rental increase is within the "legal" limits, it may still be considered financial abuse if the increase is excessive or unconscionable. An excessive or unconscionable rental increase is one that is so high that it is unfair or oppressive to the tenant, irrespective of "statutory discrimination" supposedly enabled by discriminatory legislation enacted under State law

Plaintiff alleges this landlord's rental increase violates Federal Law and also violate Oregon State laws regarding financial abuse because it is excessive and unconscionable. In the context of landlord-tenant law, financial abuse occurs when a landlord raises rent to an amount that is unaffordable for the tenant, especially if the tenant is on a fixed income or has a disability. In these cases, the landlord is taking advantage of the tenant's vulnerability and exploiting him for their own financial gain.

Oregon law prohibits landlords from raising rent above certain limits. For example, currently landlords cannot raise rent more than 7% plus the West Coast consumer price index from the previous calendar year, or in the current calendar year, yielding an eye-watering permissible rent increase of 10% for this calendar year vs. the 3.1% provided under Federal law for elderly and disabled persons on a fixed income. (Note:  the current rate of inflation as calculated by the Federal Government has returned to pre-covid levels and is hovering in the range of 3%.  Oregon's current discriminatory legislation allows rental increases that are more than 300% more than the current rate of inflation.

Even if a landlord's rental increase is within the legal limits, it can still be considered financial abuse if the increase is excessive or unconscionable. An excessive or unconscionable rental increase is one that is so high that it is unfair or oppressive to the tenantORS 124.100, *et seq.,* is the Oregon law that defines elder abuse and financial abuse. It also allows victims of elder abuse and financial abuse to bring lawsuits against their abusers.  ORS 124.100 defines elder abuse as any act or omission that results in physical

(FIRST AMENDED) COMPLAINT AND
                                                                              REQUEST FOR INJUNCTION

or emotional harm, neglect, or financial exploitation of an elder person. An elder person is defined as a person who is 65 years of age or older.

ORS 124.100, *et seq.,* also defines financial abuse as any act or omission that results in the wrongful taking or appropriation of money or property of a vulnerable person. A vulnerable person is defined as an elder person or a person with a disability who is susceptible to force, threat, duress, coercion, persuasion, or physical or emotional injury because of the person's physical or mental impairment.

A landlord who raises the rent of a tenant on a fixed income by 13.9% may be considered to be engaging in financial abuse, even if the increase is within the legal limits provided under State Law. This is because the Plaintiff is not be able to afford the increase, which will force Plaintiff to move out, go into debt, or become homeless.

In the present matter, the landlord is attempting to raise rent beyond cost-of-living increases provided by the federal government to disabled persons on social security, and this action constitutes illegal discrimination. It creates a preferred "super-class" of investors in multi-family properties and provides them with a guaranteed minimum return on annual rent increases, at the expense of, and with total disregard to, the rights of individuals in a constitutionally protected class, namely the elderly and/or disabled and/or vulnerable persons.

(FIRST AMENDED) COMPLAINT AND
                                                                 REQUEST FOR INJUNCTION

**8.   The Amount in Controversy**

The amount in controversy is more than $75,000.00, not counting interest and costs of court because actual direct damages are in the range of $100,000.00, and Plaintiff is claiming treble damages as provided under Oregon law, which also allows Plaintiff to claims amounts for indirect damages for emotional distress, which are typically 3 times direct damages and when trebled and combined with direct damages suggest Plaintiff is entitled to claim damages in the range of $1,000,000.00 for 2023, although Plaitiff has suffered and continues to suffer additional damages and casualty losses in 2024, without accounting for punitive damages that may be awarded by the court.

(FIRST AMENDED) COMPLAINT AND
                                                         REQUEST FOR INJUNCTION

### III.  Statement of Claim

The events described herein principally occurred in Oregon, namely at Gresham Park Apartments, located at 805 NE Kane Dr., Gresham, Oregon 97030, and at every multi-family rental property in the State of Oregon.

a) **Tina Kotek in her official capacity as the Governor for the State of Oregon and in her prior role as the Speaker of Oregon's House of Representatives; and The State of Oregon (group 1), hereinafter collectively referred to as "The State".**

Plaintiff is challenging the validity of SB608[1] (2019) and HB 2001-B[3] (2023) , and Oregon Revised Statutes, (ORS) Chapter 90, *et seq* (2023), including ORS 90.323 (and related provisions[2]), that became effective January 2023, which provides that rent increases may not be in an amount greater than seven percent (7%) plus the Consumer Price Index for All Urban Consumers, West Region (All Items) as published by the Bureau of Labor Statistics of the United States Department of Labor in September of the previous calendar year, above the existing rent, which for 2023 was in the range of an eye-watering 14%, or approximately double the COLA increases provided by the Federal Government for recipients of Social Security.

Oregon Revised Statutes, (ORS) Chapter 90, *et seq* (2023) represents one of the most misguided and uninformed pieces of legislation of all time.  It should be re-captioned "The Landlord Protection Act".

The State of Oregon's new rental "stabilization" legislation is precipitating the next major wave of homelessness in the State of Oregon, particularly with respect to the elderly and/or disabled and/or vulnerable persons, who have no ability to generate additional income beyond that provided through Social Security.

Moreover, providing landlords an inflation protected, guaranteed rate of return for multi-family properties (through the the genocide of elderly and/or disabled and/or vulnerable personsis driving an entire class of protected persons into housing instability, starvation , and possible death, and at the same time it will have no measurably positive impact on affordable housing.  (The main limitation on affordable housing inventory is actually the planning and permitting process used in the tri-county area known as "Metro" which includes Plaintiff's residence).

In Oregon, given the outsized guaranteed rates of return for multi-family housing investments, the Oregon Multi-Family real estate market has become dominated by corporate entities having no connection with the State of Oregon.  In the case of Plaintiff's current residence, since at least as early as

(FIRST AMENDED) COMPLAINT AND
                                                          REQUEST FOR INJUNCTION

2015, Gresham Park Apartments has been owed by at least two separate California REITS, and is currently owned and controlled by a Utah Company (and managed by another company based in Washington State. These entities have no interest other than extracting the maximum return for their investors and are utterly devoid of any sort of empathy or compassion for its residents. Gresham Park Apartments does not have "residents" per se. Captives and/or prisoners are more accurate descriptions.

There are numerous other issues. Real estate investments are typically classified as being "speculative" in nature. ORS Chapter 90, *et seq*. (2023) is the first legislation in the country to convert the speculative nature of real estate investing into an investment vehicle with a guaranteed minimum rate of return. It is truly unprecedented.

By way of comparison, the average rate of return for the NASDQ stock exchange for the past 30 years is approximately 10%. the average rate of return for the S&P 500 for the past 30 years is approximately 9.9 %. Given the inherent stability of the real estate market, the rate of return is typically much less because the investment is considered lower risk.

After a diligent investigationthe only inflation protected invest vehicle in the domestic market available to the general public are inflation protected T-Bills sold by the US Treasury, which trade a reduced rate of return (around 3%) due to inherent stability and protection from erosion due to inflation. (The only other contemporary example of inflation protected investments are various crypto-currency products marketed by off-shore crypto-exchanges and have been found to be largely fraudulent.)

Historically, property values rise and fall based on current market conditions. The discriminatory legislation, hereinafter referred to as "Oregon Formula" provides an inflation protected guaranteed rate of return which can never drop below 7%, and is almost always guaranteed to produce double digit rates of return, and accordingly, when applying the "Oregon Formula" will produce "legal" annual rental increases that are more than double the COLA increases provided by the Federal Government.

Neither is this a temporary issue. COLA increases for 2024 have already been announced and are in the range of 3.5%. For 2024, the "Oregon Formula" is estimated to produce "permissible" rent increases in the range of 10%.

Both SB 608 (2019) and HB2001-B (2023) both declare a "housing emergency" as the basis for the new legislation. The fact is that the greater Portland area, including Multnomah County, have been in a state of a "declared housing emergency" since at least as early as 2016. Is the "housing emergency" improving in any measurable way? No. The current legislation actually makes the situation worse.

 Plaintiff has been actively advocating for the rights of disabled persons on fixed income in the context of the so called "declared housing crisis" having made televised appearances before the Gresham City Council in

(FIRST AMENDED) COMPLAINT AND
                                         REQUEST FOR INJUNCTION

both 2016 and 2017, the video transcripts of which will be introduced in the course of this proceeding. Plaintiff has also had frequent contact with various officials for the City of Gresham, including the City Attorney.

Plaintiff reached out to Governor Kotek's Office as early as June 2023 and requested a meeting as early as June 2023 (See Exhibit 100)

After appearing before City Council in 2017, Plaintiff was introduced to Gresham's First Time homebuyer program, which provides downpayment assistance once a participant completes certain financial management classes, paying off any old debts, attends monthly counselling sessions, and pays the requisite enrollment fee of about $150.00. The program, known as "Welcome Home Gresham" is administered by the City of Gresham using funds received from the Federal Government. The technical aspects of the program such as training and counselling are provided through the a Multnomah County housing agency (Portland Housing). This program was characterized as the answer to Plaintiff's housing issues by the State.

Plaintiff completed all the requirements for the Welcome Home Gresham program in 2019. To date, the market has consistently outpaced the Welcome Home Gresham program, which has a cap limiting the purchase price of the home which has proven to be inadequate in view of Portland's declared housing crisis. Plaintiff has done everything to secure stable housing and complied with every requirement provided by the State. As of the date of this pleading, Plaintiff is still waiting for a permenant home.

The following charts, tables and graph are intended to demonstrate just how corrosive the "Oregon Formula" will be over time, if not corrected.

(FIRST AMENDED) COMPLAINT AND
REQUEST FOR INJUNCTION

**Social Security Cost-Of-Living Adjustments [42 U.S.C. 415]***

| Year | COLA | Year | COLA | Year | COLA |
|------|------|------|------|------|------|
| 1975 | 8.0  | 1995 | 2.6 | 2015 | 0.0 |
| 1976 | 6.4  | 1996 | 2.9 | 2016 | 0.3 |
| 1977 | 5.9  | 1997 | 2.1 | 2017 | 2.0 |
| 1978 | 6.5  | 1998 | 1.3 | 2018 | 2.8 |
| 1979 | 9.9  | 1999 [a] | 2.5 | 2019 | 1.6 |
| 1980 | 14.3 | 2000 | 3.5 | 2020 | 1.3 |
| 1981 | 11.2 | 2001 | 2.6 | 2021 | 5.9 |
| 1982 | 7.4  | 2002 | 1.4 | 2022 | 8.7 |
| 1983 | 3.5  | 2003 | 2.1 | 2023 | 3.2 |
| 1984 | 3.5  | 2004 | 2.7 | | |
| 1985 | 3.1  | 2005 | 4.1 | | |
| 1986 | 1.3  | 2006 | 3.3 | | |
| 1987 | 4.2  | 2007 | 2.3 | | |
| 1988 | 4.0  | 2008 | 5.8 | | |
| 1989 | 4.7  | 2009 | 0.0 | | |
| 1990 | 5.4  | 2010 | 0.0 | | |
| 1991 | 3.7  | 2011 | 3.6 | | |
| 1992 | 3.0  | 2012 | 1.7 | | |
| 1993 | 2.6  | 2013 | 1.5 | | |
| 1994 | 2.8  | 2014 | 1.7 | | |

Table 1

Prior to 1975, Social Security COLA increases were determined by a vote of congress. Since 1975, Social Security COLA increases have **averaged 2.68%**, with zero increases provided in 2009, 2010, and 2015. Recall that the "Oregon Formula" can never fall below a minimum of 7% even if inflation is zero.

Table 2 shows the future value of $1,000 after each year for 20 years with a **3% annual compound interest rate.**

| Year | Future Value |
|------|--------------|
| 1 | $1,030.00 |
| 2 | $1,060.90 |
| 3 | $1,092.73 |
| 4 | $1,125.51 |
| 5 | $1,159.27 |
| 6 | $1,194.06 |
| 7 | $1,229.92 |
| 8 | $1,266.89 |
| 9 | $1,304.99 |
| 10 | $1,344.26 |
| 11 | $1,384.73 |
| 12 | $1,426.43 |
| 13 | $1,469.40 |
| 14 | $1,513.66 |
| 15 | $1,559.27 |
| 16 | $1,606.23 |
| 17 | $1,654.58 |
| 18 | $1,704.36 |
| 19 | $1,755.61 |
| 20 | $1,808.34 |
| Table 2 | |

In summary, if a person is presently receiving Social Security benefits of $1000.00/mo., using historical data, that benefit should increase to about $1800.00/mo. after a 20-year period, assuming COLA increases in the range of 3%.

(FIRST AMENDED) COMPLAINT AND
                                                 REQUEST FOR INJUNCTION

Table 3 shows the future value of $1,000 after each year for 20 years with a 14% annual compound interest rate.

| Year | Future Value |
|---|---|
| 1 | $1,140.00 |
| 2 | $1,295.60 |
| 3 | $1,469.86 |
| 4 | $1,665.12 |
| 5 | $1,884.40 |
| 6 | $2,131.40 |
| 7 | $2,410.52 |
| 8 | $2,726.67 |
| 9 | $3,085.88 |
| 10 | $3,494.58 |
| 11 | $3,960.34 |
| 12 | $4,491.97 |
| 13 | $5,100.56 |
| 14 | $5,798.21 |
| 15 | $6,598.27 |
| 16 | $7,516.32 |
| 17 | $8,570.23 |
| 18 | $9,780.35 |
| 19 | $11,169.63 |
| 20 | $12,764.81 |

In summary, if a person is presently paying rent of $1000.00/mo., using the "Oregon Formula", that rent should increase to about $12,764.00 after a 20-year period, assuming the "Oregon Formula" increases in the range of 14%.  At the same time, a person receiving Social Security over that same 20-year period would be receiving benefit payments in the range of $1800.00.  That is a differential of over $10,000.00 and there is nothing in the Oregon Revised Statutes that addresses the impact this is having on elderly, disabled and/or vulnerable persons that the State has an obligation to protect.

(FIRST AMENDED) COMPLAINT AND
                                                   REQUEST FOR INJUNCTION



Figure 1

(FIRST AMENDED) COMPLAINT AND
REQUEST FOR INJUNCTION

**b) AH Gresham Park, LLC,** *et al.*

Plaintiff has been a resident at Gresham Park Apartments through three changes in ownership, passing through about 10 separate Limited Liability Companies spread across three States since 2018.

According to the Business Registry maintained by the Secretary of State for the State of Oregon, Plaintiff located the following companies who have owned and or controlled Gresham Park Apartments in the course of Plaintiff's possession and control of Apt 109, Gresham Park Apartments:

| Owner/Operator | Dates | | Entity Type | Notes |
|---|---|---|---|---|
| Gresham Park Apartments, LLC | 2015 | present | Oregon DLLC | **NOT** current owner |
| BLF Holdings, LLC | 2013 | present | Irvine, California DLLC | Manager and only member of above |
| Brian Fritterer Revocable Trust (held for the benefit of Mr. Brian Fritterer; single member and trustee, namely Mr. Fritterer). | 2013 | ongoing | | |
| Gresham Park II, LLC | 2017 | | Oakland, California FLLC | |
| Gresham Park, LLC | 2017 | | Oakland, California FLLC | |
| AH Albion House, LLC | 2020 | | | |
| AH Gresham Park, LLC | 2020 | | **"A Utah Company"** | **NO DBA** |

Plaintiff has never had a residential lease since he has been in legal possession of unit 109B in 2018.  The current owner does not have a key to Plaintiff's unit.   Plaintiff has made several failed attempts to secure a lease over the past several years, principally due to issues regarding hability, fraudulent charges, owner negligence; on-going safety issues, and failure to accommodate reasonable requests under the American's with Disabilities Act.

(FIRST AMENDED) COMPLAINT AND
                                                                    REQUEST FOR INJUNCTION

Plaintiff selected Gresham Park Apartments based on a few criteria:

1. Cost

2. Ramp leading to entrance (in anticipation of an electric scooter);

3. Ramp access from garage to apartment;

4. Working area on back patio; and

5. Working area in garage.

6. Location on the urban growth boundary.  In Multnomah County, Kane Drive defines the urban growth boundary, so the risk of gentrification and rent increases was thought to be minimal.  There are no multi-family housing units in Multnomah County beginning at the boundary defined by Kane Dr.

All of the above have been thwarted by the present owners of Gresham Park Apartments.

**i.      Failure to Accommodate**

As of now, Plaintiff has been waiting for a formal accommodation regarding the simple reassignment of a parking space to provide ramp access to Plaintiff's Apartment.  That request is now at least six years old.  (*See:* Exhibit 104).  After six years, Plaintiff still does not have ramp access to his residence.

Plaintiff received a Notice of Rent (See: Exhibit 110 increase dating back to March 2023 and Plaintiff has been trying to engage the landlord regarding Plaintiff's Request for an Accomodation regarding rental assistance.  (*See:* Exhibit 102). in a discussion since that time.   Defendants are attempting to impose the maximum rental increase permissible under the new law, and after six years, this landlord now demands for increases in rent that have finally exceeded Plaintiff's ability to pay.

Plaintiff requested an adjustment to that increase as an accommodation under the American's with Disabilities Act, which was explicitly refused.  According to the current owners of Gresham Park Apartments, they are simply raising the rent "as required under the new law".

The present owners feign ignorance of any of Plaintiff's rights arising under Federal Law, including the Americans with Disabilities Act.

In the course of attempting to resolve this issue, prior to filing this lawsuit Plaintiff has sent multiple requests to TMG Property Management Services NW, LLC and in fact had a video-conference with representatives from both the owners of AH Albion House together with representatives of TMG Property Management Services

***The message from the owner was "pay up or move out"***.

In the course of this video conference it was clear that all the participants comprising the Defendant(s) designated in (group 2) with 2 representatives from AH Albion House, LLC and at least one representative from TMG Management Services NW, LLC, had prepared some sort of "client manual" that included scripts with prepared responces for all the defendants and at one point, the owner's of AH Albion House, LLC referred to the representative from TMG Management Services NW, LLC as their "attorney".

At that meeting, Plaintiff was informed that his prior Request for Accododation regarding parking was RACIST!

Plaintiff was further informed that he had engaged in abuse regarding one of their employees, namely Ms. Genny Soto, when the exact opposite is true.  Ms. Soto is the actual abuser in this case, and the fact that Ms. Soto would create a record accusing Plaintiff of abuse is a symptom of a profound mental illness.

All of the Defendant's identified in (group 2) have developed a common script including the following remarks:

  a. Gresham Park Apartments, LLC does not discriminate and they are required to treat everyone exactly the same, irrespective of disability.

  b. Gresham Park Apartments, LLC is not responsible for casualty losses of Plaintiff's personal property that were caused by contractors of Gresham Park Apartments, LLC, where property was lost in the course of the contractors work on behalf of the owners of Gresham Park Apartments, LLC.

  c. Since the filing of Plaintiff's prior complaint, During the first week of 2024 Plaintiff has suffered another massive casualty loss which Plaintiff attributes to negligence on the part of the owners, and damages due to this incident alone will be in the range of an addition $100,000.00.

  d. With respect to Plaintiff's Request for Accomodation under the American's with Disabilities Act, The Landlord stated that they could not possibly consider Plaintiff's Request for an Accomodation regarding Rent."

      i. A representative from Gresham Park Apartments, namely Ms Genny Soto literally made the following statements:

          1."What makes you think you are so special"?  That attiude is pervasive among all the Defendants identified in group 2.

(FIRST AMENDED) COMPLAINT AND
                                                    REQUEST FOR INJUNCTION

2. Gresham Park Appartments, LLC cannot consider Plaintiff's Request for Accomodation because they treat everyone "exactly the same".

3. If Plaintiff is not happy with the situation at Gresham Park Apartments, he is free to move.

## ii.    Habitability/Access

The common grounds of Gresham Park Apartments have never been maintained in a safe condition, particularly during the winter months.  Plaintiff's residence is located near Multnomah Falls, close to the entry to the Columbia River Gorge.  As such, the winter months can usher in severe weather and snow is quite common in this area.  For example, the current owners of Gresham Park Apartments make no effort whatsoever to manage snow removal, and there have been at least two years where Plaintiff could not access his vehicle parked in a garage blocked by a chest high snow drift.  Plaintiff has been denied access and use of his vehicle for weeks at a time and precisely when the vehicle is needed most urgently.

Over the summer of 2023, Plaintiff's apartment was inspected by the City of Gresham, who cited the landlord for a half dozen violations regarding habituality, which the landlord was required to correct.  The bottom line is that Plaintiff's unit has not met community standards regarding habitability for nearly the entire duration of Plaintiff's occupancy.  (*See*: Exhibits 106, 108). Plaintiff is entitled to a refund of all sums tendered as rent for an uninhabitable unit dating back to the day Plaintiff became a resident of Gresham Park Apartments, LLC.  Numerous items cited by the City of Gresham remain unresolved to this day.

## iii.    Discrimination, Harassment, Retaliation

The management of Gresham Park Apartments has been engaged in a pattern of harassment and retaliation in their attempt to force Plaintiff to move out of Gresham Park Apartments.  Since attempting to resolve issues with "The Landlord", Plaintiff has been bombarded with Notices of Eviction for non-payment (of fraudulent charges).  These have been amplified by corresponding "invoices" asserting fraudulent charges measured in the range of several thousand dollars.

Plaintiff has received at least a Notice of Eviction at least once per month since last March.  It is not unusual to receive Notices of Eviction for Cause for violation of a non-

(FIRST AMENDED) COMPLAINT AND
                              REQUEST FOR INJUNCTION

existent lease in the same month. This is in addition to corresponding "invoices" asserting fraudulent charges measured in the range of several thousand dollars, which Plaintiff receives at the same monthly rate. Plaintiff has accumulated a stack of the above-mentioned notices threating Plaintiff's housing stability, and has literally lost count of the actual number of such notices, the number of which probably exceeds 30, and at this point serve not other purpose other than harassment.

Some examples are included herewith, and are only submitted as examples. (*See e.g.*: Exhibits F2 – F18).

iv.     **Fraud and Overcharges:**

When TMG Property Management Services NW took over the day-to-day operation of Gresham Park Apartments in 2020, a host of unauthorized fees and charges began to appear and Plaintiff continues to dispute the amounts, some of which are clearly fraudulent (i.e., Plaintiff asserts that Defendants have no right to assert a $150.00 late fee against rental assistance through Medicare.) (charges for utilities literally doubled overnight without justification).

v.     **(uncompensated) Casualty Claims**

Plaintiff has suffered approximately $30,000.00 in uncompensated casualty claims caused by the various employees and/or contractors of Gresham Park Apartments.

a)    Plaintiff suffered casualty losses from a contractor hired by Gresham Park Apartments to replace decks, and in the process the contractor took Plaintiff's property into their possession and which was never returned.

b)    A roofing contractor was removing asphalt tiles from the garage building while Plaintiff was working in his vehicle. Without looking, the contractor hurled a pile of asphalt tiles from the roof and which landed with some force on the hood of Plaintiff's car. Plaintiff still has not been compensated for damages to his vehicle

c)    c) Plaintiff suffered a massive burgulary as recently as the first week of January 2024. Plaintiff alleges the incident would not have occurred but for the The Landlord's negligence.

vi.     **Modifications**

Over the past four years, Plaintiff has undertaken the costs of architectural modifications necessary in view of Plaintiff's disabilities. In the event Plaintiff is compelled to relocate, plaintiff should be entitled to recover the costs of these modifications which would have to be

(FIRST AMENDED) COMPLAINT AND
REQUEST FOR INJUNCTION

re-implemented in any new residence.  The cost of those modifications is estimated to be in the range of $40,000.00.

## IV.  Irreparable Injury

Plaintiff is at immediate risk of irreparable Injury because this Landlord has issued multiple Notice of Eviction for Non-Payment of rent.  These Notices of Eviction are nothing more than acts of intimidation and harassment, but fundamentally, it has raised Plaintiff's level of concern to the point of contacting adult protective services because the current situation is unsafe and untenable.

Plaintiff is at immediate risk of homelessness.

Plaintiff has now been expressly informed by two Oregon government agencies that individuals in Plaintiff's situation are being advised to move to another State.  Plaintiff currently lacks to funds or physical ability to relocate anywhere and should not have to.

The current Oregon Landlord Tenant Law is precipitating a mass migration of a protected class out of the State of Oregon.

(FIRST AMENDED) COMPLAINT AND
                                           REQUEST FOR INJUNCTION

## V.  Relief

### With respect to the Defendants identified  in (group 1) ("The State")

a.    i.   Oregon SB 608 (2019) as implemented in Oregon's Landlord Tenant Act is unconstitutional and Plaintiff is seeking injunctive relief from its further implementation because it conflicts with Federal Law.  Plaintiff is asking the court to ultimately declare SB 608 as invalid.        It achieves the exact opposite result than its stated purpose.  In fact, it will have the net effect of making the housing problem much worse.

b.    Oregon HB 2001 (2023) as implemented in Oregon's Landlord Tenant Act is unconstitutional and Plaintiff is seeking injunctive relief from its further implementation because it conflicts with Federal Law.  Plaintiff is asking the court to ultimately declare HB 2001 as invalid.

### With respect to the Defendants in (group 2) ("The Landlord").

c.    Even if SB 608 and/or SB 2001 were valid, Plaintiff is seeking injunctive relief against the current owners of Gresham Park Apartments from imposing rent increases in excess of COLA increases allowed under Federal Law.

d.    Plaintiff is seeking monetary damages in the amount of $1.3million dollars in financial damages as outlined above.

e.    Plaintiff is seeking actual damages from the owners of Gresham Park Apartments in the amount of not less than $200,000.00 which Plaintiff is entitled to treble under Oregon Law.  These actual damages include amounts paid for an uninhabitable unit now for at least six years.  Plaintiff is entitled to claim non-economic damages in the amount of not less than $400,000.00 which when combined with direct damages and trebled, Plaintiff is entitled to a minimum of 1.3 million dollars under Oregon law.  Plaintiff also spent about $20,000.00 simply to move into Gresham Park Apartments, and is now faced with another round of re-location expenses.

f.    Plaintiff has invested tens of thousands of dollars in architectural improvements required to adapt Plaintiff's residence to accommodate his disability.  These improvement range from conventional modifications to Plaintiff's bathroom, including the shower; installation of an air quality control system including dust removal and air filtration, and installation of a back-up power and heat system due to the fact that Plaintiff cannot tolerate temperature extremes and an extended power failure could be fatal; Plaintiff has has had a Medical Certificate on file with PG&E since 2016, and Plaintiiff does receive priority in certain circumstances.

(FIRST AMENDED) COMPLAINT AND
                                                   REQUEST FOR INJUNCTION

    a.  Simply moving as suggested by the Landlord is not possible without the loss of these substantial expenses.  Plaintiff is entrenched in his current residence until this issue is resolved.

g.  Plaintiff is entitled to claim actual and non-economic damages due to casualty losses inflicted on Plaintiff, by contractors of Defendant(s), estimated to be in the range of $30,000.00.

h.  Plaintiff is entitled to recover amounts due to casualty loss due to The Landlords negligence, which occurred since the filing of Plaintiff's prior complaint.  These losses are estimated to be in the range of $100,000.00.

(FIRST AMENDED) COMPLAINT AND
                                        REQUEST FOR INJUNCTION

## VI.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an inproper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if so identified, will likely have evidentiary support after a reasonable investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

## A.  For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in dismissal of my case.

Dater of signing: 01/29/2024

Signature of Plaintiff:

Printed Name of Plaintiff:  James E. Jacobson, Jr.

(FIRST AMENDED) COMPLAINT AND
                                                    REQUEST FOR INJUNCTION

FOOTNOTES

1. https//olis.oregonlegislature.gov/liz/2019R1/Measures/Overview/SB608

2. ORS 90.100, 90.220, **90.323**, 90.427, 90.600, 90.643, 90.675, and 105.124

3. https://olis.oregonlegislature.gov/liz/2023R1/Measures/Overview/HB2001

(FIRST AMENDED) COMPLAINT AND
                                                           REQUEST FOR INJUNCTION

Formatted: Left: 0.5", Top: 0.5"

True copy _____

# United States District Court

## For the

## District of Oregon

## Portland Division

| | | |
|---|---|---|
| James E. Jacobson, Jr. | ) | **Case No. 3:23-CV-1551-HZ** |
| Plaintiff | ) | |
| | ) | *First Amended Complaint for an Injunction and |
| | ) | Money Money Damages for Discrimination |
| -vs- | ) | and Violation of Civil Rights, including rights |
| | ) | protected under the Fourteenth Amendment to |
| | ) | the Constitution of the United States; the Fair |
| The State of Oregon; Tina Kotek in her | ) | Housing Act, 42 U.S.C. § 3601, *et seq.*: The |
| capacity as the Governor of the State of | ) | Americans with Disabilities Act, 42 U.S.C. § |
| Oregon and in her prior capacity as | ) | 12101 *et seq.*; and Financial Abuse of An |
| Speaker of the Oregon House of | ) | Elderly or Disabled Person, ORS 124.100, *et* |
| Representatives (group 1); and, AH | ) | *seq.*; Discrimination against a disabled person |
| Gresham Park, LLC, a foreign LLC, | ) | in violation of § 504 of the Rehabilitation Act |
| registered in Oregon as a Utah Company; | ) | of 1973, 87 Stat. 394, as amended, 29 U. S. C. |
| and AH Albion House, LLC, A domestic | ) | § 794., for violation of ORS Chapter 90., et |
| Utah Company; and TMG Property | ) | seq., and Negligence |
| Management Services NW, LLC, a foreign | ) | |
| LLC, registered in Oregon as a Washington | ) | **DEMAND FOR JURY TRIAL** |
| State Company, jointly and severally | ) | |
| (group 2). | ) | |
| Defendant(s) | ) | |

Formatted: Font: (Default) Times New Roman, 12 pt

Formatted: Font: 12 pt

Formatted: Font: (Default) Times New Roman, 12 pt

1    (FIRST AMENDED) COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION

*Appendix I*

## COMPLAINT AND REQUEST FOR INJUNCTION

### SHORT SUMMARY OF (FIRST) AMENDED COMPLAINT

1.  Plaintff's (First) Amended Complaint is submitted as a responsive pleading and a complete Reply to the Motion(s) to Dismiss under FRCP 12(b)(6) filed by each of the respective Defendants in this case.  As such, Plaintiff's (First) Amended Complaint is Amended as a Matter of Course as provided in FRCP 15(1)(B).  Any amendments submitted herewith are submitted for the purposes of clarification and should not be construed as an admission to any of the issues raised in the respective Defendant(s) Motion(s) to Dismiss under FRCP 12(b)(6).

2.  Plaintiff continues to allege that he is a disabled person having multiple disabilities and is in a protected class as defined under both State and Federal law.  In anticipation of filing Plaintiff's (First) Amended Complaint, Plaintiff filed his Motion for Filing Documents Under Seal which was supported by about 22 pages of protected Medical Records, and which is incorporated herein by reference.  (See: Dckt 25).  Plaintiff's status as a person having one or more qualified disabilities should be indisputable in view of the foregoing.

    a.  Note:  It is generally settled law that Plaintiff (and any person receiving SSD) is entitled to a presumption that he is incapable of earning supplemental income due to his qualified disability,

3.  Plaintiff's (First) Amended Complaint names two additional defendants.  Tina Kotek was added in her official capacity a the Governor for the State of Oregon due to certain issues raised in the Motion to Dismiss filed on behalf of the State.  TMG Property Management Services NW, LLC was described in Plaintiff's prior Complaint as an actor, but was not named as a Defendant in Plaintiff's prior complaint.  They have now been promoted to a named Defendant because Plaintiff has determined that they are an essential party where joinder is required pursuant to FRCP Rule 19,

2     (FIRST AMENDED) COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION

*Appendix I*

---

Formatted: Font: (Default) Times New Roman, 12 pt, Bold

Formatted: Indent: Left: 0.5", Space After: Auto, Line spacing: single, No bullets or numbering

Formatted

Formatted: Font: (Default) Times New Roman, 12 pt, Bold

Formatted: Font: (Default) Times New Roman, 12 pt, Bold

4. This is a case of first impression. Oregon is the first State and only State in the United States to impose state-wide discriminatory legislation that was initially characterized as rental control "necessitated due to a declared state of emergency and housing crisis". Recently, Plaintiff noticed a shift in terminology in favor of the term "rental stabilization". This discriminatory legislation converts a certain class of real estate, namely rental properties, from a speculative asset into an inflation protected investmemt asset protecting landlord investment income while authorizing rental increases having an clearly discriminatory disparate impact on Plaintiff and any other disabled personal living on a fixed-income determined by a Federally administered program.

   a. This discriminatory legislation institutionalizes rent increases that were considered outrageous just 3 years ago, and still are when compared to national averages.

   b. This discriminatory legislation that has a disparate discriminatory impact on a clearly identified protected class and has a discriminatory impact that can be calculated down to a decimal point.

   c. Plaintiff is distinguished from other tenants who are better equipped to absorb economic shocks because they have jobs, and presumably wages are adjusted for inflation over time.

5. Plaintiff lives in rental property that is owned by a multi-state real estate investment company (fund) based in Utah and is operated by a property management company based in Washington State, collectively "The Landlord". In this case "The Landlord" is seeking to impose rental increases taking full advantage of Oregon's new discriminatory legislation and refuses to acknowledge obligations imposed under The Fair Housing Act as well as the Americans with Disabilities Act. The Landlord has refused Plaintiff's Requests for Accomodation regarding numerous items, including an accommodation regarding rent increases that are inherently discriminatory, and The Landlord's increasingly aggressive acts of harrasement and retialiation fall well within the definitions regarding Financial Abuse as defined under ORS 124.100,

3   (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~ REQUEST FOR INJUNCTION

*Appendix I*

1.6.    **The Parties to This Complaint**

   **A. The Plaintiff**

   Name:                    James E. Jacobson, Jr.

   Street Address:          805 NE Kane Dr, Apt 109B

   City and County:         Gresham, Multnomah County

   State and Zip Code:      Oregon, 97030

   Telephone No.            (503) 740-0676

   E-mail Address           jim.jacobson@live.com

   Plaintiff is a person having one or more qualified disabilities. Plaintiff is in a "protected class" protected against discrimination under State and Federal Law. Plaintiff existsed on Social Security Disability as his sole source of income with his SSD application having an effective date in dating back to 2004. Plaintiff is currently a disabled person on Social Security because SSD is automatically converted at age 65. Plaintiff is currently 68 years old.

   Plaintiff is a disabled person within the meaning of the Americans with Disabilities Act; is within a defined "protected class"; and covered by the anti-discrimination protections proscribed under the Fair Housing Act, and as a "vunerable person" within the meaning of ORS 124.100.

   In either any case, any increases in Plaintiff's income is exclusively determinedexclusively determined by the annual Social Security COLA increases calculated by the Federal Government which calculates its COLA increases based on the Consumer Price Index for the third fiscal quarter (only) excluding inflation due to energy and housing. In the past year2023 COLA increases for disabled Social Security recipients waswere in the range of limited to approximately 7.8 %, which was one of the highest annual increase on record. In the State of Oregon, in most cases, Oregon landlords were permitted rental increases in the range of 14.6%

   For 2024, Social COLASecurity COLA increases are estimated to be in the range of 3.83.1 %, while Oregon Landlords are purportedly permitted rent increases as high as 10%. In other words, over the course of a few years, Oregon's discriminatory legislation implemented under ORS Chapter 90, as revised, have demonstrated that the State's formula for so called "rent" stabilization will always produce a result that, at least as a matter of Oregon's current implementation of ORS Chapter 90, will always be more than double the COLA increases provided under Federal law. As measured from the 12-month

                         4    (FIRST AMENDED) COMPLAINT AND COMPLAINT AND
                              REQUEST FOR INJUNCTION

*Appendix I*

period for March 2023 to March 2024, Oregon landlords were permitted a whopping rental increase in excess of 24%.

Oregon will in fact achieve some degree of "rent" stabilization by simply wiping an entire protected class off the map. The continued implementation of this legislation, as demonstrated further below, results in an illegal "disparate impact" resulting in illegal discrimination against Plaintiff and similarly situated individuals. It is truly unconscionable.

With respect to the amounts Social Security received by Plaintiff, in a prior pleading, the State has taken the position essentially stating that "poverty" is not a recognized disabity. While that sounds good, it is also irrelevant. Plaintiff is not claiming "poverty" as a disability.

For the record, and for the purposes of analysis, at the time Plaintiff was forced into retirement due to medical reasons, he had already contributed the lifetime maximum required under the laws of the United States. Consequently, Plaintiff is supposed to be receiving monthly payments at the absolute maximum permissible under the Social Security laws of the United States.

Plaintiff's monthly budget is a "Zero Sum Gain" which means that a dollar allocated for one purpose can only be spent by taking that dollar out of a fixed sum, and so it cannot be allocated for any other purpose. Plaintiff has no ability to increase that fixed sum, so that the State's discriminatory legislation operates as a direct tax on Plaintiff's Federal Benefits that increase at annual rate that is so high, it will consume Plaintiff's entire income in just a few years.

**Formatted:** Space After: 0 pt

**Formatted:** Indent: First line: 0.5", Space After: 0 pt, Line spacing: 1.5 lines

*Appendix I*

Plaintiff's income is calculated on the basis of a qualified disability. Disability drives income. Plaintiff is not claiming the Fixed Income provided by the Federal Government is the cause of Plaintiff's disabilitie(s).

Again, for the purposes of analysis, Plaintiff receives benefits not only under Social Security. Plaintiff receives health insurance benefits, in part, through Federally Funded Medicare; Plaintiff also receives Medicaid from the State of Oregon on the basis of disability and *employment* status. While administered by the State, funding is provided by the Federal Government. Plaintiff's on-going employment status is funded by a program administered by the State of Oregon, with Funds provided by the Federal Government.

Plaintiff's ~~is a person having one or more~~ multiple qualified disabilities protected under the Americans with Disabilities Act. ~~which~~ derive from two major life events:

1. Plaintiff's last job title was "Director of Strategic Investments" for Intel Corporation, and was earning a steady annual income measured in over 7 figures, after rapidly rising through the ranks over a 13-year career with Intel.

Plaintiff was in the course of an ordinary business trip and flew from Portland Oregon and landed in Newark, NJ around 5:30 am on 9/11/2001. Plaintiff secured a rental car and drove directly to Intel's sales office of the 30th floor of the World Trade Center; Plaintiff was subsequently blown-up and buried alive in the rubble of WTC I, after which he remained buried until he was rescued about 8 days later.

Plaintiff Social Security Disability benefits were granted because Plaintiff is a "Victim of Domestic Terrorism", which has resulted in recurrent, episodic PTSD, Anxiety, and so on, which taken alone are well within the scope of the Americans with Disabilities Act.

Starting in late 2010, Plaintiff suffered a Traumatic Brain Injury due to blunt force trauma to Plaintiff's skull and a nearly four-inch scar and indentation are clearly visible to this day. Over the following months, Plaintiff began experiencing dizzy spells and seizures, culminating in a catastrophic fall resulting in a severed spine in Plaintiff's cervical area. Plaintiff was completely paralyzed and hospitalized for over two-months after that fall. Plaintiff experienced a total of about 9 events requiring in-patient hospitalization between 2011-2012.
~~include a spinal injury resulting in periodic paralysis and as such,~~

Plaintiff continues to suffer severe mobility limitations, including irregular occurrences of "periodic paralysis" that usually occur a few days a month. Plaintiff is unable to pack or move anything. If Plaintiff relocates, that can only be accomplished with the assistance of professional

6    (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~
REQUEST FOR INJUNCTION

***Appendix I***

movers.  In view of recent events, it is clear that Plaintiff's current living situation is increasingly hostile and untenable, if not outright dangerous.

Plaintiff's personal financial resources are presently exhausted because of the continuous erosion of a fixed income that has not kept pace with inflation.

Plaintiff has been a resident of the State of Oregon since 1992 and has been a resident at Gresham Park Apartments since 20192018, or approximately four six years.

In view of on-going harrasement and less than accommodating acts by the owners/operators of Gresham Park Apartments, Plaintiff would rather not continue to reside at Gresham Park Apartments due to on-going concerns regarding Plaintiff's personal safety.  However, due to physical and financial limitations, Plaintiff is trapped in his current living situation.

7    (FIRST AMENDED) COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION

*Appendix I*

2.7. **The Defendants(s)**

Governor Tina Kotek is now named as a Defendant in her official capacity as the Governor for the State of Oregon and in her prior role as Speaker of the House, because she is uniquely responsible for the discriminatory legislation which is the subject matter of this Amended Complaint.

As far as Plaintiff can determine after a diligent investigation (with the help of the State Law Librarian), the initial concepts behind Oregon's Statewide Landlord Protection Act, now implemented in ORS Chapter 90, were first introduced by HB608 introduced in late 2019, and according to the legislative history HB608, one of the principal authors and sponsors of HB 608 was then Representative Tina Kotek. Ms Kotek also advanced HB608 through the floor and on to the Senate in her role as Speaker of The House. HB608 then evolved into SB1001, which is now the basis for the discriminatory legislation complained of herein. Since first introducing, HB608, Ms. Kotek was successfully elected to the Governor's office and so by her signature, Ms Kotek was able to sign her own bill into law. Plaintiff was not aware that a single person could act as a member of the legislative branch, and the sign her own work product into law as the representative of the executive branch.

If Ms. Kotek were a member of the Oregon State Bar, a case could be made that Ms. Kotek should have had an obligation to avoid the appearance of a conflict.

However, Ms Kotek may be an accomplished legislator or administrator, but she is not a lawyer, she is not an economist, and apparently is lacking in math skills. According to her own bio, Ms. Kotek has an undergraduate degree in religious studies. She also has an advanced degree in religious studies and international studies.

There is nothing in Ms. Kotek's academic background that suggests she is even remotely qualified to understand the economic impact of her discriminatory legislation. It is also clear that Governor Kotek has no intention of implementing any actions to correct the discriminatory aspects of her legislation, based on her disclosure of her agenda for the upcoming Legislative Session beginning in February 2024.

Presumably, Ms. Kotek is at least skilled enough to solicit comments from experts, and provide ample time for public comment. Plaintiff repeatedly attempted to engage any of the government representatives listed as having an association with this legislation, without success,

8    (FIRST AMENDED) COMPLAINT AND COMPLAINT
                                    AND
                        REQUEST FOR INJUNCTION

*Appendix I*

because there was effectively no legislative session in 2023, due to the republican walkout over gun control.  In 2022 – 2023, government offices were closed due to covid.

There may have been some limited public interaction over zoom calls, but Plaintiff was not invited.  Any opportunity for public comment does not appear in the legislative history.

Finally, Governor Kotek is listed as a party in this case because she has the authority to correct the discriminatory legislation described in this complaint. Governor Kotek has the power to suspend the discriminatory legislation through a simple executive order,

**Defendant No. 1**

| | |
|---|---|
| **Name:** | **Tina Kotek, in her official capacity as the Governor of the State of Oregon, and in her prior capacity as Speaker of the Oregon House of Representatives** |
| **Title:** | **Governor** |
| **Street Address:** | **The Office of the Governor** |
| | **900 Court Street, Suite 254** |
| **City and County:** | **Salem, Marion County** |
| **State and Zip-Code** | **Oregon, 97301-4047** |

**Defendant No. 2**

| | |
|---|---|
| Name: | The State of Oregon |
| Title: | Attorney General for the State of Oregon |
| Street Address: | 100 Justice Building |
| City and County: | Salem, Marion County |
| State and Zip Code: | Oregon, 97310 |

Note:  In the Caption, Defendant 1 and Defendant 2 are designated as "group 1" because apart from potential Attorney Fees, Plaintiff IS NOT asserting money damages against the State or any of its employees/officials as individuals.

Plaintiff has made every effort to engage Governor Kotek directly and had attempted to schedule a meeting with Governor Kotek as early as June 2023 in an effort to avoid the necessity of this lawsuit. (*See*:  Exhibit 100)

9       (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~ REQUEST FOR INJUNCTION

***Appendix I***

Plaintiff IS asserting money damages against the remaining defendants, designated in the caption as "group 2."

10     (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~
                         REQUEST FOR INJUNCTION

*Appendix I*

**Defendant No. 23**

The defendant AH Gresham Park, LLC, is incorporated in the State of Oregon as a Foreign LLC, Oregon Business Registry No. 1756101-96, namely it is registered as a Utah Company, and has its principal place of business in the State of Oregon, at the address below:

| | |
|---|---|
| Name: | AH Gresham Park, LLC, a Foreign Utah Company |
| Street Address: | 6218 N. Concord Ave |
| City and County: | Portland, Multnomah County |
| State and Zip Code: | Oregon, 97217 |
| Telephone No. | (503) 489-5152 |

| | |
|---|---|
| Registered Agent: | Universal Registered Agents |
| Street Address: | 698 12th St. SE, Ste 200 |
| City and County: | Salem, Marion County |
| State and Zip Code: | Oregon, 97301 |

11    (FIRST AMENDED) COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION

*Appendix I*

Defendant No. ~~34~~

    The defendant AH Albion House, LLC is the owner of record of AH Gresham Park , LLC, who is the title holder of Record for Gresham Park Apartments where Plaintiff has resided since well before the property was sold to the current owners. In fact, Plaintiff has lived at Gresham Park Apartments for now three prior owners, each of whom are a poster child for major flaws inherent in Governor Kotek's discriminatory legislation.

    AH Albion House, LLC is actually constituted as a real estate investment fund. *See*: https://www.albion.house/. AH Albion House actually owns and operates properties in multiple States, including Gresham Park Apartments, in Gresham, OR, St. John's Apartments in Vancouver, WA; Pinewood Commons Apartments in Gresham, OR; Garden View Apartments in Vancouver, WA and Wellington Court in Vancouver. In each of the properties mentioned above, on the website for AH Albion House, photographs are prominently displayed and for the most part designate at least one unit marked "Office", and in the case of Gresham Park Apartments, the "office" maintains regular office hours open to the public.

According to their website:

> "Albion House is first and foremost a real estate investment firm that acquires, renovates, and modernizes *outdated* multifamily properties in select markets across the Western United States.
>
> Our broad range of experience in commercial real estate investment management *enables us to give accredited investors a premium risk-adjusted return, while safeguarding principal, by acquiring recession-resistant and inflation-protected real estate assets in investor-friendly partnerships.*"

    In the Motion to Dismiss filed on behalf of AH Albion House, LLC, these defendants argue they are not subject to the provisions of the Fair Housing Act or the Americans With Disabilities Act.

    As provided under Title III of the Americans with Disabilities Act:

- § 36.201: Applies to public accommodations and requires them to remove architectural barriers in existing facilities "where readily achievable." This can include multi-family dwellings with common areas like laundry facilities or swimming pools.
- § 36.401: Deals with new construction and alterations of public accommodations and mandates compliance with specific accessibility standards.

12   (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~
REQUEST FOR INJUNCTION

*Appendix I*

**Under the Fair Housing Act**

- § 3604(f)(3)(B): Prohibits discrimination based on disability in housing, which applies to landlords and includes:

  o   Refusal to rent or sell

  o   Different terms or conditions

  o   Failure to make reasonable modifications

  o   Eviction

Govenor Kotek has apparently concluded that by converting mutli-family properties into an inflation protected asset will somehow benefit the Oregon economy by providng a financial incentive for owners of multi-family properties to build more units. AH Albion House is the perfect example of why that does not work. AH Albion House is a Utah Company and it exists for the sole stated purpose of serving its investors. The prior two owners of Gresham Park Apartments were both Real Estate Investement Trusts based out of Southern California.

Plaintiff reviewed the entire website for AH Albion House. They exist for the sole purpose of making a profit for themselves and their investors. Plaintiff is not able to locate a single mention of tenants, such as any commitment to social responsibility. It does not exist.

AH Albion House exists for the sole purpose of making a profit, and when those profits are accrued and/or distributed, those funds are exported to UTAH. Oregon obtains no practical benefit from the legions of out-of state entities organized for the purpose of aggregating groups of multi-family properties across the State of Oregon, for the sole purpose of exporting Oregon's prosperity to States other than Oregon.

Plaintiff has encountered so many REITS operating in the State of Oregon, that its seems as though this is actually the norm. Most multi-family properties, particularly around Multnomah County, are owned by out-of State entities. Converting every multi-family property in the State of Oregon from a speculative asset into an inflation protected asset will do absolutely nothing to fix Portland's deepening housing crisis.

The defendant AH Albion House, LLC is incorporated under the laws of the State of Utah as a Domestic Limited Liability Company, Utah Business Registry No. 11465326-0160, having its principal place of business in Oregon as shown below. The Utah Secretary of State Business Registry does not show any physical address for AH Albion House, LLC in the State of Utah.

Name:        `        AH Albion House, LLC, a Domestic Utah Company

13   (FIRST AMENDED) COMPLAINT AND COMPLAINT AND REQUEST FOR INJUNCTION

*Appendix I*

| | |
|---|---|
| Street Address: | 6218 N. Concord Avenue |
| City and County: | Portland, Oregon, Multnomah County |
| State and Zip Code: | Oregon, 97217 |
| Telephone No. | (503) 489-5152 |

| | |
|---|---|
| Registered Agent: | Universal Registered Agents |
| Street Address: | 2005 East 2700 South Ste 200 |
| City and County: | Salt Lake City, Salt Lake County |
| State and Zip Code: | Utah, 84109 |

Defendant No. 5

Defendant TMG Property Management Services NW, LLC is incorporated under the laws of the State of Washington, having its principal place of business located in Vancouver, WA.  It operates as a foreign LLC in the State of Oregon, Registry No. 570225-93.

| | |
|---|---|
| Name: | TMG Property Management Services NW, LLC |
| Street Address: | 7710 NE Vancouver Mall Dr. |
| City and County: | Vancouver, Clark County |
| State and Zip Code: | Washington, 98662 |
| Telephone No.: | |

| | |
|---|---|
| Registered Agent: | Carmen Villarma |
| Street Address: | Pacific Corporate Center, 15350 Sequoia Pkwy, #200 |
| City and County: | Portland, Multnomah |
| State and Zip Code: | Oregon, 97224 |
| Telephone No: | |

Defendants AH Gresham Park, LLC and AH Albion House, LLC collectively are the current owners and operators of Gresham Park Apartments, located in Gresham, Oregon, where Plaintiff currently resides.  TMG Property Management Services NW, LLC of Vancouver, WA acts as the day-to-day manager operator of Gresham Park Apartments on behalf of Defendants AH Gresham Park, LLC

14   (FIRST AMENDED) COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION

***Appendix I***

and AH Albion House, LLC. The acts of AH Gresham Park, LLC and AH Albion House, LLC and TMG Property Management Services NW, LLC are indivisible and thus these parties are named as defendants, jointly and severally.

15    (FIRST AMENDED) COMPLAINT AND COMPLAINT AND REQUEST FOR INJUNCTION

*Appendix I*

## II. Basis for Jurisdiction

A. Basis For Jurisdiction based on a Federal Question

I.  Jurisdiction is proper under Article VI, Clause 2 of the United States Constitution, the "Supremacy Clause", which states that:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Federal law is the supreme law of the land and that state laws that conflict with federal laws are invalid.

II.  Jurisdiction is proper under the Fourteenth Amendment of the Constitution of the United States, the Fair Housing Act, 42 U.S.C. §§ 3601-3631 and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213  as well as 29 U. S. C. § 794,

a. Plaintiff has specifically alleged that he continues to suffer illegal discrimination caused by discriminatory legislation that results in violation of Plaintiff's Civil Rights: Rights under  the Americans with Disabilities Act which provides a private right of action irrespective of so called "Soverign Immunity" provided under the Eleventh Amendment to the Constitution of the United States.

i.  28 CFR §35.178 State immunity:  A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this Act. In any action against a State for a violation of the requirements of this Act, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

Plaintiff has specifically alleged that he continues to suffer illegal discrimination that rises to the level of Final Abuse under ORS 124.100, et seq.

The States Eleventh Amendment immunity to suit does not apply to lawsuits brought under ORS 124.110.  The only exceptions are expressly enumerated under ORS

16    (FIRST AMENDED) COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION

***Appendix I***

124.115, and suits against the State are not excluded.  Furthermore, the Statute expressly provides the Courts with the authority to issue the injunctive relief sought by Plaintiff. ~~Federal law is the supreme law of the land and that state laws that conflict with federal laws are invalid.~~

Plaintiff is challenging the validity of SB608[1] (2019) and HB 2001-B[3] (2023) , and Oregon Revised Statutes, (ORS) Chapter 90, *et seq* (2023), including ORS 90.323 (and related provisions[2]) effective January 2023, which provides that rent increases may not be in an amount greater than seven percent (7%) plus the Consumer Price Index for All Urban Consumers, West Region (All Items) as published by the Bureau of Labor Statistics of the United States Department of Labor in September of the previous calendar year, above the existing rent, which for 2023 ~~is~~ was in the range of an eye-watering 14%, or approximately double the COLA increases provided by the Federal Government,  It is not only inherently discriminatory against persons on a fixed income, namely elderly, vulnerable and disabled persons, it is discriminatory in fact.

The Oregon Statute is also invalid because it achieves an opposite result than its stated purpose. In fact, it makes the problem worse.

**Formatted:** Indent: First line:  0.5"

Plaintiff is challenging the validity of HB 2001-B[3], Oregon Revised Statutes Chapter 90., et seq. (2023), including ORS 90.394, ORS 105.115, et seq., ORS 105.137, and Chapter 13, (2023 Laws), Effective March 29th 2023.  ~~It is not only~~Collectively, they are inherently discriminatory against persons on a fixed income, namely elderly, vulnerable and disabled persons~~, it is discriminatory in fact~~.  The Oregon Statute is also invalid because it achieves the exact opposite result than its stated purpose.

~~II.~~III.    Jurisdiction is proper under 28 U.S.C. § 1331, a case arising under Constitutional or federal laws or treaties.  This case presents a ~~federal question~~questions in which the Federal Courts have original jurisdiction.~~,~~ although the court is being asked to exercise its supplemental jurisdiction over certain Oregon laws and statutes related to this matter.

~~III.~~IV.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3), which grants federal district courts jurisdiction over all civil actions arising under the laws of the United States.

17    (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~
REQUEST FOR INJUNCTION

***Appendix I***

IV. **Title VII of Civil Rights Act of 1968 (Fair Housing Act), as amended, 42 U.S.C. § 3601, *et seq.*:**

      i.    Plaintiff alleges violation of his right to **Fair Housing**: this ~~landlord~~ Landlord is treating Plaintiff unfairly in terms of rent, security deposits, or other terms of tenancy;

      ii.    Plaintiff alleges violation of his right to **Equal Housing**:  Plaintiff alleges this landlord is discriminating against Plaintiff on the basis of race, color, religion, national origin, sex, familial status, or disability; and

      iii.    Plaintiff further alleges violation of his right to **Protection from Discrimination** on the basis of disability.

V.    Plaintiff is alleging violation of his rights under the Americans with Disabilities Act, Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* **(ADA):**

      i.    Plaintiff alleges violation of his right to **Equal Access to Housing** on the basis of disability;

    ii.    Plaintiff alleges violation of his rights to **Reasonable Modifications.**

        **a.** The landlord is required to provide Plaintiff with reasonable modifications that allow Plaintiff to use and enjoy his housing; and

      iii.    Plaintiff alleges violation of his rights to **Reasonable Accommodations**.

        a. This landlord is required to make reasonable accommodations that allow Plaintiff to use and enjoy his residence.   This may include making changes to the physical structure of the housing unit, providing assistive devices or services, or ***modifying the policies and procedures*** of the landlord.

18   (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~
REQUEST FOR INJUNCTION

***Appendix I***

VI.    **Basis for Supplemental Jurisdiction:  Oregon Revised Statutes ORS 124.100,** *et seq.***; ORS 125.658(1)(a); ORS 127.535**

ORS 125.658(1)(a) defines **financial abuse** as:

Any act or omission that results in the unlawful or unauthorized control, appropriation, or use of money or property belonging to an older person or person with a disability.

This law applies to the State as well as all landlords, regardless of the size of their rental property. Even if a landlord's rental increase is within the "legal" limits, it may still be considered financial abuse if the increase is excessive or unconscionable. An excessive or unconscionable rental increase is one that is so high that it is unfair or oppressive to the tenant, irrespective of "statutory discrimination" supposedly enabled by discriminatory legislation enacted under State law.

Plaintiff alleges this landlord's rental increase violates ~~Oregon State~~ Federal Law and also violate Oregon State laws regarding financial abuse because it is excessive and unconscionable. In the context of landlord-tenant law, financial abuse occurs when a landlord raises rent to an amount that is unaffordable for the tenant, especially if the tenant is on a fixed income or has a disability. In these cases, the landlord is taking advantage of the tenant's vulnerability and exploiting him for their own financial gain.

Oregon law prohibits landlords from raising rent above certain limits. For example, currently landlords cannot raise rent more than 7% plus the West Coast consumer price index from the previous calendar year, or in the current calendar year, yielding an eye-watering permissible rent increase of ~~13.9~~10% for this calendar year vs. the ~~7.8~~3.1% provided under Federal law for elderly and disabled persons on a fixed income. (Note:  the current rate of inflation as calculated by the Federal Government has returned to pre-covid levels and is hovering in the range of 3%.  Oregon's current discriminatory legislation allows rental increases that are more than 300% more than the current rate of inflation.

Even if a landlord's rental increase is within the legal limits, it can still be considered financial abuse if the increase is excessive or unconscionable. An excessive or unconscionable rental increase is one that is so high that it is unfair or oppressive to the tenant.

~~AND~~
REQUEST FOR INJUNCTION

*Appendix I*

ORS 124.100, *et seq.*, is the Oregon law that defines elder abuse and financial abuse. It also allows victims of elder abuse and financial abuse to bring lawsuits against their abusers. ORS 124.100 defines elder abuse as any act or omission that results in physical or emotional harm, neglect, or financial exploitation of an elder person. An elder person is defined as a person who is 65 years of age or older.

ORS 124.100, *et seq.*, also defines financial abuse as any act or omission that results in the wrongful taking or appropriation of money or property of a vulnerable person. A vulnerable person is defined as an elder person or a person with a disability who is susceptible to force, threat, duress, coercion, persuasion, or physical or emotional injury because of the person's physical or mental impairment.

A landlord who raises the rent of a tenant on a fixed income by 13.9% may be considered to be engaging in financial abuse, even if the increase is within the legal limits provided under State Law. This is because the Plaintiff is not able to afford the increase, which will force Plaintiff to move out, go into debt, or become homeless.

In the present matter, the landlord is attempting to raise ~~your~~ rent beyond cost-of-living increases provided by the federal government to disabled persons on social security, and this action ~~is~~ constitutes illegal discrimination. It creates a preferred "super-class" of investors in multi-family properties and provides them with a guaranteed minimum return on annual rent increases, at the expense of, and with total disregard to, the rights of individuals in a constitutionally protected class, namely the elderly and/or disabled and/or vulnerable persons.

*Appendix I*

**3.8. The Amount in Controversy**

The amount in controversy is more than $75,000.00, not counting interest and costs of court because actual direct damages are in the range of $100,000.00, and Plaintiff is claiming treble damages as provided under Oregon law, which also allows Plaintiff to claims amounts for indirect damages for emotional distress, which are typically 3 times direct damages and when trebled and combined with direct damages suggest Plaintiff is entitled to claim damages in the range of $1,000,000.00 for 2023, although Plaitiff has suffered and continues to suffer additional damages and casualty losses in 2024, without accounting for punitive damages that may be awarded by the court.

.

21    (FIRST AMENDED) COMPLAINT AND COMPLAINT
AND
REQUEST FOR INJUNCTION

*Appendix I*

### III. Statement of Claim

The events described herein principally occurred in Oregon, namely at Gresham Park Apartments, located at 805 NE Kane Dr., Gresham, Oregon 97030, and at every multi-family rental property in the State of Oregon.

a) Tina Kotek in her official capacity as the Governor for the State of Oregon and in her prior role as the Speaker of Oregon's House of Representatives; and The State of Oregon (group 1), hereinafter collectively referred to as "The State".

Plaintiff is challenging the validity of SB608[1] (2019) and HB 2001-B[3] (2023), and Oregon Revised Statutes, (ORS) Chapter 90, *et seq* (2023), including ORS 90.323 (and related provisions[2]), that became effective January 2023, which provides that rent increases may not be in an amount greater than seven percent (7%) plus the Consumer Price Index for All Urban Consumers, West Region (All Items) as published by the Bureau of Labor Statistics of the United States Department of Labor in September of the previous calendar year, above the existing rent, which for 2023 ~~is~~ was in the range of an eye-watering 14%, or approximately double the COLA increases provided by the Federal Government for recipients of Social Security.

Oregon Revised Statutes, (ORS) Chapter 90, *et seq* (2023) represents one of the most misguided and uninformed pieces of legislation of all time. It should be re-captioned "The Landlord Protection Act".

The State of Oregon's new rental "~~control~~stabilization" legislation is precipitating the next major wave of homelessness in the State of Oregon, particularly with respect to the elderly and/or disabled and/or vulnerable persons, who have no ability to generate additional income beyond that provided through Social Security.

Moreover, providing landlords an inflation protected, guaranteed rate of return for multi-family properties (~~at~~through the the ~~genocide~~expense of elderly and/or disabled and/or vulnerable persons)~~; will actually drive~~is driving an entire class of protected persons into housing instability, starvation , and possible death, and at the same time it will have no measurably positive impact on affordable housing. (The main limitation on affordable housing inventory is actually the planning and permitting process used in the tri-county area known as "Metro" which includes Plaintiff's residence).

In Oregon, given the outsized guaranteed rates of return for multi-family housing investments, the Oregon Multi-Family real estate market has become dominated by corporate entities having no

***Appendix I***

connection with the State of Oregon.  In the case of Plaintiff's current residence, since at least as early as 2015, Gresham Park Apartments has been owed by at least two separate California REITS, and is currently owned and controlled by a Utah Company (and managed by another company based in Washington State.  These entities have no interest other than extracting the maximum return for their investors and are utterly devoid of any sort of empathy or compassion for its residents.  Gresham Park Apartments does not have "residents" per se.  Captives and/or prisoners are more accurate descriptions.

There are numerous other issues.  Real estate investments are typically classified as being "speculative" in nature.  ORS Chapter 90, *et seq*. (2023) is ~~believed to be~~ the first legislation in the country to convert the speculative nature of real estate investing into an investment vehicle with a guaranteed minimum rate of return.  It is truly unprecedented.

By way of comparison, the average rate of return for the NASDQ stock exchange for the past 30 years is approximately 10%.  the average rate of return for the S&P 500 for the past 30 years is approximately 9.9 %.  Given the inherent stability of the real estate market, the rate of return is typically much less because the investment is considered lower risk.

After a diligent investigation ~~The~~ the only inflation protected invest vehicle in the domestic market available to the general public are inflation protected T-Bills sold by the US Treasury, which trade a reduced rate of return (around 3%) due to inherent ~~for~~ stability and protection from erosion due to inflation. (The only other contemporary example of inflation protected investments are various crypto-currency products marketed by off-shore crypto-exchanges and have been found to be largely fraudulent.)

Historically, property values rise and fall based on current market conditions.  The discriminatory legislation, hereinafter referred to as "Oregon Formula" provides an inflation protected guaranteed rate of return which can never drop below 7%, and is almost always guaranteed to produce double digit rates of return, and accordingly, when applying the "Oregon Formula" will produce "~~permissible~~legal" annual rental increases that are more than double the COLA increases provided by the Federal Government.

Neither is this a temporary issue.  COLA increases for 2024 have already been announced and are in the range of 3.5%.  For 2024, the "Oregon Formula" is estimated to produce "permissible" rent increases in the range of ~~12.5~~10%.

Both SB 608 (2019) and HB2001-B (2023) ~~are~~ both declare a "housing emergency" as the basis for the new legislation.  The fact is that the greater Portland area, including Multnomah County, have been in a state of a

23    (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~
REQUEST FOR INJUNCTION

**Appendix I**

"declared housing emergency" since at least as early as 2016.  Is the "housing emergency" improving in any measurable way?  No.  The current legislation actually makes the situation worse.

Plaintiff has been actively advocating for the rights of disabled persons on fixed income in the context of the so called "declared housing crisis" having made televised appearances before the Gresham City Council in both 2016 and 2017, the video transcripts of which will be introduced in the course of this proceeding.  Plaintiff has also had frequent contact with various officials for the City of Gresham, including the City Attorney.

Plaintiff reached out to Governor Kotek's Office as early as June 2023 and requested a meeting as early as June 2023 (See Exhibit 100)

After appearing before City Council in 2017, Plaintiff was introduced to Gresham's First Time homebuyer program, which provides downpayment assistance once a participant completes certain financial management classes, paying off any old debts, attends monthly counselling sessions, and pays the requisite enrollment fee of about $150.00.  The program, known as "Welcome Home Gresham" is administered by the City of Gresham using funds received from the Federal Government.  The technical aspects of the program such as training and counselling are provided through the a Multnomah County housing agency (Portland Housing).  This program was characterized as the answer to Plaintiff's housing issues by the State.

Plaintiff completed all the requirements for the Welcome Home Gresham program in 2019.  To date, the market has consistently outpaced the Welcome Home Gresham program, which has a cap limiting the purchase price of the home which has proven to be inadequate in view of Portland's declared housing crisis.  Plaintiff has done everything to secure stable housing and complied with every requirement provided by the State.  As of the date of this pleading, Plaintiff is still waiting for a permenant home.

The following charts, tables and graph are intended to demonstrate just how corrosive the "Oregon Formula" will be over time, if not corrected.

24    (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~

REQUEST FOR INJUNCTION

**Appendix I**

**Social Security Cost-Of-Living Adjustments [42 U.S.C. 415]***

| Year | COLA | | Year | COLA | | Year | COLA |
|------|------|--|------|------|--|------|------|
| 1975 | 8.0  | | 1995 | 2.6  | | 2015 | 0.0  |
| 1976 | 6.4  | | 1996 | 2.9  | | 2016 | 0.3  |
| 1977 | 5.9  | | 1997 | 2.1  | | 2017 | 2.0  |
| 1978 | 6.5  | | 1998 | 1.3  | | 2018 | 2.8  |
| 1979 | 9.9  | | 1999* | 2.5 | | 2019 | 1.6  |
| 1980 | 14.3 | | 2000 | 3.5  | | 2020 | 1.3  |
| 1981 | 11.2 | | 2001 | 2.6  | | 2021 | 5.9  |
| 1982 | 7.4  | | 2002 | 1.4  | | 2022 | 8.7  |
| 1983 | 3.5  | | 2003 | 2.1  | | 2023 | 3.2  |
| 1984 | 3.5  | | 2004 | 2.7  | | | |
| 1985 | 3.1  | | 2005 | 4.1  | | | |
| 1986 | 1.3  | | 2006 | 3.3  | | | |
| 1987 | 4.2  | | 2007 | 2.3  | | | |
| 1988 | 4.0  | | 2008 | 5.8  | | | |
| 1989 | 4.7  | | 2009 | 0.0  | | | |
| 1990 | 5.4  | | 2010 | 0.0  | | | |
| 1991 | 3.7  | | 2011 | 3.6  | | | |
| 1992 | 3.0  | | 2012 | 1.7  | | | |
| 1993 | 2.6  | | 2013 | 1.5  | | | |
| 1994 | 2.8  | | 2014 | 1.7  | | | |

Table 1

Prior to 1975, Social Security COLA increases were determined by a vote of congress.  Since 1975, Social Security COLA increases have **averaged 2.68%**, with zero increases provided in 2009, 2010, and 2015. Recall that the "Oregon Formula" can never fall below a minimum of 7% even if inflation is zero.

*Appendix I*

Table 2 shows the future value of $1,000 after each year for 20 years with a **3% annual compound interest rate.**

| Year | Future Value |
|------|--------------|
| 1 | $1,030.00 |
| 2 | $1,060.90 |
| 3 | $1,092.73 |
| 4 | $1,125.51 |
| 5 | $1,159.27 |
| 6 | $1,194.06 |
| 7 | $1,229.92 |
| 8 | $1,266.89 |
| 9 | $1,304.99 |
| 10 | $1,344.26 |
| 11 | $1,384.73 |
| 12 | $1,426.43 |
| 13 | $1,469.40 |
| 14 | $1,513.66 |
| 15 | $1,559.27 |
| 16 | $1,606.23 |
| 17 | $1,654.58 |
| 18 | $1,704.36 |
| 19 | $1,755.61 |
| 20 | $1,808.34 |

Table 2

In summary, if a person is presently receiving Social Security benefits of $1000.00/mo., using historical data, that benefit should increase to about $1800.00/mo. after a 20-year period, assuming COLA increases in the range of 3%.

26    (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~
REQUEST FOR INJUNCTION

**Appendix I**

Table 3 shows the future value of $1,000 after each year for 20 years with a 14% annual compound interest rate.

| Year | Future Value |
|------|-------------|
| 1 | $1,140.00 |
| 2 | $1,295.60 |
| 3 | $1,469.86 |
| 4 | $1,665.12 |
| 5 | $1,884.40 |
| 6 | $2,131.40 |
| 7 | $2,410.52 |
| 8 | $2,726.67 |
| 9 | $3,085.88 |
| 10 | $3,494.58 |
| 11 | $3,960.34 |
| 12 | $4,491.97 |
| 13 | $5,100.56 |
| 14 | $5,798.21 |
| 15 | $6,598.27 |
| 16 | $7,516.32 |
| 17 | $8,570.23 |
| 18 | $9,780.35 |
| 19 | $11,169.63 |
| 20 | $12,764.81 |

In summary, if a person is presently paying rent of $1000.00/mo., using the "Oregon Formula", that rent should increase to about $12,764.00 after a 20-year period, assuming the "Oregon Formula" increases in the range of 14%. At the same time, a person receiving Social Security over that same 20-year period will would be receiving benefit payments in the range of $1800.00. That is a differential of over $10,000.00 and there is nothing in the Oregon Revised Statutes that addresses the impact this is having on elderly, disabled and/or vulnerable persons that the State has an obligation to protect.

27    (FIRST AMENDED) COMPLAINT AND COMPLAINT
AND
REQUEST FOR INJUNCTION

***Appendix I***



Figure 1

*Appendix I*

**b) AH Gresham Park, LLC,** *et al.*

Plaintiff has been a resident at Gresham Park Apartments through three changes in ownership, passing through about 10 separate Limited Liability Companies spread across three States ~~over four years~~since 2018.

According to the Business Registry maintained by the Secretary of State for the State of Oregon, Plaintiff located the following companies who have owned and or controlled Gresham Park Apartments in the course of Plaintiff's possession and control of Apt 109, Gresham Park Apartments:

| Owner/Operator | Dates | | Entity Type | Notes |
|---|---|---|---|---|
| Gresham Park Apartments, LLC | 2015 | present | Oregon DLLC | **NOT** current owner |
| BLF Holdings, LLC | 2013 | present | Irvine, California DLLC | Manager and only member of above |
| Brian Fritterer Revocable Trust (held for the benefit of Mr. Brian Fritterer; single member and trustee, namely Mr. Fritterer). | 2013 | ongoing | | |
| Gresham Park II, LLC | 2017 | | Oakland, California FLLC | |
| Gresham Park, LLC | 2017 | | Oakland, California FLLC | |
| AH Albion House, LLC | 2020 | | | |
| AH Gresham Park, LLC | 2020 | | **"A Utah Company"** | **NO DBA** |

Plaintiff has ~~not~~ never had a residential lease since he has been in ~~actual~~ legal possession of unit 109B in ~~1989~~2018.  The current owner does not have a key to Plaintiff's unit.   Plaintiff has made several failed attempts to secure a lease over the past several years, principally due to issues regarding

29     (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~
REQUEST FOR INJUNCTION

***Appendix I***

hability, fraudulent charges, owner negligence; on-going safety issues, and failure to accommodate reasonable requests under the American's with Disabilities Act.

Plaintiff selected Gresham Park Apartments based on a few criteria:

1. Cost
2. Ramp leading to entrance (in anticipation of an electric scooter);
3. Ramp access from garage to apartment;
4. Working area on back patio; and
5. Working area in garage.
6. Location on the urban growth boundary. In Multnomah County, Kane Drive defines the urban growth boundary, so the risk of gentrification and rent increases was thought to be minimal. There are no multi-family housing units in Multnomah County beginning at the boundary defined by Kane Dr.

All of the above have been thwarted by the present owners of Gresham Park Apartments.

**i.    Failure to Accommodate**

As of now, Plaintiff has been waiting for a formal accommodation regarding the simple reassignment of a parking space to provide ramp access to Plaintiff's Apartment. That request is now at least four six years old. *(See:* Exhibit 104). After six years, Plaintiff still does not have ramp access to his residence.

Plaintiff received a Notice of Rent *(See:* Exhibit 110 increase dating back to March 2023 and Plaintiff has been trying to engage the landlord regarding Plaintiff's Request for an Accomodation regarding rental assistance. *(See:* Exhibit 102). in a discussion since that time. Defendants are attempting to impose the maximum rental increase permissible under the new law, and after four six years, this landlord now demands for increased increases in rent that have finally exceeded Plaintiff's ability to pay.

Plaintiff requested an adjustment to that increase as an accommodation under the American's with Disabilities Act, which was explicitly refused. According to the current owners of Gresham Park Apartments, they are simply raising the rent "as required under the new law".

The present owners feign ignorance of any of Plaintiff's rights arising under Federal Law, including the Americans with Disabilities Act.

In the course of attempting to resolve this issue, prior to filing this lawsuit Plaintiff has sent multiple requests to TMG Property Management Services NW, LLC and in fact had a video-conference

30    (FIRST AMENDED) COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION

*Appendix I*

with representatives from both the owners of AH Albion House together with representatives of TMG Property Management Services .

*The message from ~~this landlord~~the owner, was "pay up or move out".*

In the course of this video conference it was clear that all the participants comprising the Defendant(s) designated in (group 2) with 2 representatives from AH Albion House, LLC and at least one representative from TMG Management Services NW, LLC, had prepared some sort of "client manual" that included scripts with prepared responces for all the defendants and at one point, the owner's of AH Albion House, LLC referred to the representative from TMG Management Services NW, LLC as their "attorney".

At that meeting, Plaintiff was informed that his prior Request for Accododation regarding parking was RACIST!

Plaintiff was further informed that he had engaged in abuse regarding one of their employees, namely Ms. Genny Soto, when the exact opposite is true. Ms. Soto is the actual abuser in this case, and the fact that Ms. Soto would create a record accusing Plaintiff of abuse is a symptom of a profound mental illness.

All of the Defendant's identified in (group 2) have developed a common script including the following remarks:

    a.  Gresham Park Apartments, LLC does not discriminate and they are required to treat everyone exactly the same, irrespective of disability.

    b.  Gresham Park Apartments, LLC is not responsible for casualty losses of Plaintiff's personal property that were caused by contractors of Gresham Park Apartments, LLC, where property was lost in the course of the contractors work on behalf of the owners of Gresham Park Apartments, LLC.

    c.  Since the filing of Plaintiff's prior complaint, During the first week of 2024 Plaintiff has suffered another massive casualty loss which Plaintiff attributes to negligence on the part of the owners, and damages due to this incident alone will be in the range of an addition $100,000,00.

    d.  With respect to Plaintiff's Request for Accomodation under the American's with Disabilities Act, The Landlord stated that they could not possibly consider Plaintiff's Request for an Accomodation regarding Rent."

        i.  A representative from Gresham Park Apartments, namely Ms Genny Soto literally made the following statements:

31   (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~
REQUEST FOR INJUNCTION

***Appendix I***

1. "What makes you think you are so special"?  That attiude is pervasive among all the Defendants identified in group 2.

2.  Gresham Park Apartments, LLC cannot consider Plaintiff's Request for Accomodation because they treat everyone "exactly the same".

3.  If Plaintiff is not happy with the situation at Gresham Park Apartments, he is free to move,

*Formatted: Font: (Default) Times New Roman, 12 pt*

*Formatted: Indent: Left: 1.75", First line: 0"*

*Formatted: Font: (Default) Times New Roman, 12 pt*

*Formatted: Indent: Left: 0.25", Hanging: 0.25"*

### ii.    Habitability/Access

The common grounds of Gresham Park Apartments have never been maintained in a safe condition, particularly during the winter months.  Plaintiff's residence is located near Multnomah Falls, close to the entry to the Columbia River Gorge.  As such, the winter months can usher in severe weather and snow is quite common in this area.  For example, The the current owners of Gresham Park Apartments make no effort whatsoever to manage snow removal, and there have been at least two years where Plaintiff could not access his vehicle parked in a garage blocked by a chest high snow drift. Plaintiff has been denied access and use of his vehicle for weeks at a time and precisely when the vehicle is needed most urgently.

Over the summer of 2023, Plaintiff's apartment was inspected by the City of Gresham, who cited the landlord for a half dozen violations regarding habitality, which the landlord was required to correct. The bottom line is that Plaintiff's unit has not met community standards regarding habitality for nearly the entire duration of Plaintiff's occupancy.  *(See*: Exhibits 106, 108)., and Plaintiff is entitled to a refund of all sums tendered as rent for an uninhabitable unit dating back to the day Plaintiff became a resident of Gresham Park Apartments, LLC,  Numerous items cited by the City of Gresham remain unresolved to this day.

*Formatted: Font: Italic*

### iii.    Discrimination, Harassment, Retaliation

The management of Gresham Park Apartments has been engaged in a pattern of harassment and retaliation in their attempt to force Plaintiff to move out of Gresham Park Apartments. Since attempting to resolve issues with "The Landlord", Plaintiff has been bombarded with Notices of Eviction for non-payment (of fraudulent charges).  These have been amplified by corresponding "invoices" asserting fraudulent charges measured in the range of several thousand dollars.

*Appendix I*

Plaintiff has received at least ~~four~~ a Notice ~~s~~ of Eviction ~~in the past month alone~~at least once per month since last March. It is not unusual to receive Notices of Eviction for Cause for violation of a non-existent lease in the same month. This is in addition to corresponding "invoices" asserting fraudulent charges measured in the range of several thousand dollars, which Plaintiff receives at the same monthly rate. Plaintiff has accumulated a stack of the above-mentioned notices threating Plaintiff's housing stability, and has literally lost count of the actual number of such notices, the number of which probably exceeds 30, and at this point serve not other purpose other than harassment.

Some examples are included herewith, and are only submitted as examples. (*See e.g.*; Exhibits F2 – F18).

iv.     Fraud and Overcharges:

When TMG Property Management Services NW took over the day-to-day operation of Gresham Park Apartments in 2020, a host of unauthorized fees and charges began to appear and Plaintiff continues to dispute the amounts, some of which are clearly fraudulent (i.e., Plaintiff asserts that Defendants have no right to assert a $150.00 late fee against rental assistance through Medicare.) (charges for utilities literally doubled overnight without justification.)

v.     **(uncompensated) Casualty Claims**

Plaintiff has suffered approximately $30,000.00 in uncompensated casualty claims caused by the various employees and/or contractors of Gresham Park Apartments.

a)   Plaintiff suffered casualty losses from a contractor hired by Gresham Park Apartments to replace decks, and in the process the contractor took Plaintiff's property into their possession and which was never returned.

b)   A roofing contractor was removing asphalt tiles from the garage building while Plaintiff was working in his vehicle. Without looking, the contractor hurled a pile of asphalt tiles from the roof and which landed with some force on the hood of Plaintiff's car. Plaintiff still has not been compensated for damages to his vehicle

~~b)~~c)        ~~c)~~ Plaintiff suffered a massive burgulary as recently as the first week of January 2024. Plaintiff alleges the incident would not have occurred but for the The Landlord's negligence.

vi.     **Modifications**

33     (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~
REQUEST FOR INJUNCTION

***Appendix I***

Over the past four years, Plaintiff has undertaken the costs of architectural modifications necessary in view of Plaintiff's disabilities. In the event Plaintiff is compelled to relocate, plaintiff should be entitled to recover the costs of these modifications which would have to be re-implemented in any new residence. The cost of those modifications is estimated to be in the range of $40,000.00.

## IV. Irreparable Injury

Plaintiff is at immediate risk of irreparable Injury because this Landlord has issued multiple Notice of Eviction for Non-Payment of rent. These Notices of Eviction are nothing more than acts of intimidation and harassment, but fundamentally, it has raised Plaintiff's level of concern to the point of contacting adult protective services because the current situation is unsafe and untenable.

Plaintiff is at immediate risk of homelessness.

Plaintiff has now been expressly informed by two Oregon government agencies that individuals in Plaintiff's situation are being advised to move to another State. Plaintiff currently lacks to funds or physical ability to relocate anywhere and should not have to.

The current Oregon Landlord Tenant Law is precipitating a mass migration of a protected class out of the State of Oregon.

34    (FIRST AMENDED) COMPLAINT AND COMPLAINT
AND
REQUEST FOR INJUNCTION

*Appendix I*

## V. Relief

**With respect to the Defendants identified in (group 1) ("The State")**

a. i. Oregon SB 608 (2019) as implemented in Oregon's Landlord Tenant Act is unconstitutional and Plaintiff is seeking injunctive relief from its further implementation because it conflicts with Federal Law. Plaintiff is asking the court to ultimately declare SB 608 as invalid.

a. It achieves the exact opposite result than its stated purpose. In fact, it will have the net effect of making the housing problem much worse.

b. Oregon HB 2001 (2023) as implemented in Oregon's Landlord Tenant Act is unconstitutional and Plaintiff is seeking injunctive relief from its further implementation because it conflicts with Federal Law. Plaintiff is asking the court to ultimately declare HB 2001 as invalid.

b. **With respect to the Defendants in (group 2) ("The Landlord")**,

c. Even if SB 608 and/or SB 2001 is were valid, Plaintiff is seeking injunctive relief against the current owners of Gresham Park Apartments from imposing rent increases in excess of COLA increases allowed under Federal Law.

d. Plaintiff is seeking monetary damages in the amount of $1.2 1.3 million dollars in financial damages as outlined above.

e. Plaintiff is seeking actual damages from the owners of Gresham Park Apartments in the amount of not less than $100 200,000.00 which Plaintiff is entitled to treble under Oregon Law. These actual damages include amounts paid for an uninhabitable unit now for at least four six years. Plaintiff is entitled to claim non-economic damages in the amount of not less than $300 400,000.00 which when combined with direct damages and trebled, Plaintiff is entitled to a minimum of 1.2 3 million dollars under Oregon law. Plaintiff also spent about $20,000.00 simply to move into Gresham Park Apartments, and is now faced with another round of re-location expenses.

f. Plaintiff has invested tens of thousands of dollars in architectural improvements required to adapt Plaintiff's residence to accommodate his disability. These improvement range from conventional modifications to Plaintiff's bathroom, including the shower; installation of an air quality control system including dust removal and air filtration, and installation of a back-up power and heat system due to the fact that Plaintiff cannot tolerate temperature extremes and an extended power failure could be fatal; Plaintiff has has had a Medical Certificate on file with PG&E since 2016, and Plaintiiff does receive priority in certain circumstances.

35    (FIRST AMENDED) COMPLAINT AND COMPLAINT AND
REQUEST FOR INJUNCTION

*Appendix I*

e.a. Simply moving as suggested by the Landlord is not possible without the loss of these substantial expenses.  Plaintiff is entrenched in his current residence until this issue is resolved.

g.   Plaintiff is entitled to claim actual and non-economic damages due to casualty losses inflicted on Plaintiff, by contractors of Defendant(s), estimated to be in the range of $30,000.00.

f.h. Plaintiff is entitled to recover amounts due to casualty loss due to The Landlords negligence, which occurred since the filing of Plaintiff's prior complaint.  These losses are estimated to be in the range of $100,000.00.

**Formatted**

36    (FIRST AMENDED) COMPLAINT AND ~~COMPLAINT AND~~ REQUEST FOR INJUNCTION

*Appendix I*

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an inproper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if so identified, will likely have evidentiary support after a reasonable investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in dismissal of my case.

Dater of signing: ~~10~~01/~~2329~~/~~2023~~2024

Signature of Plaintiff:

Printed Name of Plaintiff: James E. Jacobson, Jr.

*Appendix I*

FOOTNOTES

1.  https://olis.oregonlegislature.gov/liz/2019R1/Measures/Overview/SB608
2.  ORS 90.100, 90.220, *90.323*, 90.427, 90.600, 90.643, 90.675, and 105.124
3.  https://olis.oregonlegislature.gov/liz/2023R1/Measures/Overview/HB2001

38    (FIRST AMENDED) COMPLAINT AND COMPLAINT
                                        AND
                      REQUEST FOR INJUNCTION

*Appendix I*