FILED 19 APR '24 13:47 USDC-ORP

True copy _____

# United States District Court

## For the

## District of Oregon

## Portland Division

|  |  |
|---|---|
| James E. Jacobson, Jr. <br> Plaintiff <br><br> -vs- <br><br> The State of Oregon; Tina Kotek in her capacity as the Governor of the State of Oregon and in her prior capacity as Speaker of the Oregon House of Representatives (group 1); and, AH Gresham Park, LLC, a foreign LLC, registered in Oregon as a Utah Company; AH Albion House, LLC, A domestic Utah Company; The Management Group, a Washington Company, and TMG Property Management Services NW, LLC, a foreign LLC, registered in Oregon as a Washington State Company, jointly and severally (group 2) <br> Defendant(s) | **Case No. 3:23-CV-01551-HZ** <br><br> Second Amended Complaint for an Injunction and Money Damages for Discrimination and Violation of Civil Rights, including rights protected under the Fifth, Fourteenth Amendment to the Constitution of the United States;  the Fair Housing Act, 42 U.S.C. § 3601, *et seq*.: The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; Financial Abuse of An Elderly or Disabled Person, ORS 124.100, *et seq.*; Discrimination against a disabled person in violation of § 504 of the Rehabilitation Act of 1973, 87 Stat. 394, as amended, 29 U. S. C. § 794., for violation of ORS Chapter 90., *et seq.*, Misrepresentation, Retaliation,  Fraud and Negligence <br><br> **DEMAND FOR JURY TRIAL** <br><br> **CLAIM FOR MONEY DAMAGES OF NOT LESS THAN $6 MILLION DOLLARS FOR DEFENDANTS (group 2)** |

## COMPLAINT AND REQUEST FOR INJUNCTION

## SHORT SUMMARY OF CHANGES IN PLAINTIFF'S
## (SECOND) AMENDED COMPLAINT

1. Plaintiff's (Second) Amended Complaint is submitted principally to add The Management Group, Inc, a Washington Company in which Plaintiff only recently became aware that they were an indispensable party . Thus, the adding of the Management Group, Inc. is compulsory pursuant to FRCP Rule 19.

2. Plaintiff's (Second)) Amended Complaint is submitted as a Reply to the Motion(s) to Dismiss under FRCP 12(b)(6) filed by the State of Oregon, *et al.* (group 1) to the extent it can be understood, but it is ultimately moot in view of Plaintiff's (Second) Amended Complaint. Plaintiff filed a Motion for a More Definite Statement on or about 04/10/2024 which was denied because a Motion to Dismiss is not a responsive pleading. It is challenging to identify a single correct fact or statement of law in that entire document. A general statement, Plaintiff disputes the entire pleading as incorrect and inaccurate, and does nothing to advance this matter.

3. Defendants AH Albion House, LLC and AH Gresham Park, LLC (group 2) filed a Motion to Dismiss on or about 04/08/2024 or about three months after the filing date of Plaintiff's (First) Amended Complaint. It is as moot as it is untimely, and other issues are addressed in a separate pleading.

4. Plaintiff's (Second) Amended Complaint is submitted as a Matter of Course as provided in FRCP 15(1)(B). To date, no Responsive Pleading has been filed by any party. Any amendments submitted herewith are submitted for the purposes of clarification and should not be construed as an admission to any of the issues raised in the respective Defendant(s) Motion(s) to Dismiss under FRCP 12(b)(6).

5. Plaintiff's (second) Amended Complaint "relates back" to Plaintiff's (first) amended Complaint under FRCP Rule 15C (2).

6. 6. Plaintiff's (Second) Amend Complaint includes changes to the caption to add "The Management Company, Inc., a Washington Company as an indispensable party; corrects numerous typographical errors; adjusts the amount of claimed damages, and includes a new introduction. The Management Group, Inc, a Washington Company is the parent company of TMG Property Management Services NW, LLC who was added in Plaintiff's (first amended) Complaint. They have now been named Defendant because Plaintiff has determined that they are an essential party by their own admission. Joinder is compulsory pursuant to FRCP Rule 19.

7. Defendants AH Albion House, LLC and AH Gresham Park, LLC, are the alleged "owners of Gresham Park Apartments. Defendants AH Albion House, LLC and AH Gresham Park, LLC have not filed an answer since this matter was commenced in November 2023. TMG Property Management Services NW, LLC has not filed an answer since this matter was commenced in November 2023. The State of Oregon, et al. has not filed an answer since this matter was commenced in November 2023.

8. The Plaintiff has added an introduction to assist the reader in properly framing this matter.

9. The Exhibits and the Numbering of Exhibits submitted with Plaintiff's (first) Amended Complaint have not been changed.

10. Any perceived delay in filing Plaintiff's (second) Amended complaint is due to Plaintiff's misplaced reliance on an alleged stipulation with by an adverse party with opposing counsel who has since withdrawn from this case.

## INTRODUCTION

The Plaintiff in Case No. 3:23-cv-01551-HZ alleges violations distinct from typical landlord/tenant disputes, categorizing the matter as abuse of a vulnerable person in the course of engaging in discrimination under the Fair Housing Act and the Americans with Disabilities Act. The Plaintiff asserts that he is an immediate danger to his personal safety and property, necessitating urgent legal intervention.

The Plaintiff became a resident of Gresham Park Apartments in 2019. Since then, the property has changed ownership three times

The Plaintiff's claims are based on alleged violations of the Due Process and Equal Protection clauses of the Fourteenth Amendment of the U.S. Constitution, Fifth Amendment of the U.S. Constitution, violation of basic fundamental rights as well as violation of federal civil rights laws and state statutes pertaining to elder and disability abuse, which have severely impacted Plaintiff's financial stability and living conditions.

Plaintiff has suffered incidents of home invasion, other property loss due to acts of contractors working on the property, and is constantly bombarded with invoices based on pure fantasy.

The Plaintiff has endured incidents of home invasion and property loss attributed to acts by contractors employed at the property. Furthermore, Defendants are continually issuing invoices that the Plaintiff claims are baseless."

Plaintiff has been subject to collateral attacks in state court that are utterly without merit. On more two occasions, Plaintiff has found notices taped to his door after 11:00 pm on a Friday evening. Plaintiff has a legitimate fear for his personal safety to the point

of contacting Adult Protective Services and installing video surveillance cameras around the perimeter of his residence. This landlord is engaging in financial abuse, resorting to retaliatory, strong-arm tactics to extort sums of money Plaintiff does not owe.

In Case No. 3:23-cv-01551-HZ, the Plaintiff, a 68-year-old disabled individual residing alone in rural Gresham, Oregon, alleges, among other things, violations of civil rights under the Due Process and Equal Protection Clauses of the 14th Amendment to the United States Constitution and the Americans with Disabilities Act. Moreover, these Defendant(s) don't have tenants. They have prisoners. These Defendants are routinely trampling on Plaintiff's fundamental rights, such as the right to be left alone; and the right to be free of abuse and harassment, all while acting as "arms of the state"

The Plaintiff asserts that the defendants have engaged in ongoing financial and emotional elder abuse, using Oregon's landlord-tenant laws as a shield against liability.

For instance, the Plaintiff has received over 17 unfounded Notices of Eviction, which falsely allege non-payment of rent, violations of the provisions of a non-existent lease, endangerment to the community, among other accusations.

Defendants (group 2) are asserting a purported lease which is not authentic. Plaintiff has been repeatedly verbally assaulted by employees of defendants (group 2) and the owners directly in which Plaintiff has been called derogatory names and accused of being a racist and Defendants (s)went so far as to accuse Plaintiff of abusing one of their employees when the opposite was true. Since hanging up on that conversation, that was the last direct contact with any of the Defendant(s). The person involved in this incident actually assaulted Plaintiff. This is known as projection and is usually a symptom of a profound psychological issue.

The Plaintiff has consistently paid rent every month without fail for the past five years, up to and including the current date

For the past year, Plaintiff has been depositing rent payments in the form of bank drafts at the Rental Payment drop box at the front office.  Plaintiff only recently discovered that Defendants (group 2) have not been depositing those payments since last January in order to precipitate (another) unfounded FED action, and extort sums of money Plaintiff does not owe.

The Defendants have consistently failed to maintain the property in a condition that could be considered habitable throughout nearly the entire duration of the Plaintiff's residence and the owners have been cited by the City of Gresham for code violations regarding habitability multiple times in the past year.

Since moving into Gresham Park Apartments about five years ago, Plaintiff has had two electrical fires due to faulty wiring and circuit breakers (PGE disabled the power to Plaintiff's unit for three days on one occasion because they could not contact the owner; the Gresham Fire Department has responded to at least one incident wherein the toilet from the floor above nearly crashed through the ceiling and water damage was extensive; and when one of the units upstairs flushes their toilet, the effluent backflows into Plaintiff's dishwasher and occasionally flows on to the floor.

More importantly, Plaintiff has suffered documented casualty losses in not less than 4 incidents involving home invasion or theft of property, for which Plaintiff's assert that Defendant's are responsible.  The most recent incident occurred the first week of 2024 in which Plaintiff's garage was broken into and without accounting for damage to the body of Plaintiff's automobile, physical property valued at over $1.2 Million was

taken. This occurred at the same time the owners/operators were attaching a TOWING WARNING outside Plaintiff's Garage. That incident would not have occurred but for the negligence of Defendants (group 2).

The common areas have never been maintained in a safe condition. Areas that are supposed to have security lighting have fixtures with bulbs that have been burned out for six-months. The lighting in the area proximate the hallway and front door of Plaintiff's residence was installed by Plaintiff himself, after the owners ignored the issue for years.

The dumpsters used in the common areas for trash have an improvised metal bar welded to the hinge such that the lid can only be opened a few inches and is utterly inoperable by a disabled person.

During extreme weather events, the owners/operators of Gresham Park Apartments fail to clear ice and snow from sidewalks and other areas. Most recently, the Plaintiff was trapped at home for over five days due to a snow drift that blocked the garage.

The Defendants (group 2) have refused to honor their purported ADA policy after the Plaintiff sent a formal ADA accommodation request to the owners/operators of Gresham Park Apartments., with a simple request to reassign Plaintiff's parking spot from spot 23 to spot 25 because spot 25 is the only spot that has wheelchair access from the parking lot to the ramp built into the sidewalk in front of Plaintiff's residence. This request has been ignored for years.

The above list is by no means exhaustive.

7    (SECOND AMENDED) COMPLAINT AND
REQUEST FOR INJUNCTION)

The Plaintiff met with the owners/operators of Gresham Park Apartments in an attempt to resolve the issues amicably prior to initiating this lawsuit, and specifically requested an Accommodation Under the ADA with respect to rental increases, specifically requesting that the landlord adjust their proposed rental increases to be in-line with the annual COLA provided by Social Security. It was their response that prompted this lawsuit.

Several comments by Defendants (group 2) are notable:

(1) "We have to treat everyone exactly the same" (text book example of discrimination in the context of refusing to consider a request for an accommodation, resulting in failure to accommodate and discrimination through disparate impact).

(2) "What makes you think you are so special" (again, in the context of refusing to consider a request for an accommodation).

(3) With respect to Oregon's new Landlord Tenant Law, the owner's comment was *"we are only doing what the law requires us to do"*. (Arms of the State)

(4) Finally, "pay up or move out old man" is self-explanatory.

While the above represents a gross misrepresentation of the law by Defendant's, it is not hard to imagine those conversations are being repeated across the entire state of Oregon, where landlords are raising rents beyond all reason, and proclaim "the law requires them to do so".

The owners/operators of Gresham Park Apartments simply do not want disabled persons on a fixed income living at this property, and they are using Oregon's new

(SECOND AMENDED) COMPLAINT AND REQUEST FOR INJUNCTION)

landlord/ tenant law is the perfect vehicle to eliminate those unwanted tenants. It is de-facto discriminatory.

By way of personal observation, every other disabled and/or elderly occupant of this property has already moved out rather than deal with the abusive environment.

Plaintiff has no particular goal of remaining a resident of Gresham Park Apartments, but presently lacks the means to move. Furthermore, Plaintiff is likely to encounter the same problem with any multi-family rental property in the State of Oregon, due to Oregon's new landlord/tenant law, which results in de-facto discrimination against disabled individuals facilitated by State and Landlord practices.

The plaintiff alleges violations of his civil rights under several amendments of the U.S. Constitution, the Fair Housing Act, and the Americans with Disabilities Act, claiming discrimination based on disability as defined under the latter. Allegations extend to financial and emotional abuse under Oregon's Elder Abuse Statute, with the defendants purportedly exploiting new landlord-tenant laws to avoid liability. Oregon's new Landlord Tenant Act is the simply the vehicle that promotes that abuse.

Plaintiff made every effort to avoid the need for this action. It was filed after attempting to resolve issues with the owners and/or management company of this multi-family complex since last March, both informally and through at least one other action in State Court in which the same party is in default. That matter was stayed at my request in lieu of this matter, and Plaintiff, now in hindsight, can show a pattern of behavior that has persisted for over a year.

This is a case of first impression. The outcome of this matter has the potential of affecting every citizen and the overall economy in the State of Oregon, and likely every

other State in the United States. Oregon is the first State in the Country to enact state wide Rental Stabilization "limits", but unfortunately the so called "limits" are at unsustainable levels considered outrageous just a few years ago and still are considered outrageous nationally.

In Plaintiff's opinion, there is no question the new landlord-tenant law is unconstitutional and Oregon's current Governor is pursuing an agenda that results in legislation that intentionally discriminates against individuals like Plaintiff. It is a bad law based on a false premise.

In 2019, in her role a member of Oregon's House of authored/sponsored SB608 (2019). She then advanced that Bill Speaker of the House. That was followed by HB 2001, the culmination of which is the new Oregon Landlord Tenant Act.

That law declares a "State of Emergency" in housing and then goes on to enact legislation that is guaranteed to make things worse, fails to address the actual issue, and bears a caption that suggests the exact opposite of what the legislation achieves.

The legislation includes provisions that effectively divert an ever-increasing portion of the Plaintiff's Federal Social Security Benefits. (which is currently Plaintiff's only source of income) and diminishes benefits received through Medicare and Medicaid., and transfers that to a "super class" identified as owners of Oregon multi-family rental properties, which are largely out-of-state investment interests (REITS), such as in this case. The problem worsens on a compound basis. The Governor's formula for rental increases guarantees the extinction of an entire class of citizens within just a few years, while the windfall from those increases is being distributed to investors outside the State of Oregon.

Oregon's new landlord/tenant legislation authorizes, encourages and facilitates private actions by multi-family property owners against tenants that violate The U.S. Constitution.  There is sufficient entanglement between the two that neither could exist without the other.

Between March of 2023 to March of 2024, the new landlord-tenant law, has authorized rental increases in excess of 24 %, when the current rate of inflation is around 3 %.  The Governor's formula for "rental stabilization" produces numbers that are approaching 10 times the current rate of inflation, and about 10 times the target for inflation established and regulated by the Federal Reserve Board.

Oregon's new landlord/tenant law effectively converts what is otherwise a speculative or risky asset and converts it to an inflation protected investment with a guaranteed minimum rate of return.  That is exclusively the providence of the Federal Government.

## 1. The Parties to This Complaint

### A. The Plaintiff

| | |
|---|---|
| Name: | James E. Jacobson, Jr. |
| Street Address: | 805 NE Kane Dr., Apt 109B |
| City and County: | Gresham, Multnomah County |
| State and Zip Code: | Oregon, 97030 |
| Telephone No. | (503) 740-0676 |
| E-mail Address | jim.jacobson@live.com |

Plaintiff is a person having one or more qualified disabilities. Plaintiff is in a "protected class" protected against discrimination under State and Federal Law. Plaintiff exists on Social Security Disability as his sole source of income with his SSD application dating back to 2004. Plaintiff is currently a disabled person on Social Security because SSD is automatically converted at age 65. Plaintiff is currently 68 years old.

Plaintiff is a disabled person within the meaning of the Americans with Disabilities Act; is within a defined "protected class"; and covered by the anti-discrimination protections proscribed under the Fair Housing Act, and as a "vulnerable person" within the meaning of ORS 124.100.

In any case, any increases in Plaintiff's income are exclusively determined by the annual Social Security COLA increases calculated by the Federal Government which calculates its COLA increases based on the Consumer Price Index for the third fiscal quarter (only) excluding inflation due to energy and housing. In the 2023 COLA increases for disabled Social Security recipients were limited to approximately 7.8 %, which was one of the highest annual increases on record. In the State of Oregon, in most cases, Oregon landlords were permitted rental increases in the range of 14.6%

For 2024, Social Security COLA increases are 3.1%, while Oregon Landlords are purportedly permitted rent increases as high as 10%. In other words, over the course of a few years, Oregon's discriminatory legislation implemented under ORS Chapter 90, as

(SECOND AMENDED) COMPLAINT AND
REQUEST FOR INJUNCTION)

revised, have demonstrated that the State's formula for so called "rent" stabilization will always produce a result that, at least as a matter of Oregon's current implementation of ORS Chapter 90, will always be more than double the COLA increases provided under Federal law.  As measured from the 12-month period for March 2023 to March 2024, Oregon landlords were permitted a whopping rental increase in excess of 24%

Oregon will in fact achieve some degree of "rent" stabilization by simply wiping an entire protected class off the map.  The continued implementation of this legislation, as demonstrated further below, results in an illegal "disparate impact" resulting in illegal discrimination against Plaintiff and similarly situated individuals.  It is truly unconscionable.

With respect to the amounts Social Security received by Plaintiff, in a prior pleading, the State has taken the position essentially stating that "poverty" is not a recognized disability.  While that sounds good, it is also irrelevant.  Plaintiff is not claiming "poverty" as a disability.

For the record, and for the purposes of analysis, at the time Plaintiff was forced into retirement due to medical reasons, he had already contributed the lifetime maximum required under the laws of the United States.  Consequently, Plaintiff is supposed to be receiving monthly payments at the absolute maximum permissible under the Social Security laws of the United States.

Plaintiff's monthly budget is "Zero Sum Gain" which means that a dollar allocated for one purpose can only be spent by taking that dollar out of a fixed sum, and so it cannot be allocated for any other purpose.  Plaintiff has no ability to increase that fixed sum, so that the State's discriminatory legislation operates as a direct tax on Plaintiff's Federal Benefits that increase at annual rate that is so high, it will consume Plaintiff's entire income in just a few years.

Plaintiff's income is calculated on the basis of Plaintiff's lifetime contributions into the program and Plaintiff's income just prior to a finding of disability.  Disability status merely provides income.  Plaintiff is not claiming the Fixed Income provided by the Federal Government is the cause of Plaintiff's disabilities(s).

Again, for the purposes of analysis, Plaintiff receives benefits not only under Social Security.  Plaintiff receives health insurance benefits, in part, through Federally Funded Medicare; Plaintiff also receives Medicaid from the State of Oregon on the basis of disability and *employment* status.  While administered by the State, funding is provided by the Federal Government.  Plaintiff's on-going employment status is funded by a program administered by the State of Oregon, with Funds provided by the Federal Government.

Defendants (group 2) regularly receive funds from the Federal Government through various rent subsidies, eviction protection programs, a so on, all of which are funded by grants from the Federal Government.

Plaintiff continues to suffer severe mobility limitations, including irregular occurrences of "periodic paralysis" that usually occur a few days a month.   Plaintiff is unable to pack or move anything.  If Plaintiff relocates, that can only be accomplished with the assistance of professional movers.  In view of recent events, it is clear that Plaintiff's current living situation is increasingly hostile and untenable, if not outright dangerous.

Plaintiff's personal financial resources are already strained due to   continuous erosion of a fixed income that has not kept pace with inflation.  The State may not have an obligation to provide Plaintiff with stable housing, but they absolutely have an obligation not to make the situation worse and the danger of Plaintiff being driven into a state of homelessness due to the State Discriminatory legislation is not speculative.

In view of on-going harassment and less than accommodating acts by the owners/operators of Gresham Park Apartments, Plaintiff would rather not continue to reside at Gresham Park Apartments due to on-going concerns regarding Plaintiff's personal safety and on-going attacks on his property  However, due to physical and financial limitations, Plaintiff is trapped in his current living situation until he is not.

**11. The Defendants(s)**

a.) Governor Tina Kotek is named as a Defendant in her official capacity as the Governor for the State of Oregon and in her prior role as Speaker of the House, because she is uniquely responsible for the discriminatory legislation which is the subject matter of this (second) Amended Complaint. As far as Plaintiff can determine after a diligent investigation (with the help of the State Law Librarian), the initial concepts behind Oregon's Statewide Landlord Protection Act, now implemented in ORS Chapter 90, were first introduced by SB608 introduced in late 2019, and according to the legislative history SB608, one of the principal authors and sponsors of HB 608 was then Representative Tina Kotek. Ms. Kotek also advanced SB608 through the floor and on to the Senate in her role as Speaker of The House. SB608 then evolved into SB1001, which, combined with SB608is now the basis for the discriminatory legislation complained of herein,

b.) Since first introducing, SB608, Ms. Kotek was successfully elected to the Governor's office and so by her signature, Ms. Kotek was able to sign her own bill into law. Plaintiff was not aware that a single person could act as a member of the legislative branch, and the sign her own work product into law as the representative of the executive branch.

b.) If Ms. Kotek were a member of the Oregon State Bar, a case could be made that Ms. Kotek should have had an obligation to avoid the appearance of a conflict.

c) However, Ms. Kotek may be an accomplished legislator or administrator, but she is not a lawyer, she is not an economist, and she apparently is lacking in math skills. According to her own bio, Ms. Kotek has an undergraduate degree in religious studies. She also has an advanced degree in religious studies and international studies.

d.) There is nothing in Ms. Kotek's academic background that suggests she is even remotely qualified to understand the economic impact of her discriminatory legislation. It is also clear that Governor Kotek has no intention of implementing any actions to correct the discriminatory aspects of her legislation, based on her disclosure of her agenda for the upcoming Legislative Session beginning in February 2024.Presumably, Ms. Kotek is at least skilled enough to solicit comments from experts, and provide ample time for public comment. This did not occur. Plaintiff repeatedly attempted to engage any of the government representatives listed as having an association with this legislation, without success, because there was effectively no legislative session in 2023, due to the republican walkout over gun control. In 2022 – 2023, government offices were closed due to covid.

There may have been some limited public interaction over zoom calls, but Plaintiff was not invited. Opportunity for public comment does not appear in the legislative history.

Finally, Governor Kotek is listed as a party in this case because she alone has the authority to correct the discriminatory legislation described in this complaint. Governor Kotek has the power to suspend the discriminatory legislation through a simple executive order. Less restrictive means for achieving the Government's objectives should be obvious. Plaintiff could fix this legislation with one sentence. Governor Kotek is presumably aware of the issue and does not even acknowledge it. In fact, she has refused to discuss it.

**Defendant No. 1**

| | |
|---|---|
| Name: | Tina Kotek, in her official capacity as the Governor of the State of Oregon, and in her prior capacity as Speaker of the Oregon House of Representatives |
| Title: | Governor |
| Street Address: | The Office of the Governor |
| | 900 Court Street, Suite 254 |
| City and County: | Salem, Marion County |
| State and Zip-Code | Oregon, 97301-4047 |

**Defendant No. 2**

| | |
|---|---|
| Name: | The State of Oregon |
| Title: | Attorney General for the State of Oregon |
| Street Address: | 100 Justice Building |
| City and County: | Salem, Marion County |
| State and Zip Code: | Oregon, 97310 |

Note:  In the caption, Defendant 1 and Defendant 2 are designated as "group 1" and "group 2", respectively, because apart from potential Attorney Fees, Plaintiff IS NOT asserting money damages against the State or any of its employees/officials as individuals.

Plaintiff has made every effort to engage Governor Kotek directly and had attempted to schedule a meeting with Governor Kotek as early as June 2023 in an effort to avoid the necessity of this lawsuit.  (*See*:  Exhibit 100)

Plaintiff IS asserting money damages against the remaining defendants, designated in the caption as "group 2."

**Defendant No. 3**

The defendant AH Gresham Park, LLC, is incorporated in the State of Oregon as a Foreign LLC, Oregon Business Registry No. 1756101-96, namely it is registered as a Utah Company, and has its principal place of business in the State of Oregon, at the address below:

| | |
|---|---|
| Name: | AH Gresham Park, LLC, a Foreign Utah Company |
| Street Address: | 6218 N. Concord Ave |
| City and County: | Portland, Multnomah County |
| State and Zip Code: | Oregon, 97217 |
| Telephone No. | (503) 489-5152 |
| | |
| Registered Agent: | Universal Registered Agents |
| Street Address: | 698 12th St. SE, Ste 200 |
| City and County: | Salem, Marion County |
| State and Zip Code: | Oregon, 97301 |

**Defendant No. 4**

The defendant AH Albion House, LLC is the owner of record of AH Gresham Park , LLC, who is the title holder of Record for Gresham Park Apartments where Plaintiff has resided since well before the property was sold to the current owners, whom are a poster child for major flaws inherent in Governor Kotek's discriminatory legislation.

AH Albion House, LLC is actually constituted as a real estate investment fund. *See*: https://www.albion.house/. AH Albion House actually owns and operates properties in multiple States, including Gresham Park Apartments, in Gresham, OR, St. John's Apartments in Vancouver, WA; Pinewood Commons Apartments in Gresham, OR; Garden View Apartments in Vancouver, WA and Wellington Court in Vancouver. In each of the properties mentioned above, on the website for AH Albion House, photographs are prominently displayed and for the most part designate at least one unit marked "Office", and in the case of Gresham Park Apartments, the "office" maintains regular office hours open to the public.

**According to their website:**

> "Albion House is first and foremost a real estate investment firm that acquires, renovates, and modernizes *outdated* multifamily properties in select markets across the Western United States.
>
> Our broad range of experience in commercial real estate investment management *enables us to give accredited investors a premium risk-adjusted return, while safeguarding principal, by acquiring recession-resistant and inflation-protected real estate assets in investor-friendly partnerships.* "

In the Motion to Dismiss filed on behalf of AH Albion House, LLC, these defendants argue they are not subject to the provisions of the Fair Housing Act or the Americans with Disabilities Act.

As provided under Title III of the Americans with Disabilities Act:

- § 36.201: Applies to public accommodations and requires them to remove architectural barriers in existing facilities "where readily achievable." This can

include multi-family dwellings with common areas like laundry facilities or swimming pools.

- § 36.401: Deals with new construction and alterations of public accommodations and mandates compliance with specific accessibility standards.

**Under the Fair Housing Act**

- § 3604(f)(3)(B): Prohibits discrimination based on disability in housing, which applies to landlords and includes:
    - Refusal to rent or sell
    - Different terms or conditions
    - Failure to make reasonable modifications
    - Eviction

Governor Kotek has apparently concluded that by converting mule-family properties into an inflation protected asset will somehow benefit the Oregon economy by providing a financial incentive for owners of multi-family properties to build more units. AH Albion House is the perfect example of why that does not work. AH Albion House is a Utah Company and it exists for the sole stated purpose of serving its investors. The prior two owners of Gresham Park Apartments were both Real Estate Investment Trusts based out of Southern California.

Plaintiff reviewed the entire website for AH Albion House. They exist for the sole purpose of making a profit for themselves and their investors. Plaintiff is not able to locate a single mention of tenants, such as any commitment to social responsibility. It does not exist.

AH Albion House exists for the sole purpose of making a profit, and when those profits are accrued and/or distributed, those funds are exported to UTAH. Oregon obtains no practical benefit from the legions of out of state entities organized for the purpose of aggregating groups of multi-family properties across the State of Oregon, for the sole purpose of exporting Oregon's prosperity to States other than Oregon.

Plaintiff has encountered so many REITS operating in the State of Oregon, that it seems as though this is actually the norm. Most multi-family properties, particularly around Multnomah County, are owned by out of State entities. Converting every multi-

family property in the State of Oregon from a speculative asset into an inflation protected asset will do absolutely nothing to fix Portland's deepening housing crisis.

The defendant AH Albion House, LLC is incorporated under the laws of the State of Utah as a Domestic Limited Liability Company, Utah Business Registry No. 11465326-0160, having its principal place of business in Oregon as shown below.   The Utah Secretary of State Business Registry does not show any physical address for AH Albion House, LLC in the State of Utah.

| | |
|---|---|
| Name: | AH Albion House, LLC, a Domestic Utah Company |
| Street Address: | 6218 N. Concord Avenue |
| City and County: | Portland, Oregon, Multnomah County |
| State and Zip Code: | Oregon, 97217 |
| Telephone No. | (503) 489-5152 |
| | |
| Registered Agent: | Universal Registered Agents |
| Street Address: | 2005 East 2700 South Ste 200 |
| City and County: | Salt Lake City, Salt Lake County |
| State and Zip Code: | Utah, 84109 |

**Defendant No. 5**

Defendant TMG Property Management Services NW, LLC is incorporated under the laws of the State of Washington, having its principal place of business located in Portland, OR.  It operates as a foreign LLC in the State of Oregon, Registry No. 570225-93.

| | |
|---|---|
| Name: | TMG Property Management Services NW, LLC |
| | Street Address:16520 SW Upper Boones Ferry Rd, Suite 250 |
| City and County: | Portland, Multnomah |
| State and Zip Code: | Portland 97224 |

Registered Agent:           Carmen Villarma

Street Address:             16520 SW Upper Boones Ferry Rd, Suite 250

City and County:            Portland, Multnomah

State and Zip Code:         Oregon, 97224


DEFENDANT NO 6

    Newly added Defendant, The Management Group., Inc. is incorporated under the laws of the State of Washington, having its principal place of business located in Vancouver, WA. It has no license to operate a business in the State of Oregon. It is the parent company of TMG Property Management Services NW, LLC. Plaintiff has now learned that this company is a primary actor in this matter.


Name:                       The Management Group, Inc.

Street Address:             7710 NE Vancouver Mall Dr., #A

City and County             Vancouver, Clark County

State and Zip Code:         WA, 98662


Registered Agent:           Carman Villarma

Street Address:             7710 NE Vancouver Mall Dr., #A

City and County             Vancouver, Clark County

State and Zip Code:         WA, 98662

    Defendants AH Gresham Park, LLC and AH Albion House, LLC collectively are the current owners of Gresham Park Apartments, located in Gresham, Oregon, where Plaintiff currently resides. The Management Group, Inc. of Vancouver, WA acts as the day-to-day operator of Gresham Park Apartments on behalf of Defendants AH Gresham Park, LLC and AH Albion House, LLC. TMG Property Management Services NW, LLC is currently believed to be a shell or sham company. The acts of AH Gresham Park, LLC and AH Albion House, LLC, The Management Group, Inc., a Washington Company are indivisible and thus these parties are named as defendants, jointly and severally and designated (group 2).

## II. Basis for Jurisdiction

A.  Basis For Jurisdiction based on a Federal Question

I.    Jurisdiction is proper under Article VI, Clause 2 of the United States Constitution, the "Supremacy Clause", which states that:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

II.    Federal law is the supreme law of the land and that state laws that conflict with federal laws is invalid. Jurisdiction is proper under the Fourteenth Amendment of the Constitution of the United States, the Fair Housing Act, 42 U.S.C. §§ 3601-3631 and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 as well as 29 U. S. C. § 794.

a.  Plaintiff has specifically alleged that he continues to suffer illegal discrimination caused by discriminatory legislation that authorizes, encourages and facilitates  violation of Plaintiff's Fundamental Civil Rights; Rights under the Americans with Disabilities Act which provides a private right of action irrespective of so called "Sovereign Immunity" provided under the Eleventh Amendment to the Constitution of the United States.

*28 CFR §35.178 State immunity: A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this Act.* In any action against a State for a violation of the requirements of this Act, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

Plaintiff has specifically alleged that he continues to suffer illegal discrimination and abuse that rises to the level of Financial Abuse under ORS 124.100, *et seq.*

The States Eleventh Amendment immunity to suit does not apply to lawsuits brought under ORS 124.110. The only exceptions are expressly enumerated under ORS 124.115, and suits against the State are not excluded. Furthermore, the Statute expressly provides the Courts with the authority to issue the injunctive relief sought by Plaintiff.

Plaintiff is challenging the validity of SB608[1] (2019) and HB 2001-B[3] (2023), and Oregon Revised Statutes, (ORS) Chapter 90, *et seq* (2023), including ORS 90.323 (and related provisions[2]) effective January 2023, which provides that rent increases may not be in an amount greater than seven percent (7%) plus the Consumer Price Index for All Urban Consumers, West Region (All Items) as published by the Bureau of Labor Statistics of the United States Department of Labor in September of the previous calendar year, above the existing rent, which for 2023 was in the range of an eye-watering 14%, or approximately double the COLA increases provided by the Federal Government, It is not only inherently discriminatory against persons on a fixed income, namely elderly, vulnerable and disabled persons, it is faced-facto discriminatory.

The Oregon Statute is also invalid because it achieves an opposite result than its stated purpose. In fact, it makes the problem worse.

Plaintiff is challenging the validity of HB 2001-B[3], Oregon Revised Statutes Chapter 90., et seq. (2023), including ORS 90.394, ORS 105.115, et seq., ORS 105.137, and Chapter 13, (2023 Laws), Effective March 29th 2023. Collectively, they are inherently discriminatory against persons on a fixed income, namely elderly, vulnerable and disabled persons. The Oregon Statute is also invalid because it achieves the exact opposite result than its stated purpose.

III.    Jurisdiction is proper under 28 U.S.C. § 1331, a case arising under Constitutional or federal laws or treatises. This case presents a question in which the Federal Courts have original jurisdiction., although the court is being asked to exercise its supplemental jurisdiction over certain Oregon laws and statutes related to this matter.

IV.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §
1343(a)(3), which grants federal district courts jurisdiction over all civil
actions arising under the laws of the United States.

Title VII of Civil Rights Act of 1968 (Fair Housing Act), as amended, 42 U.S.C. § 3601,
*et seq.*:

      i.     Plaintiff alleges violation of his right to **Fair Housing**: this
Landlord is treating Plaintiff unfairly in terms of refusal to rent,
security deposits, or other terms of tenancy;

      ii.     Plaintiff alleges violation of his right to **Equal Housing**, not
limited to refusal to rent.  Plaintiff alleges this landlord is
discriminating against Plaintiff on the basis of race, color,
religion, national origin, sex, familial status, or disability; and

      iii.     Plaintiff alleges violation of his right to **Protection from
Discrimination** on the basis of disability.

      iv.     Plaintiff further alleges this landlord actively engages in abusive
practices in violation to be free of abuse of a vulnerable person.

      v.     Plaintiff alleges that Oregon's current Landlord/Tenant law
authorizes, encourages and facilitates these acts by private parties
in violation of the US Constitution and there is sufficient
entanglement to justify Plaintiff's assertion that this collectively
constitutes "State Action".

vi. Plaintiff is alleging violation of his rights under the Americans with Disabilities Act,
Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et
seq.* **(ADA):** Plaintiff alleges violation of his right to **Equal Access to Housing** on the
basis of disability;

      i.     Plaintiff alleges violation of his rights to **Reasonable Modifications.**

      **a.** The landlord is required to provide Plaintiff with reasonable modifications that allow Plaintiff to use and enjoy his housing; and

ii.    Plaintiff alleges violation of his rights to **Reasonable Accommodations**.

    a.  This landlord is required to make reasonable accommodations that allow Plaintiff to use and enjoy his residence.   This may include making changes to the physical structure of the housing unit, providing assistive devices or services, or ***modifying the policies and procedures*** of the landlord.

V.      **Basis for Supplemental Jurisdiction:  Oregon Revised Statutes ORS 124.100,** *et seq.***; ORS 125.658(1)(a); ORS 127.535**

ORS 125.658(1)(a) defines **financial abuse** as:

Any act or omission that results in the unlawful or unauthorized control, appropriation, or use of money or property belonging to an older person or person with a disability.

This law applies to the State as well as all landlords, regardless of the size of their rental property. Even if a landlord's rental increase is within the "legal" limits, it may still be considered financial abuse if the increase is excessive or unconscionable. An excessive or unconscionable rental increase is one that is so high that it is unfair or oppressive to the tenant, irrespective of "statutory discrimination" supposedly enabled by discriminatory legislation enacted under State law

Plaintiff alleges this landlord's rental increase violates Federal Law and also violate Oregon State laws regarding financial abuse because it is excessive and unconscionable. In the context of landlord-tenant law, financial abuse occurs when a landlord raises rent to an amount that is unaffordable for the tenant, especially if the tenant is on a fixed income or has a disability. In these cases, the landlord is taking advantage of the tenant's vulnerability and exploiting him for their own financial gain.

Oregon law prohibits landlords from raising rent above certain limits. For example, currently landlords cannot raise rent more than 7% plus the West Coast consumer price index from the previous calendar year, or in the current calendar year, yielding an eye-watering permissible rent increase of 10% for this calendar year vs. the 3.1% provided under Federal law for elderly and disabled persons on a fixed income. (Note:  the current rate of inflation as calculated by the Federal Government has returned to pre-covid levels and is hovering in the range of 3%.  Oregon's current discriminatory legislation allows rental increases that are more than 300% more than the current rate of inflation.

Even if a landlord's rental increase is within the legal limits, it can still be considered financial abuse if the increase is excessive or unconscionable. An excessive or unconscionable rental increase is one that is so high that it is unfair or oppressive to the tenant. ORS 124.100, *et seq.,* is the Oregon law that defines elder abuse and financial abuse. It also allows victims of elder abuse and financial abuse to bring lawsuits against their abusers. ORS 124.100 defines elder abuse as any act or omission that results in physical or emotional harm, neglect, or financial exploitation of an elder person. An elder person is defined as a person who is 65 years of age or older.

ORS 124.100, *et seq.,* also defines financial abuse as any act or omission that results in the wrongful taking or appropriation of money or property of a vulnerable person. A vulnerable person is defined as an elder person or a person with a disability who is susceptible to force, threat, duress, coercion, persuasion, or physical or emotional injury because of the person's physical or mental impairment.

A landlord who raises the rent of a tenant on a fixed income by 13.9% may be considered to be engaging in financial abuse, even if the increase is within the legal limits provided under State Law. This is because the Plaintiff is not able to afford the increase, which will force Plaintiff to move out, go into debt, or become homeless.

In the present matter, the landlord is attempting to raise rent beyond cost-of-living increases provided by the federal government to disabled persons on social security, and this action constitutes illegal discrimination.

**12. The Amount in Controversy**

The amount in controversy is more than $75,000.00, not counting interest and costs of court because actual direct damages are in the range of $1,500000.00, and Plaintiff is claiming treble damages as provided under Oregon law, which also allows Plaintiff to claims amounts for indirect damages for emotional distress, which are typically 3 times direct damages and when trebled and combined with direct damages suggest Plaintiff is entitled to claim damages in the range of $5,400,000.00to date, although Plaintiff has suffered and continues to suffer additional abuse, finnickier damages and casualty losses in 2024, without accounting for punitive damages that may be awarded by the court.

### III. Statement of Claim

The events described herein principally occurred in Oregon, namely at Gresham Park Apartments, located at 805 NE Kane Dr., Gresham, Oregon 97030, and at every multi-family rental property in the State of Oregon.

**Plaintiff's claims are segregated into claims against the State as against Defendants (group 1) where Money damages are not sought; and claims against the other Defendants (group 2), where Money Damages are sought.**

Plaintiff is challenging the validity of SB608[1] (2019) and HB 2001-B[3] (2023), and Oregon Revised Statutes, (ORS) Chapter 90, *et seq* (2023), including ORS 90.323 (and related provisions[2]), that became effective January 2023, which provides that rent increases may not be in an amount greater than seven percent (7%) plus the Consumer Price Index for All Urban Consumers, West Region (All Items) as published by the Bureau of Labor Statistics of the United States Department of Labor in September of the previous calendar year, above the existing rent, which for 2023 was in the range of an eye-watering 14%, or approximately double the COLA increases provided by the Federal Government for recipients of Social Security.

Oregon Revised Statutes, (ORS) Chapter 90, *et seq* (2023) represents one of the most misguided and uninformed pieces of legislation of all time. It should be re-captioned "The Landlord Protection Act".

The State of Oregon's new rental "stabilization" legislation is precipitating the next major wave of homelessness in the State of Oregon, particularly with respect to the elderly and/or disabled and/or vulnerable persons, who have no ability to generate additional income beyond that provided through Social Security.

Moreover, providing landlords an inflation protected, guaranteed rate of return for multi-family properties (through the genocide of elderly and/or disabled and/or vulnerable persons is driving an entire class of protected persons into housing instability, starvation, and possible death, and at the same time it will have no measurably positive impact on affordable housing. (The main limitation on affordable housing inventory is

actually the planning and permitting process used in the tri-county area known as "Metro" which includes Plaintiff's residence).

In Oregon, given the outsized guaranteed rates of return for multi-family housing investments, the Oregon Multi-Family real estate market has become dominated by corporate entities having no connection with the State of Oregon. In the case of Plaintiff's current residence, since at least as early as 2015, Gresham Park Apartments has been owed by at least two separate California REITS, and is currently owned and controlled by a Utah Company (and managed by another company based in Washington State. These entities have no interest other than extracting the maximum return for their investors and are utterly devoid of any sort of empathy or compassion for its residents. Gresham Park Apartments does not have "residents" per se. Captives and/or prisoners are more accurate descriptions.

There are numerous other issues. Real estate investments are typically classified as being "speculative" in nature. ORS Chapter 90, *et seq.* (2023) is the first legislation in the country to convert the speculative nature of real estate investing into an investment vehicle with a guaranteed minimum rate of return. It is truly unprecedented.

By way of comparison, the average rate of return for the NASDQ stock exchange for the past 30 years is approximately 10%. the average rate of return for the S&P 500 for the past 30 years is approximately 9.9 %. Given the inherent stability of the real estate market, the rate of return is typically much less because the investment is considered lower risk.

After a diligent investigation the only inflation protected invest vehicle in the domestic market available to the general public are inflation protected T-Bills sold by the US Treasury, which trade a reduced rate of return (around 3%) due to inherent stability and protection from erosion due to inflation. (The only other contemporary example of inflation protected investments are various crypto-currency products marketed by off-shore crypto-exchanges and have been found to be largely fraudulent.)

Historically, property values rise and fall based on current market conditions. The discriminatory legislation, hereinafter referred to as "Oregon Formula" provides an inflation protected guaranteed rate of return which can never drop below 7%, and is almost always guaranteed to produce double digit rates of return, and accordingly, when applying the "Oregon Formula" will produce "legal" annual rental increases that are more than double the COLA increases provided by the Federal Government.

Neither is this a temporary issue. COLA increases for 2024 have already been announced and are in the range of 3.5%. For 2024, the "Oregon Formula" is estimated to produce "permissible" rent increases in the range of 10%.

Both SB 608 (2019) and HB2001-B (2023) both declare a "housing emergency" as the basis for the new legislation. The fact is that the greater Portland area, including Multnomah County, have been in a state of a "declared housing emergency" since at least as early as 2016. Is the "housing emergency" improving in any measurable way? No. The current legislation actually makes the situation worse.

Plaintiff has been actively advocating for the rights of disabled persons on fixed income in the context of the so called "declared housing crisis" having made televised appearances before the Gresham City Council in both 2016 and 2017, the video transcripts of which will be introduced in the course of this proceeding. Plaintiff has also had frequent contact with various officials for the City of Gresham, including the City Attorney.

Plaintiff reached out to Governor Kotek's Office as early as June 2023 and requested a meeting as early as June 2023 (See Exhibit 100)

After appearing before City Council in 2017, Plaintiff was introduced to Gresham's First-Time homebuyer program, which provides downpayment assistance once a participant completes certain financial management classes, paying off any old debts, attends monthly counselling sessions, and pays the requisite enrollment fee of about $150.00. The program, known as "Welcome Home Gresham" is administered by the City of Gresham using funds received from the Federal Government. The technical aspects of the program such as training and counselling are provided through a Multnomah County housing agency (Portland Housing). This program was characterized as the answer to Plaintiff's housing issues by the State.

Plaintiff completed all the requirements for the Welcome Home Gresham program in 2019. To date, the market has consistently outpaced the Welcome Home Gresham program, which has a cap limiting the purchase price of the home which has proven to be inadequate in

view of Portland's declared housing crisis. Plaintiff has done everything to secure stable housing and complied with every requirement provided by the State. As of the date of this pleading, Plaintiff is still waiting for a permanent home.

The following charts, tables and graph are intended to demonstrate just how corrosive the "Oregon Formula" will be over time, if not corrected.

**Social Security Cost-Of-Living Adjustments [42 U.S.C. 415] \***

| Year | COLA | Year | COLA | Year | COLA |
|------|------|------|------|------|------|
| 1975 | 8.0 | 1995 | 2.6 | 2015 | 0.0 |
| 1976 | 6.4 | 1996 | 2.9 | 2016 | 0.3 |
| 1977 | 5.9 | 1997 | 2.1 | 2017 | 2.0 |
| 1978 | 6.5 | 1998 | 1.3 | 2018 | 2.8 |
| 1979 | 9.9 | 1999 [a] | 2.5 | 2019 | 1.6 |
| 1980 | 14.3 | 2000 | 3.5 | 2020 | 1.3 |
| 1981 | 11.2 | 2001 | 2.6 | 2021 | 5.9 |
| 1982 | 7.4 | 2002 | 1.4 | 2022 | 8.7 |
| 1983 | 3.5 | 2003 | 2.1 | 2023 | 3.2 |
| 1984 | 3.5 | 2004 | 2.7 | | |
| 1985 | 3.1 | 2005 | 4.1 | | |
| 1986 | 1.3 | 2006 | 3.3 | | |
| 1987 | 4.2 | 2007 | 2.3 | | |
| 1988 | 4.0 | 2008 | 5.8 | | |
| 1989 | 4.7 | 2009 | 0.0 | | |
| 1990 | 5.4 | 2010 | 0.0 | | |
| 1991 | 3.7 | 2011 | 3.6 | | |
| 1992 | 3.0 | 2012 | 1.7 | | |
| 1993 | 2.6 | 2013 | 1.5 | | |
| 1994 | 2.8 | 2014 | 1.7 | | |

Table 1

Prior to 1975, Social Security COLA increases were determined by a vote of congress. Since 1975, Social Security COLA increases have **averaged 2.68%**, with zero increases provided in 2009, 2010, and 2015. Recall that the "Oregon Formula" can never fall below a minimum of 7% even if inflation is zero.

Table 2 shows the future value of $1,000 after each year for 20 years with a **3% annual compound interest rate.**

| Year | Future Value |
|------|-------------|
| 1 | $1,030.00 |
| 2 | $1,060.90 |
| 3 | $1,092.73 |
| 4 | $1,125.51 |
| 5 | $1,159.27 |
| 6 | $1,194.06 |
| 7 | $1,229.92 |
| 8 | $1,266.89 |
| 9 | $1,304.99 |
| 10 | $1,344.26 |
| 11 | $1,384.73 |
| 12 | $1,426.43 |
| 13 | $1,469.40 |
| 14 | $1,513.66 |
| 15 | $1,559.27 |
| 16 | $1,606.23 |
| 17 | $1,654.58 |
| 18 | $1,704.36 |
| 19 | $1,755.61 |
| 20 | $1,808.34 |

Table 2

In summary, if a person is presently receiving Social Security benefits of $1000.00/mo., using historical data, that benefit should increase to about $1800.00/mo. after a 20-year period, assuming COLA increases in the range of 3%.

Table 3 shows the future value of $1,000 after each year for 20 years with a 14% annual compound interest rate.

| Year | Future Value |
|------|--------------|
| 1 | $1,140.00 |
| 2 | $1,295.60 |
| 3 | $1,469.86 |
| 4 | $1,665.12 |
| 5 | $1,884.40 |
| 6 | $2,131.40 |
| 7 | $2,410.52 |
| 8 | $2,726.67 |
| 9 | $3,085.88 |
| 10 | $3,494.58 |
| 11 | $3,960.34 |
| 12 | $4,491.97 |
| 13 | $5,100.56 |
| 14 | $5,798.21 |
| 15 | $6,598.27 |
| 16 | $7,516.32 |
| 17 | $8,570.23 |
| 18 | $9,780.35 |
| 19 | $11,169.63 |
| 20 | $12,764.81 |

Table 3

In summary, if a person is presently paying rent of $1000.00/mo., using the "Oregon Formula", that rent should increase to about $12,764.00 after a 20-year period, assuming the "Oregon Formula" increases in the range of 14%. At the same time, a person receiving Social Security over that same 20-year period would be receiving benefit payments in the range of $1800.00. That is a differential of over $10,000.00 and there is nothing in the Oregon Revised Statutes that addresses the impact this is having on elderly, disabled and/or vulnerable persons that the State has an obligation to protect.

35      (SECOND AMENDED) COMPLAINT AND
            REQUEST FOR INJUNCTION)



Figure 1

(SECOND AMENDED) COMPLAINT AND
REQUEST FOR INJUNCTION)

36

**b) AH Gresham Park, LLC, *et al.***

Plaintiff has been a resident at Gresham Park Apartments through three changes in ownership, passing through about 10 separate Limited Liability Companies spread across three States since 2018.

According to the Business Registry maintained by the Secretary of State for the State of Oregon, Plaintiff located the following companies who have owned and or controlled Gresham Park Apartments in the course of Plaintiff's possession and control of Apt 109, Gresham Park Apartments:

| Owner/Operator | Dates | | Entity Type | Notes |
|---|---|---|---|---|
| Gresham Park Apartments, LLC | 2015 | present | Oregon DLLC | **Plaintiff is** current owner |
| BLF Holdings, LLC | 2013 | present | Irvine, California DLLC | Manager and only member of above |
| Brian Fritterer Revocable Trust (held for the benefit of Mr. Brian Fritterer; single member and trustee, namely Mr. Fritterer). | 2013 | ongoing | | |
| Gresham Park II, LLC | 2017 | | Oakland, California FLLC | |
| Gresham Park, LLC | 2017 | | Oakland, California FLLC | |
| AH Albion House, LLC | 2020 | | | |
| AH Gresham Park, LLC | 2020 | | **"A Utah Company"** | **NO DBA** |

Plaintiff has never had a residential lease since he has been in legal possession of unit 109B in 2019.  The current owner does not have a key to Plaintiff's unit.   Plaintiff has made several failed attempts to secure a lease over the past several years, which failed principally due to issues regarding habitabity, fraudulent charges, owner negligence; on-going safety issues, and failure to accommodate reasonable requests under the Americans with Disabilities Act.

Plaintiff selected Gresham Park Apartments based on a few criteria:

1. Cost
2. Ramp leading to entrance (in anticipation of an electric scooter);
3. Ramp access from garage to apartment;
4. Working area on back patio; and
5. Working area in garage.
6. Location on the urban growth boundary.  In Multnomah County, Kane Drive defines the urban growth boundary, so the risk of gentrification and rent increases was thought to be minimal.  There are no multi-family housing units in Multnomah County beginning at the boundary defined by Kane Dr.

*All of the above have been thwarted by the present owners of Gresham Park Apartments.*

### i.     Failure to Accommodate

As of now, Plaintiff has been waiting for a formal accommodation regarding the simple reassignment of a parking space to provide ramp access to Plaintiff's Apartment. That request is now at least six years old. (*See:* Exhibit 104).  After six years, Plaintiff still does not have ramp access to his residence.

Plaintiff received a Notice of Rent (See: Exhibit 110 increase dating back to March 2023 and Plaintiff has been trying to engage the landlord regarding Plaintiff's Request for an Accommodation regarding rental assistance. (*See:* Exhibit 102). in a discussion since that time.   Defendants are attempting to impose the maximum rental increase permissible under the new law, and after six years, this landlord now demands for increases in rent that have finally exceeded Plaintiff's ability to pay.

Plaintiff requested an adjustment to that increase as an accommodation under the American's with Disabilities Act, which was explicitly refused. According to the current owners of Gresham Park Apartments, they are simply raising the rent "as required under the new law".

The present owners feign ignorance of any of Plaintiff's rights arising under Federal Law, including the Americans with Disabilities Act.

In the course of attempting to resolve this issue, prior to filing this lawsuit Plaintiff has sent multiple requests to TMG Property Management Services NW, LLC and in fact had a video-conference with representatives from both the owners of AH Albion House together with representatives of TMG Property Management Services

**The message from the owner was "pay up or move out".**

In the course of this video conference it was clear that all the participants comprising the Defendant(s) designated in (group 2) with 2 representatives from AH Albion House, LLC and at least one representative from TMG Management Services NW, LLC, had prepared some sort of "client manual" that included scripts with prepared responses for all the defendants and at one point, the owners of AH Albion House, LLC referred to the representative from TMG Management Services NW, LLC as their "attorney".

At that meeting, Plaintiff was informed that his prior Request for Accododation regarding parking was RACIST!

Plaintiff was further informed that he had engaged in abuse regarding one of their employees, namely Ms. Genny Soto, when the exact opposite is true. Ms. Soto is the actual abuser in this case, and the fact that Ms. Soto would create a record accusing Plaintiff of abuse is a symptom of a profound mental illness.

All of the Defendant's identified in (group 2) have developed a common script including the following remarks:

a. Gresham Park Apartments, LLC does not discriminate and they are required to treat everyone exactly the same, irrespective of disability.

b. Gresham Park Apartments, LLC is not responsible for casualty losses of Plaintiff's personal property that were caused by contractors of Gresham

Park Apartments, LLC, where property was lost in the course of the contractors work on behalf of the owners of Gresham Park Apartments, LLC.

c. Since the filing of Plaintiff's prior complaint, During the first week of 2024 Plaintiff has suffered another massive casualty loss which Plaintiff attributes to negligence on the part of the owners, and damages due to this incident alone will be in the range of an addition $100,000.00.

d. With respect to Plaintiff's Request for Accommodation under the Americans with Disabilities Act, The Landlord stated that they could not possibly consider Plaintiff's Request for an Accommodation regarding Rent."

    i. A representative from Gresham Park Apartments, namely Ms. Genny Soto literally made the following statements:

        1."What makes you think you are so special"? That attitude is pervasive among all the Defendants identified in group 2.

        2. Gresham Park Apartments, LLC cannot consider Plaintiff's Request for Accommodation because they treat everyone "exactly the same".

        3. If Plaintiff is not happy with the situation at Gresham Park Apartments, he is free to move.

**ii.    Habitability/Access**

The common grounds of Gresham Park Apartments have never been maintained in a safe condition, particularly during the winter months. Plaintiff's residence is located near Multnomah Falls, close to the entry to the Columbia River Gorge. As such, the winter months can usher in severe weather and snow is quite common in this area. For example, the current owners of Gresham Park Apartments make no effort whatsoever to manage snow removal, and there have been at least two years where Plaintiff could not access his vehicle parked in a garage blocked by a chest high snow drift. Plaintiff has

40    (SECOND AMENDED) COMPLAINT AND
             REQUEST FOR INJUNCTION)

been denied access and use of his vehicle for weeks at a time and precisely when the vehicle is needed most urgently.

Over the summer of 2023, Plaintiff's apartment was inspected by the City of Gresham, who cited the landlord for a half dozen violations regarding habituality, which the landlord was required to correct. The bottom line is that Plaintiff's unit has not met community standards regarding habitability for nearly the entire duration of Plaintiff's occupancy. (*See*: Exhibits 106, 108). Plaintiff is entitled to a refund of all sums tendered as rent for an uninhabitable unit dating back to the day Plaintiff became a resident of Gresham Park Apartments, LLC. Numerous items cited by the City of Gresham remain unresolved to this day.

### iii.    Discrimination, Harassment, Retaliation

The management of Gresham Park Apartments has been engaged in a pattern of harassment and retaliation in their attempt to force Plaintiff to move out of Gresham Park Apartments. Since attempting to resolve issues with "The Landlord", Plaintiff has been bombarded with Notices of Eviction for non-payment (of fraudulent charges). These have been amplified by corresponding "invoices" asserting fraudulent charges measured in the range of several thousand dollars.

Plaintiff has received at least a Notice of Eviction at least once per month since last March. It is not unusual to receive Notices of Eviction for Cause for violation of a non-existent lease in the same month. This is in addition to corresponding "invoices" asserting fraudulent charges measured in the range of several thousand dollars, which Plaintiff receives at the same monthly rate. Plaintiff has accumulated a stack of the above-mentioned notices threating Plaintiff's housing stability, and has literally lost count of the actual number of such notices, the number of which probably exceeds 30, and at this point serve no other purpose other than harassment.

Some examples are included herewith, and are only submitted as examples. (*See e.g.*: Exhibits F2 – F18).

### iv.    Fraud and Overcharges:

When The Management Group, Inc. took over the day-to-day operation of Gresham Park Apartments in 2020, a host of unauthorized fees and charges began to appear and Plaintiff continues to dispute the amounts, some of which are clearly fraudulent (i.e., Plaintiff asserts that Defendants have no right to assert a $150.00 late fee against rental assistance through Medicare.) (charges for utilities literally doubled overnight without justification).

v.      **(uncompensated) Casualty Claims**

Plaintiff has suffered approximately $1,230,000.00 in uncompensated casualty claims caused by the various employees and/or contractors of Gresham Park Apartments, and/or owner negligence

a)   Plaintiff suffered casualty losses from a contractor hired by Gresham Park Apartments to replace decks, and in the process the contractor took Plaintiff's property into their possession and which was never returned.

b)   A roofing contractor was removing asphalt tiles from the garage building while Plaintiff was working in his vehicle.  Without looking, the contractor hurled a pile of asphalt tiles from the roof and which landed with some force on the hood of Plaintiff's car.  Plaintiff still has not been compensated for damages to his vehicle

c)   c) Plaintiff suffered a massive burglary as recently as the first week of January 2024.  Plaintiff alleges the incident would not have occurred but for the Landlord's negligence.  This matter remains an open investigation with the Gresham Police Department, and other agencies.

vi.     **Modifications**

Over the past four years, Plaintiff has undertaken the costs of architectural modifications necessary in view of Plaintiff's disabilities.  In the event Plaintiff is compelled to relocate, plaintiff should be entitled to recover the costs of these modifications which would have to be re-implemented in any new residence.  The cost of those modifications is estimated to be in the range of $40,000.00.

IV. CONSTITUTIONAL CONSIDERATIONS

As noted above, Plaintiff is asserting claims under the Americans with Disabilities Act which specifically excludes State immunity under the Eleventh Amendment.

Stated alternatively, State immunity under the Eleventh Amendment does not apply in this case.

Plaintiff is asserting claims under the Equal Protection Clause of the Fourteenth Amendment of the US Constitution which requires a Court to making a determination as to the level of Scrutiny, ranging from Strict Scrutiny to the Rational Basis Test. Plaintiff asserts that the classification in this matter should be entitled to a heightened level of Scrutiny. Plaintiff is asserting he does not fit within any of the recognized classes, such as age, disability or wealth, which are analyzed using the Rational Basis Test. Plaintiff's classification should be designated as "suspect class" and is arguably that of discrimination on the basis of abuse a vulnerable person prone to abuse (and where abuse is on-going and under the color of State Action).

In spite of the above, Plaintiff asserts that in this matter, the legislation in question fails even the Rational Basis test for the reasons noted above.

Plaintiff has been denied both substantive and procedural due process in this matter.


**V. Irreparable Injury**

Plaintiff is at immediate risk of irreparable Injury because this Landlord has issued multiple Notice of Eviction for Non-Payment of rent. These Notices of Eviction are nothing more than acts of intimidation and harassment, but fundamentally, it has raised Plaintiff's level of concern to the point of contacting adult protective services because the current situation is unsafe and untenable.

Plaintiff is at immediate risk of homelessness.

Plaintiff has now been expressly informed by two Oregon government agencies that individuals in Plaintiff's situation are being advised to move to another State. Plaintiff currently lacks to funds or physical ability to relocate anywhere and should not have to.

The current Oregon Landlord Tenant Law is precipitating a mass migration of a protected class of vulnerable persons out of the State of Oregon.

## V. Relief

**With respect to the Defendants identified in (group 1) ("The State")**

a.  i.  Oregon SB 608 (2019) as implemented in Oregon's Landlord Tenant Act is unconstitutional and Plaintiff is seeking injunctive relief from its further implementation.. Plaintiff is asking the court to ultimately declare ORS Chapter 90 (2023) as invalid. It achieves the exact opposite result than its stated purpose. In fact, it will have the net effect of making the housing problem much worse.

b.  Oregon HB 2001 (2023) as implemented in Oregon's Landlord Tenant Act is unconstitutional and Plaintiff is seeking injunctive relief from its further implementation because it conflicts with Federal Law. Plaintiff is asking the court to ultimately declare HB 2001 as invalid.

**With respect to the Defendants in (group 2) ("The Landlord").**

c.  Even if SB 608 and/or SB 2001 were valid, Plaintiff is seeking injunctive relief against the current owners of Gresham Park Apartments from imposing rent increases in excess of COLA increases allowed under Federal Law.

d.  Plaintiff is seeking monetary damages in the amount of $5.4 million dollars in financial damages as outlined above.

e.  Plaintiff is seeking direct damages from the owners of Gresham Park Apartments in the amount of not less than $1,400,000.00 which Plaintiff is entitled to treble under Oregon Law. These actual damages include amounts paid for an uninhabitable unit now for at least six years. Plaintiff is entitled to claim non-economic damages in the amount of not less than $3,640,000.000 which when combined with direct damages and trebled, Plaintiff is entitled to a minimum of over $6 million dollars under Oregon law. Plaintiff also spent about $20,000.00 simply to move into Gresham Park Apartments, and is now faced with another round of re-location expenses.

f.  Plaintiff has invested tens of thousands of dollars in architectural improvements required to adapt Plaintiff's residence to accommodate his disability. These improvement range from conventional modifications to Plaintiff's bathroom,

including the shower; installation of an air quality control system including dust removal and air filtration, and installation of a back-up power and heat system due to the fact that Plaintiff cannot tolerate temperature extremes and an extended power failure could be fatal; Plaintiff has had a Medical Certificate on file with PG&E since 2016, and Plaintiff does receive priority in certain circumstances.

    a. Simply moving as suggested by the Landlord is not possible without the loss of these substantial expenses. Plaintiff is entrenched in his current residence until this issue is resolved.

g. Plaintiff is entitled to claim actual and non-economic damages due to casualty losses inflicted on Plaintiff, by contractors of Defendant(s), estimated to be in the range of $30,000.00.

h. Plaintiff is entitled to recover amounts due to casualty loss due to The Landlords negligence, which occurred since the filing of Plaintiff's prior complaint. These losses are estimated to be in the range of $1,250,000.00.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if so identified, will likely have evidentiary support after a reasonable investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in dismissal of my case.

Dater of signing: 04/19/2024

Signature of Plaintiff:

Printed Name of Plaintiff: James E. Jacobson, Jr.

(SECOND AMENDED) COMPLAINT AND
REQUEST FOR INJUNCTION)

FOOTNOTES

1. https//olis.oregonlegislature.gov/liz/2019R1/Measures/Overview/SB608
2. ORS 90.100, 90.220, **90.323**, 90.427, 90.600, 90.643, 90.675, and 105.124
3. https://olis.oregonlegislature.gov/liz/2023R1/Measures/Overview/HB2001

TMG | The
Management
Group

PROPERTY MANAGEMENT
SALES & LEASING

**Pacific Business Center**
7710 NE Vancouver Mall Drive
Vancouver, WA 98662

PORTLAND OR 972

24 AUG 2021 PM 4 L

97030—595634

**jim.jacobson@live.com**

| | |
|---|---|
| **From:** | oregon-gov-web-services@egov.com |
| **Sent:** | Wednesday, June 28, 2023 4:27 PM |
| **To:** | jim.jacobson@live.com |
| **Subject:** | Confirmation: Request a Meeting With the Governor |

Hello James Jacobson, Thank you for reaching out to request a meeting with Governor Tina Kotek. We have received your request and appreciate your interest in meeting with the Governor. Please note that due to the high volume of requests we receive, we are unable to personally respond to each one. We value your support and engagement with our office, and we will make every effort to review and consider your request in a timely manner. Currently, we are not able to make commitments for the Governor more than six weeks in advance. Thank you again for your interest in meeting with Governor Kotek. We appreciate your understanding and patience, and we look forward to continuing to work together to build a better Oregon. Best regards, Office of Governor Tina Kotek

| | |
|---|---|
| Today's Date | 06/28/2023 |
| First Name | James |
| Last Name | Jacobson |
| Email Address | jim.jacobson@live.com |
| Phone Number | (503) 740-0676 |
| Date Of Meeting | 06/29/2023 |
| Is there a specific time that would work best for you? | I need time to drive from Portland, so anytime after 10:00 am. |
| Is your meeting date and time flexible? | Yes |
| Flexibility Details | This should be ASAP |
| Who is the Organization or Sponsor of the meeting? | I am currently acting in an individual capacity |
| Organization Website | |
| Meeting Agenda | HB608 includes provisions which put landlords in a superior position with respect to individuals who are in a protected class, specifically the elderly and disabled. We are on the precipice of the actual elimination of these protected classes from the rental market. As such, it is my intention to pursue a lawsuit in Federal District Court, since HB 608 (as implemented) cannot be valid in view of the he Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., and the Fair Housing Act (FHA), 42 U.S.C. §§ 3601 et seq., in addition to statutes arising under State Law. Is House Bill 608 meeting is stated objectives? I think not. Even the title is offensive. It is an insult. This years legislative session is an embarrassment. Under these circumstances, I believe the Governor should issue an executive order suspend those portions of HB 608 that allow Landlord's to to raise rental charges more than 70% of the COLA provided by the Federal Government to individuals on a fixed income. Frankly, the same issue exists for all low income families. I believe there are other concrete actions the State can undertake, but right now I find |

no evidence of any such activity. It is possible that a Fair Housing lawsuit is avoidable. I remaining willing to be educated. Having said that, I have been to to this Rodeo before, and I am proceeding with all due diligence to have something on file on or around July 5th. I will be in Salem on 06/28, but I am otherwise flexible and could even schedule a Zoom call anytime prior to July 5th. The issues here are not speculative. I do not have to option to delay because this is now impacting myself, personally. By way of information, I am a retired Attorney with over 30 years of prior experience including 13 years with Intel Corp., first as a manager of the Oregon Legal team, and I was a Director of Strategic Investments when I retired. Pat Gelsinger, the current CEO of Intel. was my direct supervisor, and I remain in contact with Pat to this day. I intend to share this journey with Pat (and others). He will be quite interested to discover that his executive staff will be at immediate risk of homelessness whenever they retire. That's a great hiring incentive.

| | |
|---|---|
| Number of estimated attendees | 1 |
| Names of people attending | James E. Jacobson, Jr. |

**Submission ID:** 08c27b66-14d0-4e6e-9e70-31b93cd0cdc7

**Record ID:**

# James E. Jacobson, Jr.
805 NE Kane Dr., Apt 109B
Gresham, OR 97030
(503) 740-0676

07/14/2023

Melissa Garrett
Regional Manager
TMG Property Management Services NW
7710 NE Vancouver Mall Dr.
Vancouver WA 98662

AH Gresham Park, LLC
6218 N. Concord Ave
Portland, OR 97217
(503) 489-5132

**RE: Request for Accommodation under the Americans with Disabilities Act; and,
NOTICE of Recent Injuries and rental assistance provided via Medicaid**

I receive insurance, in part, through the Oregon Health Plan, and more specifically through the Employed Persons with Disabilities program which is unique to Oregon, and a major blessing.

The key things to note are that my health insurance is based on two factors: disability and demonstrated income through employment. You are already well aware that I suffer a serious case of PTSD which is still susceptible to triggers. I also suffer extreme mobility limitations.

In another letter, I am requesting another accommodation regarding those physical limitations.

On or about May 10th, 2023, I notified Melissa that I had applied for rental assistance as provided by my current health plan, because I split my thumb, right hand, after it was macerated in a table router accident, and I am under Physician orders that my hand remain immobilized, else I risk prolonging the healing process, which is not going well. *See*: Photos 1 & 2 below. WARNING - GRAPHIC

At that time, I was only anticipating a month of lost income due to this injury, but remains a problem in mid-July. Nevertheless, when I sent notification to Melissa regarding the approval of my application for flex funds, I received a formal Notification of Eviction for Cause for Non-Payment of Rent, which was not well taken, but continues a well-established pattern of harassment.

**Page 1**                                                                                   *Exhibit 102*

I believe at least a first payment made pursuant to my flex plan have been dispersed and processed by Gresham Park.

The last time I checked, Gresham Park Apartments, through the TMG client portal, is/was asserting a $150.00 late fee even though you were notified in advance. I do hope you realize these are Medicaid funds that originate with the Federal Government, and they even support a hotline to report Medicaid Fraud, but I've been too busy to call.

I certainly have no control over a third-party payee's dispersal schedule. I already raised this as an issue and I apologize if this has already been corrected. The TMG extortion machine is of no use to me going forward.

I work out of my home, including my garage and patio, as required by the State of Oregon, and which is completely dependent on my status as a person having a qualified disability. I believe I have been cited for violation of a non-existent lease more times than I can remember, for simply engaging in activities that were totally comprehended when I moved in, which I have no intention of stopping, but is just one example of bias and discrimination against persons having a disability.

Next, I do wish I was capable of sending this notice earlier, but about two weeks ago, as I was attempting to resume work, I cut off the end of another finger, this time the middle finger of my left hand. As of this moment, I cannot type without getting blood on the keyboard. *See*: Photo 3. WARNING: GRAPHIC.

Now, both hands are immobilized.

Once again, I have already discussed the matter with my case manager at Providence, so I am fully anticipating several on-going payments through flex-fund dispersals. The application is in process, and has been approved by my Physician.

Of course, as if on cue, when I returned from my appointment with my hand surgeon yesterday, I found yet another eviction notice taped to my door. Again, this was not well received. Accordingly, I would like to invite you to stop harassing me. Otherwise, I will take formal legal action.

Next, you are invited to stop overcharging me particularly with respect to flex funds which are clearly tied directly to my disability.

I am also inviting you to stop interfering with the lawful pursuit of my self-employment activities.

I invite you to figure out a documented process for avoiding the threat of eviction and late fees whenever a health emergency presents itself.

And finally, kindly avoid leaving notices clipped to the front door. It is more than annoying and that whole area is reserved for use by the United States Postal Service. I am quite sure I am the only person at Gresham Park Apartments to get daily mail delivered to my front door by the US Postal Service, but that should provide some idea of the extent of my mobility issues.

I never agreed to receive notices from the owner attached to my door. I'm sure your lease has some sort of provision in this regard, but I don't have a clue what your lease looks like.

Who is the person who keeps posting these Notices? I have warned you in the past, and I am cautioning you again, that certain persons are clearly a PTSD trigger for me, and if I encounter them, I cannot predict the outcome. For example, if Ms. Soto is involved, we have a problem.

I think it would be prudent to rewind the entire rent increase issue back to *status quo* as it was on June 1st, 2023. Please consider that as a request for accommodation under the ADA.

In conclusion, your outpouring of empathy and understanding has been duly noted.

Regards,

James E. Jacobson, Jr.

# WARNING:

# THE FOLLOWING PAGES CONTAIN

# GRAPHIC CONTENT COMPRISING

# PHOTOGRAPHS OF MUTILATED BODY PARTS.

# VIEW AT YOUR OWN PERIL.

**Picture 1**

Right Thumb as of May 10th 2023



Macerated flesh

Note: There is an entire section of nail missing, which define a line where my thumb was split to down to the bone.

**Picture 2**



Note the separation between the two distinct sections

**As of July 10th 2023**

*Exhibit 102*

Picture 3



As of July 1, 2023

Exhibit 102



*Exhibit 102*

# James E. Jacobson, Jr.
805 NE Kane Dr., Apt 109B
Gresham, OR 97030
(503) 740-0676

07/14/2023

Melissa Garrett
Regional Manager
TMG Property Management Services NW
7710 NE Vancouver Mall Dr.
Vancouver WA  98662

AH Gresham Park, LLC, a Utah Company
6218 N. Concord Ave
Portland, OR  97217
(503) 489-5132

RE:  Request for Accommodation under the American's with Disabilities Act – Parking
(This request has been pending since 2020)

I moved into Gresham Park Apartments in 2018 and my lease with the prior owner expired in 2019.  I attempted to submit a signed renewal in early 2020, but that was rejected by the new owners.

I was finally presented a proposed lease renewal by the new owners in mid-2020, which I refused to sign because I had submitted several requests for accommodation under the ADA that have been ignored for a few years now.

So, by copy of this letter, I am repeating my request for an accommodation under the Request for Accommodation under the Americans with Disabilities Act, which should be trivial.

I have certain physical disabilities which require un-obstructed ramp access between my garage and my residence.  A copy of my wheel chair user parking permit issued by the DMV is attached.

Due to a prior spinal issue, I have severe mobility limitations that prevent me from lifting heavy objects so I routinely move things between the garage and my apartment using a cart with wheels. I use the same cart for taking out the garbage.

I live in Apartment 109B, which I  selected specifically because it has wheelchair ramp access. That wheelchair ramp was designed so that the wheelchair access to the parking lot is provided at parking spot 25.  Thus, wheelchair access is blocked whenever a car is parked in spot 25.

I am currently assigned parking spot 23.

I have been waiting for years to be assigned spot 25, and ***I am repeating that request again***. Kindly reassign the parking spots so that I am assigned spot 25 so that I can enjoy wheelchair access as the building was designed.

This is one issue that has been pending since 2020 and which is preventing me from signing any lease agreement with the present owners.

Regards,

James E. Jacobson, Jr.

**Exhibit 104**



Exhibit 104

## City of Gresham - Rental Housing Inspection Program
503-618-2248 | RentalInspection@greshamoregon.gov
1333 NW Eastman Parkway | Gresham, OR 97030
# Notice of Violation

Date:  04/19/2023

Case Type:       Rental Housing Mandatory - Interior

Case Number:     RHMI-23-01244

Inspector:       Amy DeVane 503-618-2208

TENANT
805 NE KANE DR #109
GRESHAM, OR 97030

Location:    805 NE KANE DR #109
             GRESHAM, OR 97030

Dear Tenant:

A Rental Housing Inspector from the City of Gresham visited your property and found violations of the Gresham Revised Code, Property Maintenance Code and/or Gresham Community Development Code.  The attached Inspection Checklist lists the violations.

- Enclosed is an Inspection Checklist that identifies the violations observed in your unit. This information has been sent to the owner and/or property manager for correction. We appreciate your cooperation with them and the City inspector as we work towards resolving the violations.
- **We will be performing a re-inspection of the property on 05/23/2023.**
- Inspections generally take place between the hours of 9:00 a.m. and 12:00 p.m.

For tenant resources and information related to the Rental Housing Inspection Program, visit: GreshamOregon.gov/Rental-Housing-Inspections/.

Thank you,

City of Gresham

*The City of Gresham and Oregon landlord tenant laws prohibit retaliatory conduct against tenants for asserting their rights under this Code and state law.*

City of Gresham
# Inspection Checklist

Inspection Date:  04/11/2023

Case Number: RHMI-23-01244

Inspector:    Amy DeVane

Inspector Email:  amy.devane@greshamoregon.gov

Inspector Phone Number: 503-618-2208

Inspection Status:  In Violation

Inspection Type:   RH Rental Housing Interior
Inspection Mandatory

Address:  805 NE KANE DR #109
GRESHAM, OR 97030

Owner:   GRESHAM PARK APARTMENTS

Property Manager:   TMG

| Checklist Item | Results | Comments |
|---|---|---|
| Inspector Comments | FAIL | See violations below. |
| RHI Plumbing Systems Required fixture(s) not in good working condition(IPMC 504.1) | FAIL | Broken toilet seat. |
| RHI General Interior Surface significant decay, defective, or in damanged condition (IPMC 305.3) | FAIL | Damage to bathroom ceiling from prevlous water leak.<br><br>Unfinished repair in Bedroom #2 closet (plumbing access).<br><br>Holes present in back of kitchen sink cabinet. |
| RHI Heating/ Ventilation System Heat source inadequate to maintain yr round temperature of 68 degrees (IPMC 602.2) | FAIL | Bathroom has no heat source. |
| RHI Electrical Systems Receptacle (s) damaged, will not hold plug, and warrant replacement (IPMC 604.3, must be replaced with GFCI if required per IPMC 605.2) | FAIL | Rear patio outlet is not secure in its housing (exposed wires).<br><br>Living room outlet (bathroom wall) tested with loose plugs and intermittent lighting. Any electrical work must be completed by licensed electrical contractor. City issued electrical permit or electrician's minor label may be required as documentation.<br><br>Kitchen GFCIs failed to properly test/trip at inspection (left of stove, left & right of sink). Any electrical work must be completed by licensed electrical contractor. City issued electrical permit or electrician's minor label may be required as documentation.<br><br>Kitchen island outlet tested with loose top plug and intermittent lighting (end of island). Any electrical work must be completed by licensed electrical contractor. City issued electrical permit or electrician's minor label may be required as documentation. |
| RHI Heating/ Ventilation System Inadequate bathroom or laundry room exhaust fan (IPMC 403.2) | FAIL | Bathroom ventilation fan is inoperable. |

Additional Information
● Gresham City Codes and Policies https://greshamoregon.gov/City-Codes-and-Policies/
● Permit Center https://greshamoregon.gov/Permit-Services/
● Business Licensing https://greshamoregon.gov/Business-Licenses/

Page 2

Exhibit 106

| | | |
|---|---|---|
| RHI General Interior Appliance not in safe working condition (IPMC 603.1) | FAIL | Tenant stated dishwasher leaks onto floor during use. Does not effectively clean dishes. High loop missing. The discharge hose from the pump must extend to the underside of the cabinet top and be securely anchored to preclude the danger of sink wastewater from flowing back into the dishwasher (OPSC 807.4). |
| RHI Plumbing Systems System obstructions, leaks, defects (IPMC 504.1 & IPMC 506.2) | FAIL | Evidence of drain line backflow present in bathtub at time of inspection. Tenant stated backflows have happened multiple times. Have licensed plumber complete inspection and treat as necessary. |
| RHI Smoke Detectors Not operational/ battery take out (ORSC R315.4.1) OR improper number, improper location (ORSC R315.2) | FAIL | Hard-wired hallway detector missing. Install according to manufacturer's instructions. |

Additional Information
- Gresham City Codes and Policies https://greshamoregon.gov/City-Codes-and-Policies/
- Permit Center https://greshamoregon.gov/Permit-Services/
- Business Licensing https://greshamoregon.gov/Business-Licenses/

Exhibit 106

City of Gresham - Rental Housing Inspection Program
503-618-2248 | RentalInspection@greshamoregon.gov
1333 NW Eastman Parkway | Gresham, OR 97030

# Civil Penalty Warning

| | | |
|---|---|---|
| Date: | 06/08/2023 | Case Type: | Rental Housing Mandatory - Interior |
| | | Case Number: | RHMI-23-01244 |
| | | Inspector: | Amy DeVane 503-618-2208 |

| | |
|---|---|
| TENANT<br>805 NE KANE DR #109<br>GRESHAM, OR 97030 | Location:   805 NE KANE DR #109<br>GRESHAM, OR 97030 |

Dear Tenant:

A Rental Housing Inspector from the City of Gresham visited your property and found violations of the Gresham Revised Code, Property Maintenance Code and/or Gresham Community Development Code.  The attached Inspection Checklist lists the violation(s).

- This information has been sent to the owner and/or property manager for correction. We appreciate your cooperation with them and the City inspector as we work towards resolving the violations.
- We will be performing a re-inspection of the remaining violations on 07/10/2023 between the hours of 9:00 a.m. and 12:00 p.m.
- If the violation(s) are not corrected on 7/10/2023 a Civil Penalty fee may be imposed.

For tenant resources and information related to the Rental Housing Inspection Program, visit: GreshamOregon.gov/Rental-Housing-Inspections/.

Thank You,
City of Gresham

*The City of Gresham and Oregon landlord tenant laws prohibit retaliatory conduct against tenants for asserting their rights under this Code and state law.*

*Page 1*                                                                                    **Exhibit 108**

City of Gresham
# Inspection Checklist

Inspection Date: 06/05/2023

Case Number: RHMI-23-01244

Inspector:        Amy DeVane

Inspector Email: amy.devane@greshamoregon.gov

Inspector Phone Number: 503-618-2208

Inspection Status: In Violation

Inspection Type:   RH Rental Housing Interior
                   Inspection Mandatory

Address:  805 NE KANE DR #109
          GRESHAM, OR 97030

Owner:

Property Manager:   TMG

| Checklist Item | Results | Comments |
|---|---|---|
| Inspector Comments | FAIL | 05/25/23: Violations not resolved. Case moved forward to CPW. |
| RHI Plumbing Systems Required fixture(s) not in good working condition(IPMC 504.1) | PASS | Broken toilet seat. 05/25/23: Resolved. |
| RHI General Interior Surface significant decay, defective, or in damanged condition (IPMC 305.3) | PASS | Damage to bathroom ceiling from previous water leak. Unfinished repair in Bedroom #2 closet (plumbing access). Holes present in back of kitchen sink cabinet. 05/25/23: Resolved. |
| RHI Heating/ Ventilation System Heat source inadequate to maintain yr round temperature of 68 degrees (IPMC 602.2) | PASS | Bathroom has no heat source. 05/25/23: Resolved. |

Additional Information
● Gresham City Codes and Policies https://greshamoregon.gov/City-Codes-and-Policies/
● Permit Center https://greshamoregon.gov/Permit-Services/
● Business Licensing https://greshamoregon.gov/Business-Licenses/

*Exhibit 108*

| | | |
|---|---|---|
| RHI Electrical Systems Receptacle (s) damaged, will not hold plug, and warrant replacement (IPMC 604.3, must be replaced with GFCI if required per IPMC 605.2) | FAIL | Rear patio outlet is not secure in its housing (exposed wires).

Living room outlet (bathroom wall) tested with loose plugs and intermittent lighting. Any electrical work must be completed by licensed electrical contractor. City issued electrical permit or electrician's minor label may be required as documentation.

Kitchen GFCIs failed to properly test/trip at inspection (left of stove, left & right of sink). Any electrical work must be completed by licensed electrical contractor. City issued electrical permit or electrician's minor label may be required as documentation.

Kitchen island outlet tested with loose top plug and intermittent lighting (end of island). Any electrical work must be completed by licensed electrical contractor. City issued electrical permit or electrician's minor label may be required as documentation.

05/25/23: Kitchen island GFCI (left of stove) failed to properly test/trip at reinspection.

Provide copies of electrician's invoice for all electrical repairs completed to: amy.devane@greshamoregon.gov |
| RHI Heating/ Ventilation System Inadequate bathroom or laundry room exhaust fan (IPMC 403.2) | PASS | Bathroom ventilation fan is inoperable.

05/25/23: Resolved. |
| RHI General Interior Appliance not in safe working condition (IPMC 603.1) | FAIL | Tenant stated dishwasher leaks onto floor during use. Does not effectively clean dishes. High loop missing. The discharge hose from the pump must extend to the underside of the cabinet top and be securely anchored to preclude the danger of sink wastewater from flowing back into the dishwasher (OPSC 807.4).

05/25/23: Not resolved. |
| RHI Plumbing Systems System obstructions, leaks, defects (IPMC 504.1 & IPMC 506.2) | PASS | Evidence of drain line backflow present in bathtub at time of inspection. Tenant stated backflows have happened multiple times. Have licensed plumber complete inspection and treat as necessary.

05/25/23: Tenant stated backflow issue has not reoccurred since last inspection. Continue to monitor. Toilet clogged at time of inspection. |
| RHI Smoke Detectors Not operational/ battery take out (ORSC R315.4.1) OR improper number, improper location (ORSC R315.2) | FAIL | Hard-wired hallway detector missing. Install according to manufacturer's instructions.

05/25/23: Not resolved. |

Additional Information
● Gresham City Codes and Policies https://greshamoregon.gov/City-Codes-and-Policies/
● Permit Center https://greshamoregon.gov/Permit-Services/
● Business Licensing https://greshamoregon.gov/Business-Licenses/

*Exhibit 108*



## OREGON
## RENEWAL OFFER/
## RENT INCREASE NOTICE

 

MULTIFAMILY NW
The Association Promoting Quality Rental Housing

TMG | The Management Group
PROPERTY MANAGEMENT • SALES • LEASING

DATE __03/15/2023__ PROPERTY NAME / NUMBER __Gresham Park Apartments__   503.489.5132

RESIDENT NAME(S) __James Jacobson__

UNIT NUMBER __#109B__   STREET ADDRESS __805 NE Kane Dr__

CITY __Gresham__   STATE __OR__   ZIP __97030__

Thank you for your residency. We hope to continue this relationship with you into the future.

☒ Your current fixed-term lease expires on ___06/30/2023___.   ☐ You are currently on a month-to-month agreement
DATE

We would like to offer you the opportunity to sign a new fixed-term lease with us. Please choose from one of the following options, which will take effect on ___07/01/2023___ ("Effective Date"). Lease term availability will be offered on a first-come, first-served basis.
DATE

| CURRENT | | OPTION 1 (FIXED-TERM) | | OPTION 2 (FIXED-TERM) | | OPTION 3 (MONTH-TO-MONTH) | |
|---|---|---|---|---|---|---|---|
| | CHARGE | Available Term(s) 12 | | Available Term(s) | | | |
| | | INCREASE | NEW CHARGE | INCREASE | NEW CHARGE | INCREASE | NEW CHARGE |
| Rent | $ 1,263.00 | $ 162.00 | $ 1,445.00 | $ | $ | $ 180.00 | $ 1,463.00 |
| Pet Rent | $ | $ | $ | $ | $ | $ | $ |
| Parking Rent | $ | $ | $ | $ | $ | $ | $ |
| Storage Rent | $ 125.00 | $ 20.00 | $ 145.00 | $ | $ | $ 20.00 | $ 145.00 |
| Utilities* | $ | $ | $ | $ | $ | $ | $ |
| Total | $ 1,408.00 | $ 182.00 | $ 1,590.00 | $ | $ | $ 200.00 | $ 1,608.00 |

*(Option 2 column marked "Not Applicable")*

If the month-to-month rent increase over the preceding 12-month period exceeds 7% plus the consumer price index, Owner/Agent is exempt as follows:

☐ The first certificate of occupancy for the dwelling unit was issued less than 15 years prior to the date of this notice:
Date of certificate of occupancy was _____
DATE

☐ The dwelling unit is regulated or certified as affordable housing by a federal, state or local government and the change in rent: (A) Does not increase the tenant's portion of the rent; or (B) Is required by program eligibility requirements or by a change in the tenant's income.

Additional information:

If you do not wish to renew your lease, please submit your notice to vacate in writing, at least 30-days before last day of tenancy.

The following additional terms will be incorporated into your Rental Agreement upon your renewal:

Pet Rent: $35, Late fee: $150, Lockout fee: $150

*Any current utility billing agreement will remain in effect unless specific changes are listed above.

**If renter's insurance will be required as an additional term, Oregon law provides that no insurance may be required if: a) the household income of all of the Residents in the Unit is equal to or less than 50 percent of the area median income, adjusted for family size as measured up to a five-person family; or b) if the dwelling unit has been subsidized with public funds, not including housing choice vouchers.

**Resident(s)** may accept a fixed-term option only by signing a new rental agreement. If you do not sign a new fixed-term rental agreement by ___06/15/2023___, on the Effective Date your monthly rent will be the month-to-month rate set forth above as Option 3.
DATE

Please feel free to contact the Owner/Agent if you have any questions or simply to talk about your options. Once again, thank you for your residency and we look forward to hearing from you soon.

Please note, if your total monthly rent has been increased above, this letter serves as the required written 90 days' rent increase notice to you. If your plans involve leaving, please remember that a written 30 day notice to vacate must be served on the Owner/Agent at least 30 days prior to the later of your move-out or lease end date.

☐ Section 8 Housing Choice Voucher

If you currently have a Housing Choice Voucher, and your total monthly rent has been increased above, this letter serves as the required rent increase notice to you and a copy has been mailed to the housing authority.

☐ This Notice has been served personally at least 91 days prior to the Effective Date OR

☐ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first class mail at least 91 days prior to the Effective Date OR

☐ This Notice has been served by first class mail at least 94 days prior to the Effective Date.

City of Portland: If the dwelling unit is located within the City of Portland, attach form M170 (Notice of City of Portland Renter Additional Protections).

OWNER/AGENT X _(signature)_

ADDRESS __7710-B NE Vancouver Mall Drive__

__Vancouver, WA 98662__

TELEPHONE __360.892.4000__

EMAIL __greshampark@tmgnorthwest.com__

Form M065 OR Copyright © 2021 Multifamily NW; NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 9/9/2021.

**Page 1**   ☐ ON SITE  ☐ RESIDENT  ☐ MAIN OFFICE (IF REQUIRED)   **Exhibit 110**



**OREGON**
# RENEWAL OFFER/
# RENT INCREASE NOTICE

 

**MULTIFAMILY NW**
The Association Promoting Quality Rental Housing

DATE __03/21/2022__  PROPERTY NAME / NUMBER __Gresham Park Apartments__           503.489.5132

RESIDENT NAME(S) __James Jacobson__ _____ _____

UNIT NUMBER __#109B__  STREET ADDRESS __805 NE Kane Dr__

CITY __Gresham__ _____  STATE __OR__  ZIP __97030__

Thank you for your residency. We hope to continue this relationship with you into the future.

☐ Your current fixed-term lease expires on _____.  ☒ You are currently on a month-to-month agreement
We would like to offer you the opportunity to sign a new fixed-term lease with us. Please choose from one of the following options, which will
take effect on __07/01/2022__ ("Effective Date"). Lease term availability will be offered on a first-come, first-served basis.

| CURRENT | | ☐ OPTION 1 (FIXED-TERM) | | | ☐ OPTION 2 (FIXED-TERM) | | | ☐ OPTION 3 (MONTH-TO-MONTH) | |
|---|---|---|---|---|---|---|---|---|---|
| | | Available Term(s) __12__ | | | Available Term(s) _____ | | | | |
| | CHARGE | INCREASE | NEW CHARGE | | INCREASE | NEW CHARGE | | INCREASE | NEW CHARGE |
| Rent | $ 1,195.00 | $ 88.00 | $ 1,283.00 | | $_____ | $_____ | | $ 118.00 | $ 1,313.00 |
| | $_____ | $_____ | $_____ | | $_____ | $_____ | | $_____ | $_____ |
| Pet Rent | $_____ | $_____ | $_____ | | $_____ | $_____ | | $_____ | $_____ |
| Parking Rent | $_____ | $_____ | $_____ | | $_____ | $_____ | | $_____ | $_____ |
| Storage Rent | $ 125.00 | $ 0.00 | $ 125.00 | | $_____ | $_____ | | $ 0.00 | $ 125.00 |
| Utilities* | $_____ | $_____ | $_____ | | $_____ | $_____ | | $_____ | $_____ |
| Total | $ 1,320.00 | $ 88.00 | $ 1,408.00 | | $_____ | $_____ | | $ 118.00 | $ 1,438.00 |

*Not Applicable* (handwritten across Option 2)

If the month-to-month rent increase over the preceding 12-month period exceeds 7% plus the consumer price index, Owner/Agent is exempt as follows:
☐ The first certificate of occupancy for the dwelling unit was issued less than 15 years prior to the date of this notice:
Date of certificate of occupancy was _____
☐ The dwelling unit is regulated or certified as affordable housing by a federal, state or local government and the change in rent: (A) Does
not increase the tenant's portion of the rent; or (B) is required by program eligibility requirements or by a change in the tenant's income.

Additional information:

If you do not wish to renew your lease, please submit your notice to vacate in writing, at least 30-days before last day of tenancy.

The following additional terms will be incorporated into your Rental Agreement upon your renewal:

Pet Rent: $35, Late fee: $150, Lockout fee: $150

*Any current utility billing agreement will remain in effect unless specific changes are listed above.

**If renter's insurance will be required as an additional term, Oregon law provides that no insurance may be required if: a) the household income
of all of the Residents in the Unit is equal to or less than 50 percent of the area median income, adjusted for family size as measured up to a
five-person family; or b) if the dwelling unit has been subsidized with public funds, not including housing choice vouchers.

**Resident(s) may accept a fixed-term option only by signing a new rental agreement. If you do not sign a new fixed-term rental agreement
by __08/28/2022__, on the Effective Date your monthly rent will be the month-to-month rate set forth above as Option 3.
Please feel free to contact the Owner/Agent if you have any questions or simply want to talk about your options. Once again, thank you for your
residency and we look forward to hearing from you soon.

Please note, if your total monthly rent has been increased above, this letter serves as the required written 90 days' rent increase notice to you.
If your plans involve leaving, please remember that a written 30 day notice to vacate must be served on the Owner/Agent at least 30 days prior
to the later of your move-out or lease end date.

☐ Section 8 Housing Choice Voucher
If you currently have a Housing Choice Voucher, and your total monthly rent has been increased above, this letter serves as the required rent
increase notice to you and a copy has been mailed to the housing authority.
☐ This Notice has been served personally at least 91 days prior to the Effective Date OR
☒ If written Rental Agreement allows, this Notice has been served by posting on the main entrance
door of the dwelling unit and mailed first class mail at least 91 days prior to the Effective Date OR
☐ This Notice has been served by first class mail at least 94 days prior to the Effective Date.

City of Portland: If the dwelling unit is located within
the City of Portland, attach form M170 (Notice of City of
Portland Renter Additional Protections).

OWNER/AGENT X _~signature~_

ADDRESS __7710-B NE Vancouver Mall Drive__

__Vancouver, WA 98662__

TELEPHONE __360.892.4000__

EMAIL __greshampark@tmgnorthwest.com__

☐ ON SITE   ☐ RESIDENT   ☐ MAIN OFFICE (IF REQUIRED)

Form M095 OR Copyright © 2021 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 9/9/2021.

# RENTAL AGREEMENT

☐ Move In ☐ Renewal ☐ Month-to-Month Tenancy ☐ Fixe    m Lease
☐ Transfer from _____



Date of Rental Agreement: ___08/09/2019___
(when the Rental Agreement is filled out)    *This is a binding document. Read carefully before signing.*

## Moving In — General Information

**1. PARTIES.** This Rental Agreement (sometimes referred to as the "lease") is entered into by and between you, the Resident(s) *(list all people signing the Rental Agreement):* __James Jacobson__

_____

_____

_____

_____

_____

_____

and us, the Landlord: __Gresham Park__

_____

_____

_____

*(name of apartment community or title holder).* You've agreed to rent Apartment No. ___109B___ at __805 NE__
__Kane Dr #109B__
_____
__Gresham__
*(street address)* in
*(city),* Oregon, ___97030___
*(zip code)* for use as a private residence only, and not for any commercial use. Further, the premises shall not be used in any manner for any business or commercial purposes which involves customers or clients coming to or entering the Premises, or delivery of goods to or from the Premises. The terms "you" and "your" refer to all Residents listed above. The terms "we", "us", and "our" refer to the Landlord listed above (or any of Landlord's successors in interest or assigns). Written or electronic notice to or from our managers, employees or other agents constitutes notice to or from us. If anyone else has guaranteed performance of this Rental Agreement, a separate Rental Agreement Guaranty for each guarantor is attached.

Landlord's designated address for the receipt of service of notices is:
__805 NE Kane Dr__
__Gresham, OR 97030__

_____

**2. OCCUPANTS.** The dwelling will be occupied only by the Resident(s) set forth above and *(list all other occupants not signing the Rental Agreement):*

_____

_____

_____

_____

_____

_____

No one else may occupy the dwelling. Resident(s) and occupant(s) not listed above must not stay in the dwelling for more than ___14___ consecutive days (two days, if not filled in) without Landlord's prior written consent, and no more than twice that many days in any one month, whether or not consecutive. For purposes of this paragraph, a person shall be deemed to be staying in the dwelling if that person is present on the premises for a substantial amount of time, whether day or night, and whether during consecutive hours or not. Long term guests, repeated guests, live-in guests, live-in sitters, and visiting family members are not exempt from this paragraph.

Resident shall notify Landlord of any absence in excess of seven (7) days, no later than the first day of said absence.

**3. TERM.** ☒ Lease; ☐ Month-to-Month Tenancy. If the "Lease" box is checked then the initial term of the Rental Agreement shall commence on the ___9th___ day of ___August___ ___2019___, and shall end at midnight (the end of the day) on the ___8th___ day of ___August___ ___2020___.

**First Year of Occupancy / Fixed Term Lease:** If the "Lease" box is checked and the natural expiration date of the fixed term lease falls within the first year of occupancy, then Resident shall serve upon Owner/Agent no less than 30 days' notice of intent to vacate the premises upon the lease's natural expiration date. If Resident fails to provide said notice, Owner/Agent may pursue any damages allowed by any applicable law.

**After First Year of Occupancy / Fixed Term Lease:** If (but only if) the specified ending date of the foregoing lease term falls after the first year of occupancy, then this Rental Agreement will automatically become a month-to-month tenancy upon the expiration of the fixed term, unless (a) The Owner/Agent and Resident agree to a new fixed term tenancy; (b) the Resident gives the Owner/Agent notice in writing not less than 30 days prior to the specified ending date for the fixed term or the date designated in the notice for the termination of the tenancy, whichever is later; or (c) the Owner/Agent terminates the tenancy in accordance with applicable law based upon a qualifying landlord reason.

**Month-to-Month:** If the "Month-to-Month" box is checked, then this Rental Agreement shall consist of a month-to-month tenancy, and, in each event, the following termination rights shall apply. In the event either party desires to terminate the tenancy without cause: (a) either party may terminate the tenancy by giving the other at least 30 days' written notice (or such longer notice as may be required by state law, whichever is longer) to terminate during the first year of occupancy; (b) Resident may terminate the tenancy by giving the Owner/Agent 30 days' written notice to terminate; and (c) Owner/Agent may otherwise terminate the tenancy pursuant to applicable law based upon a qualifying landlord reason.

**First Year of Occupancy:** "First year of occupancy" is defined as all periods in which all of the current Residents have resided in the dwelling unit for one year or less.

**Preservation of Termination Rights:** Any termination rights set forth herein are in addition to, and not in limitation of, any other termination rights either party may have.

**4. SECURITY DEPOSIT.** Unless modified by Addendum(s), the total security deposit to be paid at the time of execution of this Rental Agreement for all Residents for the dwelling is $___1195.00___ and said amount shall be due on or before the date this Rental Agreement is signed.

**5. KEYS AND FURNITURE.** You will be provided ___2___ dwelling key(s), ___1___ mailbox key(s), and _____ other access devices for _____
Your dwelling will be *(check one):* ☐ furnished or ☒ unfurnished.

**6. RENT, LATE CHARGES, AND RETURNED CHECK CHARGES.** Unless modified by Addendum(s), you will pay $___1195.00___ per month for rent, payable in advance and without demand:
☒ at the on-site manager's office, or
☒ at our online payment site, or
☐ at _____
_____

If online payments are allowed by Landlord, Landlord shall have the right to terminate Resident's ability to make online payments at any time, and for any reason, including, without limitation, any changes in Landlord's method for receiving payments, Landlord's desire to prevent partial payments. If rent is due at the time of move-in, it is described below in the list of applicable charges.

Prorated rent of $___886.61___ is due for the remainder of the *(check one):* ☒ 1st month or ☐ 2nd month. and shall be paid on or before _____. There after you must pay your rent on or before the 1st day of each month (due date).

*Exhibit F3*

If this Rental Agreement consists r        se, and converts to a month-
to-month tenancy upon expiration          .ease term, then the monthly
rent rate shall automatically increase $    0.00    per
month during the month-to-month period (in the event Landlord
has not served a valid notice of rent increase), or shall increase to
an amount set forth in any valid notice of rent increase served upon
Resident(s) by Landlord, regardless of the date of service of said
notice of rent increase, whichever is greater. This paragraph shall
not limit, and shall be in addition to, any other rent increase rights
that may exist under any applicable law. In the event the parties
execute a new Rental Agreement, containing new rent amounts, the
new Rental Agreement shall control (commencing immediately upon
expiration of the lease term).

Cash is not an acceptable method of payment for rent (or any other
debts to Landlord) without Landlord's prior written permission.
Residents must not withhold or offset rent, unless authorized by
statute. Landlord may, at its sole option, require, at any time, with
or without cause, that Residents pay all rent and other sums via
certified check, cashier's check, money order, or one monthly check
rather than multiple checks. At our discretion, we may convert any
and all checks via the Automated Clearing House (ACH) system for
the purposes of collecting payment. Rent is not considered accepted,
if the payment/ACH is rejected, does not clear, or is stopped for any
reason. If you don't pay all rent on or before the end of the fourth
(4th) day of the rental period, then you must pay a late charge of
$  100.00 . Said late charge shall automatically become due
and payable on the fifth (5th) day of the monthly rental period,
without notice or demand from Owner/Agent to Resident. In the
event resident pays any sums to Landlord via check or electronic
payment, and that payment is returned for nonsufficient funds, then
Resident shall pay to Landlord the sum of $  37.00  ($35.00
if left blank) for each returned check or returned electronic payment,
plus an amount equal to any amount that a bank has charged the
Landlord for processing the dishonored check. If you don't pay rent
on time, you'll be delinquent and all remedies under this Rental
Agreement will be authorized. We'll also have all other remedies
for such violation.

**LIST OF APPLICABLE CHARGES:**

- **RENTS:**

| | |
|---|---|
| • Rent Due at Move-in/Renewal: | $ |
| • Second Rent Payment: | $ 1195.00 |
| • Monthly Stated Rent: | $ 1195.00 |
| • Additional Rent (Pet): | $ 25.00 |
| • Additional Rent (Other): | $ |
| _____ | $ |

- **DEPOSITS:**

| | |
|---|---|
| • Total Security Deposit: | $ |
| • Additional Security Deposit (Pet): | $ |
| • Execution Deposit: | $ |
| • Other Security Deposits (Describe): | $ |
| _____ | $ |

- **FEES:**

| | |
|---|---|
| • Early Termination Fee: (1.5 times the monthly rent if left blank. If not applicable, insert "0.") | $ 1792.50 |
| • Dishonored Check Fee: ($35.00, if left blank) plus any charges bank imposes on Landlord | $ 37.00 |
| • Smoke Alarm/Carbon Monoxide Alarm Tampering Fee: | $ 250.00 |
| • Noncompliance Fees (not to exceed $50.00 for a second noncompliance, or $50.00 plus five percent of the monthly rent amount, for a third or subsequent noncompliance. The following noncompliance fees are only for second violations. Additional noncompliance fees may be due for third or subsequent noncompliances. See paragraph 24 - Resident Noncompliance Fee for calculation of third or subsequent noncompliances) | |
| • Late Payment of a Utility: | $ |
| • Failure to Clean Pet/Animal Waste: | $ 50.00 |
| • Failure to Clean Rubbish/Garbage: | $ 50.00 |
| • Parking Violations or Other Improper use of Vehicle: | $ 50.00 |
| • Smoking in Clearly Designated Nonsmoking Unit or Area of Premises: | $ 50.00 |

| | |
|---|---|
| • Unauthorized Pet Fe    Paragraph 24 - Resident Noncomplia...  ee): | $ 50.00 |
| • Keeping on the Premises an Unauthorized Pet Capable of Causing Damage to Persons or Property. | |
| • Late Charge (Late Rent Payment Fee) | $ 100.00 |
| • Failing to comply with rules prohibiting smoking in a clearly designated nonsmoking unit or area of the premises: | $ 50.00 |
| • Other Fees (Describe): | |
| _____ | $ |
| _____ | $ |

- **OTHER MONTHLY CHARGES (Describe):**

| | |
|---|---|
| _____ | $ |
| _____ | $ |

**Application of Payments:** Payments received by Residents during
the tenancy shall be applied in the following order:
(a) Outstanding rent from prior rental periods;
(b) Rent for the current rental period;
(c) Utility or service charges;
(d) Late rent payment charges; and
(e) Fees or charges owed by the tenant under ORS 90.302 or other
fees or charges related to damage claims or other claims against
the Resident.

**Timing of Payments:** All monthly charges shall be deemed due on
the first day of each rental period, unless a different due date is
designated herein.

**Third Party Payments:** Landlord has the absolute right to refuse
to accept any payment from any person or entity other than the
Resident(s), unless Landlord is required by law to accept said
payment.

**Processing Fees:** Landlord shall be entitled to charge to Resident(s)
all processing fees charged to Landlord by a credit card company
and passed through to the Resident for the use of a credit card by
the tenant to make a payment when:
(a) the credit card company allows processing fees to be passed
through to the credit card holder; and
(b) Landlord allows Resident(s) to pay in cash or by check.

**HOA Assessments:** Landlord shall be allowed to pass through, and
charge, HOA assessments to Resident(s), if:
(a) the assessments are imposed by the association on the Landlord,
(b) the Landlord owns the dwelling unit within the association,
(c) the assessments are imposed by the association on any person
for expenses related to moving into or out of a unit located within
the association; and
(d) the Landlord gives a copy of the assessment the Landlord receives
from the association to the Resident before or at the time the
Landlord charges the Resident.

7.  **UTILITIES.** We'll pay for the following items, if checked:
☐ water  ☐ gas  ☐ electricity  ☐ master antenna.
☐ wastewater  ☐ trash  ☐ cable TV
☐ other _____

You'll pay for all other utilities, related deposits, and any charges
(including, without limitation, any public service charge that has
been billed by a utility or service provider to the Landlord for utility
or service provided directly, or for a public service provided
indirectly, to the Resident's dwelling unit or to a common area
available to the Resident as part of the tenancy), permissible fees,
or services on such utilities. You must pay all utility charges as and
when due, and not allow your utility payments to fall into default.
You shall not allow utilities to be disconnected—including
disconnection for not paying your bills—until your tenancy ends
and you have vacated the premises. Cable services are not guaranteed.
Cable services may be reduced or eliminated, at Landlord's sole
discretion during the tenancy. Any reduction or elimination of cable
services shall not constitute a default hereof. Utilities may be used
only for customary and normal Residential household purposes and
must not be wasted. If your electricity is ever interrupted, you must
use only battery-operated lighting. If any utilities are submetered
for the dwelling, or prorated by an allocation formula, we will include
an Addendum with this Rental Agreement in compliance with
applicable laws.

*Exhibit F3*

**8. INSURANCE.** Renter's liability insurance (choose one) ☒ is ☐ is not required. If renter's liability insurance is required, then Resident shall obtain and maintain throughout your tenancy, including any renewal periods and/or lease extensions, at all time during tenancy renter's liability insurance with an amount of coverage of $ __100000.00__ ($100,000 per occurrence, if left blank). Resident(s) shall provide documentation either (a) that Resident(s) have named Landlord as an interested party on the Resident's renter's liability insurance policy authorizing the insurer to notify Landlord of (i) cancellation or nonrenewal of the policy; (ii) reduction of policy coverage; or (iii) removal of Landlord as an interested party; or (b) on a periodic basis related to the coverage period of the renter's liability insurance policy or more frequently if Landlord reasonably believes that the insurance policy is no longer in effect, that Resident(s) maintain the renter's liability insurance. If this rental agreement is, or becomes, a month-to-month tenancy, then Landlord may amend this agreement during the month-to-month tenancy to require renter's liability insurance after giving the Resident at least 30 days' written notice of the requirement. If Resident does not obtain renter's liability insurance within the 30-day period: (a) Landlord may terminate the tenancy pursuant to ORS 90.392; and (b) Resident may cure the cause of the termination as provided by ORS 90.392 by obtaining insurance. Resident shall provide documentation that Resident maintain the renter's liability insurance on a periodic basis related to the coverage period of the renter's liability insurance policy or more frequently if Landlord reasonably believes that the insurance policy is no longer in effect. Pursuant to Oregon law, "a landlord may require that a tenant obtain or maintain renter's liability insurance if the landlord obtains and maintains comparable liability insurance and provides documentation to any tenant who requests the documentation, orally or in writing. The landlord may provide documentation to a tenant in person, by mail or by posting in a common area or office. The documentation may consist of a current certificate of coverage." Neither Landlord nor Resident shall make unreasonable demands that have the effect of harassing the other with regard to providing documentation of insurance coverage. Landlord may not: (a) require that Resident obtain renter's liability insurance from a particular insurer; (b) require that Resident name the Landlord as an additional insured or as having any other special status on the Resident's renter's liability insurance policy; (c) require that Resident waive the insurer's subrogation rights; or (d) make a claim against Resident's renter's liability insurance unless: (i) the claim is for

damages or costs for which the tenant is legally liable and not for damages or costs which result from ordinary wear and tear, acts of God or the conduct of Landlord; (ii) the claim is greater than the security deposit of Resident, if any; and (iii) Landlord provides a copy of the claim to Resident contemporaneous with filing the claim with the insurer.

Landlord will not require Resident(s) to obtain or maintain renter's liability insurance if the household income of the Resident(s) is equal to or less than 50 percent of the area median income, adjusted for family size as measured up to a five-person family, as determined by the State Housing Council based on information from the United States Department of Housing and Urban Development. Landlord will not require Resident(s) to obtain or maintain renter's liability insurance if the dwelling unit of the tenant has been subsidized with public funds: (a) including federal or state tax credits, federal block grants authorized in the HOME Investment Partnerships Act under Title II of the Cranston-Gonzales National Affordable Housing Act, as amended, or the Community Development Block Grant program authorized in the Housing and Community Development Act of 1974, as amended, and tax-exempt bonds. (b) Not including tenant-based federal rent subsidy payments under the Housing Choice Voucher Program authorized by 42 U.S.C. 1437f or any other local, state or federal rental housing assistance.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move into your apartment.

You may at any time ask us to change or rekey locks or latches during the lease term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

---

## Special Provisions and "What If" Clauses

**10. SPECIAL PROVISIONS.** The following special provisions and any Addendum(s) or written rules furnished to you at or before signing are incorporated herein and will supersede any conflicting provisions of this Rental Agreement.

_____

_____

_____

_____

_____

_____

_____

_See any additional special provisions._

**11. EARLY MOVE-OUT; EARLY TERMINATION FEE.**

An early termination fee ☒ does ☐ does not apply.

(a) If this rental agreement consists of a fixed term lease, and Landlord has checked the box stating that the early termination fee does not apply, and Resident fails to fulfill the term of the lease for any reason, then Landlord shall be entitled to pursue any and all default remedies, including damages, allowed by law. Said default remedies and damage claims shall include without limitation, a right to procure (i) repayment of any concessions granted to Resident, (ii) any concessions given to any replacement tenant as an inducement to procure said replacement tenant; (iii) rent through the end of the day immediately preceding the commencement of a new tenancy with a new tenant or the natural lease expiration date set forth in this Rental Agreement, whichever is earlier; (iv) any rent losses arising out of re-letting the premises to a replacement tenant at a lesser rent rate than that set forth in this Rental Agreement; and (v) all expenses associated with obtaining a new tenant and re-renting the premises, including, without limitation, all advertising and administrative expenses.

(b) If the early termination fee box has been checked by Landlord, and the early termination fee therefore does apply, then Landlord may charge tenant an early termination fee of $ __1792.50__ (one-and-one-half times the monthly rent if left blank) if Resident fails to fulfill the term of the Lease for any reason, except as prohibited by law. Said early termination

fee shall be due and payable to Landlord upon the earlier of Resident's service upon Landlord of a notice of intent to terminate the tenancy, or the date upon which the Landlord first knew or should have known of Resident's abandonment or relinquishment of the premises. In addition to said early termination fee, Resident shall pay to Landlord (i) all rent, fees, and charges owed to Landlord through the date Landlord knew or should have known of Resident's abandonment or relinquishment of the premises; (ii) an amount sufficient to repair or replace all damage to the premises and/or common areas exceeding normal wear and tear; (iii) an amount equal to any concessions* granted to Resident; and (iv) interest thereon at the maximum permissible statutory prejudgment interest rate from the date the debt first arose. (*The parties expressly agree that any concessions granted to Resident were granted expressly contingent upon Resident fulfilling the term of the Lease and that, although said concessions may be spread throughout the lease term, are not fully vested and/or earned unless Resident fulfills the entire term of the Lease. The parties further agree that any concession repayment does not constitute payment of a fee.)

If the early termination fee provision(s) do not apply, then Landlord retains all rights, and damage claims, granted to Landlord by operation of law.

**12. REIMBURSEMENT.** You must promptly reimburse Landlord for all loss, damage, government fines, or cost of repairs or service in the premises, common areas, or any other portion of the apartment community due to a violation of the Rental Agreement and/or Addendum(s), improper use, negligence, recklessness, intentional conduct, and/or violation of any law by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from your or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including

**Exhibit F3**

advance payment, for repairs ⌐ hich you're liable. Landlord's delay in demanding sums you . all not constitute a waiver if Landlord's right to demand or seek the same.

**13. PROPERTY LEFT IN DWELLING.** For purposes of this section, "dwelling" excludes common areas but includes interior living areas and exterior patios, balconies, and garages and storerooms for your exclusive use. If you (a) have abandoned, (b) surrendered, or (c) were forcibly removed from your dwelling, then Landlord may peacefully enter the dwelling and, subject to procedures required by state statute, store and/or dispose of your property. Except as otherwise set forth in any applicable law, Landlord is not liable for casualty loss, damage or theft for property removed, stored and/ or disposed of pursuant to this section.

**14. RENT INCREASES AND CHANGES TO RENTAL AGREEMENT.** If this Rental Agreement consists of a fixed term lease, then no rent increases shall occur before the initial lease term expires, without the express written consent of Resident. However, (a) Landlord may make other changes to the rental agreement terms or conditions, to the extent permitted by law, and (b) the parties may agree to changes during the lease term via a written Addendum or Amendment signed by the parties. Nothing contained herein shall prohibit Landlord from serving any notice of rent increase or rule change during a lease term, so long as said rent increase or rule change only takes effect after expiration of the lease term. Nothing set forth herein shall limit Landlord's right to increase rent in accordance with any applicable law.

**15. DELAY OF OCCUPANCY.** If occupancy is or will be delayed due to construction, repairs, cleaning, or a previous Resident's holding over, then we're not responsible for the delay. The Rental Agreement will remain in force subject to: (a) abatement of rent on a daily basis

during delay; and (b) y ⌐ ight to terminate as set forth below. If you do elect to termina ... tenancy in accordance with the rights set forth in this section, then your termination notice must be in writing. After termination, you are entitled only to a refund of deposit(s) and any rent paid. Your rent obligations shall not abate, and you shall not terminate your tenancy under this section, if mere cleaning or repairs don't prevent you from occupying the dwelling.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the dwelling is ready for occupancy, but not later.

(a)  If we give written notice to any of you when or after the initial term as set forth in paragraph 3 (Term)—and the notice states that occupancy has been delayed because of construction or a previous Resident's holding over, and that the dwelling will be ready on a specific date—you may terminate the Rental Agreement by serving written notice of intent to terminate upon Landlord within 3 days of your receiving the notice, but not later.

(b)  If we give written notice to any of you before the initial term as set forth in paragraph 3 (Term), and the notice states that construction delay is expected and that the dwelling will be ready for you to occupy on a specific date, then you may terminate the Rental Agreement by serving written notice of intent to terminate upon Landlord within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in paragraph 3 (Term) for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**16. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, you expressly authorize us to provide the same.

## While You're Living in the Dwelling

**17. COMMUNITY POLICIES OR RULES.** Resident and Resident's guests and occupants must comply with any written rules and community policies, including instructions for the use and care of common areas and other property. Any rules, regulations, terms or conditions set forth in any Addendum are incorporated herein by reference. Landlord's rules and regulations are considered part of this Rental Agreement. Landlord may make reasonable changes to written rules in accordance with applicable laws.

**18. LIMITATIONS ON CONDUCT.** The dwelling and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash, rubbish, filth and debris must be removed and disposed of at least weekly (or more frequently, if appropriate) in appropriate receptacles in accordance with local ordinances. Passageways may be used for entry or exit only, and shall not be used to store any personal property. You agree to keep all passageways and common areas free of obstructions and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with all applicable rules, regulations, laws and posted signs. Glass containers are prohibited in all common areas. Residents, occupants, and guests shall not (a) use or burn candles, kerosene lamps, or any form of petroleum or carbon burning heaters without Landlord's prior written approval; (b) cook on balconies or outside; and/or (c) solicit business or contributions. Conducting any kind of business (including, without limitation, child care services and/or any type of rental of the premises to third parties, including, without limitation, Airbnb and Vacation Rental By Owner (VRBO) rentals) in your dwelling or in the apartment community is prohibited. (Notwithstanding the foregoing prohibition, Resident may conduct any lawful business conducted "at home" by computer, mail, or telephone if customers, clients, patients, or other business associates do not come to the dwelling or common areas for business purposes.) Landlord may regulate: (a) the use of patios, balconies, and porches; (b) the conduct of furniture movers and delivery persons; and/or (c) recreational activities in common areas. Resident shall be liable to Landlord for damage caused by Resident, guests or occupants.

Residents, occupants, and guests shall not interfere with the Landlord's management of the property. Residents, occupants and guests shall not verbally or physically threaten, harass, intimidate, assault, batter, abuse, yell at, scream at, solicit sexual acts from, offer sexual acts to, or otherwise display any loud, offensive or lewd behavior to or before, the Landlord, Owner, and/or persons representing and/or assisting the Landlord or Owner, including, without limitation, employees, agents, contractors, subcontractors, repair or maintenance personnel.

You shall notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any Resident or occupant occupying your premises has registered, or does register as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

We may exclude from the dwelling community guests or others who, in our judgment, have been violating the law, violating this Rental Agreement or any dwelling rules, or disturbing other Residents, neighbors, visitors, or Landlord or Landlord's agents. We may also exclude from any outside area or common area any person who refuses to show photo identification or refuses to identify himself or herself as a Resident, occupant, or guest of a specific Resident in the community. If Landlord has (a) evicted a person; (b) told that person that he/she is not allowed on the property or common areas, and/or (c) informed Resident that said person is not allowed to enter in, on or upon Resident's dwelling unit or any common area, then Resident is prohibited from inviting, and/or allowing, said person in, into, on or onto the dwelling and/or any common area. If after notice to you, you allow any excluded person to enter, remain in, and/or occupy your dwelling unit and/or any common area, garage or storage space, said allowance shall constitute a material breach of this Rental Agreement and shall provide a valid basis for terminating your tenancy.

The Landlord, Owner and Owner's agents retain control over any common areas of the premises for the purposes of enforcing state trespass laws and shall be the "person in charge" for that purpose as that phrase is defined in ORS 164.205(5). Common areas shall include, without limitation, any locations shared by Residents, such as laundry rooms, courtyards, hallways between dwellings, building entryways, and parking lots. This clause may not apply on property where there are no areas commonly shared by multiple Tenants (e.g., most single family detached dwellings).

Delivering, mailing and/or sending unreasonable, and/or an unreasonable number of letters, e-mails, texts and/or other communications to Landlord shall constitute interference with Landlord's management of the property.

Neither Resident nor any guest of Resident shall operate any drone or drone-like apparatus anywhere in, on or over the premises and/or common areas.

Resident shall not enter into and/or remove any items from any dumpster, garbage receptacle, trash receptacle, and/or recycling receptacle that is/are located in any common area and controlled by the landlord and/or any trash/garbage/recycling removal company. "Dumpster diving" is prohibited.

*Exhibit F3*

**19. PROHIBITED CONDUCT.** You ~ occupants or guests, or the guests of any occupants, may nc ge in the following activities: behaving in a loud, drunk, into...cated, or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, quiet use and enjoyment, or convenience of others (including our agents and employees) in or near the dwelling community; discriminating against other tenants or Residents; disrupting Landlord's business operations; manufacturing, delivering, or possessing any controlled substance with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the dwelling community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the dwelling community; injuring our reputation by making bad faith allegations against us to others; and violating any applicable laws. Do not throw, toss or drop any objects or liquids from any balconies, landings, decks, windows, or elevate walkways, and do not allow water to overflow plant containers.

**20. HUMIDITY AND MOISTURE CONTROL.** Resident is responsible for keeping the dwelling clean and habitable, including maintaining proper ventilation of the dwelling and preventing conditions that are conducive to mold growth. Resident shall control humidity and moisture levels in the dwelling through proper operation of the heating, ventilation, and air conditioning (HVAC) system and all plumbing fixtures. Resident shall leave sufficient space between any wall and all beds, furniture and other personal property, so as to allow adequate airflow between the walls and said items. Resident shall use reasonable care to cause all windows and other openings in the premises to be closed in the event of rain. Resident shall notify Landlord immediately upon discovery of any water leaks, standing water, condensation on interior surfaces, high humidity, musty smells, and visible mold anywhere in the premises. Resident shall immediately wipe up any visible moisture located on walls, windows, windowsills, and other surfaces. Landlord is not responsible for damages that result from Resident's failure to maintain proper humidity and moisture controls or failure to timely notify Landlord of problems relating to water, moisture, humidity or mold.

**21. ELECTRONICS DISPOSAL.** Do not place and/or dispose of any electronic items (televisions, monitors, computers and laptops) in the trash. Those items must be recycled.

**22. PARKING; VEHICLE USE.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. No back in parking is allowed anywhere on the property. We may have unauthorized, improperly or illegally parked vehicles towed under an appropriate statute or in conformity with Oregon law. A vehicle is unauthorized, improperly or illegally parked in the dwelling community if it:

(1) has a flat tire or other condition rendering it inoperable;
(2) is on jacks, blocks or has wheel(s) missing;
(3) has no current license plate or no current registration and/ or inspection sticker;
(4) takes up more than one parking space;
(5) belongs to a Resident or occupant who has surrendered or abandoned the dwelling;
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in a space marked for manager, staff, or guest at the office;
(8) blocks another vehicle from exiting;
(9) is parked in a fire lane or designated "no parking" area;
(10) is parked in a space marked for other Resident(s) or unit(s);
(11) is parked on the grass, sidewalk, or patio;
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space.

**23. EXTERMINATION.** The parties acknowledge that bedbugs are becoming increasingly prevalent in the Pacific Northwest and that many insects or vermin may only appear in the premises as a result of Resident's conduct (including, without limitation, failure to maintain a clean living environment and/or allowing infested personal property to enter into the premises). Resident further acknowledges that Resident's conduct can prevent or limit the presence of bedbugs, insects, and vermin. Resident expressly acknowledges that he/she has had inspected the Premises prior to executing this Rental Agreement and expressly represents that he/she has not observed any visible evidence of the presence or infestation of bedbugs, insects or vermin in the Premises. Resident agrees to maintain the Premises in a manner that prevents the occurrence of an infestation of bedbugs, insects and vermin. If

Resident allows individu~ or items carrying bedbugs, insects or vermin into the apartm has repeated infestations that cannot be traced or attributab. .o the malfeasance or nonfeasance of Landlord, such will be deemed damage to the unit by the Resident and Resident shall be responsible for the cost of treatment to their dwelling, personal belongings and surrounding units as necessary to eradicate the infestation. Noncompliance with this section shall constitute a material breach of the Rental Agreement. In the event of any such breach, Landlord may seek injunctive relief, damages, and/or terminate Resident's tenancy.

Unless prohibited by statute or otherwise stated in the Rental Agreement, Landlord may conduct extermination operations in Resident's dwelling several times a year and as needed to prevent insect infestation. Landlord will notify Residents in advance of extermination in Residents' Dwelling, and give Resident instructions for the preparation of the Dwelling and safe contact with insecticides. Residents will be responsible to prepare the Dwelling for extermination in accordance with Landlord's instructions. If Residents are unprepared for a scheduled treatment date, Landlord may, at Landlord's sole option, prepare Residents' dwelling and charge Residents accordingly. In the event Residents discover any infestation, or evidence thereof, Residents shall request extermination treatments in addition to those regularly provided by Landlord. Residents shall, in all instances, perform the tasks required by Landlord and/or Landlord's agent in relating to the interior extermination so as to ensure the safety and effectiveness of the extermination. These tasks will include, but are not limited to, the following: (a) clean all cabinets, drawers and closets in kitchen and pantry; (b) remove animals or place them in bedrooms, and notify Owner of such placement; (c) if roaches have been seen in closets, remove contents from shelves and floor; (d) remove infants and young children from the Dwelling; (e) remove chain locks or other types of obstruction on day of service; (f) remove and/or dispose of personal property; and (g) cover fish tanks and turn off their air pumps. After treatment, do not wipe out cabinets or closets for the recommended period of time.

**24. RESIDENT NONCOMPLIANCE FEE.** Landlord may charge Resident(s) noncompliance fees, as set forth on page 1, for any of the following acts of noncompliance: (a) late payment of a utility or service charge that the tenant owes the landlord as described in ORS 90.315; (b) failure to clean up pet, service animal, assistance animal or companion animal waste from a part of the premises other than the dwelling unit; (c) failure to clean up garbage, rubbish and other waste from a part of the premises other than the dwelling unit; (d) parking violations; (e) the improper use of vehicles within the premises; (f) smoking in a clearly designated nonsmoking unit or area of the premises; and/or (g) keeping on the premises an unauthorized pet capable of causing damage to persons or property, as described in ORS 90.405. Landlord may only serve a Warning Notice of Violation for the first act of noncompliance. However, in the event of a second noncompliance, that occurs within one year after Landlord's serving of a Warning Notice of Violation, the Landlord may charge Resident(s) those noncompliance fees set forth on page 1. The amount of the fee for a third or subsequent noncompliance shall be $ ___50.00___ ($50 plus five percent of the rent payment for the current rental period, if left blank).

Notwithstanding the foregoing noncompliance fee schedule, when Resident(s) keep an unauthorized pet capable of causing damage to persons or premises in their Premises, the fee for a second or any subsequent noncompliance under this section shall be $ ___50.00___ ($250, if not filled in). Landlord may assess this noncompliance fee (for keeping an unauthorized pet) 48 hours after serving a warning notice to the Resident(s).

Nothing set forth in this paragraph shall limit any other rights or remedies Landlord may have under any applicable law.

**25. MILITARY PERSONNEL CLAUSE.** Military personnel (as defined under state or federal law) may terminate the Resident's tenancy if you enlist or are drafted or commissioned and on active duty in the U.S. Armed Forces. You may also terminate the Resident's tenancy if:

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and
(2) you (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, or (iii) are relieved or released from active duty.

After you deliver to us your written termination notice, the Resident's tenancy will be terminated under this military clause 30 days after

© 2019, National Apartment Association, Inc. • 3/2019, Oregon

*Exhibit F3*

the date on which your next ren    'yment is due. You must furnish us a copy of your military orc    uch as permanent change-of-station orders, call-up orders, or deployment orders or written notification from your commanding officer. Military permission for base housing does not constitute change-of-station orders. After you move-out, we'll return your security deposit, less lawful deductions. For the purposes of this Rental Agreement, orders described in (2) above will only release the Resident who qualifies under (1) and (2) above and receives the orders during the Rental Agreement term and such Resident's spouse or legal dependents living in the Resident's household. A co-Resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10 (Special Provisions), you represent when signing this Rental Agreement that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Rental Agreement term; and (3) the term of your enlistment or obligation will not end before the Rental Agreement term ends. Even if you are entitled to terminate the Resident's tenancy under this paragraph, liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 34 (Default By Resident). You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

**26. RESIDENT SAFETY AND PROPERTY LOSS.** Resident, occupants and guests must exercise due care for their own and others' safety and security, especially in the use of smoke detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other access control devices.

**Smoke/Carbon Monoxide Detectors.** Landlord shall provide Tenant with a working smoke detector(s), and, if required, a carbon monoxide detector(s) including working batteries, at the time tenancy commences. Tenant shall test any detector so provided at least once every six months, replace batteries as needed, notify Landlord in writing of any operating deficiencies, and shall not remove or tamper with any properly functioning detector or remove working batteries from the same. If the detector ceases operating, Tenant will immediately notify Landlord. Tenant will keep the detector's case clean and free from dirt, debris, and infestation. If the unit is so equipped, Tenant shall not tamper with, obstruct, damage or otherwise alter or modify the indoor fire sprinkler system. Tenant shall not obstruct, damage or otherwise alter or modify any smoke and/or carbon monoxide detector. Removal of or tampering with a smoke detector and/or carbon monoxide detector will result, without limitation, in a $250.00 fee and/or a Lease violation notice.

**Casualty Loss.** We're not liable to any Resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (we suggest at least 50 degrees). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Rental Agreement, you will indemnify us and hold us harmless from all liability for those services.

Notwithstanding the contents of the preceding paragraph, Resident(s) shall not be responsible for damage that results from: (a) acts of God; or (b) conduct by a perpetrator relating to domestic violence, sexual assault or stalking. For damage that results from conduct by a perpetrator relating to domestic violence, sexual assault or stalking, Landlord may require a tenant to provide verification that the Resident or a member of the Resident's household is a victim of domestic violence, sexual assault or stalking as provided by ORS 90.453.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of

crime on the property    agree that no access control devices or security measures can    inate all crime and that you will not rely upon any provided access control devices or security measures as a warranty or guarantee of any kind. We disclaim any express or implied warranties of security. We're not responsible for obtaining criminal-history checks on any Residents, occupants, guests, or contractors in the dwelling community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

You may keep a fire extinguisher in your unit if you choose. However, to be effective tools, they should be replaced prior to the expiration date and/or prior to the pressure gauge reading becoming too low. If you choose to keep your own extinguisher, please note it is your responsibility to have the extinguisher replaced or recharged prior to the expiration date. Landlord shall not be responsible, in any manner, for your fire extinguisher. It is your responsibility to ensure that all combustible and/or potentially combustible items are kept at least twelve inches (12") away from all heat sources in your premises, and as recommended by fire officials, in order to prevent a potential fire hazard.

**27. CONDITION OF THE PREMISES AND ALTERATIONS.** Resident agrees at the commencement of this Rental Agreement that the premises are in good, clean, habitable condition and repair, are devoid of any substantial habitability defects, and that Resident has not observed any visible evidence or the presence of infestation of bedbugs, insects or vermin. Resident acknowledges receipt in duplicate of the Inventory and Condition Form. Resident shall complete and return said Inventory & Condition form to Landlord, in the time period required by Landlord, noting thereon the condition of the dwelling, including any defects and requests for cleaning, maintenance and repairs. Said Inventory and Condition Form, when returned to Landlord, shall be signed by the Resident(s) and one copy shall be retained by Landlord. The Resident(s) may have one copy countersigned by Landlord which is to be retained by the Resident(s). If the form is not returned to Landlord and properly countersigned within said period, it shall be conclusively presumed that the premises were in good condition and repair, fully habitable, and clean at the time the Resident(s) occupied the same.

Residents acknowledge that maintenance, remodeling, updating, repairs, improvements and/or renovations (herein referred to, collectively, as "projects") are commonplace with some rental property(ies). The nature, extent, timing of, and/or need for such projects may arise out of many factors, including, without limitation, the age of the Premises, the condition of the Premises, and/or Landlord's desire to modify and/or improve the Premises. Although Landlord is not herein representing that any such projects are, or will be, necessary at any given point in time, Residents agree to fully cooperate with, and not to impede, Landlord's (and Landlord's agent's, contractor's, subcontractor's, and/or any/all other persons or entities assisting and/or working on behalf of Landlord) efforts to undertake any phase of any such projects, whether related to inspections, bidding, access, and/or any other facet of any such projects. Residents further agree to adhere to, and comply with, any and all instructions reasonably related to Landlord's undertaking and/or performance of such projects, including, without limitation, instructions relating, in any manner, to Residents moving and/or storing personal property, covering personal property, and/or moving pets and/or animals into certain rooms within the premises. If Residents fail to cooperate with said instructions, and/or impair/impede the projects in any manner, Residents shall be deemed in default hereof.

**28. USE OF PREMISES.** You must use customary diligence in maintaining the dwelling and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise modify, alter or damage the dwelling, Premises or common areas. Waterbeds are expressly prohibited anywhere on the premises, without the prior written consent of Landlord and proof of proper insurance. No holes or stickers are allowed inside or outside the dwelling. However, Landlord will permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, carbon monoxide detector, fire sprinkler head,

*Exhibit F3*

furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you in___ we'll supply light bulbs for fixtures we furnish, including ext___ or fixtures operated from inside the dwelling; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the dwelling (whether or not we consent) become ours unless we agree otherwise in writing.

You may keep a fire extinguisher in your unit if you choose. However, to be effective tools, they should be replaced prior to the expiration date and/or prior to the pressure gauge reading becoming too low. If you choose to keep your own extinguisher, please note it is your responsibility to have the extinguisher replaced or recharged prior to the expiration date. Landlord shall not be responsible, in any manner, for your fire extinguisher.

**29. REQUESTS, REPAIRS, AND MALFUNCTIONS.** Please provide requests for nonemergency repairs or malfunctions in writing or through the tenant portal. In case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical problems (including shorts), crime in progress, and other conditions that pose a hazard to property, health, or safety, Resident must notify Landlord immediately via the most effective expeditious manner available. Landlord's written notes on Resident's oral request do not constitute a written request from you.

Landlord may modify, remove or install utility lines, equipment or appurtenances serving the dwelling unit. Premises or common areas, as and when Landlord deems appropriate. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage renders the premises substantially uninhabitable, or that performance of needed repairs poses a danger to you, then we may terminate this Rental Agreement by giving you written notice.

**30. PETS AND ANIMALS.** No pets or animals (including without limitation, mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the dwelling or dwelling community unless (a) we've so authorized in writing, or (b) an animal is lawfully present as an assistance or service animal. If we allow pet or animal, you must sign a separate Pet Addendum or Assistance or Service Animal Addendum. A Pet Addendum (but not an Assistance or Service Animal Addendum) may require you to pay additional deposits, rents or other charges. A pet deposit shall be considered a general security deposit. You must remove any pet or animal from the property which enters in violation of the Rental Agreement. We will authorize assistance or service animals

for you, your guests, and occupants pursuant to the parameters and guidelines established ___ the Fair Housing Act and the HUD regulatory guidelines, a___ y applicable state laws, if any. (We may require written verification for the need for an assistance or service animal, unless the disability is obvious.) You must not feed, or leave food available for, stray or wild animals.

Any failure to comply with this section shall be considered a default of this Rental Agreement. If you or any guest or occupant violates pet or animal restrictions (with or without your knowledge), you'll be subject to charges, damages, termination, eviction, and other remedies provided in this Rental Agreement and by law. If a pet or animal has been in the dwelling at any time during the term of your occupancy (with or without your consent), we may charge you for defleaing, deodorizing, and shampooing. We may remove an unauthorized pet or animal in accordance with applicable law, in addition to exercising any remedies we may have pursuant to this Rental Agreement and any applicable Addendum.

**31. WHEN WE MAY ENTER.** Landlord may enter the premises without the consent of the Resident (a) in the case of an emergency; or, (b) pursuant to a court order. Except in the case of an emergency or if it is impractical to do so, Landlord shall give Resident at least twenty-four (24) hours' actual notice of intent to enter the premises in order to inspect the premises; make necessary or agreed repairs; decorate, alter, or improve the premises; supply necessary or agreed services; or exhibit the premises to prospective or actual purchasers, mortgagees, Residents, workmen, or contractors. Resident's failure to allow Landlord access to the premises in accordance with the foregoing provisions shall constitute a material breach of this Rental Agreement. Resident expressly agrees that demands or requests by Resident to reschedule entries that are scheduled to occur following service of a twenty-four (24) hours' notice of intent to enter may be construed as a denial of Landlord's lawful right to enter. The foregoing provisions shall not apply if Resident has abandoned or surrendered the premises. For purposes of this paragraph, "Landlord" shall include Landlord's agents, employees, contractors, and subcontractors. Nothing contained herein shall prohibit or reduce any other right of entry Landlord has or may have.

**32. MULTIPLE RESIDENTS OR OCCUPANTS.** Each Resident is jointly and severally liable for all lease obligations. If Resident or any guest or occupant violates the Rental Agreement or rules, all Residents are considered to have violated the Rental Agreement. Our requests and notices (including sale notices) to any Resident constitute notice to all Residents and occupants. Notices and requests from any Resident or occupant (including notices of termination, repair requests, and entry permissions) constitute notice from all Residents. In eviction suits, each Resident is considered the agent of all other Residents in the dwelling for service of process. Security-deposit refunds and deduction itemizations of multiple Residents will comply with paragraph 45 (Security Deposit Deductions and Other Charges) or any applicable law.

---

## Replacements

**33. REPLACEMENTS AND SUBLETTING.** Replacing a Resident, subletting, assignment, or granting a right or license to occupy is allowed only when we expressly consent in writing. If departing or remaining Residents find a replacement Resident acceptable to Landlord before the departing Resident moves out, and Landlord consents to the replacement, in writing, then, as a condition precedent to any change in the composition of the household, Landlord may:

(a) require all parties to execute one or more documents setting forth the terms and conditions associated with any change in the tenancy and who has the right to occupy the Premises;

(b) require new or remaining Resident(s) to execute a new Rental Agreement;

(c) charge remaining Resident(s) all expenses associated with rekeying locks; and/or

(d) require the payment of an additional security deposit.

**Procedures for Replacement.** If we approve a replacement Resident, then, at our option:

(a) the replacement Resident must sign this Rental Agreement with or without an increase in the total security deposit; or

(b) the remaining and replacement Residents must sign an entirely new Rental Agreement.

Unless we agree otherwise in writing, your security deposit will automatically transfer to the remaining and/or replacement Resident(s) as of the date we approve of any changes. The departing Resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original lease term unless we agree otherwise in writing—even if a new Rental Agreement is signed.

Resident shall not participate, in any manner, in any endeavor or enterprise, commercial or otherwise, pursuant to which Resident offers to allow, and/or actually allows, any Non-Resident to occupy any portion of Resident's dwelling unit, for any period of time whatsoever, for any compensation or consideration whatsoever (including, without limitation, the payment of money and/or for trade and/or for barter of other goods, services, or property occupancy rights). Resident shall not represent or advertise, whether verbally, in writing, or in any electronic media or medium whatsoever, that Resident's dwelling is available for occupancy, for any period of time whatsoever, by any Non-Resident, if said occupancy is, or will be, in exchange for any compensation or consideration whatsoever (including, without limitation, the payment of money and/or trade and/or for barter of other goods, services, or property occupancy rights).

*Exhibit F3*

## Default and Remedies

**34. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Rental Agreement including but not limited to the following violations: (a) you don't pay rent or other amounts that you owe when due; (b) you or any guest or occupant violates the dwelling rules, applicable laws, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (c) you abandon the dwelling; (d) you give incorrect or false answers in a rental application; (e) you or any occupant is arrested, convicted, given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (f) any illegal drugs or paraphernalia are found in your dwelling; (g) you or any guest or occupant engages in any of the prohibited conduct described in paragraph 19 (Prohibited Conduct); or (h) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Landlord Remedies.** If you fail to pay amounts due under this Lease Contract, or otherwise breach this Lease Contract, we (at our option), may choose to terminate the tenancy of you and your occupants (if any). If only one Resident has breached the Lease Contract, and if we elect to terminate the tenancy of only the breaching Resident, the remaining residents agree to cooperate with us in terminating the tenancy of the breaching Resident. If we are able to locate a replacement Resident, the remaining Residents agree to cooperate with us in placing a replacement Resident in the Apartment, and will execute a Lease amendment to add the replacement Resident as an authorized Co-Resident.

**Disclaimer:** If there is a breach of this Lease Contract and the law does not allow us to evict only the breaching resident, all co-residents may be evicted if only one resident breaches this Lease Contract.

Any default in the performance of any Addendum to this Rental Agreement shall constitute a material default in the Resident's performance of the parties' Rental Agreement. If there is a co-signer/guarantor for this Rental Agreement, the termination and/or unenforceability of said guaranty shall constitute a material breach of this Rental Agreement. Further, the death, incapacity or incompetency of the guarantor shall constitute a material breach of this Rental Agreement.

**35. HOLDOVER.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing).

**36. LEASE RENEWAL WHEN A BREACH OR DEFAULT HAS OCCURRED.** In the event that you enter into a subsequent Lease prior to the expiration of this Lease and you breach or otherwise commit a default under this Lease, We may, at our sole and absolute discretion, terminate the subsequent Lease, even if the subsequent lease term has yet to commence. We may terminate said subsequent Lease by sending you written notice of our desire to terminate said subsequent Lease.

## General Clauses

**37. MISCELLANEOUS.** Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Rental Agreement or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default.

All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. Neither an invalid clause nor the omission of initials on any page invalidates this Rental Agreement. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.

**NOTICES.**

(a) All notices required by this Rental Agreement and/or Oregon law to be in writing shall be served personally, by first class mail, or by first class mail and attachment.

(b) If served by first class mail and attachment from Landlord to Resident(s), the notice shall be deemed served on the day it is both mailed by first class mail addressed to the Resident(s) at the Premises and attached in a secure manner to the main entrance to that portion of the Premises of which Resident(s) has possession.

(c) If served by first class mail and attachment from Resident(s) to Landlord, the notice shall be deemed served on the day it is both (i) mailed by first class mail addressed to the Landlord at the address designated on page 1 of this Rental Agreement as Landlord's address for the receipt of service of notices, and (ii) attached in a secure manner to the main entrance to the address designated on page 1 of this Rental Agreement as Landlord's address for the receipt of service of notices. If the Landlord's designated address for the receipt of service of notices is located inside a building, then the Resident(s) shall be entitled to attach the notice to the main entrance to that building. Landlord is authorized to accept notices on behalf of the Owner of the Premises.

(d) Resident(s) shall notify the Landlord in writing of any post office box or telephone number used, or to be used, by the Resident(s). In the event this information changes, Resident(s) shall immediately provide updated information to Landlord.

Actual notice may be used, whenever deemed permissible by any applicable law. In addition to provisions of ORS 90.150, actual notice includes notice by e-mail from the Landlord to the Tenant at the following email address:

And from the Tenant to the Landlord at the following e-mail address: **greshamparkmanager@affinityproperty.com**

**38. CONSENT TO SOLICATION.** You hereby expressly authorize us, our representative(s), and any collection agency or debt collector (hereinafter collectively referred to as the "Authorized Entities") to communicate with you. The communication may be made through any method for any reason related to amounts due and owing under this Rental Agreement. You authorize any and all of the communication methods even if you will incur a fee or a cost to receive such communications. You further promise to immediately notify the Authorized Entities if any telephone number or email address or other unique electronic identifier or mode that you provided to any Authorized Entity changes or is no longer used by you.

**39. PAYMENTS.** All sums due to the Landlord for items not listed in the Rental Agreement as recurring payments are due immediately upon our demand.

**40. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Rental Agreement or a renewal of this Rental Agreement, a member of both the National Apartment Association and any affiliated state and local dwelling (multi-housing) associations for the area where the dwelling is located.

**41. OBLIGATION TO VACATE.** If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with paragraph 3 (Term), and we accept such written notice, then you are required to vacate the Apartment and remove all of your personal property therefrom at the expiration of the lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

© 2019, National Apartment Association, Inc. - 3/2019, Oregon

*Exhibit F3*

## When Moving Out

**42. MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representative advance written notice of your intention to vacate as required by paragraph 3 (Term). If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Rental Agreement. You will still be liable for the entire Rental Agreement term if you move out early except if you are able to terminate your tenancy under the statutory rights explained under paragraphs 11 or 25 (Early Move-Out; Early Termination Fee or the Military Personnel Clause). All notices to vacate must be in writing and must provide the date by which you intend to vacate. If the notice does not comply with the time requirements of paragraph 3 (Terms), even if you move by the last date in the lease term, you will be responsible for an additional month's rent. If you fail to vacate by the date set forth in your notice, you will automatically and immediately become a holdover tenant pursuant to state law, and we will have all remedies available under this Rental Agreement and state law.

**43. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we both agree in writing. You're prohibited from applying any security deposit to rent without Landlord's prior consent. You must thoroughly clean the dwelling, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**44. MOVE-OUT INSPECTION.** You should, but are not required to, meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**45. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable, without limitation, for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, misconduct, accident, or abuse, including, without limitation, stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the dwelling, premises or common areas and is missing; replacing dead or missing smoke-detectors, carbon monoxide detectors, and/or

their batteries; expenses associated with repairs or cleaning due to excess wear and tear; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the dwelling when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized access control devices or alarm systems; agreed early termination charges; packing, removing, or storing property removed or stored under paragraph 15 (Property Left in Dwelling); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; pet-related and animal-related charges under paragraphs 6 (Rent, Late Charges, and Returned Check Charges) and 30 (Pets and Animals); government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors/carbon monoxide detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; charges for owner/manager's time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees incurred, including upon appeal; and other sums due under this Rental Agreement.

You'll be liable to us for: (a) charges for replacing all keys and access devices referenced in paragraph 5 (Keys and Furniture) if you fail to return them on or before your actual move-out date; and (b) an early termination fee, if applicable.

In the event Landlord returns any security deposit(s) to Resident(s), Landlord shall be entitled to do so with one check payable to all Resident(s).

**46. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** Deposit Return and Forwarding Address. You are required to provide us written notice of your forwarding address, on or before termination of this Rental Agreement. We'll return your security deposit refund (less lawful deductions), together with an itemized accounting, if there are any deductions, no later than thirty one (31) days after the tenancy terminates and Resident delivers possession. If you fail to provide us with your forwarding address in writing, as required above, we will process the unclaimed security deposit in accordance with state law.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and give us the immediate right to: enter, take possession of, clean up, make repairs in, and relet the premises. Surrender, abandonment, and judicial eviction affect your rights to personal property left in the dwelling.

## Miscellaneous

**47. SMOKING POLICY.** The terms "smoke" and "smoking," when used herein, includes, without limitation, inhaling, exhaling, breathing, holding, possessing, and/or carrying any lighted cigar, cigarette, or other tobacco product or similar lighted product in any manner or in any form. The terms "smoke" and "smoking," when used herein, further include, without limitation, any form of aerosolizing and/or vaporizing (a.k.a. "vaping") any inhalant.

Landlord hereby discloses to Residents, and Residents hereby acknowledge receipt of disclosure of, the following policies regarding smoking (check applicable boxes):

☒ The entire property is smoke free and subject to the following terms and conditions:

(1) **Purpose of No-Smoking Policy.** The parties desire to mitigate (i) the increased maintenance, cleaning and redecorating costs from smoking; (ii) the increased risk of fire from smoking; and (iii) the higher costs of fire insurance for a non-smoke free building.

(2) **Smoke-Free Property.** Resident agrees and acknowledges that the premises to be occupied by Resident and members of Resident's household, including, without limitation, any patios, porches, balconies, yards, storage facilities and/or parking facilities have been designated as a smoke-free living environment. Resident and members of Resident's household shall not smoke anywhere in, on, adjacent to, or near the premises rented by Resident, and/or in any common areas (including, without limitation, any patios, porches, balconies, yards, storage facilities and/or parking facilities, recreational facilities and/or offices), nor shall Resident permit any guest or visitor under the control of Resident to do so.

(3) **Resident to Promote No-Smoking Policy and to Alert Landlord of Violations.** Resident shall inform Resident's guests of the no-smoking policy. Further, Resident shall

promptly give Landlord written statement of any incident where they have knowledge of the policy being violated.

(4) **Landlord to Promote No-Smoking Policy.** Landlord may post no-smoking signs at entrances and exits, common areas, hallways, and in conspicuous places "in close proximity to" the smoke-free building. However, any failure to post signs, and/or any subsequent removal of damage of/to any signs, whether by Landlord or third parties, shall not constitute a breach hereof, and shall not modify, impair or reduce Resident's obligations to comply with this Agreement.

☐ Only the following portions of the property are smoke free:
☐ The premises occupied by Residents, including, without limitation, any dwelling unit, and any patios, porches, balconies, yards, storage facilities and common areas within 25 feet of any dwelling unit.
☐ Other (describe): _____
_____
_____

☐ Smoking is permitted in the following areas:
☐ The premises occupied by Residents, excluding any adjacent/ adjoining patios, porches, balconies, yards and/or storage facilities.
☐ The premises occupied by Residents, including any adjacent/ adjoining patios, porches, balconies, yards and/or storage facilities.
☐ Anywhere
☐ Other (describe): _____
_____
_____
_____

*Exhibit F3*

**Common Terms.** The following terms and conditions shall apply to all Residents, regardless of the above described smoking policy(ies):

**(1) Landlord Not a Guarantor of Smoke-Free Environment.** Resident acknowledges that any adoption of any rules regarding smoke-free living environment, and any efforts to designate the Premises as smoke-free, do not make the Landlord or any of its agents the guarantor of Resident's health or of the smoke-free condition of the Resident's Dwelling, Premises, and/or any common areas. However, Landlord shall use reasonable efforts to enforce any applicable smoke-free terms of its Rental Agreements. Landlord is not required to take steps in response to smoking unless Landlord has actual knowledge of said smoking or has been given written notice of said smoking.

**(2) Other Residents are Third-Party Beneficiaries of Resident's Agreement.** Resident agrees that the other Residents of the Premises are the third-party beneficiaries of any applicable smoke-free rules. (In layman's terms, this means that Resident's commitments in the Agreement are made to the other Residents as well as to the Landlord). Although a Resident may seek an injunction against another Resident to prohibit smoking or for damages, a Resident does not have the right to evict another Resident. Any action between Residents shall not create any presumption that the Landlord breached this Agreement.

**(3) Material Breach.** A material breach of this Agreement by Resident, and/or guests within Resident's control, shall be grounds for immediate termination of the Rental Agreement by the Landlord. Resident shall be responsible for all damages and costs associated with termination of the Rental Agreement due to material breach. Notwithstanding any smoking policy(ies) contained herein, (a) Resident agrees that any damages or cleaning due to smoking or smoke-related damages required to bring the unit back to a rentable condition do not constitute ordinary or reasonable wear and tear and the Resident shall be liable for the costs thereof; and (b) any permissible smoking (if permitted) shall not interfere with any other tenants' quiet use and enjoyment of their premises.

Landlord may charge Resident a $_____50.00_____ ($250.00 if left blank) noncompliance fee for a second or any subsequent failure to comply with rules prohibiting smoking in a clearly designated nonsmoking unit or area of the premises.

**(4) Disclaimer by Landlord.** Resident acknowledges that any adoption of smoke-free living rules, and any efforts to designate the Premises as smoke-free does not in any way change the standard of care that the Landlord or managing agent would have to a Resident's household to render any buildings and/or premises designated as smoke-free any safer, more habitable, or improved in terms of air quality standards than any other rental premises. Landlord specifically disclaims any implied or express warranties that the building, Premises, or Resident's Dwelling will have any higher or improved air quality standards than any other rental property. Landlord cannot and does not warrant or promise that the Premises or Dwelling will be free from second-hand smoke, and failure of the Landlord to enforce the provisions in this Agreement shall not in any way be construed as a default by the Landlord of its obligations under the Rental Agreement and shall not give rise to any reduction in the rent amount of any unit. Resident acknowledges the Landlord's ability to police, monitor, or enforce this Agreement is dependent in significant part on voluntary compliance by Resident and Resident's guests. Residents with respiratory ailments, allergies, or any other physical or mental condition relating to smoke are put on notice that Landlord does not assume any higher duty of care to enforce this Agreement than any of the other Landlord's obligations under the Rental

**48.ROOFS.** Resident(s) hereby acknowledges that roofs are not designed and should not be used for walking upon nor to have any objects of any kind placed upon them at any time, and that Resident(s) understands that any damages resulting from the violation of this requirement including, but not limited to water leaks through, or damage to the roof, will be the sole responsibility of the Resident(s). Damages will be repaired and Resident(s), in accordance with the Rental Agreement, will be held responsible for, and will promptly pay for the cost of repair.

**49.WINDOWS.** Open and partially open windows present a potential risk of injury or death to all residents, occupants and their guests. Neither window glass, window screens, nor any other portion of windows are intended to support a person's weight or prevent a person from falling from or out of an open window. Resident shall be solely responsible for preventing anyone from (a) sitting on/in any window; (b) standing in any window; (c) playing in/around windows; (d) participating in any activity which may result in leaning on, against or through any window, and/or colliding with the same; (e) participating in any activity that could result in any person or animal falling through or out any window. Window stops and other devices that restrict a window from opening are not provided by the Landlord because of the dangers associated with fire and the ability of occupants to escape. If Resident(s) wish to install such devices, Resident(s) must receive written permission from Landlord and accept full responsibility for the safe use of such devices. Resident(s) must never block windows in a way that would prevent exit in the event of a fire.

Window cords (including, without limitation, cords used to raise and lower curtains and blinds) and blinds pose a potential entrapment hazard which could result in injury or death. Accordingly, take all necessary precautions so as to ensure that no one becomes entangled, entrapped, or ensnared in any such cords or blinds.

**50.CARPET.** Before Resident took possession of the premises, Landlord or its agent cleaned the carpets, if any, by use of a machine specifically designed for cleaning or shampooing carpets, or replaced the carpet. If any, after the previous tenancy or the most recent significant use of the carpet and before Resident took possession. Landlord may deduct the cost of carpet cleaning regardless of whether Resident cleans the carpet before Resident delivers possession.

**51.AMENITIES.** Resident amenities, including, without limitation, any pools, fitness rooms, clubhouses, hot tubs, spas, business centers, computer rooms, and/or recreational facilities (hereafter, "Amenities") are made available to Resident as a revocable privilege and license, and not as a contractual right. Said privilege is made expressly contingent upon Resident's compliance with all terms and conditions contained within the parties' Rental Agreement, together with any Addendums thereto, and with any posted rules or regulations. Said privilege may be revoked by Landlord at any time for any lawful reason, including, without limitation, Resident's breach of any of the terms, conditions, rules or regulations contained in the parties' Rental Agreement, Addendums, and/or rules/regulations. Landlord further reserves the right to set the permissible times for use of any Amenities and to change the character of, limit the use of, and/or terminate any Amenities, without notice, based upon the needs of Landlord, and no such limitation, change or termination shall constitute a breach hereof.

**52.FLOOD PLAIN DISCLOSURE.** This property ☐ is located in the 100 year flood plain ☒ is not located in the 100 year flood plain.

**53.CAMERAS.** Residents acknowledge that video or photographic cameras (hereafter, collectively referred to as "cameras") may be present, and/or may later be installed, at some or all of the gates and in various common areas throughout the community. If cameras are present, or installed on a later date, then any areas within the focal range of the cameras may be electronically recorded, via video-tape or other electronic means. Such surveillance is for the sole purpose of protecting the landlord's real and personal property. Cameras, if installed, are not intended to protect, monitor, provide or give a sense of security to any resident or guest. Landlord may unilaterally terminate the use of any or all such cameras and has no obligation to monitor, or cause to be monitored, any cameras. Landlord shall have no obligation to repair or replace any existing cameras. Neither Residents nor any guests are intended beneficiaries of any use of any cameras. Residents shall not install, temporarily or permanently, and video or photographic camera equipment in, on or upon their premises or common areas, if said equipment is intended to videotape or photograph any common areas or other tenant's Premises.

**54.SCREENING.** Landlord shall be entitled to obtain an updated screening report, thereby "re-screening" Resident, in the following circumstances: (a) Resident requests to transfer to another to another dwelling, within the apartment complex in which the premises are located; (b) the Owner of the premises, or the Owner's property management agent, changes; (c) annually; (d) Resident leaves or a new Resident is approved by Landlord; or (e) for any other valid business purpose. Resident shall reimburse Landlord for all such screening costs, unless said obligation is waived by Landlord or deemed impermissible by any applicable law.

**55.SECTION HEADINGS.** The section headings are inserted herein only for convenience and are not intended to define or limit the scope or intent of any clause.

**56.BINDING EFFECT.** This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of Landlord and Resident.

*Exhibit F3*

**57.SUBORDINATION.** This Agreem        nd shall remain subordinate to any ground lease, mortgage, t        eed, or other encumbrance or security instrument now existing or hereafter to be placed upon the Premises and to any modifications, extensions, replacements and advances in connection therewith. Resident shall attorn to Landlords Lender in the event it obtains possession of the Property through foreclosure or deed in lieu of foreclosure or otherwise, so long as Lender agrees not to disturb the Resident if Resident is not in default under the Rental Agreement.

**58.MIDNIGHT.** Notwithstanding any definitions to the contrary, anytime that the words "midnight," "midnight [the end of the day]," or similar words appear in the Rental Agreement, any addendum, and/or any Notice from one party to the other, the parties expressly agree that "midnight" shall be defined as the end of the day, and not as the beginning of the day. Therefore, by way of example, if a notice of termination ends at "midnight on December 31, 2017" or at "midnight [the end of the day]" on December 31, 2017," said notice shall be deemed to end at the end of the day on December 31, 2017.

**59.NONWAIVER.** Failure of Landlord to insist upon the strict performance of the terms, covenants and conditions herein contained shall not be deemed a waiver of any of Landlord's rights or remedies herein.

**60.SAVINGS AND SEVERABILITY.** In the event that any clause or provision of this Rental Agreement is found to be illegal, invalid or unenforceable under present or future laws, then it is the intention of the parties hereto that the remainder of this Rental Agreement shall not be affected thereby, and it is also the intention of the parties that a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable be inserted in its place.

**61.EMPLOYMENT.** Resident understands and agrees that if, at any time during the tenancy, Resident becomes an employee of Landlord or any managing agent of the Landlord, Resident and all members of Residents household shall be subject to any employment agreement and the terms of any such employment agreement shall control over the terms of this Rental Agreement or lease, including but not limited to terms as to the length of the tenancy or the obligation to vacate the unit after termination of employment. In the event any Resident occupying the premises is an employee of Landlord, then all Residents' right to occupy the premises shall be expressly contingent upon the continuation of the Resident's employment. In the event

the Resident's employm        is terminated, then Landlord may terminate all Resident's r        occupy the premises upon 24 hours written notice.

**62.FAILURE TO VACATE.** Resident(s) agrees that if they fail to vacate by the end of the termination date set forth in any proper notice of termination, then Resident(s) shall become hold over tenants (unlawfully withholding the premises with force) commencing on the first day after the expiration of the date set forth in the termination notice, and that Resident(s) shall be responsible for all losses/damages suffered by Landlord as well as, the losses/damages suffered by any displaced tenants who anticipated taking occupancy at the end of said notice period, including attorney's fees and costs incurred in conjunction with any litigation, including upon appeal.

**63.PROPERTY MANAGER/MANAGEMENT.** In the event the premises is/are managed by a property manager, property management company, or other real estate licensee, then, in the event of any eviction action, Landlord expressly acknowledges and represents that said property manager, property management company, or other real estate licensee shall have the right to procure and receive possession of the premises from tenant, and tenant acknowledges that said property manager, property management company, or other real estate licensee shall have the right to take possession of the premises from Resident(s), in the event Landlord and/or said property manager, property management company, or other real estate licensee succeeds in the eviction action.

**64.ATTORNEY FEES AND COSTS.** In the event of any suit or action to enforce this Rental Agreement and/or to pursue any remedies arising out of either parties' default and/or any applicable law, the prevailing party shall be entitled to all attorney's fees and costs incurred therein, including upon any appeal. Costs shall include, but are not limited to, court costs, legal charges, copying charges, court reporting fees, transcription fees, courier fees, etc.

**65.REMEDIES CUMULATIVE.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**66.ENTIRE AGREEMENT.** This Rental Agreement, together with all Addendums, constitutes the entire agreement of the parties and shall supersede and replace all prior agreements, representations, and/or warranties.

## Originals and Attachments, Additional Rights, and Signatures

**67.ORIGINALS AND ATTACHMENTS.** This Rental Agreement has been executed in multiple originals, with original signatures. We will provide you with a copy of the Rental Agreement. Your copy of the Rental Agreement may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Rental Agreement and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Rental Agreement are binding and hereby incorporated into and made part of the Rental Agreement between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations.

**68.ADDITIONAL RIGHTS.** All of Landlord's rights, set forth within this Agreement, shall be in addition to, and not a limitation of, any other rights Landlord may have, pursuant to any applicable law.

Date form is filled out (same as on top of page 1)

**06/09/2019**

Name and address of locator service (if applicable)

Name and contact information for person to contact in the event of emergency or death of Resident (contact person should be over the age of 18, and must not be an occupant of the premises):

**AL**

If the foregoing blank is not filled in, and Resident previously provided to Landlord the name of a person to contact in the event of an emergency or death (including, without limitation, listing said person in an application), then the name of that person shall be deemed incorporated herein by reference as the person to contact in the event of emergency or death of Resident.

Address and phone number of owner's representative for notice purposes

**805 NE Kane Dr**

**Gresham, OR 97030**
**(503) 489-5132**

*Exhibit F3*

You ___ legally bound by this document. Read it carefully befor ___ sting.

**COMPREHENSION.)** Resident has read and received an executed copy of this Rental Agreement, together with all Addendum(s) hereto. Resident acknowledges and warrants that all blanks have been accurately and completely filled in, unless marked "n/a."

Resident or Residents *(all sign below)*

Date of Signing Rental Agreement

_8/11/2014_

_____    _____

_____    _____

_____    _____

Landlord or Landlord's Representative *(signing on behalf of landlord)*    Date of Signing Rental Agreement

SPECIAL PROVISIONS (CONTINUED FROM PAGE 3) _____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

*Exhibit F3*

**OREGON**
# NOTICE OF
# FOR CAUSE TERMINATION

MULTIFAMILY NW
The Association Promoting Quality Rental Housing

**TMG** | The Management Group
PROPERTY MANAGEMENT SALES 1 LEASING

---

DATE  09/08/2023    PROPERTY NAME / NUMBER  Gresham Park Apartments    503.489.5132

RESIDENT NAME(S)  James Jacobson _____  _____  _____

                                                    *also all other Occupants or persons unknown claiming any right or interest in the Premises.*

UNIT NUMBER  #109B    STREET ADDRESS  805 NE Kane Dr _____

CITY  Gresham _____    STATE  OR    ZIP  97030

---

Pursuant to Oregon landlord-tenant law, you are hereby notified that you are a) in material violation of your Rental Agreement; b) in material violation of the resident duties under ORS 90.325; and/or c) in violation of your obligation to pay rent. The acts or omissions constituting the violations are described as follows (provide specific factual detail for each violation):

The resident is in violation of obligation to pay rent and has an outstanding balance of $1587.93. Includes

Garage rent June 2023 $125.00

June Rent $408.00

Trash (05/01/23-05/31/23) $24.76

Water/Sewer (04/14/23-05/13/23) $48.59

Garage rent July 2023 $125.00

Month-to-Month Premium $18.00

Trash 06/01/23-06/30/23 $26.69

Water/Sewer05/14/23-06/15/23 $49.83

Late fee July 2023 $150.00

Garage rent Aug 2023 $150.00

Month-to-Month Aug $28.00

Trash 07/01/23-07/31/23 $24.81

Water/Sewer 06/16/23-07/16/23 $49.1

Late fee Aug 2023 $150.00

Garage rent Sept 2023 $125.00

LLI Sept 2023 9.50

Rent Sept 2023 $1445.00

Trash 08/01/23-08/31/23 $26.46

Water/sewer 07/17/23-08/14/23 $50.78

Late fee Sept 2023 $150.00

Said conduct is a violation of Section 1 (Rents) of your Rental Agreement which states "Unless another date is set forth above, all monthly charges are due and payable on the first of the month and must be paid on time. If rent is not paid by the end of the 4th day of the rental period a late in the amount stated on this Rental Agreement will be imposed and become due on the 5th day of the rental period and Owner/Agent may require the rent and late fee to be paid by certified check or money order

---

Form M023 OR Copyright © 2023 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)    PAGE 1 OF 2

*Exhibit F5*

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Tenant must pay remaining balance in full on or before expiration date.

_____

If you fail to cure the violations by _____09/22/2023_____*, your Rental Agreement will terminate on the date set forth below. If you timely cure the violations, your Rental Agreement will not terminate. Recurrence of substantially the same act or omission as any violation described above within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

*If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

If this termination notice is based upon a restriction regulating a portable cooling device allowed by law, the date of termination will be extended by one day for each day that there is an extreme heat event for the county of the premises. "Extreme heat event" means a day on which National Weather Service of the National Oceanic and Atmospheric Administration has predicted or indicated that there exists a heat index of extreme caution for the county. Information regarding days with an extreme heat event can be found on the website for the Housing and Community Services Department.

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____, or
                                                                                                              DATE

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first class mail. The termination date is at least 31 days later at 11:59 p.m. on _10-8-25_, or
                                                                                                              DATE

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____.
                                                                                                              DATE

**Owner/Agent: Please note additional service requirements for subsidized residents as listed in "Subsidized Residents Only" section.**

☐ Section 8 Housing Choice Voucher

---

**WARNING NOTICE:** The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

---

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287

---

THANK YOU FOR YOUR COOPERATION

OWNER/AGENT X _____

ADDRESS  7710-B NE Vancouver Mall Drive

Vancouver, WA 98662

TELEPHONE  360.892.4000

EMAIL  greshampark@tmgnorthwest.com

| If the recipient of this document is a veteran of the armed forces, assistance may be available from a county veterans' service officer or community action agency. Contact information for a local county veteran's service officer and community action agency may be obtained by calling a 2-1-1 information service. |

**SUBSIDIZED RESIDENTS SEE DISCLOSURES**

Form M023 OR Copyright © 2023 Multifamily NW* NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

---

## SUBSIDIZED RESIDENTS ONLY

**HUD DISCLOSURES**
If you remain in the leased unit on the date specified for termination, Owner/Agent will enforce the termination only by bringing a judicial action at which time you may present a defense. You have ten (10) days within which to discuss this eviction with Owner/Agent. This 10-day period commences on the earlier of the day this Notice is hand-delivered to your unit or the day after it is mailed. The discussion period does not extend the date for termination. Persons with disabilities have the right to request reasonable accommodation to participate in the hearing process.

**ADDITIONAL SERVICE REQUIREMENTS**
**SECTION 8 VOUCHERS:** Notice served by one of the methods listed above AND copy mailed to Public Housing Agency the same day.
**HUD (PROJECT BASED):** Notice served by one of the methods listed above, AND mailed to Unit, AND
  1. Attempt to serve the Notice personally to any adult answering the door. If unable to do that:
  2. Attempt to slide the Notice through the door (mail slot) or under the door. If unable to do that:
  3. Post the Notice on the door at eye level.

---

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)          FOR CAUSE TERMINATION • PAGE 2 OF 2

*Exhibit F5*

# NOTICE RE: EVICTION FOR NONPAYMENT OF RENT

## THIS IS AN IMPORTANT NOTICE OF WHERE TO GET HELP IF YOU ARE FACING POTENTIAL EVICTION FOR NONPAYMENT

(Spanish) Este formulario está disponible en español en:

(Russian) Бланк этого документа можно получить на русском языке в:

(Vietnamese) Đơn này có bằng tiếng Việt tại:

(Traditional Chinese) 本表格的繁体中文版在:

(Korean) 한국어로 번역된 양식은 다음 웹 싸이트에서 찾을 수 있습니다:

https://www.courts.oregon.gov/forms/Pages/landlord-tenant.aspx

You must comply with deadlines identified in a notice of nonpayment or you risk losing your housing

Rental assistance and support services may be available. Dial 2-1-1 or go to www.211info.org. Find a local service provider at https://www.oregon.gov/ohcs/housing-assistance/pages/emergency-rental-assistance.aspx

Low-income tenants may be able to receive free or low-cost legal advice by contacting a legal aid organization. Go to https://oregonlawhelp.org to find an office near you. The Oregon State Bar provides information about legal assistance programs at www.osbar.org/public

**OJD Official**
(Mar 2023)

*Exhibit F5*



OREGON
# NOTICE OF VIOLATION





DATE __08/17/2021__ PROPERTY NAME / NUMBER __Gresham Park Apartments__

RESIDENT NAME(S) __James Jacobson__

UNIT NUMBER ___#109B___ STREET ADDRESS __805 NE Kane Dr__

CITY __Gresham__                                      STATE __OR__ ZIP ___97030___

---

WARNING: Your Rental Agreement, the rental rules and regulations, and the landlord-tenant laws require all residents to follow basic rules to protect the safety and quiet enjoyment of all residents, prevent damage to property and retain a quality rental community. It has come to our attention that you are not complying with the following:

**NATURE OF VIOLATION** *(check all that apply):*

- [ ] Disturbances
- [ ] Damage to property
- [ ] Unsightly patio/balcony/porch
- [ ] Unit needs to be cleaned
- [ ] Satellite dish
- [ ] Unauthorized window coverings/signs
- [ ] Unauthorized occupant/guest
- [x] Other

Date & Time of Violation: __08/17/2021 around 9:10AM__

Location of Violation: __Parking Lot of Gresham Park ( 805 NE Kane Dr.)__

Describe Violation:

Resident(s) is using two parking spaces to work on their vehicle. These parking spaces do not correspond with the unit and working on vehicles are not allowed.

This is a violation to the rental agreement per section 22: #4 & #10. This is also a violation to the Community Rules Addendum.

Describe Cure:

Tenant must park in their own parking space. Stop working on their vehicle immediately. If the violation continue, per section 24, there could be non-compliance fee assets to the tenant's account.

The violation(s) is/are *(check which applies):*

- [x] a separate and distinct violation
- [ ] a series or group of violations
- [ ] a continuous or ongoing violation

This notice was served on the date set forth above *(check which applies):*

- [ ] Personally on the Resident at _____ (time)
- [x] If the written Rental Agreement allows, posted on the main entrance to the dwelling unit and mailed first class mail
- [ ] Mailed first class mail only

We hope it was simply an oversight on your part that resulted in the violation(s). However, you are required to discontinue the conduct listed above or correct the violation(s) immediately. Failure to discontinue the conduct, or correct the violation(s), or any reoccurrence of the conduct/violation(s) listed above, may result in termination of your tenancy pursuant to ORS 90.392, 90.398, 90.405 or 90.630.

For a continuous or ongoing violation, this notice will remain effective for 12 months and may be renewed with a new warning prior to the end of the 12-month period.

---

WARNING NOTICE: The conduct described above is a violation of your Rental Agreement. Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

THANK YOU FOR YOUR COOPERATION    OWNER/AGENT X _____

ADDRESS __7710-A NE Vancouver Mall Drive__

__Vancouver, WA 98662__

TELEPHONE __(360) 892-4000__

EMAIL _____

[ ] ON SITE   [ ] RESIDENT   [x] MAIN OFFICE (IF REQUIRED)

Form MNV0 OR Copyright © 2019 Multifamily NW: NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 2/2/2019.

*Page 1*                                                                                      *Exhibit F6*

**MULTIFAMILY NW**
The Association Promoting Quality Rental Housing

OREGON
# NOTICE OF VIOLATION





DATE ___08/23/2021___    PROPERTY NAME / NUMBER  Gresham Park Apartments

RESIDENT NAME(S)  James Jacobson

UNIT NUMBER ___#109B___    STREET ADDRESS  805 NE Kane Dr

CITY  Gresham                                                STATE ___OR___    ZIP ___97030___

WARNING: Your Rental Agreement, the rental rules and regulations, and the landlord-tenant laws require all residents to follow basic rules to protect the safety and quiet enjoyment of all residents, prevent damage to property and retain a quality rental community. It has come to our attention that you are not complying with the following:

**NATURE OF VIOLATION** *(check all that apply):*

☐ Disturbances            ☐ Unit needs to be cleaned         ☐ Unauthorized occupant/guest
☐ Damage to property      ☐ Satellite dish                   ☒ Other
☐ Unsightly patio/balcony/porch   ☐ Unauthorized window coverings/signs

Date & Time of Violation:  Sun 8/22/2021 1:54 PM

Location of Violation:  Parking Lot of Gresham Park ( 805 NE Kane Dr.)

Describe Violation:

Resident(s) is using two parking spaces to work on their vehicle. These parking spaces do not correspond with the unit and working on vehicles are not allowed.

This is a violation to the rental agreement per section 22: #4 & #10. This is also a violation to the Community Rules Addendum.

Describe Cure:

Tenant must park in their own parking space. Stop working on their vehicle immediately. If the violation continue, per section 24, there could be non-compliance fee assets to the tenant's account.

The violation(s) is/are *(check which applies):*            This notice was served on the date set forth above *(check which applies):*

☐ a separate and distinct violation                 ☐ Personally on the Resident at _____ *(time)*
☒ a series or group of violations                   ☒ If the written Rental Agreement allows, posted on the main
☐ a continuous or ongoing violation                    entrance to the dwelling unit and mailed first class mail
                                                    ☐ Mailed first class mail only

We hope it was simply an oversight on your part that resulted in the violation(s). However, you are required to discontinue the conduct listed above or correct the violation(s) immediately. Failure to discontinue the conduct, or correct the violation(s), or any reoccurrence of the conduct/violation(s) listed above, may result in termination of your tenancy pursuant to ORS 90.392, 90.398, 90.405 or 90.630.

For a continuous or ongoing violation, this notice will remain effective for 12 months and may be renewed with a new warning prior to the end of the 12-month period.

WARNING NOTICE: The conduct described above is a violation of your Rental Agreement. Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

THANK YOU FOR YOUR COOPERATION            OWNER/AGENT X _____

                                         ADDRESS  7710-A NE Vancouver Mall Drive

                                         Vancouver, WA 98662

                                         TELEPHONE  (360) 892-4000

                                         EMAIL _____

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)

Form M040 OR Copyright © 2018 Multifamily NW; NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/20 9.

*Page 1*                                                      *Exhibit F7*

# OREGON
# RENEWAL OFFER/
# RENT INCREASE NOTICE

**MULTIFAMILY NW**
The Association Promoting Quality Rental Housing





DATE __04/29/2021__    PROPERTY NAME / NUMBER  __Gresham Park Apartments__

RESIDENT NAME(S) __James Jacobson__

UNIT NUMBER ___#109B___    STREET ADDRESS  __805 NE Kane Dr__

CITY  __Gresham__                    STATE  __OR__    ZIP        __97030__

Thank you for your residency. We hope to continue this relationship with you into the future.

☐ Your current fixed-term lease expires on _____. ☒ You are currently on a month-to-month agreement.

We would like to offer you the opportunity to sign a new fixed-term lease with us. Please choose from one of the following options, which will take effect on   __06/01/2021__   ("Effective Date"). **Lease term availability will be offered on a first-come, first-served basis.**

| CURRENT | | | ☐ OPTION 1 (FIXED-TERM) | | | ☐ OPTION 2 (FIXED-TERM) | | | ☐OPTION 3 (MONTH-TO-MONTH) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | CHARGE | Available Term(s) 12 | | | Available Term(s) | | | | | |
| | | | | INCREASE | NEW CHARGE | | INCREASE | NEW CHARGE | | INCREASE | NEW CHARGE |
| Rent | $ | 1,313.00 | $ | 0.00 | $ 1,313.00 | $ | $ | | $ | $ | |
| | $ | | $ | | $ | $ | $ | | $ | $ | |
| Pet Rent | $ | | $ | | $ | $ | $ | | $ | $ | |
| Parking Rent | $ | | $ | | $ | $ | $ | | $ | $ | |
| Storage Rent | $ | | $ | | $ | $ | $ | | $ | $ | |
| Utilities* | $ | | $ | | $ | $ | $ | | $ | $ | |
| Total | $ | 1,313.00 | $ | 0.00 | $ 1,313.00 | $ | $ | | $ | $ | |

*Not Applicable* (Option 2) *Not Applicable* (Option 3)

If the month-to-month rent increase over the preceding 12-month period exceeds 7% plus the consumer price index, Owner/Agent is exempt as follows:

☐ The first certificate of occupancy for the dwelling unit was issued less than 15 years prior to the date of this notice:
Date of certificate of occupancy was _____

☐ Owner is providing reduced rent to Resident as part of the following federal, state or local program or subsidy: _____

Additional information: _____

_____

_____

The following additional terms will be incorporated into your Rental Agreement upon your renewal: _____

_____

_____

*Any current utility billing agreement will remain in effect unless specific changes are listed above.

**If renter's insurance will be required as an additional term, Oregon law provides that no insurance may be required if: a) the household income of all of the Residents in the Unit is equal to or less than 50 percent of the area median income, adjusted for family size as measured up to a five-person family; or b) if the dwelling unit has been subsidized with public funds, not including housing choice vouchers.

**Resident(s) may accept a fixed-term option only by signing a new rental agreement. If you do not sign a new fixed-term rental agreement by** ___05/31/2021___**, on the Effective Date your monthly rent will be the month-to-month rate set forth above as Option 3.**

Please feel free to contact the Owner/Agent if you have any questions or simply want to talk about your options. Once again, thank you for your residency and we look forward to hearing from you soon.

Please note, if your total monthly rent has been increased above, this letter serves as the required written 90 days' rent increase notice to you. If your plans involve leaving, please remember that a written 30 day notice to vacate must be served on the Owner/Agent at least 30 days prior to the later of your move-out or lease end date.

☐ Section 8 Housing Choice Voucher
If you currently have a Housing Choice Voucher, and your total monthly rent has been increased above, this letter serves as the required rent increase notice to you and a copy has been mailed to the housing authority.

☐ This Notice has been served personally at least 91 days prior to the Effective Date **OR**

☐ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first class mail at least 91 days prior to the Effective Date **OR**

☐ This Notice has been served by first class mail at least 94 days prior to the Effective Date.

**City of Portland: If the dwelling unit is located within the City of Portland, attach form M170 (Notice of City of Portland Renter Additional Protections).**

OWNER/AGENT   X __[signature]__

ADDRESS    __7710-A NE Vancouver Mall Drive__

__Vancouver, WA 98662__

TELEPHONE  __(360) 892-4000__

EMAIL  _____

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)

Form M905 OR Copyright © 2021 Multifamily NW; NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 4/19/2021

Exhibit 58



Gresham Park Apartments
805 NE Kane Dr
Gresham, OR 97030

December 31, 2020

Dear Gresham Park Residents:

We would like to introduce our company, TMG Property Services NW (TMG). Our company has been contracted by the property owner to manage Gresham Park Apartments. We strive to make the transition from one manager to another as easy as possible. We look forward to providing you with exceptional management, including prompt maintenance service, as well as maintaining an enjoyable place to live.

Your current lease and payment terms will remain in effect. If you have questions or concerns regarding your apartment, rent, or have a maintenance request please call, text or email me. We will establish new office hours at the property over the next few weeks and I will send out a notification letting you know what hours the office will be open.

Phone Number:  **503.912.6472**
Maintenance Emergency Phone: **833.280.4371**
Email:   **greshampark@tmgnorthwest.com**

**You will receive an email / text to activate your online portal no later than January 4, 2021.** This enables online payments, work orders, communication and signings. If, for any reason, you do not receive your activation alert, please contact me **@ 360.450.1772**

Thank you for your patience during the transition and I hope to meet you soon.

Sincerely,
Sidney Willard, Property Manager
TMG Northwest





December 31, 2020

Dear Gresham Park Resident(s):

We regret to inform you that effective December 31st, 2020, Affinity Property Management will no longer act as the managing agent for Gresham Park Apartments. In accordance with Oregon Real Estate Law, this letter is to inform you that your security deposit will be transferred and will be held by the new ownership group.

The new property management company will be The Management Group, Inc. The new ownership group will be introducing your new management team in the near future and we appreciate your patience through this transition.

Please continue to make your rent payment payable to Gresham Park Apartments and deliver your rent check to the leasing office. Please ensure you stop any recurring payments you may currently have set up. The Management Group, Inc. will be notifying you soon regarding the steps to submit rent and utility payments electronically. If you have any questions, please feel free to contact the office.

We have strived to provide you with a quality home and the highest level of customer service. It has been a pleasure serving your apartment housing needs!

Best,

*Dawn Mendenhall*
Dawn Mendenhall
Property Manager


Lydia Stiles
Portfolio Manager
Affinity Property Management, LLC

*Exhibit F9*



# gresham park
APARTMENTS

## Valued Residents

We will have vendors on site on Tuesday,
1st between 6am-10am cleaning and s...
breezeways. They will not be using vacuu...
other power equipment in order to keep...
minimum. They will make every effort t...
disturbing you.

We appreciate your patience.

# 24-HOUR NOTICE OF INTENT TO ENTER

**TODAY'S DATE:** 12/05/2020

**TO TENANTS:** James Jacobson

**UNIT ADDRESS:** 805 NE Kane Dr #109B , Gresham, OR 97030
**(PREMISES)**

This is to notify you that entry to the premises will be made as follows:

**Entry Information**

    **Entry Date From/To:**    12/07/2020 - 12/21/2020

    **Entry Time:**    9am-5pm

    **For Maintenance and/or Inspection described as follows:**

During the time frame indicated, Creative Contracting will only need full access to your patio space, and will not need entry into your apartment.  Deck construction on the above decks will require that your patio be clear of all items during the stated time frame.

The above is authorize by the landlord to enter upon demand or in the resident's absence for inspection until the report/maintenance is completed.

If this notice is served by mail ONLY, the foregoing dates include a minimum of three (3) additional days to allow for the delivery of the notice, not counting the date of mailing. This notice, if mailed, has been mailed by First Class Mail ONLY (not certified, registered, etc.).

**SERVICE METHOD:**
    [X] Posted on <u>12/05/2020      2PM   </u>.

    [ ] Mailed to tenant via first class mail on _____.

    [ ] Posted and mailed to tenant via first class mail, with a second notice copy attached in a secure
       manner to the main entrance to that portion of the premises of which the tenant has possession, on
       ____.

**LANDLORD/AGENT:** Gresham Park Apartments
**LANDLORD'S/AGENT'S ADDRESS:** 805 NE Kane Dr, Gresham, OR 97030
**LANDLORD'S/AGENT'S TELEPHONE:**    (503) 489-5132

*Exhibit F9*



**gresham park**
A P A R T M E N T S

805 NE Kane Dr, Gresham, OR 97030
503.618.1705
greshamparkmanager@affinityproperty.com

Date of Notice:

Dear Valued Residents in # 109 ,


Gresham Park would like your assistance with the beautification of the community!

We would like to ask that you please remove the item(s) in your front entry way and patio that are in violation with your lease. If you could please have this done within 48 hours we would greatly appreciate it. Patios are not to be used as storage; they are an outdoor extension of your home.

As a reminder, your lease allows you to have well maintained plants and outdoor patio furniture on the back patio, nothing can be stored or placed in the front entry way to your home (this includes plants or décor).
Any additional items are not permitted:

- o  **Under you lease agreement Smoking is NOT permitted on the property.**
- ✓  Patios and balconies must be kept neat and free from clutter: no trash, laundry, furniture (except that specifically designed for outdoor use), dead plants, empty boxes, etc.
- o  If you have plants on your balcony, do not set them on the railing. Unsecured plants can fall and injure people below. Plants must also be alive, we will ask you to remove all dead plants if you have not already.
- o  Bikes cannot be stored on patios.
- ✓  Hanging items (including plants) are not allowed.
- o  Nothing is to be kept in the front entry way of your home.


If the item(s) have not been removed in the above time frame, we will proceed with more drastic lease violation procedures, potentially termination of your lease agreement.

We appreciate your prompt attention and cooperation.


Sincerely,
Gresham Park
Management Team

*Exhibit F9*

*Exhibit F11*



# WARNING

# HIGH CONCENTRAT
# OF OZONE BEING U

# AVOID
# OVEREXPOSU

**ALLOW 2-3 HOURS AFTER MACHINE IS SHUT OF
WINDOWS HAVE BEEN OPENED BEFORE RE-**

**Re-Entry Time:_____**



**OREGON**
# NOTICE OF
# FOR CAUSE TERMINATION



DATE __10/26/2021__ PROPERTY NAME / NUMBER __Gresham Park Apartments__

RESIDENT NAME(S) __James Jacobson__

_also all other Occupants or persons unknown claiming any right or interest in the Premises._

UNIT NUMBER __#109B__ STREET ADDRESS __805 NE Kane Dr__

CITY __Gresham__ STATE __OR__ ZIP __97030__

**Pursuant to Oregon landlord-tenant law, you are hereby notified that you are a) in material violation of your Rental Agreement; b) in material violation of the resident duties under ORS 90.325; and/or c) in violation of your obligation to pay rent. The acts or omissions constituting the violations are described as follows (provide specific factual detail for each violation):**

You have been seen on several occasions with your vehicle inside your garage and passageway on 10/19/2021, 10/21/2021,

10/22/2021, 10/25/2021, and 10/26/2021.

Per your lease agreement, Community Policies, Rules and Regulations Addendum #7 - Fire Hazards, No person shall block or

obstruct any exit, aisle, passageway, hallway or stairway leading to or from any structure.

☐ ON SITE ☐ RESIDENT ☐ MAIN OFFICE (IF REQUIRED)                    PAGE 1 OF 2

Form M023 OR Copyright © 2020 Multifamily NW®. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 4/22/2021.

*Exhibit F12*

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Park your vehicle inside the garage or your assigned parking space.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

If you fail to cure the violations by __**10/26/2021**__ *, your Rental Agreement will terminate on the date set forth below. If you timely cure the violations, your Rental Agreement will not terminate. Recurrence of substantially the same act or omission as any violation described above within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

*If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____, **or**

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first class mail. The termination date is at least 31 days later at 11:59 p.m. on __11/30/21__. **or**

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____

**Owner/Agent: Please note additional service requirements for subsidized residents as listed in "Subsidized Residents Only" section.**

☐ Section 8 Housing Choice Voucher

**WARNING NOTICE:** The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287

THANK YOU FOR YOUR COOPERATION

OWNER/AGENT  X _____

ADDRESS  7710-B NE Vancouver Mall Drive

Vancouver, WA 98662

TELEPHONE  360.892.4000

EMAIL  greshampark@tmgnorthwest.com

If the recipient of this document is a veteran of the armed forces, assistance may be available from a county veterans' service officer or community action agency. Contact information for a local county veteran's service officer and community action agency may be obtained by calling a 2-1-1 information service.

**SUBSIDIZED RESIDENTS SEE DISCLOSURES**

## SUBSIDIZED RESIDENTS ONLY

**HUD DISCLOSURES**

If you remain in the leased unit on the date specified for termination, Owner/Agent will enforce the termination only by bringing a judicial action at which time you may present a defense. You have ten (10) days within which to discuss this eviction with Owner/Agent. This 10-day period commences on the earlier of the day this Notice is hand-delivered to your unit or the day after it is mailed. The discussion period does not extend the date for termination. Persons with disabilities have the right to request reasonable accommodation to participate in the hearing process.

**ADDITIONAL SERVICE REQUIREMENTS**

**SECTION 8 VOUCHERS:** Notice served by one of the methods listed above AND copy mailed to Public Housing Agency the same day.

**HUD (PROJECT BASED):** Notice served by one of the methods listed above, AND mailed to Unit, AND

1. Attempt to serve the Notice personally to any adult answering the door. If unable to do that:
2. Attempt to slide the Notice through the door (mail slot) or under the door. If unable to do that:
3. Post the Notice on the door at eye level.

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)          FOR CAUSE TERMINATION • PAGE 2 OF 2

*Exhibit F12*

Form M023 OR Copyright © 2020 Multifamily NW! NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 4/22/2021.

## THIS IS AN IMPORTANT NOTICE ABOUT YOUR RIGHTS
## TO PROTECTION AGAINST EVICTION FOR NONPAYMENT.

For information in Spanish, Korean, Russian, Vietnamese or Chinese, go to the Judicial Department website at www.courts.oregon.gov.

Until February 28, 2022, if you give your landlord documentation that you have applied for rental assistance at or before your first appearance in court, you may be temporarily protected from eviction for nonpayment. Documentation may be made by any reasonable method, including by sending a copy or photograph of the documentation by electronic mail or text message. "Documentation" includes electronic mail, a screenshot or other written or electronic documentation verifying the submission of an application for rental assistance.

To apply for rental assistance, go to www.oregonrentalassistance.org, dial 211 or go to www.211info.org. To find free legal assistance for low-income Oregonians, go to www.oregonlawhelp.org.

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you should take now: visit www.cfpb.gov/eviction or call a housing counselor at 800-569-4287.

*Exhibit F12*

GRESHAM PARK APARTMENTS
805 NE KANE DRIVE
GRESHAM, OR 97030

PORTLAND OR 972
26 OCT 2021 PM 4 L

James Jacobson
805 NE Kane Dr., #109B
Gresham, OR 97030

97030-595634

**Exhibit F12**



OREGON
# NOTICE OF
# FOR CAUSE TERMINATION

 

DATE __10/26/2021__  PROPERTY NAME / NUMBER __Gresham Park Apartments__

RESIDENT NAME(S) __James Jacobson__

UNIT NUMBER __#109B__  STREET ADDRESS __805 NE Kane Dr__  _also all other Occupants or persons unknown claiming any right or interest in the Premises._

CITY __Gresham__  STATE __OR__  ZIP __97030__

Pursuant to Oregon landlord-tenant law, you are hereby notified that you are a) in material violation of your Rental Agreement; b) in material violation of the resident duties under ORS 90.325; and/or c) in violation of your obligation to pay rent. The acts or omissions constituting the violations are described as follows (provide specific factual detail for each violation):

You have been seen on several occasions with your vehicle inside your garage and passageway on 10/19/2021, 10/21/2021,

10/22/2021, 10/25/2021, and 10/26/2021.

Per your lease agreement, Community Policies, Rules and Regulations Addendum #7 - Fire Hazards, No person shall block or

obstruct any exit, aisle, passageway, hallway or stairway leading to or from any structure.

Form M023 OR Copyright © 2020 Multifamily NW? NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 4/22/2021.

☐ ON SITE   ☐ RESIDENT   ☐ MAIN OFFICE (IF REQUIRED)   PAGE 1 OF 2

*Exhibit F12*

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Park your vehicle inside the garage or your assigned parking space.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

If you fail to cure the violations by __**10/26/2021**__ *, your Rental Agreement will terminate on the date set forth below. If you timely cure
DATE
the violations, your Rental Agreement will not terminate. Recurrence of substantially the same act or omission as any violation described above within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

*If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____, or
DATE

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first class mail. The termination date is at least 31 days later at 11:59 p.m. on _11/20/21_, or
DATE

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____
DATE

**Owner/Agent:** Please note additional service requirements for subsidized residents as listed in "Subsidized Residents Only" section.

☐ Section 8 Housing Choice Voucher

**WARNING NOTICE:** The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287

THANK YOU FOR YOUR COOPERATION

OWNER/AGENT  X _____

ADDRESS  7710-B NE Vancouver Mall Drive

_Vancouver, WA 98662_

| If the recipient of this document is a veteran of the armed forces, assistance may be available from a county veterans' service officer or community action agency. Contact information for a local county veteran's service officer and community action agency may be obtained by calling a 2-1-1 information service. |

TELEPHONE  360.892.4000

EMAIL  greshampark@tmgnorthwest.com

**SUBSIDIZED RESIDENTS SEE DISCLOSURES**

Form M022 OR Copyright. © 2020 Multifamily NW®. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 4/22/2021.

## SUBSIDIZED RESIDENTS ONLY

**HUD DISCLOSURES**
If you remain in the leased unit on the date specified for termination, Owner/Agent will enforce the termination only by bringing a judicial action at which time you may present a defense. You have ten (10) days within which to discuss this eviction with Owner/Agent. This 10-day period commences on the earlier of the day this Notice is hand-delivered to your unit or the day after it is mailed. The discussion period does not extend the date for termination. Persons with disabilities have the right to request reasonable accommodation to participate in the hearing process.

**ADDITIONAL SERVICE REQUIREMENTS**
**SECTION 8 VOUCHERS:** Notice served by one of the methods listed above AND copy mailed to Public Housing Agency the same day.
**HUD (PROJECT BASED):** Notice served by one of the methods listed above, AND mailed to Unit, AND
1. Attempt to serve the Notice personally to any adult answering the door. If unable to do that:
2. Attempt to slide the Notice through the door (mail slot) or under the door. If unable to do that:
3. Post the Notice on the door at eye level.

☐ ON SITE   ☐ RESIDENT   ☐ MAIN OFFICE (IF REQUIRED)      FOR CAUSE TERMINATION • PAGE 2 OF 2

*Exhibit F12*

## THIS IS AN IMPORTANT NOTICE ABOUT YOUR RIGHTS
## TO PROTECTION AGAINST EVICTION FOR NONPAYMENT.

For information in Spanish, Korean, Russian, Vietnamese or Chinese, go to the Judicial Department website at www.courts.oregon.gov.

Until February 28, 2022, if you give your landlord documentation that you have applied for rental assistance at or before your first appearance in court, you may be temporarily protected from  eviction for nonpayment. Documentation may be made by any reasonable method, including by sending a copy or photograph of the documentation by electronic mail or text message. "Documentation" includes electronic mail, a screenshot or other written or electronic documentation verifying the submission of an application for rental assistance.

To apply for rental assistance, go to www.oregonrentalassistance.org, dial 211 or go to www.211info.org. To find free legal assistance for low-income Oregonians, go to www.oregonlawhelp.org.

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you should take now: visit www.cfpb.gov/eviction or call a housing counselor at 800-569-4287.

*Exhibit F12*

GRESHAM PARK APARTMENTS
805 NE KANE DRIVE
GRESHAM, OR 97030

PORTLAND OR 972
26 OCT 2021 PM 4 L

James Jacobson
805 NE Kane Dr., #109B
Gresham, OR 97030

97030-595634

**Exhibit F12**



OREGON
# NOTICE OF VIOLATION





DATE ___08/23/2021___ PROPERTY NAME / NUMBER __Gresham Park Apartments__

RESIDENT NAME(S) __James Jacobson__

UNIT NUMBER ___#109B___ STREET ADDRESS __805 NE Kane Dr__

CITY __Gresham__ STATE __OR__ ZIP __97030__

WARNING: Your Rental Agreement, the rental rules and regulations, and the landlord-tenant laws require all residents to follow basic rules to protect the safety and quiet enjoyment of all residents, prevent damage to property and retain a quality rental community. It has come to our attention that you are not complying with the following:

**NATURE OF VIOLATION** *(check all that apply):*

- [ ] Disturbances
- [ ] Damage to property
- [ ] Unsightly patio/balcony/porch
- [ ] Unit needs to be cleaned
- [ ] Satellite dish
- [ ] Unauthorized window coverings/signs
- [ ] Unauthorized occupant/guest
- [x] Other

Date & Time of Violation: Sun 8/22/2021 1:54 PM

Location of Violation: __Parking Lot of Gresham Park ( 805 NE Kane Dr. )__

Describe Violation:

Resident(s) is using two parking spaces to work on their vehicle. These parking spaces do not correspond with the unit and working on vehicles are not allowed.

This is a violation to the rental agreement per section 22: #4 & #10. This is also a violation to the Community Rules Addendum.

Describe Cure:
Tenant must park in their own parking space. Stop working on their vehicle immediately. If the violation continue, per section 24, there could be non-compliance fee assets to the tenant's account.

The violation(s) is/are *(check which applies)*:
- [ ] a separate and distinct violation
- [x] a series or group of violations
- [ ] a continuous or ongoing violation

This notice was served on the date set forth above *(check which applies)*:
- [ ] Personally on the Resident at _____ (time)
- [x] If the written Rental Agreement allows, posted on the main entrance to the dwelling unit and mailed first class mail
- [ ] Mailed first class mail only

We hope it was simply an oversight on your part that resulted in the violation(s). However, you are required to discontinue the conduct listed above or correct the violation(s) immediately. Failure to discontinue the conduct, or correct the violation(s), or any reoccurrence of the conduct/violation(s) listed above, may result in termination of your tenancy pursuant to ORS 90.392, 90.398, 90.405 or 90.630.

For a continuous or ongoing violation, this notice will remain effective for 12 months and may be renewed with a new warning prior to the end of the 12-month period.

WARNING NOTICE: The conduct described above is a violation of your Rental Agreement. Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

THANK YOU FOR YOUR COOPERATION

OWNER/AGENT _____

ADDRESS __7710-A NE Vancouver Mall Drive__

__Vancouver, WA 98662__

TELEPHONE __(360) 892-4000__

E-MAIL _____

- [ ] ON SITE   [ ] RESIDENT   [ ] MAIN OFFICE (IF REQUIRED)

*Form M040 OR Copyright © 2019 Multifamily NW; NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 2-27-2019.*

*Exhibit F13*

James Jacobson
And all other Occupants
805 NE Kane Dr, Unit ##109B
Gresham , OR 97030

T1003 Copyright © 2016 Tenant Technologies, Inc. Not to be reproduced without written permission. Revised 9/29/2016

*Exhibit F13*

**TMG** | The Management Group
PROPERTY MANAGEMENT
SALES & LEASING

Pacific Business Center
7710 NE Vancouver Mall Drive
Vancouver, WA 98662

PORTLAND OR 972

24 AUG 2021 PM 4 L

97030-595634

*Exhibit F13*

**jim.jacobson@live.com**

| | |
|---|---|
| **From:** | jim.jacobson@live.com |
| **To:** | Melissa Garrett |
| **Subject:** | (draft) Notice of Intent to Sue |
| **Attachments:** | Filled - Notice of Small Claim.pdf |
| | |
| **Importance:** | High |

Hi Melissa:  Please review the attached and let me know if you have any comments.  I have been trying to reach you for a few weeks now, but the attached is at least one of the issues I wanted to discuss with you.

The attached represents the first of several lawsuits I intend to file over the next few weeks, and now this one is done, my attention now turns to an action I'm preparing for filing in Federal District Court regarding the proposed rental increase which I reject.

If you or anyone with decision making authority would like to discuss the attached, please contact me at (503) 740-0676.  I intent to file the attached as soon as this afternoon.

Regards,

1

*Exhibit F14*

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF ___MULTNOMAH___
**Small Claims Department**

James E. Jacobson, Jr.

_____(s)
                          Plaintiff

*(Inmate SID #, if applicable, _____)*

v.

Gresham Park Apartments, LLC; BLF Holdings, LLC; and

TMG Property Management Services NW, LLC,
                          **Defendant**
jointly and severally.    ☐ Defendant is a public body

Case No: _____

**SMALL CLAIM AND
NOTICE OF SMALL CLAIM**
Filing fee at ORS 46.570

☐ Subject to UTCR 5.180(3)
☐ Subject to ORS 646A.670(1) and UTCR
5.180(2)

| **PLAINTIFF** (☐ Additional on attached page) | **DEFENDANT** (☑ Additional on attached page) |
|---|---|
| James E. Jacobson, Jr. | Gresham Park Apartments, LLC, et al., (see: attachment). |
| Name | Name (enter Registered Agent, if necessary, on next page) |
| 805 NE Kane Dr., Apt 109 | |
| Street | Street (do not use a P.O. Box) |
| Gresham, OR 97030 | |
| City / State / Zip | City / State / Zip |
| (503) 740-0676            Multnomah | |
| Phone            County | Phone            County |

➢ *I need an interpreter:* ☐ *Spanish* ☐ *ASL* ☐ *other:* _____

I, Plaintiff, claim that on or about *(date)* __12/23/2020__, the above-named defendants owed me the sum
of (or property valued at) $ __$9,172.08__ because of uncompensated casualty losses inflicted on
plaintiff by intentional acts of defendant(s) and/or contractors or other agents acting on their behalf,
As further described in the Continuation Sheet and Equipment List set forth below.
        Plaintiff is a disabled/vulnerable person within the scope of ORS 124.100, *et seq.*
This is an action for financial damages as provided under ORS 120.124(2)(a) because the acts
of defendants constitute financial abuse as provided under ORS 124.110.

_____
_____

____Plaintiff is entitled to a claim for damages in the amount of $9,172.08__, and this amount is still due.

I have paid (or will pay):

filing fees of $ _____

and service costs of $_____

| | | |
|---|---|---|
| Claim | $ | _____ |
| Fees | $ | _____ |
| +Costs | $ | _____ |
| TOTAL | $ | _____ |

Small Claim and Notice of Small Claim
Page 1 of 3

**OJD OFFICIAL**

| Attachment Defendant(s) | | |
|---|---|---|
| **Defendant:** | **Oregon Registration Information** | **Registered Agent** |
| Gresham Park Apartments, LLC<br>805 NE Kane Dr.<br>Gresham, OR 97030<br>(503) 489-5132 | Registry No. 115436891. Domestic LLC, Jurisdiction: Oregon | Corporation Service Company<br>1127 Broadway ST NE, STE 310<br>Salem, OR 97301 |
| BLF Holdings (MHC), LLC*<br>18006 Sky Park Circle, Suite 200<br>Irvine, CA 92614 | Registry No. 947012-90. Foreign LLC, Jurisdiction: California | Corporation Service Company<br>1127 Broadway ST NE, STE 310<br>Salem, OR 97301 |
| TMG Property Management<br>Services NW, LLC<br>7710 NE Vancouver Mall Dr.<br>Vancouver WA 98662<br>(360) 892-4000 | Registry No. 570225-93. Foreign LLC, Jurisdiction: Washington | Carmen Villarma<br>Pacific Corporate Center<br>15350 Sequoia Pkwy #200<br>Portland, OR 97224; or<br><br>7710 NE Vancouver Mall Dr.<br>Vancouver WA 98662 |
| **Additional Service pursuant to ORS.124.100(6)**<br><br>Oregon Department of Justice<br>Attorney General for the State of Oregon<br>1162 Court St. NE<br>Salem, OR 97301-4096 | | |

*Gresham Park Apartments, LLC is a shell company managed by BLF Holdings, LLC. BLF Holdings, LLC is a California Based LLC which is managed by the Brian L. Fitterer Revokable Trust, wherein the sole trustee and beneficiary of said trust being Mr. Brian L. Fitterer, said trust, BLF Holdings, LLC, and Mr. Fitterer having a place of business located at 18006 Sky Park Circle, Suite 200, Irvine CA 92614. Mr. Brian L. Fitterer is the sole actual and beneficial owner of Gresham Park Apartments. Day-to-day management of Gresham Park Apartments is provided by TMG Property Management Services NW, LLC.*

# DECLARATION OF GOOD FAITH EFFORT

I, Plaintiff, have made a good faith effort to collect this claim from the defendants before filing this claim with the court clerk.

Ms. Melissa Garrett is employed by defendant TMG Property Management Services NW, LLC as the Regional Manager for NW Oregon and has worked with Plaintiff on numerous unrelated issues in the past. Plaintiff first requested a telephone conference regarding this complaint several weeks ago, beginning on May 1st, 2023. Plaintiff has made numerous attempts to contact Ms. Garrett since that date. Ultimately, Plaintiff provided a copy of the full text of this complaint to Ms. Garrett for her review and comment more than 24 hours before the filing hereof.

#### If this case is subject to ORS 646A.670(1) *(see the box at the top of page 1)*
See the Oregon Judicial Department website for information about debt collection cases:
www.courts.oregon.gov/debtcollection

☐ I have complied with ORS 646A.670(1) and UTCR 5.180. A completed *Consumer Debt Collection Disclosure Statement* is attached and incorporated into this pleading as required by UTCR 5.180(2)(iii).

**I hereby declare that the above statements are true to the best of my knowledge and belief. I understand they are made for use in court and I am subject to penalty for perjury.**

05/16/2023
Date

Plaintiff Signature

James E. Jacobson, Jr.
Plaintiff Name (print)

### DEFENDANT'S REGISTERED AGENT:

Gresham Park Apartments, LLC c/o Carmen Villarma
Name

Pacific Corporate Center
Street (do not use a P.O. Box)

15350 Sequoia Pkwy #200, Portland, OR 97224
City / State / Zip

(360) 892-4000                Multnomah
Phone                         County

# NOTICE TO DEFENDANT:

## READ THESE PAPERS CAREFULLY!

Within **14 DAYS\*** after receiving this notice you *MUST* do *ONE* of the following things in writing:

- Pay the claim plus filing fees and service expenses paid by plaintiff (send payment directly to the plaintiff, not to the court) **OR**
- Demand a hearing and pay the fee required (below) **OR**
- Demand a jury trial and pay the fee required (below). This option is available **only** if amount claimed is more than $750.

If you fail to do one of the above within <u>14 DAYS\*</u> after you get this notice, the plaintiff may ask the court to enter a judgment against you. The judgment will be for the amount of the claim, plus filing fees and service costs paid by the plaintiff, plus a prevailing party fee.  If you are not able to respond in time because you are in active military service of the United States, talk to a legal advisor about the Servicemembers Civil Relief Act.

## COURT NAME / ADDRESS / PHONE #

Multnomah County Circuit Court
Small Claims
1200 SW 1ˢᵗ Ave.
Portland, OR  97204
971-274-0545

**Defendant's Filing Fees** *(must be filled in by the PLAINTIFF)*:

| | |
|---|---|
| (1) To demand a hearing if the amount claimed is $2,500 or less | $ $57.00 |
| (2) To demand a hearing if the amount claimed is more than $2,500 | $ $57.00 |
| (3) To demand a jury trial (only if amount claimed is over $750) | $ $102.00 |

You can fill out and file your *Response* online at *www.courts.oregon.gov/jforms*. If you have questions about filing procedures, go to *www.courts.oregon.gov*. Or you may contact the court clerk.  The clerk *cannot* give you legal advice about the claim.

**\*NOTE:** If the plaintiff is an <u>adult in custody</u> (ORS 30.642) AND the defendant is a <u>government agency or other public body</u> (ORS 30.260), the defendant must respond within **30 days** after receiving this Notice.

Small Claim and Notice of Small Claim
Page 3 of 3

**OJD OFFICIAL**

*Page 5*

*Exhibit F14*

## CONTINUATION SHEET

Plaintiff was moved into (handicapped accessible) Apt 109 at Gresham Park Apartments in 2018, or more than a year prior to the acquisition of Gresham Park Apartments by its current owners. Plaintiff's annual Rental Agreement with the prior owners expired in Aug 2019. Plaintiff has never executed any document of any kind, including any kind of Rental Agreement with the current owners. Plaintiff was physically moved into Apt 109 by professional movers due to severe mobility limitations suffered by Plaintiff. Plaintiff cannot walk without an assisted mobility device.

Plaintiff has an informed belief that Gresham Park Apartments was acquired by Mr. Brian L. Fitterer, by and through a series of limited liability companies and a revocable real estate trust, sometime on or about January 1st, 2020. According to the records of the Oregon Secretary of State, Gresham Park Apartments, LLC is a manager managed LLC and the listed manager is BLF Holdings (MHC), LLC. Plaintiff discovered company registrations for BLF Holdings (MHC), LLC in at least five other states.

TMG Property Management Services NW, LLC assumed day-to-day management of Gresham Park Apartments, including maintenance, collection of rents and, issuance of notices around the same time as Mr. Fitterer acquired Gresham Park Apartments.

During the Autumn of 2020, Plaintiff responded to a forceful knock on his front door early one Monday Morning. The individual at the door identified himself as a foreman for Creative Construction of Boring, OR. The foreman stated his company had been retained to repair and/or replace the decks above Plaintiff's patio. The foreman asked whether Plaintiff had received notice of the planned construction activity and plaintiff responded he had not. The foreman stated that the Plaintiff was required to remove all his personal property from the back patio until further notice. Plaintiff responded that he was disabled and needed 24 hours to call a friend who could assist Plaintiff in re-locating his property.

Plaintiff's primary source of income is Social Security, but Since 1996, Plaintiff has earned supplemental income as a commercial artist, and as such, Plaintiff relies heavily on the back patio area for performing certain tasks such as sculpting stone, or applying various finishes which are inappropriate tasks for indoors. As such, at the time of Plaintiff's initial contact with Creative Construction, Plaintiff's patio area was quite crowded with at least two ATA style shipping cases with casters, used for storing various power tools such as Plaintiff's table saw, etc., a drill press, a Weber Propane grill, a camping chair, and a "Job Site Box" substantially the same as the one shown in the Equipment List below. The Job Site Box was used to store various electrical distribution components used by Plaintiff in the pursuit of his professional endeavors.

A few hours later, that same Monday Morning, the foreman returned and stated that in view of their scheduling pressures, he proposed that he would have his crew remove Plaintiff's Property from his patio and return Plaintiff's Property at the conclusion of the project. The deck project turned out to be unexpectedly massive and extended well into the winter after major portions of the deck were found to be structurally unsound.

Plaintiff's access to the back patio was blocked during the construction period. A clean-up crew did not arrive until just before Christmas 2020. Plaintiff first re-gained access to the back patio on or about December 23, 2020. Upon inspection, Plaintiff discovered that all his property had been returned, EXCEPT the Job Site Box and its contents. Plaintiff immediately notified the defendants as well as the Gresham Police and Creative Construction. To date, defendants will not acknowledge the issue, to wit, Plaintiff's property was taken into the custody and control of defendants, or the contractors and or other agents thereof, took Plaintiff's property under their possession and control and Plaintiff's property was never returned.

*Geiko/Travelers: Date of Theft: Dec 23, 2020. Reported Jan 13, 2021. Travelers Ref No. IPD2857.*

| Equipment List | | | |
|---|---|---|---|
| **No.** | **Description** | **Source** | **Replacement Cost** |
| 1 | Job Site Box  | Home Depot | $489.00 |
| 2 | Electric Distribution "Spider" CEP Construction Electrical Products 6506GU 6 Outlet 50-Amp Single Phase Power Box, Yellow  | Amazon | $667.70 |
| 3/4 | (Qty 2) 50 Amp 50 Feet Power Extension Cord, Generator Extension Cord, Heavy Duty STW Wire, NEMA 14-50P to SS2-50R Locking Connector (exemplary)  | Amazon | (2x) $185.99 = $371.98 |
| | Total | | $1528.68 |

**Damages**

| | | |
|---|---|---|
| Direct Economic Damages | $1528.68 | |
| Trebled Direct Damages | | $4,586.04 |
| | | |
| Non-Economic Damages (calculated @ 3x Direct Damages) | | $4,586.04 |
| | | |
| Total | | **$9,172.08** |

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Park your vehicle inside the garage or your assigned parking space.

If you fail to cure the violations by ___10/26/2021___*, your Rental Agreement will terminate on the date set forth below. If you timely cure the violations, your Rental Agreement will not terminate. Recurrence of substantially the same act or omission as any violation described above within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

*If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____. or
<span>DATE</span>

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first class mail. The termination date is at least 31 days later at 11:59 p.m. on _11/20/21_. or
<span>DATE</span>

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____
<span>DATE</span>

**Owner/Agent: Please note additional service requirements for subsidized residents as listed in "Subsidized Residents Only" section.**

☐ Section 8 Housing Choice Voucher

WARNING NOTICE: The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287

THANK YOU FOR YOUR COOPERATION           OWNER/AGENT  X _____

ADDRESS  7710-B NE Vancouver Mall Drive

Vancouver, WA 98662

If the recipient of this document is a veteran of the armed forces, assistance may be available from a county

*2021 Multifamily NW™. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 4/23/2021.




**OREGON**
# NOTICE OF
# FOR CAUSE TERMINATION

**MULTIFAMILY NW**
The Association Promoting Quality Rental Housing

**TMG** | The Management Group
PROPERTY MANAGEMENT
SALES | LEASING

DATE  09/08/2023    PROPERTY NAME / NUMBER  Gresham Park Apartments    503.489.5132

RESIDENT NAME(S)  James Jacobson

_____    also all other Occupants or persons unknown claiming any right or interest in the Premises.

UNIT NUMBER  #109B    STREET ADDRESS  805 NE Kane Dr

CITY  Gresham    STATE  OR    ZIP  97030

Pursuant to Oregon landlord-tenant law, you are hereby notified that you are a) in material violation of your Rental Agreement; b) in material violation of the resident duties under ORS 90.325; and/or c) in violation of your obligation to pay rent. The acts or omissions constituting the violations are described as follows (provide specific factual detail for each violation):

The resident is in violation of obligation to pay rent and has an outstanding balance of $1587.93. Includes

Garage rent June 2023 $125.00

June Rent $408.00

Trash (05/01/23-05/31/23) $24.76

Water/Sewer (04/14/23-05/13/23 $48.59

Garage rent July 2023 $125.00

Month-to-Month Premium $18.00

Trash 06/01/23-06/30/23 $26.69

Water/Sewer05/14/23-06/15/23 $49.83

Late fee July 2023 $150.00

Garage rent Aug 2023 $150.00

Month-to-Month Aug $28.00

Trash 07/01/23-07/31/23 $24.81

Water/Sewer 06/16/23-07/16/23 $49.1

Late fee Aug 2023 $150.00

Garage rent Sept 2023 $125.00

LLI Sept 2023 9.50

Rent Sept 2023 $1445.00

Trash 08/01/23-08/31/23 $26.46

Water/sewer 07/17/23-08/14/23 $50.78

Late fee Sept 2023 $150.00

Said conduct is a violation of Section 1 (Rents) of your Rental Agreement which states "Unless another date is set forth above, all monthly charges are due and payable on the first of the month and must be paid on time. If rent is not paid by the end of the 4th day of the rental period a late in the amount stated on this Rental Agreement will be imposed and become due on the 5th day of the rental period and Owner/Agent may require the rent and late fee to be paid by certified check or money order.

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)    PAGE 1 OF 2

Form M023 OR Copyright © 2023 Multifamily NW; NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

*Page 1*    *Exhibit F15*

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Tenant must pay remaining balance in full on or before expiration date.

If you fail to cure the violations by ____09/22/2023____ *, your Rental Agreement will terminate on the date set forth below. If you timely cure the violations, your Rental Agreement will not terminate. Recurrence of substantially the same act or omission as any violation described above within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

*If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

If this termination notice is based upon a restriction regulating a portable cooling device allowed by law, the date of termination will be extended by one day for each day that there is an extreme heat event for the county of the premises. "Extreme heat event" means a day on which National Weather Service of the National Oceanic and Atmospheric Administration has predicted or indicated that there exists a heat index of extreme caution for the county. Information regarding days with an extreme heat event can be found on the website for the Housing and Community Services Department.

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____ , or
                                                                                                              DATE

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first class mail. The termination date is at least 31 days later at 11:59 p.m. on _10-8-25_ , or
                                                                                                   DATE

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____ .
                                                                                                                      DATE

Owner/Agent: Please note additional service requirements for subsidized residents as listed in "Subsidized Residents Only" section.

☐ Section 8 Housing Choice Voucher

WARNING NOTICE: The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287

THANK YOU FOR YOUR COOPERATION

OWNER/AGENT X _____

ADDRESS  7710-B NE Vancouver Mall Drive

Vancouver, WA 98662

If the recipient of this document is a veteran of the armed forces, assistance may be available from a county veterans' service officer or community action agency. Contact information for a local county veteran's service officer and community action agency may be obtained by calling a 2-1-1 information service.

TELEPHONE  360.892.4000

EMAIL  greshampark@tmgnorthwest.com

SUBSIDIZED RESIDENTS SEE DISCLOSURES

## SUBSIDIZED RESIDENTS ONLY

**HUD DISCLOSURES**

If you remain in the leased unit on the date specified for termination, Owner/Agent will enforce the termination only by bringing a judicial action at which time you may present a defense. You have ten (10) days within which to discuss this eviction with Owner/Agent. This 10-day period commences on the earlier of the day this Notice is hand-delivered to your unit or the day after it is mailed. The discussion period does not extend the date for termination. Persons with disabilities have the right to request reasonable accommodation to participate in the hearing process.

**ADDITIONAL SERVICE REQUIREMENTS**

**SECTION 8 VOUCHERS:** Notice served by one of the methods listed above AND copy mailed to Public Housing Agency the same day.

**HUD (PROJECT BASED):** Notice served by one of the methods listed above, AND mailed to Unit, AND

1. Attempt to serve the Notice personally to any adult answering the door. If unable to do that:
2. Attempt to slide the Notice through the door (mail slot) or under the door. If unable to do that:
3. Post the Notice on the door at eye level.

☐ ON SITE     ☐ RESIDENT     ☐ MAIN OFFICE (IF REQUIRED)          FOR CAUSE TERMINATION • PAGE 2 OF 2

Form MCC3 OR Copyright © 2023 Multifamily NW® NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

*Exhibit F15*

# NOTICE RE: EVICTION FOR NONPAYMENT OF RENT

## THIS IS AN IMPORTANT NOTICE OF WHERE TO GET HELP IF YOU ARE FACING POTENTIAL EVICTION FOR NONPAYMENT

(Spanish) Este formulario está disponible en español en:

(Russian) Бланк этого документа можно получить на русском языке в:

(Vietnamese) Đơn này có bằng tiếng Việt tại:

(Traditional Chinese) 本表格的繁体中文版在:

(Korean) 한국어로 번역된 양식은 다음 웹 싸이트에서 찾을 수 있습니다:

https://www.courts.oregon.gov/forms/Pages/landlord-tenant.aspx

You must comply with deadlines identified in a notice of nonpayment or you risk losing your housing

Rental assistance and support services may be available. Dial 2-1-1 or go to www.211info.org. Find a local service provider at https://www.oregon.gov/ohcs/housing-assistance/pages/emergency-rental-assistance.aspx

Low-income tenants may be able to receive free or low-cost legal advice by contacting a legal aid organization. Go to https://oregonlawhelp.org to find an office near you. The Oregon State Bar provides information about legal assistance programs at www.osbar.org/public

Rental Assistance Notice
Page 1 of 1

**OJD Official**

(Mar 2023)

***Page 3***                                                        ***Exhibit F15***

**OREGON**
# NOTICE OF
# FOR CAUSE TERMINATION

MULTIFAMILY NW
The Association Promoting Quality Rental Housing



TMG | The Management Group
PROPERTY MANAGEMENT | SALES | LEASING

DATE __10/09/2023__    PROPERTY NAME / NUMBER __Gresham Park Apartments__    503.489.5132

RESIDENT NAME(S) __James Jacobson__

also all other Occupants or persons unknown claiming any right or interest in the Premises.

UNIT NUMBER __#109B__    STREET ADDRESS __805 NE Kane Dr__

CITY __Gresham__    STATE __OR__    ZIP __97030__

Pursuant to Oregon landlord-tenant law, you are hereby notified that you are a) in material violation of your Rental Agreement; b) in material violation of the resident duties under ORS 90.325; and/or c) in violation of your obligation to pay rent. The acts or omissions constituting the violations are described as follows (provide specific factual detail for each violation):

The resident is in violation of obligation to pay rent and has an outstanding balance of $1587.93. Includes

Garage rent June 2023 $125.00

June Rent $408.00

Trash (05/01/23-05/31/23) $24.76

Water/Sewer (04/14/23-05/13/23 $48.59

Garage rent July 2023 $125.00

Month-to-Month Premium $18.00

Trash 06/01/23-06/30/23 $26.69

Water/Sewer05/14/23-06/15/23 $49.83

Late fee July 2023 $150.00

Garage rent Aug 2023 $150.00

Month-to-Month Aug $18.00

Trash 07/01/23-07/31/23 $24.81

Water/Sewer 06/16/23-07/16/23 $49.1

Late fee Aug 2023 $150.00

Garage rent Sept 2023 $125.00

Month-To-Month Sept 2023 $18.00

Rent Sept 2023 $1445.00

Trash 08/01/23-08/31/23 $26.46

Water/sewer 07/17/23-08/14/23 $50.78

Late fee Sept 2023 $150.00

Garage rent Oct $125.00

Month-To-Month $18.00

Trash 09/01/23-09/25/23 $26.91

Water/sewer 08/14/23-09/13/23 $49.54

Late fee Oct 2023 $150.00

Said conduct is a violation of Section 1 (Rents) of your Rental Agreement which states "Unless another date is set forth above, all monthly charges are due and payable on the first of the month and must be paid on time. If rent is not paid by the end of the 4th day of the rental period a late in the amount stated on this Rental Agreement will be imposed and become due on the 5th day of

Form M023 OR Copyright © 2023 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)    PAGE 1 OF 2

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Tenant must pay remaining balance in full on or before expiration date.

_____

_____

_____

_____

_____

_____

If you fail to cure the violations by _____10/23/2023_____ *, your Rental Agreement will terminate on the date set forth below. If you timely cure
the violations, your Rental Agreement will not terminate. Recurrence of substantially the same act or omission as any violation described above
within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

*If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation
was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date
can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

If this termination notice is based upon a restriction regulating a portable cooling device allowed by law, the date of termination will be extended by
one day for each day that there is an extreme heat event for the county of the premises. "Extreme heat event" means a day on which National
Weather Service of the National Oceanic and Atmospheric Administration has predicted or indicated that there exists a heat index of extreme caution
for the county. Information regarding days with an extreme heat event can be found on the website for the Housing and Community Services
Department.

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____. **or**

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first
   class mail. The termination date is at least 31 days later at 11:59 p.m. on  11/9/23 . **or**

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____

**Owner/Agent:** Please note additional service requirements for subsidized residents as listed in **"Subsidized Residents Only"** section.

☐ Section 8 Housing Choice Voucher

**WARNING NOTICE:** The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/
Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding
the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you
should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287.

THANK YOU FOR YOUR COOPERATION          OWNER/AGENT X _____

                                        ADDRESS  7710-B NE Vancouver Mall Drive

                                                 Vancouver, WA 98662

| If the recipient of this document is a veteran of the armed
forces, assistance may be available from a county
veterans' service officer or community action agency.
Contact information for a local county veteran's service
officer and community action agency may be obtained
by calling a 2-1-1 information service. |

                                        TELEPHONE  360.892.4000

                                        EMAIL  greshampark@tmgnorthwest.com

                                                 **SUBSIDIZED RESIDENTS SEE DISCLOSURES**

## SUBSIDIZED RESIDENTS ONLY

**HUD DISCLOSURES**

If you remain in the leased unit on the date specified for termination, Owner/Agent will enforce the termination only by bringing a judicial action
at which time you may present a defense. You have ten (10) days within which to discuss this eviction with Owner/Agent. This 10-day period
commences on the earlier of the day this Notice is hand-delivered to your unit or the day after it is mailed. The discussion period does not extend
the date for termination. Persons with disabilities have the right to request reasonable accommodation to participate in the hearing process.

**ADDITIONAL SERVICE REQUIREMENTS**

**SECTION 8 VOUCHERS:** Notice served by one of the methods listed above AND copy mailed to Public Housing Agency the same day.

**HUD (PROJECT BASED):** Notice served by one of the methods listed above, AND mailed to Unit, AND

1. Attempt to serve the Notice personally to any adult answering the door. If unable to do that:
2. Attempt to slide the Notice through the door (mail slot) or under the door. If unable to do that:
3. Post the Notice on the door at eye level.

Form M023 OR Copyright © 2023 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

# NOTICE RE: EVICTION FOR NONPAYMENT OF RENT

## THIS IS AN IMPORTANT NOTICE OF WHERE TO GET HELP IF YOU ARE FACING POTENTIAL EVICTION FOR NONPAYMENT

(Spanish) Este formulario está disponible en español en:

(Russian) Бланк этого документа можно получить на русском языке в:

(Vietnamese) Đơn này có bằng tiếng Việt tại:

(Traditional Chinese) 本表格的繁体中文版在:

(Korean) 한국어로 번역된 양식은 다음 웹 싸이트에서 찾을 수 있습니다:

https://www.courts.oregon.gov/forms/Pages/landlord-tenant.aspx

You must comply with deadlines identified in a notice of nonpayment or you risk losing your housing

Rental assistance and support services may be available. Dial 2-1-1 or go to www.211info.org. Find a local service provider at https://www.oregon.gov/ohcs/housing-assistance/pages/emergency-rental-assistance.aspx

Low-income tenants may be able to receive free or low-cost legal advice by contacting a legal aid organization. Go to https://oregonlawhelp.org to find an office near you. The Oregon State Bar provides information about legal assistance programs at www.osbar.org/public

**OJD Official**

| SEND PAYMENT TO | STATEMENT AS OF SEPTEMBER 20, 2023 |
|---|---|

**Gresham Park Apartments**
7710 NE Vancouver Mall Dr Ste B
Vancouver, WA 98662

(503) 489-5132

https://greshamparkapts.com/

Please address billing disputes and written inquiries to Gresham Park Apartments, 7710 NE Vancouver Mall Dr Ste B, Vancouver, WA 98662. For other questions, call (503) 489-5132

| STATEMENT FOR | |
|---|---|

**James Jacobson**
805 NE Kane Drive - #109B
Gresham, OR 97030

Tenant may inspect the utility providers bill at a reasonable time and place. Tenant may request to inspect the bill at the onsite leasing office or TMG's corporate office, and tenant can make a copy of providers bill by making a request to the landlord.

**TOTAL AMOUNT DUE**

# $1,587.93

PAY THIS BILL ONLINE AT
**https://tmgoregon.appfolio.com/connect**

| DATE | DESCRIPTION | TIME PERIOD | AMOUNT | BALANCE |
|---|---|---|---|---|
| **PAST DUE CHARGES** | | | | |
| 01 JUN | TRASH | 05/01/2023 - 05/31/2023 | $24.76 | $24.76 |
| 01 JUN | WATER AND SEWER | 04/14/2023 - 05/13/2023 | $48.59 | $73.35 |
| 01 JUN | RENT | JUNE 2023 - RENT | $283.00 | $356.35 |
| 01 JUN | GARAGE & PARKING RENT | JUNE 2023 - GRESHAM PARK GARAGE #9 | $125.00 | $481.35 |
| 01 JUL | TRASH | 06/01/2023 - 06/30/2023 | $26.69 | $508.04 |
| 01 JUL | WATER AND SEWER | 05/14/2023 - 06/15/2023 | $49.83 | $557.87 |
| 01 JUL | MTM ADDITIONAL FEE | JULY 2023 - MTM | $18.00 | $575.87 |
| 01 JUL | GARAGE & PARKING RENT | JULY 2023 - GRESHAM PARK GARAGE #9 | $125.00 | $700.87 |
| 05 JUL | LATE FEE | LATE FEE FOR JUL 2023 | $150.00 | $850.87 |
| 01 AUG | TRASH | 07/01/2023 - 07/31/2023 | $24.81 | $875.68 |
| 01 AUG | WATER AND SEWER | 06/16/2023 - 07/16/2023 | $49.01 | $924.69 |
| 01 AUG | MTM ADDITIONAL FEE | AUGUST 2023 - MTM | $18.00 | $942.69 |
| 01 AUG | GARAGE & PARKING RENT | AUGUST 2023 - GRESHAM PARK GARAGE #9 | $125.00 | $1,067.69 |
| 05 AUG | LATE FEE | LATE FEE FOR AUG 2023 | $150.00 | $1,217.69 |
| 01 SEP | TRASH | 08/01/2023 - 08/31/2023 | $26.46 | $1,244.15 |
| 01 SEP | WATER AND SEWER | 07/17/2023 - 08/14/2023 | $50.78 | $1,294.93 |
| 01 SEP | RENT | SEPTEMBER 2023 - RENT | $9.50 | $1,304.43 |
| 01 SEP | GARAGE & PARKING RENT | SEPTEMBER 2023 - GRESHAM PARK GARAGE #9 | $124.00 | $1,428.43 |
| 01 SEP | INSURANCE | SEPTEMBER 2023 - LIABILITY | $9.50 | $1,437.93 |

*Exhibit F17*

TO LANDLORD INSURANCE

| Date | Description | Detail | Amount | Balance |
|---|---|---|---|---|
| 05 SEP | LATE FEE | LATE FEE FOR SEP 2023 | $150.00 | $1,587.93 |

**CURRENT & UPCOMING CHARGES**

| Date | Description | Detail | Amount | Balance |
|---|---|---|---|---|
| 01 OCT | GARAGE & PARKING RENT | OCTOBER 2023 - GRESHAM PARK GARAGE #9 | $125.00 | $1,712.93 |
| 01 OCT | MTM ADDITIONAL FEE | OCTOBER 2023 - MTM | $18.00 | $1,730.93 |
| 01 OCT | RENT | OCTOBER 2023 - RENT | $1,445.00 | $3,175.93 |
| 01 OCT | INSURANCE | OCTOBER 2023 - LIABILITY TO LANDLORD INSURANCE | $9.50 | $3,185.43 |
| 01 OCT | MISCELLANEOUS EXPENSE | OCTOBER 2023 | -$9.50 | $3,175.93 |
| 01 OCT | TRASH | 09/01/2023 – 09/25/2023 | $26.91 | $3,202.84 |
| 01 OCT | WATER AND SEWER | 08/14/2023 – 09/13/2023 | $49.54 | $3,252.38 |

his invoice is not from your utility company and reflects allocated utility usage, Petali Public Utilities. Gresham Sanitary Service, City of Gresham

*Exhibit F17*



**OREGON**
# NOTICE OF VIOLATION

 

DATE __08/17/2021__ PROPERTY NAME / NUMBER __Gresham Park Apartments__

RESIDENT NAME(S) __James Jacobson__

UNIT NUMBER __#109B__    STREET ADDRESS __805 NE Kane Dr__

CITY __Gresham__                                    STATE __OR__    ZIP __97030__

---

WARNING: Your Rental Agreement, the rental rules and regulations, and the landlord-tenant laws require all residents to follow basic rules to protect the safety and quiet enjoyment of all residents, prevent damage to property and retain a quality rental community. It has come to our attention that you are not complying with the following:

**NATURE OF VIOLATION** *(check all that apply):*

| | | |
|---|---|---|
| ☐ Disturbances | ☐ Unit needs to be cleaned | ☐ Unauthorized occupant/guest |
| ☐ Damage to property | ☐ Satellite dish | ☒ Other |
| ☐ Unsightly patio/balcony/porch | ☐ Unauthorized window coverings/signs | |

Date & Time of Violation: __08/17/2021 around 9:10AM__

Location of Violation: __Parking Lot of Gresham Park ( 805 NE Kane Dr.)__

Describe Violation:

Resident(s) is using two parking spaces to work on their vehicle. These parking spaces do not correspond with the unit and working on vehicles are not allowed.

This is a violation to the rental agreement per section 22: #4 & #10. This is also a violation to the Community Rules Addendum.

Describe Cure:

Tenant must park in their own parking space. Stop working on their vehicle immediately. If the violation continue, per section 24, there could be non-compliance fee assets to the tenant's account.

The violation(s) is/are *(check which applies):*          This notice was served on the date set forth above *(check which applies):*

☒ a separate and distinct violation          ☐ Personally on the Resident at _____ (time)

☐ a series or group of violations            ☒ If the written Rental Agreement allows, posted on the main entrance to the dwelling unit and mailed first class mail

☐ a continuous or ongoing violation          ☐ Mailed first class mail only

We hope it was simply an oversight on your part that resulted in the violation(s). However, you are required to discontinue the conduct listed above or correct the violation(s) immediately. Failure to discontinue the conduct, or correct the violation(s), or any reoccurrence of the conduct/ violation(s) listed above, may result in termination of your tenancy pursuant to ORS 90.392, 90.398, 90.405 or 90.630.

For a continuous or ongoing violation, this notice will remain effective for 12 months and may be renewed with a new warning prior to the end of the 12-month period.

WARNING NOTICE: The conduct described above is a violation of your Rental Agreement. Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

THANK YOU FOR YOUR COOPERATION          OWNER/AGENT X _____

                                        ADDRESS __7710-A NE Vancouver Mall Drive__

                                        __Vancouver, WA 98662__

                                        TELEPHONE __(360) 892-4000__

                                        EMAIL _____

---

**Page 1**          ☐ ON SITE   ☐ RESIDENT   ☐ MAIN OFFICE (IF REQUIRED)          **Exhibit F18**

# NOTICE RE: EVICTION FOR NONPAYMENT OF RENT

## THIS IS AN IMPORTANT NOTICE OF WHERE TO GET HELP IF YOU ARE FACING POTENTIAL EVICTION FOR NONPAYMENT

(Spanish) Este formulario está disponible en español en:

(Russian) Бланк этого документа можно получить на русском языке в:

(Vietnamese) Đơn này có bằng tiếng Việt tại:

(Traditional Chinese) 本表格的繁体中文版在:

(Korean) 한국어로 번역된 양식은 다음 웹 싸이트에서 찾을 수 있습니다:

https://www.courts.oregon.gov/forms/Pages/landlord-tenant.aspx

You must comply with deadlines identified in a notice of nonpayment or you risk losing your housing

Rental assistance and support services may be available. Dial 2-1-1 or go to www.211info.org. Find a local service provider at https://www.oregon.gov/ohcs/housing-assistance/pages/emergency-rental-assistance.aspx

Low-income tenants may be able to receive free or low-cost legal advice by contacting a legal aid organization. Go to https://oregonlawhelp.org to find an office near you. The Oregon State Bar provides information about legal assistance programs at www.osbar.org/public

Rental Assistance Notice
Page 1 of 1
**Page 11**

**OJD Official**
*(Mar 2023)*

*Exhibit F19*

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Tenant must pay remaining balance in full on or before expiration date with certified funds

If you fail to cure the violations by __06/22/2023__ *, your Rental Agreement will terminate on the date set forth below. If you timely cure the violations, your Rental Agreement will not terminate. Recurrence of substantially the same act or omission as any violation described above within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

*If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

If this termination notice is based upon a restriction regulating a portable cooling device allowed by law, the date of termination will be extended by one day for each day that there is an extreme heat event for the county of the premises. "Extreme heat event" means a day on which National Weather Service of the National Oceanic and Atmospheric Administration has predicted or indicated that there exists a heat index of extreme caution for the county. Information regarding days with an extreme heat event can be found on the website for the Housing and Community Services Department.

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____, or
                                                                                                           DATE

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first class mail. The termination date is at least 31 days later at 11:59 p.m. on  7.10.23 , or
                                                                                              DATE

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____.
                                                                                                           DATE

**Owner/Agent: Please note additional service requirements for subsidized residents as listed in "Subsidized Residents Only" section.**

☐ Section 8 Housing Choice Voucher

**WARNING NOTICE:** The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287

THANK YOU FOR YOUR COOPERATION          OWNER/AGENT X _____

ADDRESS  7710-B NE Vancouver Mall Drive

Vancouver, WA 98662

TELEPHONE  360.892.4000

EMAIL  greshampark@tmgnorthwest.com

If the recipient of this document is a veteran of the armed forces, assistance may be available from a county veterans' service officer or community action agency. Contact information for a local county veteran's service officer and community action agency may be obtained by calling a 2-1-1 information service.

SUBSIDIZED RESIDENTS SEE DISCLOSURES

## SUBSIDIZED RESIDENTS ONLY

**HUD DISCLOSURES**
If you remain in the leased unit on the date specified for termination, Owner/Agent will enforce the termination only by bringing a judicial action at which time you may present a defense. You have ten (10) days within which to discuss this eviction with Owner/Agent. This 10-day period commences on the earlier of the day this Notice is hand-delivered to your unit or the day after it is mailed. The discussion period does not extend the date for termination. Persons with disabilities have the right to request reasonable accommodation to participate in the hearing process.

**ADDITIONAL SERVICE REQUIREMENTS**
**SECTION 8 VOUCHERS:** Notice served by one of the methods listed above AND copy mailed to Public Housing Agency the same day.
**HUD (PROJECT BASED):** Notice served by one of the methods listed above, AND mailed to Unit, AND
1. Attempt to serve the Notice personally to any adult answering the door. If unable to do that:
2. Attempt to slide the Notice through the door (mail slot) or under the door. If unable to do that:
3. Post the Notice on the door at eye level.

Form M022 OR Copyright © 2023 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

☐ ON SITE   ☐ RESIDENT   ☐ MAIN OFFICE (IF REQUIRED)   FOR CURE/TERMINATION) PAGE 2 OF 2

*Exhibit F19*

**jim.jacobson@live.com**

| | |
|---|---|
| **From:** | oregon-gov-web-services@egov.com |
| **Sent:** | Wednesday, June 28, 2023 4:27 PM |
| **To:** | jim.jacobson@live.com |
| **Subject:** | Confirmation: Request a Meeting With the Governor |

Hello James Jacobson, Thank you for reaching out to request a meeting with Governor Tina Kotek. We have received your request and appreciate your interest in meeting with the Governor. Please note that due to the high volume of requests we receive, we are unable to personally respond to each one. We value your support and engagement with our office, and we will make every effort to review and consider your request in a timely manner. Currently, we are not able to make commitments for the Governor more than six weeks in advance. Thank you again for your interest in meeting with Governor Kotek. We appreciate your understanding and patience, and we look forward to continuing to work together to build a better Oregon. Best regards, Office of Governor Tina Kotek

| | |
|---|---|
| Today's Date | 06/28/2023 |
| First Name | James |
| Last Name | Jacobson |
| Email Address | jim.jacobson@live.com |
| Phone Number | (503) 740-0676 |
| Date Of Meeting | 06/29/2023 |
| Is there a specific time that would work best for you? | I need time to drive from Portland, so anytime after 10:00 am. |
| Is your meeting date and time flexible? | Yes |
| Flexibility Details | This should be ASAP |
| Who is the Organization or Sponsor of the meeting? | I am currently acting in an individual capacity |
| Organization Website | |
| Meeting Agenda | HB608 includes provisions which put landlords in a superior position with respect to individuals who are in a protected class, specifically the elderly and disabled. We are on the precipice of the actual elimination of these protected classes from the rental market. As such, it is my intention to pursue a lawsuit in Federal District Court, since HB 608 (as implemented) cannot be valid in view of the he Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., and the Fair Housing Act (FHA), 42 U.S.C. §§ 3601 et seq., in addition to statutes arising under State Law. Is House Bill 608 meeting is stated objectives? I think not. Even the title is offensive. It is an insult. This years legislative session is an embarrassment. Under these circumstances, I believe the Governor should issue an executive order suspend those portions of HB 608 that allow Landlord's to to raise rental charges more than 70% of the COLA provided by the Federal Government to individuals on a fixed income. Frankly, the same issue exists for all low income families. I believe there are other concrete actions the State can undertake, but right now I find |

1

**Page 1**                                                    **Exhibit 100**

no evidence of any such activity. It is possible that a Fair Housing lawsuit is avoidable. I remaining willing to be educated. Having said that, I have been to to this Rodeo before, and I am proceeding with all due diligence to have something on file on or around July 5th. I will be in Salem on 06/28, but I am otherwise flexible and could even schedule a Zoom call anytime prior to July 5th. The issues here are not speculative. I do not have to option to delay because this is now impacting myself, personally. By way of information, I am a retired Attorney with over 30 years of prior experience including 13 years with Intel Corp., first as a manager of the Oregon Legal team, and I was a Director of Strategic Investments when I retired. Pat Gelsinger, the current CEO of Intel. was my direct supervisor, and I remain in contact with Pat to this day. I intend to share this journey with Pat (and others). He will be quite interested to discover that his executive staff will be at immediate risk of homelessness whenever they retire. That's a great hiring incentive.

| | |
|---|---|
| Number of estimated attendees | 1 |
| Names of people attending | James E. Jacobson, Jr. |

**Submission ID:** 08c27b66-14d0-4e6e-9e70-31b93cd0cdc7

**Record ID:**

*Page 2*                                                              **Exhibit 100**

# James E. Jacobson, Jr.
805 NE Kane Dr., Apt 109B
Gresham, OR 97030
(503) 740-0676

07/14/2023

Melissa Garrett
Regional Manager
TMG Property Management Services NW
7710 NE Vancouver Mall Dr.
Vancouver WA 98662

AH Gresham Park, LLC
6218 N. Concord Ave
Portland, OR 97217
(503) 489-5132

**RE: Request for Accommodation under the Americans with Disabilities Act; and, NOTICE of Recent Injuries and rental assistance provided via Medicaid**

I receive insurance, in part, through the Oregon Health Plan, and more specifically through the Employed Persons with Disabilities program which is unique to Oregon, and a major blessing.

The key things to note are that my health insurance is based on two factors: disability and demonstrated income through employment. You are already well aware that I suffer a serious case of PTSD which is still susceptible to triggers. I also suffer extreme mobility limitations.

In another letter, I am requesting another accommodation regarding those physical limitations.

On or about May 10th, 2023, I notified Melissa that I had applied for rental assistance as provided by my current health plan, because I split my thumb, right hand, after it was macerated in a table router accident, and I am under Physician orders that my hand remain immobilized, else I risk prolonging the healing process, which is not going well. *See*: Photos 1 & 2 below. WARNING - GRAPHIC

At that time, I was only anticipating a month of lost income due to this injury, but remains a problem in mid-July. Nevertheless, when I sent notification to Melissa regarding the approval of my application for flex funds, I received a formal Notification of Eviction for Cause for Non-Payment of Rent, which was not well taken, but continues a well-established pattern of harassment.

**Page 1**                                                                 *Exhibit 102*

I believe at least a first payment made pursuant to my flex plan have been dispersed and processed by Gresham Park.

The last time I checked, Gresham Park Apartments, through the TMG client portal, is/was asserting a $150.00 late fee even though you were notified in advance. I do hope you realize these are Medicaid funds that originate with the Federal Government, and they even support a hotline to report Medicaid Fraud, but I've been too busy to call.

I certainly have no control over a third-party payee's dispersal schedule. I already raised this as an issue and I apologize if this has already been corrected. The TMG extortion machine is of no use to me going forward.

I work out of my home, including my garage and patio, as required by the State of Oregon, and which is completely dependent on my status as a person having a qualified disability. I believe I have been cited for violation of a non-existent lease more times than I can remember, for simply engaging in activities that were totally comprehended when I moved in, which I have no intention of stopping, but is just one example of bias and discrimination against persons having a disability.

Next, I do wish I was capable of sending this notice earlier, but about two weeks ago, as I was attempting to resume work, I cut off the end of another finger, this time the middle finger of my left hand. As of this moment, I cannot type without getting blood on the keyboard. *See*: Photo 3. WARNING: GRAPHIC.

Now, both hands are immobilized.

Once again, I have already discussed the matter with my case manager at Providence, so I am fully anticipating several on-going payments through flex-fund dispersals. The application is in process, and has been approved by my Physician.

Of course, as if on cue, when I returned from my appointment with my hand surgeon yesterday, I found yet another eviction notice taped to my door. Again, this was not well received. Accordingly, I would like to invite you to stop harassing me. Otherwise, I will take formal legal action.

Next, you are invited to stop overcharging me particularly with respect to flex funds which are clearly tied directly to my disability.

I am also inviting you to stop interfering with the lawful pursuit of my self-employment activities.

I invite you to figure out a documented process for avoiding the threat of eviction and late fees whenever a health emergency presents itself.

And finally, kindly avoid leaving notices clipped to the front door.  It is more than annoying and that whole area is reserved for use by the United States Postal Service.  I am quite sure I am the only person at Gresham Park Apartments to get daily mail delivered to my front door by the US Postal Service, but that should provide some idea of the extent of my mobility issues.

I never agreed to receive notices from the owner attached to my door.  I'm sure your lease has some sort of provision in this regard, but I don't have a clue what your lease looks like.

Who is the person who keeps posting these Notices?  I have warned you in the past, and I am cautioning you again, that certain persons are clearly a PTSD trigger for me, and if I encounter them, I cannot predict the outcome.  For example, if Ms. Soto is involved, we have a problem.

I think it would be prudent to rewind the entire rent increase issue back to *status quo* as it was on June 1st, 2023.  Please consider that as a request for accommodation under the ADA.

In conclusion, your outpouring of empathy and understanding has been duly noted.


Regards,

James E. Jacobson, Jr.

**Exhibit 102**

# WARNING:

# THE FOLLOWING PAGES CONTAIN

# GRAPHIC CONTENT COMPRISING

# PHOTOGRAPHS OF MUTILATED BODY PARTS.

# VIEW AT YOUR OWN PERIL.

**Picture 1**

Right Thumb as of May 10ᵗʰ 2023



Macerated flesh

Note: There is an entire section of nail missing, which define a line where my thumb was split to down to the bone.

**Picture 2**



**As of July 10th 2023**

*Exhibit 102*

Picture 3



**As of July 1, 2023**

*Exhibit 102*



Exhibit 102

# James E. Jacobson, Jr.
805 NE Kane Dr., Apt 109B
Gresham, OR 97030
(503) 740-0676

07/14/2023

Melissa Garrett
Regional Manager
TMG Property Management Services NW
7710 NE Vancouver Mall Dr.
Vancouver WA  98662

AH Gresham Park, LLC, a Utah Company
6218 N. Concord Ave
Portland, OR  97217
(503) 489-5132

RE:  Request for Accommodation under the American's with Disabilities Act – Parking
(This request has been pending since 2020)

I moved into Gresham Park Apartments in 2018 and my lease with the prior owner expired in
2019.  I attempted to submit a signed renewal in early 2020, but that was rejected by the new
owners.

I was finally presented a proposed lease renewal by the new owners in mid-2020, which I
refused to sign because I had submitted several requests for accommodation under the ADA that
have been ignored for a few years now.

So, by copy of this letter, I am repeating my request for an accommodation under the Request for
Accommodation under the Americans with Disabilities Act, which should be trivial.

I have certain physical disabilities which require un-obstructed ramp access between my garage
and my residence.  A copy of my wheel chair user parking permit issued by the DMV is attached.

Due to a prior spinal issue, I have severe mobility limitations that prevent me from lifting heavy
objects so I routinely move things between the garage and my apartment using a cart with
wheels. I use the same cart for taking out the garbage.

I live in Apartment 109B, which I  selected specifically because it has wheelchair ramp access.
That wheelchair ramp was designed so that the wheelchair access to the parking lot is provided at
parking spot 25.  Thus, wheelchair access is blocked whenever a car is parked in spot 25.

I am currently assigned parking spot 23.

**Exhibit 104**

I have been waiting for years to be assigned spot 25, and ***I am repeating that request again***. Kindly reassign the parking spots so that I am assigned spot 25 so that I can enjoy wheelchair access as the building was designed.

This is one issue that has been pending since 2020 and which is preventing me from signing any lease agreement with the present owners.

Regards,

James E. Jacobson, Jr.

***Exhibit 104***



*Exhibit 104*

**City of Gresham - Rental Housing Inspection Program**
503-618-2248 | RentalInspection@greshamoregon.gov
1333 NW Eastman Parkway | Gresham, OR 97030

# Notice of Violation

Date: 04/19/2023

| | |
|---|---|
| Case Type: | Rental Housing Mandatory - Interior |
| Case Number: | RHMI-23-01244 |
| Inspector: | Amy DeVane 503-618-2208 |

TENANT
805 NE KANE DR #109
GRESHAM, OR 97030

Location:    805 NE KANE DR #109
GRESHAM, OR 97030

Dear Tenant:

A Rental Housing Inspector from the City of Gresham visited your property and found violations of the Gresham Revised Code, Property Maintenance Code and/or Gresham Community Development Code. The attached Inspection Checklist lists the violations.

- Enclosed is an Inspection Checklist that identifies the violations observed in your unit. This information has been sent to the owner and/or property manager for correction. We appreciate your cooperation with them and the City inspector as we work towards resolving the violations.
- **We will be performing a re-inspection of the property on 05/23/2023.**
- Inspections generally take place between the hours of 9:00 a.m. and 12:00 p.m.

For tenant resources and information related to the Rental Housing Inspection Program, visit: GreshamOregon.gov/Rental-Housing-Inspections/.

Thank you,

City of Gresham

*The City of Gresham and Oregon landlord tenant laws prohibit retaliatory conduct against tenants for asserting their rights under this Code and state law.*

Exhibit 106

City of Gresham
# Inspection Checklist

Inspection Date: 04/11/2023

Case Number: RHMI-23-01244

Inspector:  Amy DeVane

Inspector Email:  amy.devane@greshamoregon.gov

Inspector Phone Number: 503-618-2208

Inspection Status:  In Violation

Inspection Type:  RH Rental Housing Interior Inspection Mandatory

Address:  805 NE KANE DR #109
GRESHAM, OR 97030

Owner:  GRESHAM PARK APARTMENTS

Property Manager:  TMG

| Checklist Item | Results | Comments |
|---|---|---|
| Inspector Comments | FAIL | See violations below. |
| RHI Plumbing Systems Required fixture(s) not in good working condition(IPMC 504.1) | FAIL | Broken toilet seat. |
| RHI General Interior Surface significant decay, defective, or in damanged condition (IPMC 305.3) | FAIL | Damage to bathroom ceiling from previous water leak. Unfinished repair in Bedroom #2 closet (plumbing access). Holes present in back of kitchen sink cabinet. |
| RHI Heating/ Ventilation System Heat source inadequate to maintain yr round temperature of 68 degrees (IPMC 602.2) | FAIL | Bathroom has no heat source. |
| RHI Electrical Systems Receptacle (s) damaged, will not hold plug, and warrant replacement (IPMC 604.3, must be replaced with GFCI if required per IPMC 605.2) | FAIL | Rear patio outlet is not secure in its housing (exposed wires). Living room outlet (bathroom wall) tested with loose plugs and intermittent lighting. Any electrical work must be completed by licensed electrical contractor. City issued electrical permit or electrician's minor label may be required as documentation. Kitchen GFCIs failed to properly test/trip at inspection (left of stove, left & right of sink). Any electrical work must be completed by licensed electrical contractor. City issued electrical permit or electrician's minor label may be required as documentation. Kitchen island outlet tested with loose top plug and intermittent lighting (end of island). Any electrical work must be completed by licensed electrical contractor. City issued electrical permit or electrician's minor label may be required as documentation. |
| RHI Heating/ Ventilation System Inadequate bathroom or laundry room exhaust fan (IPMC 403.2) | FAIL | Bathroom ventilation fan is inoperable. |

Additional Information
- Gresham City Codes and Policies https://greshamoregon.gov/City-Codes-and-Policies/
- Permit Center https://greshamoregon.gov/Permit-Services/
- Business Licensing https://greshamoregon.gov/Business-Licenses/

Page 2

Exhibit 106

| | | |
|---|---|---|
| RHI General Interior  Appliance not in safe working condition (IPMC 603.1) | FAIL | Tenant stated dishwasher leaks onto floor during use. Does not effectively clean dishes. High loop missing. The discharge hose from the pump must extend to the underside of the cabinet top and be securely anchored to preclude the danger of sink wastewater from flowing back into the dishwasher (OPSC 807.4). |
| RHI Plumbing Systems System obstructions, leaks, defects (IPMC 504.1 & IPMC 506.2) | FAIL | Evidence of drain line backflow present in bathtub at time of inspection. Tenant stated backflows have happened multiple times. Have licensed plumber complete inspection and treat as necessary. |
| RHI Smoke Detectors Not operational/ battery take out (ORSC R315.4.1) OR improper number, improper location (ORSC R315.2) | FAIL | Hard-wired hallway detector missing. Install according to manufacturer's instructions. |

Additional Information
- Gresham City Codes and Policies https://greshamoregon.gov/City-Codes-and-Policies/
- Permit Center https://greshamoregon.gov/Permit-Services/
- Business Licensing https://greshamoregon.gov/Business-Licenses/

Page

Exhibit 106

### City of Gresham - Rental Housing Inspection Program
503-618-2248 | RentalInspection@greshamoregon.gov
1333 NW Eastman Parkway | Gresham, OR 97030

# Civil Penalty Warning

| | | | |
|---|---|---|---|
| Date: | 06/08/2023 | Case Type: | Rental Housing Mandatory - Interior |
| | | Case Number: | RHMI-23-01244 |
| | | Inspector: | Amy DeVane 503-618-2208 |

| | |
|---|---|
| TENANT<br>805 NE KANE DR #109<br>GRESHAM, OR 97030 | Location:   805 NE KANE DR #109<br>GRESHAM, OR 97030 |

Dear Tenant:

A Rental Housing Inspector from the City of Gresham visited your property and found violations of the Gresham Revised Code, Property Maintenance Code and/or Gresham Community Development Code.  The attached Inspection Checklist lists the violation(s).

- This information has been sent to the owner and/or property manager for correction. We appreciate your cooperation with them and the City inspector as we work towards resolving the violations.
- We will be performing a re-inspection of the remaining violations on 07/10/2023 between the hours of 9:00 a.m. and 12:00 p.m.
- If the violation(s) are not corrected on 7/10/2023 a Civil Penalty fee may be imposed.

For tenant resources and information related to the Rental Housing Inspection Program, visit: GreshamOregon.gov/Rental-Housing-Inspections/.

Thank You,
City of Gresham

*The City of Gresham and Oregon landlord tenant laws prohibit retaliatory conduct against tenants for asserting their rights under this Code and state law.*

City of Gresham
# Inspection Checklist

Inspection Date: 06/05/2023

Case Number: RHMI-23-01244

Inspector:     Amy DeVane

Inspection Status:   In Violation

Inspector Email:  amy.devane@greshamoregon.gov

Inspection Type:    RH Rental Housing Interior
Inspection Mandatory

Inspector Phone Number: 503-618-2208

Address:  805 NE KANE DR #109
GRESHAM, OR 97030

Owner:

Property Manager:    TMG

| Checklist Item | Results | Comments |
|---|---|---|
| Inspector Comments | FAIL | 05/25/23: Violations not resolved. Case moved forward to CPW. |
| RHI Plumbing Systems Required fixture(s) not in good working condition(IPMC 504.1) | PASS | Broken toilet seat.<br><br>05/25/23: Resolved. |
| RHI General Interior Surface significant decay, defective, or in damanged condition (IPMC 305.3) | PASS | Damage to bathroom ceiling from previous water leak.<br><br>Unfinished repair in Bedroom #2 closet (plumbing access).<br><br>Holes present in back of kitchen sink cabinet.<br><br>05/25/23: Resolved. |
| RHI Heating/ Ventilation System Heat source inadequate to maintain yr round temperature of 68 degrees (IPMC 602.2) | PASS | Bathroom has no heat source.<br><br>05/25/23: Resolved. |

*Exhibit 108*

| | | |
|---|---|---|
| RHI Electrical Systems Receptacle (s) damaged, will not hold plug, and warrant replacement (IPMC 604.3, must be replaced with GFCI if required per IPMC 605.2) | FAIL | Rear patio outlet is not secure in its housing (exposed wires).<br><br>Living room outlet (bathroom wall) tested with loose plugs and intermittent lighting. Any electrical work must be completed by licensed electrical contractor. City issued electrical permit or electrician's minor label may be required as documentation.<br><br>Kitchen GFCIs failed to properly test/trip at inspection (left of stove, left & right of sink). Any electrical work must be completed by licensed electrical contractor. City issued electrical permit or electrician's minor label may be required as documentation.<br><br>Kitchen island outlet tested with loose top plug and intermittent lighting (end of island). Any electrical work must be completed by licensed electrical contractor. City issued electrical permit or electrician's minor label may be required as documentation.<br><br>05/25/23: Kitchen island GFCI (left of stove) failed to properly test/trip at reinspection.<br><br>Provide copies of electrician's invoice for all electrical repairs completed to: amy.devane@greshamoregon.gov |
| RHI Heating/ Ventilation System Inadequate bathroom or laundry room exhaust fan (IPMC 403.2) | PASS | Bathroom ventilation fan is inoperable.<br><br>05/25/23: Resolved. |
| RHI General Interior  Appliance not in safe working condition (IPMC 603.1) | FAIL | Tenant stated dishwasher leaks onto floor during use. Does not effectively clean dishes. High loop missing. The discharge hose from the pump must extend to the underside of the cabinet top and be securely anchored to preclude the danger of sink wastewater from flowing back into the dishwasher (OPSC 807.4).<br><br>05/25/23: Not resolved. |
| RHI Plumbing Systems System obstructions, leaks, defects (IPMC 504.1 & IPMC 506.2) | PASS | Evidence of drain line backflow present in bathtub at time of inspection. Tenant stated backflows have happened multiple times. Have licensed plumber complete inspection and treat as necessary.<br><br>05/25/23: Tenant stated backflow issue has not reoccurred since last inspection. Continue to monitor. Toilet clogged at time of inspection. |
| RHI Smoke Detectors Not operational/ battery take out (ORSC R315.4.1) OR improper number, improper location (ORSC R315.2) | FAIL | Hard-wired hallway detector missing. Install according to manufacturer's instructions.<br><br>05/25/23: Not resolved. |

*Exhibit 108*



## OREGON
## RENEWAL OFFER/
## RENT INCREASE NOTICE

 

DATE **03/15/2023**   PROPERTY NAME / NUMBER **Gresham Park Apartments**      503.489.5132

RESIDENT NAME(S) **James Jacobson**

UNIT NUMBER **#109B**   STREET ADDRESS **805 NE Kane Dr**

CITY **Gresham**          STATE **OR**   ZIP **97030**

---

Thank you for your residency. We hope to continue this relationship with you into the future.

☒ Your current fixed-term lease expires on ____**06/30/2023**____. ☐ You are currently on a month-to-month agreement
We would like to offer you the opportunity to sign a new fixed-term lease with us. Please choose from one of the following options, which will
take effect on ____**07/01/2023**____ ("Effective Date"). Lease term availability will be offered on a first-come, first-served basis.

| CURRENT | | ☐ OPTION 1 (FIXED-TERM) | | ☐ OPTION 2 (FIXED-TERM) | | ☐ OPTION 3 (MONTH-TO-MONTH) | |
|---------|--|-------------------------|--|-------------------------|--|------------------------------|--|
| | | Available Term(s) **12** | | Available Term(s) | | | |
| | CHARGE | INCREASE | NEW CHARGE | INCREASE | NEW CHARGE | INCREASE | NEW CHARGE |
| Rent | $ 1,283.00 | $ 162.00 | $ 1,445.00 | $ | $ | $ 180.00 | $ 1,463.00 |
| Pet Rent | $ | $ | $ | $ | $ | $ | $ |
| Parking Rent | $ | $ | $ | $ | $ | $ | $ |
| Storage Rent | $ 125.00 | $ 20.00 | $ 145.00 | $ | $ | $ 20.00 | $ 145.00 |
| Utilities* | $ | $ | $ | $ | $ | $ | $ |
| Total | $ 1,408.00 | $ 182.00 | $ 1,590.00 | $ | $ | $ 200.00 | $ 1,608.00 |

*(Option 2 marked "Not Applicable")*

If the month-to-month rent increase over the preceding 12-month period exceeds 7% plus the consumer price index, Owner/Agent is exempt as follows:
☐ The first certificate of occupancy for the dwelling unit was issued less than 15 years prior to the date of this notice:
  Date of certificate of occupancy was _____
☐ The dwelling unit is regulated or certified as affordable housing by a federal, state or local government and the change in rent: (A) Does
  not increase the tenant's portion of the rent; or (B) is required by program eligibility requirements or by a change in the tenant's income.

Additional information:

If you do not wish to renew your lease, please submit your notice to vacate in writing, at least 30-days before last day of tenancy.

The following additional terms will be incorporated into your Rental Agreement upon your renewal:
Pet Rent: $35, Late fee: $150, Lockout fee: $150

*Any current utility billing agreement will remain in effect unless specific changes are listed above.

**If renter's insurance will be required as an additional term, Oregon law provides that no insurance may be required if: a) the household income
of all of the Residents in the Unit is equal to or less than 50 percent of the area median income, adjusted for family size as measured up to a
five-person family; or b) if the dwelling unit has been subsidized with public funds, not including housing choice vouchers.

**Resident(s) may accept a fixed-term option only by signing a new rental agreement. If you do not sign a new fixed-term rental agreement
by ____06/15/2023____, on the Effective Date your monthly rent will be the month-to-month rate set forth above as Option 3.**
Please feel free to contact the Owner/Agent if you have any questions or simply to talk about your options. Once again, thank you for your
residency and we look forward to hearing from you soon.

Please note, if your total monthly rent has been increased above, this letter serves as the required written 90 days' rent increase notice to you.
If your plans involve leaving, please remember that a written 30 day notice to vacate must be served on the Owner/Agent at least 30 days prior
to the later of your move-out or lease end date.
☐ Section 8 Housing Choice Voucher
If you currently have a Housing Choice Voucher, and your total monthly rent has been increased above, this letter serves as the required rent
increase notice to you and a copy has been mailed to the housing authority.
☐ This Notice has been served personally at least 91 days prior to the Effective Date OR
☐ If written Rental Agreement allows, this Notice has been served by posting on the main entrance
  door of the dwelling unit and mailed first class mail at least 91 days prior to the Effective Date OR
☐ This Notice has been served by first class mail at least 94 days prior to the Effective Date.

---

City of Portland: If the dwelling unit is located within
the City of Portland, attach form M170 (Notice of City of
Portland Renter Additional Protections).

OWNER/AGENT X _(signature)_
ADDRESS **7710-B NE Vancouver Mall Drive**
**Vancouver, WA 98662**
TELEPHONE **360.892.4000**
EMAIL **greshampark@tmgnorthwest.com**

Form M065 OR Copyright © 2021 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 9/9/2021.

☐ ON SITE   ☐ RESIDENT   ☐ MAIN OFFICE (IF REQUIRED)

**Page 1**                                    **Exhibit 110**



## OREGON
## RENEWAL OFFER/
## RENT INCREASE NOTICE

 

MULTIFAMILY NW
The Association Promoting Quality Rental Housing

DATE **03/21/2022**  PROPERTY NAME / NUMBER  **Gresham Park Apartments**    **503.489.5132**

RESIDENT NAME(S) **James Jacobson**

UNIT NUMBER **#109B**  STREET ADDRESS **805 NE Kane Dr**

CITY **Gresham**  STATE **OR**  ZIP **97030**

Thank you for your residency. We hope to continue this relationship with you into the future.

☐ Your current fixed-term lease expires on _____. ☒ You are currently on a month-to-month agreement

We would like to offer you the opportunity to sign a new fixed-term lease with us. Please choose from one of the following options, which will take effect on **07/01/2022** ("Effective Date"). Lease term availability will be offered on a first-come, first-served basis.

| CURRENT | | | OPTION 1 (FIXED-TERM) | | | OPTION 2 (FIXED-TERM) | | | OPTION 3 (MONTH-TO-MONTH) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Available Term(s) **12** | | | Available Term(s) ____ | | | | | |
| | | CHARGE | | INCREASE | NEW CHARGE | | INCREASE | NEW CHARGE | | INCREASE | NEW CHARGE |
| Rent | $ | 1,195.00 | | $ 88.00 | $ 1,283.00 | | $ | $ | | $ 118.00 | $ 1,313.00 |
| | | | | $ | $ | | $ | $ | | $ | $ |
| Pet Rent | $ | | | $ | $ | | $ | $ | | $ | $ |
| Parking Rent | $ | | | $ | $ | | $ | $ | | $ | $ |
| Storage Rent | $ | 125.00 | | $ 0.00 | 125.00 | | $ | $ | | $ 0.00 | 125.00 |
| Utilities* | $ | | | $ | $ | | $ | $ | | $ | $ |
| | $ | | | $ | $ | | $ | $ | | $ | $ |
| Total | $ | 1,320.00 | | $ 88.00 | $ 1,408.00 | | $ | $ | | $ 118.00 | $ 1,438.00 |

*Not Applicable* (watermark across OPTION 2 column)

If the month-to-month rent increase over the preceding 12-month period exceeds 7% plus the consumer price index, Owner/Agent is exempt as follows:

☐ The first certificate of occupancy for the dwelling unit was issued less than 15 years prior to the date of this notice:
Date of certificate of occupancy was _____

☐ The dwelling unit is regulated or certified as affordable housing by a federal, state or local government and the change in rent: (A) Does not increase the tenant's portion of the rent; or (B) Is required by program eligibility requirements or by a change in the tenant's income.

Additional Information:

If you do not wish to renew your lease, please submit your notice to vacate in writing, at least 30-days before last day of tenancy.

The following additional terms will be incorporated into your Rental Agreement upon your renewal:

Pet Rent: $35, Late fee: $150, Lockout fee: $150

*Any current utility billing agreement will remain in effect unless specific changes are listed above.

**If renter's insurance will be required as an additional term, Oregon law provides that no insurance may be required if: a) the household income of all of the Residents in the Unit is equal to or less than 50 percent of the area median income, adjusted for family size as measured up to a five-person family; or b) if the dwelling unit has been subsidized with public funds, not including housing choice vouchers.

Resident(s) may accept a fixed-term option only by signing a new rental agreement. If you do not sign a new fixed-term rental agreement by **08/25/2022**, on the Effective Date your monthly rent will be the month-to-month rate set forth above as Option 3.

Please feel free to contact the Owner/Agent if you have any questions or simply want to talk about your options. Once again, thank you for your residency and we look forward to hearing from you soon.

Please note, if your total monthly rent has been increased above, this letter serves as the required written 90 days' rent increase notice to you. If your plans involve leaving, please remember that a written 30 day notice to vacate must be served on the Owner/Agent at least 30 days prior to the later of your move-out or lease end date.

☐ Section 8 Housing Choice Voucher

If you currently have a Housing Choice Voucher, and your total monthly rent has been increased above, this letter serves as the required rent increase notice to you and a copy has been mailed to the housing authority.

☐ This Notice has been served personally at least 91 days prior to the Effective Date OR

☒ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first class mail at least 91 days prior to the Effective Date OR

☐ This Notice has been served by first class mail at least 94 days prior to the Effective Date.

City of Portland: If the dwelling unit is located within the City of Portland, attach form M170 (Notice of City of Portland Renter Additional Protections).

OWNER/AGENT **X** _(signature)_

ADDRESS **7710-B NE Vancouver Mall Drive**

**Vancouver, WA 98662**

TELEPHONE **360.892.4000**

EMAIL **greshampark@tmgnorthwest.com**

☐ ON SITE  ☐ RESIDENT  ☐ MAIN OFFICE (IF REQUIRED)

Form MB95 OR Copyright © 2021 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 9/9/2021.

# RENTAL AGREEMENT

☐ Move in ☐ Renewal ☐ Month-to-Month Tenancy ☐ Fixed m Lease
☐ Transfer from _____

Date of Rental Agreement: __08/09/2019__
*(when the Rental Agreement is filled out)*

**NAA**
NATIONAL APARTMENT ASSOCIATION

*This is a binding document. Read carefully before signing.*

## Moving in — General Information

**1. PARTIES.** This Rental Agreement (sometimes referred to as the "lease") is entered into by and between *you, the* Resident(s) *(list all people signing the Rental Agreement):* __James Jacobson__

_____
_____
_____
_____
_____
_____

and *us, the* Landlord: __Gresham Park__

_____
_____

*(name of apartment community or title holder)* You've agreed to rent Apartment No. __109B__ , at __805 NE__
__Kane Dr #109B__
*(street address)* in
__Gresham__
*(city)*, Oregon, __97030__
*(zip code)* for use as a private residence only, and not for any commercial use. Further, the premises shall not be used in any manner for any business or commercial purposes which involves customers or clients coming to or entering the Premises, or delivery of goods to or from the Premises. The terms "you" and "your" refer to all Residents listed above. The terms "we", "us," and "our" refer to the Landlord listed above (or any of Landlord's successors' in interest or assigns). Written or electronic notice to or from our managers, employees or other agents constitutes notice to or from us. If anyone else has guaranteed performance of this Rental Agreement, a separate Rental Agreement Guaranty for each guarantor is attached.

Landlord's designated address for the receipt of service of notices is:
__805 NE Kane Dr__
__Gresham, OR 97030__

**2. OCCUPANTS.** The dwelling will be occupied only by the Resident(s) set forth above and *(list all other occupants not signing the Rental Agreement):*

_____
_____
_____
_____
_____
_____

No one else may occupy the dwelling. Resident(s) and occupant(s) not listed above must not stay in the dwelling for more than __14__ consecutive days (two days, if not filled in) without Landlord's prior written consent, and no more than twice that many days in any one month, whether or not consecutive. For purposes of this paragraph, a person shall be deemed to be staying in the dwelling if that person is present on the premises for a substantial amount of time, whether day or night, and whether during consecutive hours or not. Long term guests, repeated guests, live-in guests, live-in sitters, and visiting family members are not exempt from this paragraph.

Resident shall notify Landlord of any absence in excess of seven (7) days, no later than the first day of said absence.

**3. TERM.** ☒ Lease; ☐ Month-to-Month Tenancy. If the "Lease" box is checked then the initial term of the Rental Agreement shall commence on the __9th__ day of __August__ __2019__ , and shall end at midnight (the end of the day) on the __8th__ day of __August__ , __2020__ .

**First Year of Occupancy / Fixed Term Lease:** If the "Lease" box is checked and the natural expiration date of the fixed term lease falls within the first year of occupancy, then Resident shall serve upon Owner/Agent no less that 30 days' notice of intent to vacate the premises upon the lease's natural expiration date. If Resident fails to provide said notice, Owner/Agent may pursue any damages allowed by any applicable law.

**After First Year of Occupancy / Fixed Term Lease:** If (but only if) the specified ending date of the foregoing lease term falls after the first year of occupancy, then this Rental Agreement will automatically become a month-to-month tenancy upon the expiration of the fixed term, unless (a) The Owner/Agent and Resident agree to a new fixed term tenancy; (b) the Resident gives the Owner/Agent notice in writing not less than 30 days prior to the specified ending date for the fixed term or the date designated in the notice for the termination of the tenancy, whichever is later; or (c) the Owner/Agent terminates the tenancy in accordance with applicable law based upon a qualifying landlord reason.

**Month-to-Month:** If the "Month-to-Month" box is checked, then this Rental Agreement shall consist of a month-to-month tenancy and, in such event, the following termination rights shall apply. In the event either party desires to terminate the tenancy without cause: (a) either party may terminate the tenancy by giving the other at least 30 days' written notice (or such longer notice as may be required by state law, whichever is longer) to terminate during the first year of occupancy; (b) Resident may terminate the tenancy by giving the Owner/Agent 30 days' written notice to terminate; and (c) Owner/Agent may otherwise terminate the tenancy pursuant to applicable law based upon a qualifying landlord reason.

**First Year of Occupancy:** "First year of occupancy" is defined as all periods in which all of the current Residents have resided in the dwelling unit for one year or less.

**Preservation of Termination Rights:** Any termination rights set forth herein are in addition to, and not in limitation of, any other termination rights either party may have.

**4. SECURITY DEPOSIT.** Unless modified by Addendum(s), the total security deposit to be paid at the time of execution of this Rental Agreement for all Residents in the dwelling is $ __1195.00__ and said amount shall be due on or before the date this Rental Agreement is signed.

**5. KEYS AND FURNITURE.** You will be provided __2__ dwelling key(s), __1__ mailbox key(s), and _____ other access devices for _____ .
Your dwelling will be *[check one]:* ☐ furnished or ☒ unfurnished.

**6. RENT, LATE CHARGES, AND RETURNED CHECK CHARGES.** Unless modified by Addendum(s), you will pay $ __1195.00__ per month for rent, payable in advance and without demand:
☒ at the on-site manager's office, or
☒ at our online payment site, or
☐ at _____
_____
_____

If online payments are allowed by Landlord, Landlord shall have the right to terminate Resident's ability to make online payments at any time, and for any reason, including, without limitation, any changes in Landlord's methods for receiving payments, Landlord's desire to prevent partial payments. If rent is due at the time of move-in, it is described below in the list of applicable charges.

Prorated rent of $ __886.61__ is due for the remainder of the *[check one]:* ☒ 1st month or ☐ 2nd month, and shall be paid on or before _____ , _____ . There after you must pay your rent on or before the 1st day of each month (due date).

© 2019, National Apartment Association, Inc. - 3/2019, Oregon

*Exhibit F3*

If this Rental Agreement consists of \_\_\_\_\_ se, and converts to a month-to-month tenancy upon expiration \_\_\_\_\_ lease term, then the monthly rent rate shall automatically increase $ \_\_0.00\_\_ per month during the month-to-month period (in the event Landlord has not served a valid notice of rent increase), or shall increase to an amount set forth in any valid notice of rent increase served upon Resident(s) by Landlord, regardless of the date of service of said notice of rent increase, whichever is greater. This paragraph shall not limit, and shall be in addition to, any other rent increase rights that may exist under any applicable law. In the event the parties execute a new Rental Agreement, containing new rent amounts, the new Rental Agreement shall control (commencing immediately upon expiration of the lease term).

Cash is not an acceptable method of payment for rent (or any other debts to Landlord) without Landlord's prior written permission. Residents must not withhold or offset rent, unless authorized by statute. Landlord may, at its sole option, require, at any time, with or without cause, that Residents pay all rent and other sums via certified check, cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. Rent is not considered accepted, if the payment/ACH is rejected, does not clear, or is stopped for any reason. If you don't pay all rent on or before the end of the fourth (4th) day of the rental period, then you must pay a late charge of $ \_\_100.00\_\_ . Said late charge shall automatically become due and payable on the fifth (5th) day of the monthly rental period, without notice or demand from Owner/Agent to Resident. In the event resident pays any sums to Landlord via check or electronic payment, and that payment is returned for nonsufficient funds, then Resident shall pay to Landlord the sum of $ \_\_37.00\_\_ ($35.00 if left blank) for each returned check or rejected electronic payment, plus an amount equal to any amount that a bank has charged the Landlord for processing the dishonored check. If you don't pay rent on time, you'll be delinquent and all remedies under this Rental Agreement will be authorized. We'll also have all other remedies for such violation.

**LIST OF APPLICABLE CHARGES:**

- **RENTS:**
  - Rent Due at Move-In/Renewal: $ _____
  - Second Rent Payment: $ 1195.00
  - Monthly Stated Rent: $ 1195.00
  - Additional Rent (Pet): $ 25.00
  - Additional Rent (Other): $ _____
    $ _____

- **DEPOSITS:**
  - Total Security Deposit: $ _____
  - Additional Security Deposit (Pet): $ _____
  - Execution Deposit: $ _____
  - Other Security Deposits (Describe): $ _____
    $ _____

- **FEES:**
  - Early Termination Fee: (1.5 times the monthly rent if left blank. If not applicable, insert "0.") $ 1792.50
  - Dishonored Check Fee: ($35.00, if left blank) plus any charges bank imposes on Landlord $ 37.00
  - Smoke Alarm/Carbon Monoxide Alarm Tampering Fee: $ 250.00
  - Noncompliance Fees (not to exceed $50.00 for a second noncompliance, or $50.00 plus five percent of the monthly rent amount, for a third or subsequent noncompliance.
    The following noncompliance fees are only for second violations. Additional noncompliance fees may be due for third or subsequent noncompliances. See paragraph 24 - Resident Noncompliance Fee for calculation of third or subsequent noncompliances)
    - Late Payment of a Utility: $ _____
    - Failure to Clean Pet/Animal Waste: $ 50.00
    - Failure to Clean Rubbish/Garbage: $ 50.00
    - Parking Violations or Other Improper use of Vehicle: $ 50.00
    - Smoking in Clearly Designated Nonsmoking Unit or Area of Premises: $ 50.00

- Unauthorized Pet Fee     Paragraph 24 - $ 50.00
  Resident Noncomplia\_\_\_\_\_ ee):
  - Keeping on the Premises an Unauthorized Pet Capable of Causing Damage to Persons or Property.
- Late Charge (Late Rent Payment Fee) $ 100.00
- Failing to comply with rules prohibiting smoking in a clearly designated nonsmoking unit or area of the premises. $ 50.00
- Other Fees (Describe):
  - _____ $ _____
  - _____ $ _____
- **OTHER MONTHLY CHARGES (Describe):**
  - _____ $ _____
  - _____ $ _____

**Application of Payments:** Payments received by Residents during the tenancy shall be applied in the following order:
(a) Outstanding rent from prior rental periods;
(b) Rent for the current rental period;
(c) Utility or service charges;
(d) Late rent payment charges; and
(e) Fees or charges owed by the tenant under ORS 90.302 or other fees or charges related to damage claims or other claims against the Resident.

**Timing of Payments:** All monthly charges shall be deemed due on the first day of each rental period, unless a different due date is designated herein.

**Third Party Payments:** Landlord has the absolute right to refuse to accept any payment from any person or entity other than the Resident(s), unless Landlord is required by law to accept said payment.

**Processing Fees:** Landlord shall be entitled to charge to Resident(s) all processing fees charged to Landlord by a credit card company and passed through to the Resident for the use of a credit card by the tenant to make a payment when:
(a) the credit card company allows processing fees to be passed through to the credit card holder; or
(b) Landlord allows Resident(s) to pay in cash or by check.

**HOA Assessments:** Landlord shall be allowed to pass through, and charge, HOA assessments to Resident(s), if:
(a) the assessments are imposed by the association on the Landlord;
(b) the Landlord owns the dwelling unit within the association;
(c) the assessments are imposed by the association on any person for expenses related to moving into or out of a unit located within the association; and
(d) the Landlord gives a copy of the assessment the Landlord receives from the association to the Resident before or at the time the Landlord charges the Resident.

7. **UTILITIES.** We'll pay for the following items, if checked:
☐ water ☐ gas ☑ electricity ☐ master antenna.
☐ wastewater ☐ trash ☐ cable TV
☐ other _____

You'll pay for all other utilities, related deposits, and any charges (including, without limitation, any public service charge that has been billed by a utility or service provider to the Landlord for utility or service provided directly, or for a public service provided indirectly, to the Resident's dwelling unit or to a common area available to the Resident as part of the tenancy), permissible fees, or services on such utilities. You must pay all utility charges as and when due, and not allow your utility payments to fall into default. You shall not allow utilities to be disconnected—including disconnection for not paying your bills—until your tenancy ends and you have vacated the premises. Cable services are not guaranteed. Cable services may be reduced or eliminated, at Landlord's sole discretion during the tenancy. Any reduction or elimination of cable services shall not constitute a default hereof. Utilities may be used only for customary and normal Residential household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the dwelling, or prorated by an allocation formula, we will include an Addendum with this Rental Agreement in compliance with applicable laws.

*Exhibit F3*

**8. INSURANCE.** Renter's liability insurance *(choose one)* ☒ is ☐ is not required. If renter's liability insurance is required, then Resident shall obtain and maintain throughout your tenancy, including any renewal periods and/or lease extensions, at all time during tenancy renter's liability insurance with an amount of coverage of $ __100000.00__ ($100,000 per occurrence, if left blank). Resident(s) shall provide documentation either (a) that Resident(s) have named Landlord as an interested party on the Resident's renter's liability insurance policy authorizing the insurer to notify Landlord of (i) cancellation or nonrenewal of the policy; (ii) reduction of policy coverage; or (iii) removal of Landlord as an interested party; or (b) on a periodic basis related to the coverage period of the renter's liability insurance policy or more frequently if Landlord reasonably believes that the insurance policy is no longer in effect, that Resident(s) maintain the renter's liability insurance. If this rental agreement is, or becomes, a month-to-month tenancy, then Landlord may amend this agreement during the month-to-month tenancy to require renter's liability insurance after giving the Resident at least 30 days' written notice of the requirement. If Resident does not obtain renter's liability insurance within the 30-day period: (a) Landlord may terminate the tenancy pursuant to ORS 90.392; and (b) Resident may cure the cause of the termination as provided by ORS 90.392 by obtaining insurance. Resident shall provide documentation that Resident maintain the renter's liability insurance on a periodic basis related to the coverage period of the renter's liability insurance policy or more frequently if Landlord reasonably believes that the insurance policy is no longer in effect. Pursuant to Oregon law, "a landlord may require that a tenant obtain or maintain renter's liability insurance only if the landlord obtains and maintains comparable liability insurance and provides documentation to any tenant who requests the documentation, orally or in writing. The landlord may provide documentation to a tenant in person, by mail or by posting in a common area or office. The documentation may consist of a current certificate of coverage." Neither Landlord nor Resident shall make unreasonable demands that have the effect of harassing the other with regard to providing documentation of insurance coverage. Landlord may not: (a) require that Resident obtain renter's liability insurance from a particular insurer; (b) require that Resident name the Landlord as an additional insured or as having any other special status on the Resident's renter's liability insurance policy; (c) require that Resident waive the insurer's subrogation rights; or (d) make a claim against Resident's renter's liability insurance unless: (i) the claim is for

damages or costs for which the tenant is legally liable and not for damages or costs that result from ordinary wear and tear, acts of God or the conduct of Landlord; (ii) the claim is greater than the security deposit of Resident, if any; and (iii) Landlord provides a copy of the claim to Resident contemporaneous with filing the claim with the insurer.

Landlord will not require Resident(s) to obtain or maintain renter's liability insurance if the household income of the Resident(s) is equal to or less than 50 percent of the area median income, adjusted for family size as measured up to a five-person family, as determined by the State Housing Council based on information from the United States Department of Housing and Urban Development. Landlord will not require Resident(s) to obtain or maintain renter's liability insurance if the dwelling unit of the tenant has been subsidized with public funds: (a) including federal or state tax credits, federal block grants authorized in the HOME Investment Partnerships Act under Title II of the Cranston-Gonzalez National Affordable Housing Act, as amended, or the Community Development Block Grant program authorized in the Housing and Community Development Act of 1974, as amended, and tax-exempt bonds. (b) Not including tenant-based federal rent subsidy payments under the Housing Choice Voucher Program authorized by 42 U.S.C. 1437f or any other local, state or federal rental housing assistance.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move into your apartment.

You may at any time ask us to change or rekey locks or latches during the lease term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

---

## Special Provisions and "What If" Clauses

**10. SPECIAL PROVISIONS.** The following special provisions and any Addendum(s) or written rules furnished to you at or before signing are incorporated herein and will supersede any conflicting provisions of this Rental Agreement.

_____

_____

_____

_____

_____

*See any additional special provisions.*

**11. EARLY MOVE-OUT; EARLY TERMINATION FEE.**

An early termination fee ☐ does ☒ does not apply.

(a)  If this rental agreement consists of a fixed term lease, and Landlord has checked the box stating that the early termination fee does not apply, and Resident fails to fulfill the term of the lease for any reason, then Landlord shall be entitled to pursue any and all default remedies, including damages, allowed by law. Said default remedies and damage claims shall include without limitation, a right to procure (i) repayment of any concessions granted to Resident, (ii) any concessions given to any replacement tenant as an inducement to procure said replacement tenant; (iii) rent through the end of the day immediately preceding the commencement of a new tenancy with a new tenant or the natural lease expiration date set forth in this Rental Agreement, whichever is earlier; (iv) any rent losses arising out of re-letting the premises to a replacement tenant at a lesser rent rate than that set forth in this Rental Agreement; and (v) all expenses associated with obtaining a new tenant and re-renting the premises, including, without limitation, all advertising and administrative expenses.

(b)  If the early termination fee box has been checked by Landlord, and the early termination fee therefore does apply, then Landlord may charge tenant an early termination fee of $ __1792.50__ (one-and-one-half times the monthly rent if left blank) if Resident fails to fulfill the term of the Lease for any reason, except as prohibited by law. Said early termination

fee shall be due and payable to Landlord upon the earlier of Resident's service upon Landlord of a notice of intent to terminate the tenancy, or the date upon which the Landlord first knew or should have known of Resident's abandonment or relinquishment of the premises. In addition to said early termination fee, Resident shall pay to Landlord (i) all rent, fees, and charges owed to Landlord through the date Landlord knew or should have known of Resident's abandonment or relinquishment of the premises; (ii) an amount sufficient to repair or replace all damage to the premises and/or common areas exceeding normal wear and tear; (iii) an amount equal to any concessions* granted to Resident; and (iv) interest thereon at the maximum permissible statutory prejudgment interest rate from the date the debt first arose. (*The parties expressly agree that any concessions granted to Resident were granted expressly contingent upon Resident fulfilling the term of the Lease and that, although said concessions may be spread throughout the lease term, are not fully vested and/or earned unless Resident fulfills the entire term of the Lease. The parties further agree that any concession repayment does not constitute payment of a fee.)

If the early termination fee provision(s) do not apply, then Landlord retains all rights, and damage claims, granted to Landlord by operation of law.

**12. REIMBURSEMENT.** You must promptly reimburse Landlord for all loss, damage, government fines, or cost of repairs or service in the premises, common areas, or any other portion of the apartment community due to a violation of the Rental Agreement and/or Addendum(s), improper use, negligence, recklessness, intentional conduct, and/or violation of any law by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from your or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including

*Exhibit F3*

advance payment, for repairs for which you're liable. Landlord's delay in demanding sums you owe shall not constitute a waiver if Landlord's right to demand or seek the same.

**13. PROPERTY LEFT IN DWELLING.** For purposes of this section, "dwelling" excludes common areas but includes interior living areas and exterior patios, balconies, and garages and storerooms for your exclusive use. If you (a) have abandoned, (b) surrendered, or (c) were forcibly removed from your dwelling, then Landlord may peacefully enter the dwelling and, subject to procedures required by state statute, store and/or dispose of your property. Except as otherwise set forth in any applicable law, Landlord is not liable for casualty loss, damage or theft for property removed, stored and/ or disposed of pursuant to this section.

**14. RENT INCREASES AND CHANGES TO RENTAL AGREEMENT.** If this Rental Agreement consists of a fixed term lease, then no rent increases shall occur before the initial lease term expires, without the express written consent of Resident. However, (a) Landlord may make other changes to the rental agreement terms or conditions, to the extent permitted by law, and (b) the parties may agree to changes during the lease term via a written Addendum or Amendment signed by the parties. Nothing contained herein shall prohibit Landlord from serving any notice of rent increase or rule change during a lease term, so long as said rent increase or rule change only takes effect after expiration of the lease term. Nothing set forth herein shall limit Landlord's right to increase rent in accordance with any applicable law.

**15. DELAY OF OCCUPANCY.** If occupancy is or will be delayed due to construction, repairs, cleaning, or a previous Resident's holding over, then we're not responsible for the delay. The Rental Agreement will remain in force subject to: (a) abatement of rent on a daily basis

during delay; and (b) your right to terminate as set forth below. If you do elect to terminate your tenancy in accordance with the rights set forth in this section, then your termination notice must be in writing. After termination, you are entitled only to a refund of deposit(s) and any rent paid. Your rent obligations shall not abate, and you shall not terminate your tenancy under this section, if mere cleaning or repairs don't prevent you from occupying the dwelling.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the dwelling is ready for occupancy, but not later.

(a) If we give written notice to any of you when or after the initial term as set forth in paragraph 3 (Term)—and the notice states that occupancy has been delayed because of construction or a previous Resident's holding over, and that the dwelling will be ready on a specific date—you may terminate the Rental Agreement by serving written notice of intent to terminate upon Landlord within 3 days of your receiving the notice, but not later.

(b) If we give written notice to any of you before the initial term as set forth in paragraph 3 (Term), and the notice states that construction delay is expected and that the dwelling will be ready for you to occupy on a specific date, then you may terminate the Rental Agreement by serving written notice of intent to terminate upon Landlord within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in paragraph 3 (Term) for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**16. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, you expressly authorize us to provide the same.

---

## While You're Living in the Dwelling

**17. COMMUNITY POLICIES OR RULES.** Resident and Resident's guests and occupants must comply with any written rules and community policies, including instructions for the use and care of common areas and other property. Any rules, regulations, terms or conditions set forth in any Addendum are incorporated herein by reference. Landlord's rules and regulations are considered part of this Rental Agreement. Landlord may make reasonable changes to written rules in accordance with applicable laws.

**18. LIMITATIONS ON CONDUCT.** The dwelling and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash, rubbish, filth and debris must be removed and disposed of at least weekly (or more frequently, if appropriate) in appropriate receptacles in accordance with local ordinances. Passageways may be used for entry or exit only, and shall not be used to store any personal property. You agree to keep all passageways and common areas free of obstructions and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with all applicable rules, regulations, laws and posted signs. Glass containers are prohibited in all common areas. Residents, occupants, and guests shall not (a) use or burn candles, kerosene lamps, or any form of petroleum or carbon burning heaters without Landlord's prior written approval; (b) cook on balconies or outside; and/or (c) solicit business or contributions. Conducting any kind of business (including, without limitation, child care services and/or any type of rental of the premises to third parties, including, without limitation, Airbnb and Vacation Rental By Owner (VRBO) rentals) in your dwelling or in the apartment community is prohibited. (Notwithstanding the foregoing prohibition, Resident may conduct any lawful business conducted "at home" by computer, mail, or telephone if customers, clients, patients, or other business associates do not come to the dwelling or common areas for business purposes.) Landlord may regulate: (a) the use of patios, balconies, and porches; (b) the conduct of furniture movers and delivery persons; and/or (c) recreational activities in common areas. Resident shall be liable to Landlord for damage caused by Resident, guests or occupants.

Residents, occupants, and guests shall not interfere with the Landlord's management of the dwelling. Residents, occupants and guests shall not verbally or physically threaten, harass, intimidate, assault, batter, abuse, yell at, scream at, solicit sexual acts from, offer sexual acts to, or otherwise display any loud, offensive or lewd behavior to or before, the Landlord, Owner, and/or persons representing and/or assisting the Landlord or Owner, including, without limitation, employees, agents, contractors, subcontractors, repair or maintenance personnel.

You shall notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any Resident or occupant occupying your premises has registered, or does register as a sex offender in any state, informing us of criminal convictions or sex offender registry does not waive our right to evict you.

We may exclude from the dwelling community guests or others who, in our judgment, have been violating the law, violating this Rental Agreement or any dwelling rules, or disturbing other Residents, neighbors, visitors, or Landlord or Landlord's agents. We may also exclude from any outside area or common area any person who refuses to show photo identification or refuses to identify himself or herself as a Resident, occupant, or guest of a specific Resident in the community. If Landlord has (a) evicted a person; (b) told that person that he/she is not allowed on the property or common areas, and/or (c) informed Resident that said person is not allowed to enter in, on or upon Resident's dwelling unit or any common area, then Resident is prohibited from inviting, and/or allowing, said person in, into, on or onto the dwelling and/or any common area. If after notice to you, you allow any excluded person to enter, remain in, and/or occupy your dwelling unit and/or any common area, garage or storage space, said allowance shall constitute a material breach of this Rental Agreement and shall provide a valid basis for terminating your tenancy.

The Landlord, Owner and Owner's agents retain control over any common areas of the premises for the purposes of enforcing state trespass laws and shall be the "person in charge" for that purpose as that phrase is defined in ORS 164.205(5). Common areas shall include, without limitation, any locations shared by Residents, such as laundry rooms, courtyards, hallways between dwellings, building entryways, and parking lots. This clause may not apply on property where there are no areas commonly shared by multiple Tenants (e.g., most single family detached dwellings).

Delivering, mailing and/or sending unreasonable, and/or an unreasonable number of letters, e-mails, texts and/or other communications to Landlord shall constitute interference with Landlord's management of the property.

Neither Resident nor any guest of Resident shall operate any drone or drone-like apparatus anywhere in, on or over the premises and/ or common areas.

Resident shall not enter into and/or remove any items from any dumpster, garbage receptacle, trash receptacle, and/or recycling receptacle that is/are located in any common area and controlled by the landlord and/or any trash/garbage/recycling removal company. "Dumpster diving" is prohibited.

*Exhibit F3*

19. **PROHIBITED CONDUCT.** You ~~ or occupants or guests, or the guests of any occupants, may no ~~ ge in the following activities: behaving in a loud, drunk, into ~~ ated, or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, quiet use and enjoyment, or convenience of others (including our agents and employees) in or near the dwelling community; discriminating against other tenants or Residents; disrupting Landlord's business operations; manufacturing, delivering, or possessing any controlled substance with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the dwelling community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the dwelling community; injuring our reputation by making bad faith allegations against us to others; and violating any applicable laws. Do not throw, toss or drop any objects or liquids from any balconies, landings, decks, windows, or elevate walkways, and do not allow water to overflow plant containers.

20. **HUMIDITY AND MOISTURE CONTROL.** Resident is responsible for keeping the dwelling clean and habitable, including maintaining proper ventilation of the dwelling and preventing conditions that are conducive to mold growth. Resident shall control humidity and moisture levels in the dwelling through proper operation of the heating, ventilation, and air conditioning (HVAC) system and all plumbing fixtures. Resident shall leave sufficient space between any wall and all beds, furniture and other personal property, so as to allow adequate airflow between the walls and said items. Resident shall use reasonable care to cause all windows and other openings in the premises to be closed in the event of rain. Resident shall notify Landlord immediately upon discovery of any water leaks, standing water, condensation on interior surfaces, high humidity, musty smells, and visible mold anywhere in the premises. Resident shall immediately wipe up any visible moisture located on walls, windows, windowsills, and other surfaces. Landlord is not responsible for damages that result from Resident's failure to maintain proper humidity and moisture controls or failure to timely notify Landlord of problems relating to water, moisture, humidity or mold.

21. **ELECTRONICS DISPOSAL.** Do not place and/or dispose of any electronic items (televisions, monitors, computers and laptops) in the trash. Those items must be recycled.

22. **PARKING; VEHICLE USE.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. No back in parking is allowed anywhere on the property. We may have unauthorized, improperly or illegally parked vehicles towed under an appropriate statute or in conformity with Oregon law. A vehicle is unauthorized, improperly or illegally parked in the dwelling community if it:

   (1)   has a flat tire or other condition rendering it inoperable;
   (2)   is on jacks, blocks or has wheel(s) missing;
   (3)   has no current license plate or no current registration and/ or inspection sticker;
   (4)   takes up more than one parking space;
   (5)   belongs to a Resident or occupant who has surrendered or abandoned the dwelling;
   (6)   is parked in a marked handicap space without the legally required handicap insignia; or
   (7)   is parked in space marked for manager, staff, or guest at the office;
   (8)   blocks another vehicle from exiting;
   (9)   is parked in a fire lane or designated "no parking" area;
   (10)  is parked in a space marked for other Resident(s) or unit(s);
   (11)  is parked on the grass, sidewalk, or patio;
   (12)  blocks garbage trucks from access to a dumpster; or
   (13)  belongs to a resident and is parked in a visitor or retail parking space.

23. **EXTERMINATION.** The parties acknowledge that bedbugs are becoming increasingly prevalent in the Pacific Northwest and that many insects or vermin may only appear in the premises as a result of Resident's conduct (including, without limitation, failure to maintain a clean living environment and/or allowing infested personal property to enter into the premises). Resident further acknowledges that Resident's conduct can prevent or limit the presence of bedbugs, insects, and vermin. Resident expressly acknowledges that he/she has inspected the Premises prior to executing this Rental Agreement and expressly represents that he/ she has not observed any visible evidence of the presence or infestation of bedbugs, insects or vermin in the Premises. Resident agrees to maintain the Premises in a manner that prevents the occurrence of an infestation of bedbugs, insects and vermin. If

Resident allows individu ~~ or items carrying bedbugs, insects or vermin into the apartm ~~ has repeated infestations that cannot be traced or attributa ~~ .o the malfeasance or nonfeasance of Landlord, such will be deemed damage to the unit by the Resident and Resident shall be responsible for the cost of treatment to their dwelling, personal belongings and surrounding units as necessary to eradicate the infestation. Noncompliance with this section shall constitute a material breach of the Rental Agreement. In the event of any such breach, Landlord may seek injunctive relief, damages, and/or terminate Resident's tenancy.

Unless prohibited by statute or otherwise stated in the Rental Agreement, Landlord may conduct extermination operations in Resident's dwelling several times a year and as needed to prevent insect infestation. Landlord will notify Residents in advance of extermination in Residents' Dwelling, and give Resident instructions for the preparation of the Dwelling and safe contact with insecticides. Residents will be responsible to prepare the Dwelling for extermination in accordance with Landlord's instructions. If Residents are unprepared for a scheduled treatment date, Landlord may, at Landlord's sole option, prepare Residents' dwelling and charge Residents accordingly. In the event Residents discover any infestation, or evidence thereof, Residents shall request extermination treatments in addition to those regularly provided by Landlord. Residents shall, in all instances, perform the tasks required by Landlord and/or Landlord's agent in relating to the interior extermination so as to ensure the safety and effectiveness of the extermination. These tasks will include, but are not limited to, the following: (a) clean all cabinets, drawers and closets in kitchen and pantry; (b) remove animals or place them in bedrooms, and notify Owner of such placement; (c) if roaches have been seen in closets, remove contents from shelves and floor; (d) remove infants and young children from the Dwelling; (e) remove chain locks or other types of obstruction on day of service; (f) remove and/or dispose of personal property; and (g) cover fish tanks and turn off their air pumps. After treatment, do not wipe out cabinets or closets for the recommended period of time.

24. **RESIDENT NONCOMPLIANCE FEE.** Landlord may charge Resident(s) noncompliance fees, as set forth on page 1, for any of the following acts of noncompliance: (a) late payment of a utility or service charge that the tenant owes the landlord as described in ORS 90.315; (b) failure to clean up pet, service animal, assistance animal or companion animal waste from a part of the premises other than the dwelling unit; (c) failure to clean up garbage, rubbish and other waste from a part of the premises other than the dwelling unit; (d) parking violations; (e) the improper use of vehicles within the premises; (f) smoking in a clearly designated nonsmoking unit or area of the premises; and/or (g) keeping on the premises an unauthorized pet capable of causing damage to persons or property, as described in ORS 90.405. Landlord may only serve a Warning Notice of Violation for the first act of noncompliance. However, in the event of a second noncompliance, that occurs within one year after Landlord's serving of a Warning Notice of Violation, the Landlord may charge Resident(s) those noncompliance fees set forth on page 1. The amount of the fee for a third or subsequent noncompliance shall be $ __50.00__ ($50 plus five percent of the rent payment for the current rental period, if left blank).

Notwithstanding the foregoing noncompliance fee schedule, when Resident(s) keep an unauthorized pet capable of causing damage to persons or premises in their Premises, the fee for a second or any subsequent noncompliance under this section shall be $ __50.00__ ($250, if not filled in). Landlord may assess this noncompliance fee (for keeping an unauthorized pet) 48 hours after serving a warning notice to the Resident(s).

Nothing set forth in this paragraph shall limit any other rights or remedies Landlord may have under any applicable law.

25. **MILITARY PERSONNEL CLAUSE.** Military personnel (as defined under state or federal law) may terminate the Resident's tenancy if you enlist or are drafted or commissioned and on active duty in the U.S. Armed Forces. You may also terminate the Resident's tenancy if:

   (1)   you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and
   (2)   you (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, or (iii) are relieved or released from active duty.

After you deliver to us your written termination notice, the Resident's tenancy will be terminated under this military clause 30 days after

*Exhibit F3*

the date on which your next ren~ ~yment is due. You must furnish us a copy of your military or¢ ~uch as permanent change-of-station orders, call-up orders, o~ deployment orders or written notification from your commanding officer. Military permission for base housing does not constitute change-of-station orders. After you move-out, we'll return your security deposit, less lawful deductions. For the purposes of this Rental Agreement, orders described in (2) above will only release the Resident who qualifies under (1) and (2) above and receives the orders during the Rental Agreement term and such Resident's spouse or legal dependents living in the Resident's household. A co-Resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10 (Special Provisions), you represent when signing this Rental Agreement that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Rental Agreement term; and (3) the term of your enlistment or obligation will not end before the Rental Agreement term ends. Even if you are entitled to terminate the Resident's tenancy under this paragraph, liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 34 (Default By Resident). You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

**26. RESIDENT SAFETY AND PROPERTY LOSS.** Resident, occupants and guests must exercise due care for their own and others' safety and security, especially in the use of smoke detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other access control devices.

**Smoke/Carbon Monoxide Detectors.** Landlord shall provide Tenant with a working smoke detector(s), and, if required, a carbon monoxide detector(s) including working batteries, at the time tenancy commences. Tenant shall test any detector so provided at least once every six months, replace batteries as needed, notify Landlord in writing of any operating deficiencies, and shall not remove or tamper with any properly functioning detector or remove working batteries from the same. If the detector ceases operating, Tenant will immediately notify Landlord. Tenant will keep the detector's case clean and free from dirt, debris, and infestation. If the unit is so equipped, Tenant shall not tamper with, obstruct, damage or otherwise alter or modify the indoor fire sprinkler system. Tenant shall not obstruct, damage or otherwise alter or modify any smoke and/or carbon monoxide detector. Removal of or tampering with a smoke detector and/or carbon monoxide detector will result, without limitation, in a $250.00 fee and/or a Lease violation notice.

**Casualty Loss.** We're not liable to any Resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (we suggest at least 50 degrees). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Rental Agreement, you will indemnify us and hold us harmless from all liability for those services.

Notwithstanding the contents of the preceding paragraph, Resident(s) shall not be responsible for damage that results from: (a) acts of God; or (h) conduct by a perpetrator relating to domestic violence, sexual assault or stalking. For damage that results from conduct by a perpetrator relating to domestic violence, sexual assault or stalking, Landlord may require a tenant to provide verification that the Resident or a member of the Resident's household is a victim of domestic violence, sexual assault or stalking as provided by ORS 90.453.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of

crime on the property     agree that no access control devices or security measures can    ~nate all crime and that you will not rely upon any provided access control devices or security measures as a warranty or guarantee of any kind. We disclaim any express or implied warranties of security. We're not responsible for obtaining criminal-history checks on any Residents, occupants, guests, or contractors in the dwelling community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

You may keep a fire extinguisher in your unit if you choose. However, to be effective tools, they should be replaced prior to the expiration date and/or prior to the pressure gauge reading becoming too low. If you choose to keep your own extinguisher, please note it is your responsibility to have the extinguisher replaced or recharged prior to the expiration date. Landlord shall not be responsible, in any manner, for your fire extinguisher. It is your responsibility to ensure that all combustible and/or potentially combustible items are kept at least twelve feet (12") away from all heat sources in your premises, and as recommended by fire officials, in order to prevent a potential fire hazard.

**27. CONDITION OF THE PREMISES AND ALTERATIONS.** Resident agrees at the commencement of this Rental Agreement that the premises are in good, clean, habitable condition and repair, are devoid of any substantial habitability defects, and that Resident has not observed any visible evidence or the presence of infestation of bedbugs, insects or vermin. Resident acknowledges receipt in duplicate of the Inventory and Condition Form. Resident shall complete and return said Inventory & Condition form to Landlord, in the time period required by Landlord, noting thereon the condition of the dwelling, including any defects and requests for cleaning, maintenance and repairs. Said Inventory and Condition Form, when returned to Landlord, shall be signed by the Resident(s) and one copy shall be retained by Landlord. The Resident(s) may have one copy countersigned by Landlord which is to be retained by the Resident(s). If the form is not returned to Landlord and properly countersigned within said period, it shall be conclusively presumed that the premises were in good condition and repair, fully habitable, and clean at the time the Resident(s) occupied the same.

Residents acknowledge that maintenance, remodeling, updating, repairs, improvements and/or renovations (herein referred to, collectively, as "projects") are commonplace with some rental property(ies). The nature, extent, timing of, and/or need for such projects may arise out of many factors, including, without limitation, the age of the Premises, the condition of the Premises, and/or Landlord's desire to modify and/or improve the Premises. Although Landlord is not herein representing that any such projects are, or will be, necessary at any given point in time, Residents agree to fully cooperate with, and not to impede, Landlord's (and Landlord's agent's, contractor's, subcontractor's, and/or any/all other persons n' entities assisting and/or working on behalf of Landlord) efforts to undertake any phase of any such projects, whether related to inspections, bidding, access, and/or any other facet of any such projects. Residents further agree to adhere to, and comply with, any and all instructions reasonably related to Landlord's undertaking and/or performance of such projects, including, without limitation, instructions relating, in any manner, to Residents moving and/or storing personal property, covering personal property, and/or moving pets and/or animals into certain rooms within the premises. If Residents fail to cooperate with said instructions, and/or impair/impede the projects in any manner, Residents shall be deemed in default hereof.

**28. USE OF PREMISES.** You must use customary diligence in maintaining the dwelling and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise modify, alter or damage the dwelling, Premises or common areas. Waterbeds are expressly prohibited anywhere on the premises, without the prior written consent of Landlord and proof of proper insurance. No holes or stickers are allowed inside or outside the dwelling. However, Landlord will permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, carbon monoxide detector, fire sprinkler head,

*Exhibit F3*

furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move out, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the dwelling; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the dwelling (whether or not we consent) become ours unless we agree otherwise in writing.

You may keep a fire extinguisher in your unit if you choose. However, to be effective tools, they should be replaced prior to the expiration date and/or prior to the pressure gauge reading becoming too low. If you choose to keep your own extinguisher, please note it is your responsibility to have the extinguisher replaced or recharged prior to the expiration date. Landlord shall not be responsible, in any manner, for your fire extinguisher.

**29. REQUESTS, REPAIRS, AND MALFUNCTIONS.** Please provide requests for nonemergency repairs or malfunctions in writing or through the tenant portal. In case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical problems (including shorts), crime in progress, and other conditions that pose a hazard to property, health, or safety, Resident must notify Landlord immediately via the most effective expeditious manner available. Landlord's written notes on Resident's oral request do not constitute a written request from you.

Landlord may modify, remove, or install utility lines, equipment or appurtenances serving the dwelling unit, Premises or common areas, as and when Landlord deems appropriate. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage renders the premises substantially uninhabitable, or that performance of needed repairs poses a danger to you, then we may terminate this Rental Agreement by giving you written notice.

**30. PETS AND ANIMALS.** No pets or animals (including without limitation, mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the dwelling or dwelling community unless (a) we've so authorized in writing, or (b) an animal is lawfully present as an assistance or service animal. If we allow pet or animal, you must sign a separate Pet Addendum or Assistance or Service Animal Addendum. A Pet Addendum (but not an Assistance or Service Animal Addendum) may require you to pay additional deposits, rents or other charges. A pet deposit shall be considered a general security deposit. You must remove any pet or animal from the property which enters in violation of the Rental Agreement. We will authorize assistance and/or service animals

for you, your guests, and occupants pursuant to the parameters and guidelines establishe in the Fair Housing Act and the HUD regulatory guidelines, a... .y applicable state laws, if any. (We may require written verification for the need for an assistance or service animal, unless the disability is obvious.) You must not feed, or leave food available for, stray or wild animals.

Any failure to comply with this section shall be considered a default of this Rental Agreement. If you or any guest or occupant violates pet or animal restrictions (with or without your knowledge), you'll be subject to charges, damages, termination, eviction, and other remedies provided in this Rental Agreement and by law. If a pet or animal has been in the dwelling at any time during the term of your occupancy (with or without your consent), we may charge you for defleaing, deodorizing, and shampooing. We may remove an unauthorized pet or animal in accordance with applicable law, in addition to exercising any remedies we may have pursuant to this Rental Agreement and any applicable Addendum.

**31. WHEN WE MAY ENTER.** Landlord may enter the premises without the consent of the Resident (a) in the case of an emergency; or, (b) pursuant to a court order. Except in the case of an emergency or if it is impractical to do so, Landlord shall give Resident at least twenty-four (24) hours' actual notice of intent to enter the premises in order to inspect the premises; make necessary or agreed repairs; decorate, alter, or improve the premises; supply necessary or agreed services; or exhibit the premises to prospective or actual purchasers, mortgagees, Residents, workmen, or contractors. Resident's failure to allow Landlord access to the premises in accordance with the foregoing provisions shall constitute a material breach of this Rental Agreement. Resident expressly agrees that demands or requests by Resident to reschedule entries that are scheduled to occur following service of a twenty-four (24) hours' notice of intent to enter may be construed as a denial of Landlord's lawful right to enter. The foregoing provisions shall not apply if Resident has abandoned or surrendered the premises. For purposes of this paragraph, "Landlord" shall include Landlord's agents, employees, contractors, and subcontractors. Nothing contained herein shall prohibit or reduce any other right of entry Landlord has or may have.

**32. MULTIPLE RESIDENTS OR OCCUPANTS.** Each Resident is jointly and severally liable for all lease obligations. If Resident or any guest or occupant violates the Rental Agreement or rules, all Residents are considered to have violated the Rental Agreement. Our requests and notices (including sale notices) to any Resident constitute notice to all Residents and occupants. Notices and requests from any Resident or occupant (including notices of termination, repair requests, and entry permissions) constitute notice from all Residents. In eviction suits, each Resident is considered the agent of all other Residents in the dwelling for service of process. Security-deposit refunds and deduction itemizations of multiple Residents will comply with paragraph 45 (Security Deposit Deductions and Other Charges) or any applicable law.

---

## Replacements

**33. REPLACEMENTS AND SUBLETTING.** Replacing a Resident, subletting, assignment, or granting a right or license to occupy is allowed only when we expressly consent in writing. If departing or remaining Residents find a replacement Resident acceptable to Landlord before the departing Resident moves out, and Landlord consents to the replacement, in writing, then, as a condition precedent to any change in the composition of the household, Landlord may:

(a) require all parties to execute one or more documents setting forth the terms and conditions associated with any change in the tenancy and who has the right to occupy the Premises;

(b) require new or remaining Resident(s) to execute a new Rental Agreement;

(c) charge remaining Resident(s) all expenses associated with rekeying locks; and/or

(d) require the payment of an additional security deposit.

**Procedures for Replacement.** If we approve a replacement Resident, then, at our option:

(a) the replacement Resident must sign this Rental Agreement with or without an increase in the total security deposit; or

(b) the remaining and replacement Residents must sign an entirely new Rental Agreement.

Unless we agree otherwise in writing, your security deposit will automatically transfer to the remaining and/or replacement Resident(s) as of the date we approve of any changes. The departing Resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original lease term unless we agree otherwise in writing—even if a new Rental Agreement is signed.

Resident shall not participate, in any manner, in any endeavor or enterprise, commercial or otherwise, pursuant to which Resident offers to allow, and/or actually allows, any Non-Resident to occupy any portion of Resident's dwelling unit, for any period of time whatsoever, for any compensation or consideration whatsoever (including, without limitation, the payment of money and/or trade and/or barter of other goods, services, or property occupancy rights). Resident shall not represent or advertise, whether verbally, in writing, or in any electronic media or medium whatsoever, that Resident's dwelling is available for occupancy, for any period of time whatsoever, by any Non-Resident, if said occupancy is, or will be, in exchange for any compensation or consideration whatsoever (including, without limitation, the payment of money and/or trade and/or barter of other goods, services, or property occupancy rights).

© 2019, National Apartment Association, Inc. - 3/2019, Oregon

*Exhibit F3*

## Default and Remedies

**34. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Rental Agreement including but not limited to the following violations: (a) you don't pay rent or other amounts that you owe when due; (b) you or any guest or occupant violates the dwelling rules, applicable laws, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (c) you abandon the dwelling; (d) you give incorrect or false answers in a rental application; (e) you or any occupant is arrested, convicted, given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (f) any illegal drugs or paraphernalia are found in your dwelling; (g) you or any guest or occupant engages in any of the prohibited conduct described in paragraph 19 (Prohibited Conduct); or (h) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Landlord Remedies.** If you fail to pay amounts due under this Lease Contract, or otherwise breach this Lease Contract, we (at our option), may choose to terminate the tenancy of you and your occupants (if any). If only one Resident has breached the Lease Contract, and if we elect to terminate the tenancy of only the breaching Resident, the remaining residents agree to cooperate with us in terminating the tenancy of the breaching Resident. If we are able to locate a replacement Resident, the remaining Residents agree to cooperate with us in placing a replacement Resident in the Apartment, and will execute a Lease amendment to add the replacement Resident as an authorized Co-Resident.

**Disclaimer:** If there is a breach of this Lease Contract and the law does not allow us to evict only the breaching resident, all co-residents may be evicted if only one resident breaches this Lease Contract.

Any default in the performance of any Addendum to this Rental Agreement shall constitute a material default in the Resident's performance of the parties' Rental Agreement. If there is a co-signer/guarantor for this Rental Agreement, the termination and/or unenforceability of said guaranty shall constitute a material breach of this Rental Agreement. Further, the death, incapacity or incompetency of the guarantor shall constitute a material breach of this Rental Agreement.

**35. HOLDOVER.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing).

**36. LEASE RENEWAL WHEN A BREACH OR DEFAULT HAS OCCURRED.** In the event that you enter into a subsequent Lease prior to the expiration of this Lease and you breach or otherwise commit a default under this Lease, We may, at our sole and absolute discretion, terminate the subsequent Lease, even if the subsequent lease term has yet to commence. We may terminate said subsequent Lease by sending you written notice of our desire to terminate said subsequent Lease.

## General Clauses

**37. MISCELLANEOUS.** Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Rental Agreement or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default.

All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. Neither an invalid clause nor the omission of initials on any page invalidates this Rental Agreement. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.

**NOTICES.**

(a) All notices required by this Rental Agreement and/or Oregon law to be in writing shall be served personally, by first class mail, or by first class mail and attachment.

(b) If served by first class mail and attachment from Landlord to Resident(s), the notice shall be deemed served on the day it is both mailed by first class mail addressed to the Resident(s) at the Premises and attached in a secure manner to the main entrance to that portion of the Premises of which Resident(s) has possession.

(c) If served by first class mail and attachment from Resident(s) to Landlord, the notice shall be deemed served on the day it is both (i) mailed by first class mail addressed to the Landlord at the address designated on page 1 of this Rental Agreement as Landlord's address for the receipt of service of notices, and (ii) attached in a secure manner to the main entrance to the address designated on page 1 of this Rental Agreement as Landlord's address for the receipt of service of notices. If the Landlord's designated address for the receipt of service of notices is located inside a building, then the Resident(s) shall be entitled to attach the notice to the main entrance to that building. Landlord is authorized to accept notices on behalf of the Owner of the Premises.

(d) Resident(s) shall notify the Landlord in writing of any post office box or telephone number used, or to be used, by the Resident(s). In the event this information changes, Resident(s) shall immediately provide updated information to Landlord.

Actual notice may be used, whenever deemed permissible by any applicable law. In addition to provisions of ORS 90.150, actual notice includes notice by e-mail from the Landlord to the Tenant at the following email address:

And from the Tenant to the Landlord at the following e-mail address: **greshamparkmanager@affinityproperty.com**

**38. CONSENT TO SOLICATION.** You hereby expressly authorize us, our representative(s), and any collection agency or debt collector (hereinafter collectively referred to as the "Authorized Entities") to communicate with you. The communication may be made through any method for any reason related to amounts due and owing under this Rental Agreement. You authorize any and all of the communication methods even if you will incur a fee or a cost to receive such communications. You further promise to immediately notify the Authorized Entities if any telephone number or email address or other unique electronic identifier or mode that you provided to any Authorized Entity changes or is no longer used by you.

**39. PAYMENTS.** All sums due to the Landlord for items not listed in the Rental Agreement as recurring payments are due immediately upon our demand.

**40. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Rental Agreement or a renewal of this Rental Agreement, a member of both the National Apartment Association and any affiliated state and local dwelling (multi-housing) associations for the area where the dwelling is located.

**41. OBLIGATION TO VACATE.** If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intend to move-out in accordance with paragraph 3 (Term), and we accept such written notice, then you are required to vacate the Apartment and remove all of your personal property therefrom at the expiration of the lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

*Exhibit F3*

## When Moving Out

**42. MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representative advance written notice of your intention to vacate as required by paragraph 3 (Term). If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Rental Agreement. You will still be liable for the entire Rental Agreement term if you move out early except if you are able to terminate your tenancy under the statutory rights explained under paragraphs 11 or 25 (Early Move-Out; Early Termination Fee or the Military Personnel Clause). All notices to vacate must be in writing and must provide the date by which you intend to vacate. If the notice does not comply with the time requirements of paragraph 3 (Terms), even if you move by the last date in the lease term, you will be responsible for an additional month's rent. If you fail to vacate by the date set forth in your notice, you will automatically and immediately become a holdover tenant pursuant to state law, and we will have all remedies available under this Rental Agreement and state law.

**43. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we both agree in writing. You're prohibited from applying any security deposit to rent without Landlord's prior consent. You must thoroughly clean the dwelling, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**44. MOVE-OUT INSPECTION.** You should, but are not required to, meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**45. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable, without limitation, for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, misconduct, accident, or abuse, including, without limitation, stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was lost or attached to the dwelling, premises or common areas and is missing; replacing dead or missing smoke-detectors, carbon monoxide detectors, and/or

their batteries; expenses associated with repairs or cleaning due to excess wear and tear; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the dwelling when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized access control devices or alarm systems; agreed early termination charges; packing, removing, or storing property removed or stored under paragraph 13 (Property Left in Dwelling); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; pet-related and animal-related charges under paragraphs 6 (Rent, Late Charges, and Returned Check Charges) and 30 (Pets and Animals); government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors/carbon monoxide detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; charges for owner/manager's time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees incurred, including upon appeal; and other sums due under this Rental Agreement.

You'll be liable to us for: (a) charges for replacing all keys and access devices referenced in paragraph 5 (Keys and Furniture) if you fail to return them on or before your actual move-out date; and (b) an early termination fee, if applicable.

In the event Landlord returns any security deposit(s) to Resident(s), Landlord shall be entitled to do so with one check payable to all Resident(s).

**46. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** Deposit Return and Forwarding Address. You are required to provide us written notice of your forwarding address, on or before termination of this Rental Agreement. We'll return your security deposit refund (less lawful deductions), together with an itemized accounting, if there are any deductions, no later than thirty one (31) days after the tenancy terminates and Resident delivers possession. If you fail to provide us with your forwarding address in writing, as required above, we will process the unclaimed security deposit in accordance with state law.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and give us the immediate right to: enter, take possession of, clean up, make repairs in, and relet the premises. Surrender, abandonment, and judicial eviction affect your rights to personal property left in the dwelling.

## Miscellaneous

**47. SMOKING POLICY.** The terms "smoke" and "smoking," when used herein, includes, without limitation, inhaling, exhaling, breathing, holding, possessing, and/or carrying any lighted cigar, cigarette, or other tobacco product or similar lighted product in any manner or in any form. The terms "smoke" and "smoking," when used herein, further include, without limitation, any form of aerosolizing and/or vaporizing (a.k.a, "vaping") any inhalant.

Landlord hereby discloses to Residents, and Residents hereby acknowledge receipt of disclosure of, the following policies regarding smoking *(check applicable boxes):*

☒ The entire property is smoke free and subject to the following terms and conditions:

   (1) **Purpose of No-Smoking Policy.** The parties desire to mitigate (i) the increased maintenance, cleaning and redecorating costs from smoking: (ii) the increased risk of fire from smoking; and (iii) the higher costs of fire insurance for a non-smoke free building.

   (2) **Smoke-Free Property.** Resident agrees and acknowledges that the premises to be occupied by Resident and members of Resident's household, including, without limitation, any patios, porches, balconies, yards, storage facilities and/or parking facilities have been designated as a smoke-free living environment. Resident and members of Resident's household shall not smoke anywhere in, on, adjacent to, or near the premises rented by Resident, and/or in any common areas (including, without limitation, any patios, porches, balconies, yards, storage facilities and/or parking facilities, recreational facilities and/or offices), nor shall Resident permit any guest or visitor under the control of Resident to do so.

   (3) **Resident to Promote No-Smoking Policy and to Alert Landlord of Violations.** Resident shall inform Resident's guests of the no-smoking policy. Further, Resident shall

promptly give Landlord written statement of any incident where they have knowledge of the policy being violated.

   (4) **Landlord to Promote No-Smoking Policy.** Landlord may post no-smoking signs at entrances and exits, common areas, hallways, and in conspicuous places "in close proximity to" the smoke-free building. However, any failure to post signs, and/or any subsequent removal of damage of/to any signs, whether by Landlord or third parties, shall not constitute a breach hereof, and shall not modify, impair or reduce Resident's obligations to comply with this Agreement.

☐ Only the following portions of the property are smoke free:
☐ The premises occupied by Residents, including, without limitation, any dwelling unit, and any patios, porches, balconies, yards, storage facilities and common areas within 25 feet of any dwelling unit.
☐ Other (describe): _____
_____
_____
_____

☐ Smoking is permitted in the following areas:
☐ The premises occupied by Residents, excluding any adjacent/adjoining patios, porches, balconies, yards and/or storage facilities.
☐ The premises occupied by Residents, including any adjacent/adjoining patios, porches, balconies, yards and/or storage facilities.
☐ Anywhere
☐ Other (describe): _____
_____
_____
_____

*Exhibit F3*

**Common Terms.** The following terms and conditions shall apply to all Residents, regardless of the above described smoking policy(ies):

(1) **Landlord Not a Guarantor of Smoke-Free Environment.** Resident acknowledges that any adoption of any rules regarding smoke-free living environment, and any efforts to designate the Premises as smoke-free, do not make the Landlord or any of its agents the guarantor of Resident's health or of the smoke-free condition of the Resident's Dwelling, Premises, and/or any common areas. However, Landlord shall use reasonable efforts to enforce any applicable smoke-free terms of its Rental Agreements. Landlord is not required to take steps in response to smoking unless Landlord has actual knowledge of said smoking or has been given written notice of said smoking.

(2) **Other Residents are Third-Party Beneficiaries of Resident's Agreement.** Resident agrees that the other Residents of the Premises are the third-party beneficiaries of any applicable smoke free rules. (In layman's terms, this means that Resident's commitments in the Agreement are made to the other Residents as well as to the Landlord). Although a Resident may seek an injunction against another Resident to prohibit smoking or for damages, a Resident does not have the right to evict another Resident. Any action between Residents shall not create any presumption that the Landlord breached this Agreement.

(3) **Material Breach.** A material breach of this Agreement by Resident, and/or guests within Resident's control, shall be grounds for immediate termination of the Rental Agreement by the Landlord. Resident shall be responsible for all damages and costs associated with termination of the Rental Agreement due to material breach. Notwithstanding any smoking policy(ies) contained herein, (a) Resident agrees that any damages or cleaning due to smoking or smoke-related damages required to bring the unit back to a rentable condition do not constitute ordinary or reasonable wear and tear and the Resident shall be liable for the costs thereof; and (b) any permissible smoking (if permitted) shall not interfere with any other tenants' quiet use and enjoyment of their premises.

Landlord may charge Resident a $ __50.00__ ($250.00 if left blank) noncompliance fee for a second or any subsequent failure to comply with rules prohibiting smoking in a clearly designated nonsmoking unit or area of the premises.

(4) **Disclaimer by Landlord.** Resident acknowledges that any adoption of smoke-free living rules, and any efforts to designate the Premises as smoke-free does not in any way change the standard of care that the Landlord or managing agent would have to a Resident's household to render any buildings and/or premises designated as smoke-free any safer, more habitable, or improved in terms of air quality standards than any other rental premises. Landlord specifically disclaims any implied or express warranties that the building, Premises, or Resident's Dwelling will have any higher or improved air quality standards than any other rental property. Landlord cannot and does not warrant or promise that the Premises or Dwelling will be free from second-hand smoke, and failure of the Landlord to enforce the provisions in this Agreement shall not in any way be construed as a default by the Landlord of its obligations under the Rental Agreement and shall not give rise to any reduction in the rent amount of any unit. Resident acknowledges the Landlord's ability to police, monitor, or enforce this Agreement is dependent in significant part on voluntary compliance by Resident and Resident's guests. Residents with respiratory ailments, allergies, or any other physical or mental condition relating to smoke are put on notice that Landlord does not assume any higher duty of care to enforce this Agreement than any of the other Landlord's obligations under the Rental Agreement.

48. **ROOFS.** Resident(s) hereby acknowledges that roofs are not designed and should not be used for walking upon nor to have any objects of any kind placed upon them at any time, and that Resident(s) understands that any damages resulting from the violation of this requirement including, but not limited to water leaks through, or damage to the roof, will be the sole responsibility of the Resident(s). Damages will be repaired and Resident(s), in accordance with the Rental Agreement, will be held responsible for, and will promptly pay for the cost of repair.

49. **WINDOWS.** Open and partially open windows present a potential risk of injury or death to all residents, occupants and their guests. Neither window glass, window screens, nor any other portion of windows are intended to support a person's weight or prevent a person from falling from or out of an open window. Resident shall be solely responsible for preventing anyone from (a) sitting on/in

any window; (b) standing in any window; (c) playing in/around windows; (d) participating in any activity which may result in leaning on, against or through any window, and/or colliding with the same; (e) participating in any activity that could result in any person or animal falling through or out any window. Window stops and other devices that restrict a window from opening are not provided by the Landlord because of the dangers associated with fire and the ability of occupants to escape. If Resident(s) wish to install such devices, Resident(s) must receive written permission from Landlord and accept full responsibility for the safe use of such devices. Resident(s) must never block windows in a way that would prevent exit in the event of a fire.

Window cords (including, without limitation, cords used to raise and lower curtains and blinds) and blinds pose a potential entrapment hazard which could result in injury or death. Accordingly, take all necessary precautions so as to ensure that no one becomes entangled, injured, or ensnared in any such cords or blinds.

50. **CARPET.** Before Resident took possession of the premises, Landlord or its agent cleaned the carpets, if any, by use of a machine specifically designed for cleaning or shampooing carpets, or replaced the carpet, if any, after the previous tenancy or the most recent significant use of the carpet and before Resident took possession. Landlord may deduct the cost of carpet cleaning regardless of whether Resident cleans the carpet before Resident delivers possession.

51. **AMENITIES.** Resident amenities, including, without limitation, any pools, fitness rooms, clubhouses, hot tubs, spas, business centers, computer rooms, and/or recreational facilities (hereafter, "Amenities") are made available to Resident as a revocable privilege and license, and not as a contractual right. Said privilege is made expressly contingent upon Resident's compliance with all terms and conditions contained within the parties' Rental Agreement, together with any Addendums thereto, and with any posted rules or regulations. Said privilege may be revoked by Landlord at any time for any lawful reason, including, without limitation, Resident's breach of any of the terms, conditions, rules or regulations contained in the parties' Rental Agreement. Addendums, and/or rules/regulations. Landlord further reserves the right to set the permissible times for use of any Amenities and to change the character of, limit the use of, and/or terminate any Amenities, without notice, based upon the needs of Landlord, and no such limitation, change or termination shall constitute a breach hereof.

52. **FLOOD PLAIN DISCLOSURE.** This property ☐ is located in the 100 year flood plain ☒ is not located in the 100 year flood plain.

53. **CAMERAS.** Residents acknowledge that video or photographic cameras (hereafter, collectively referred to as "cameras") may be present, and/or may later be installed, at some or all of the gates and in various common areas throughout the community. If cameras are present, or installed on a later date, then any areas within the focal range of the cameras may be electronically recorded, via video-tape or other electronic means. Such surveillance is for the sole purpose of protecting the landlord's real and personal property. Cameras, if installed, are not intended to protect, monitor, provide or give a sense of security to any resident or guest. Landlord may unilaterally terminate the use of any or all such cameras and has no obligation to monitor, or cause to be monitored, any cameras. Landlord shall have no obligation to repair or replace any existing cameras. Neither Residents nor any guests are intended beneficiaries of any use of any cameras. Residents shall not install, temporarily or permanently, and video or photographic camera equipment in, on or upon their premises or common areas, if said equipment is intended to videotape or photograph any common areas or other tenant's Premises.

54. **SCREENING.** Landlord shall be entitled to obtain an updated screening report, thereby "re-screening" Resident, in the following circumstances: (a) Resident requests to transfer to another to another dwelling, within the apartment complex in which the premises are located: (b) the Owner of the premises, or the Owner's property management agent, changes; (c) annually; (d) Resident leaves or a new Resident is approved by Landlord; or (e) for any other valid business purpose. Resident shall reimburse Landlord for all such screening costs, unless said obligation is waived by Landlord or deemed impermissible by any applicable law.

55. **SECTION HEADINGS.** The section headings are inserted herein only for convenience and are not intended to define or limit the scope or intent of any clause.

56. **BINDING EFFECT.** This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of Landlord and Resident.

*Exhibit F3*

**57. SUBORDINATION.** This Agreem     nd shall remain subordinate to any ground lease, mortgage, t     eed, or other encumbrance or security instrument now existing or hereafter to be placed upon the Premises and to any modifications, extensions, replacements and advances in connection therewith. Resident shall attorn to Landlords Lender in the event it obtains possession of the Property through foreclosure or deed in lieu of foreclosure or otherwise, so long as Lender agrees not to disturb the Resident if Resident is not in default under the Rental Agreement.

**58. MIDNIGHT.** Notwithstanding any definitions to the contrary, anytime that the words "midnight," "midnight (the end of the day)," or similar words appear in the Rental Agreement, any addendum, and/or any Notice from one party to the other, the parties expressly agree that "midnight" shall be defined as the end of the day, and not as the beginning of the day. Therefore, by way of example, if a notice of termination ends at "midnight on December 31, 2017" or at "midnight (the end of the day)" on December 31, 2017," said notice shall be deemed to end at the end of the day on December 31, 2017.

**59. NONWAIVER.** Failure of Landlord to insist upon the strict performance of the terms, covenants and conditions herein contained shall not be deemed a waiver of any of Landlord's rights or remedies herein.

**60. SAVINGS AND SEVERABILITY.** In the event that any clause or provision of this Rental Agreement is found to be illegal, invalid or unenforceable under present or future laws, then it is the intention of the parties hereto that the remainder of this Rental Agreement shall not be affected thereby, and it is also the intention of the parties that a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable be inserted in its place.

**61. EMPLOYMENT.** Resident understands and agrees that if, at any time during the tenancy, Resident becomes an employee of Landlord or any managing agent of the Landlord, Resident and all members of Residents household shall be subject to any employment agreement and the terms of any such employment agreement shall control over the terms of this Rental Agreement or lease, including but not limited to terms as to the length of the tenancy or the obligation to vacate the unit after termination of employment. In the event any Resident occupying the premises is an employee of Landlord, then all Residents' right to occupy the premises shall be expressly contingent upon the continuation of the Resident's employment. In the event

the Resident's employm     is terminated, then Landlord may terminate all Resident's t     occupy the premises upon 24 hours written notice.

**62. FAILURE TO VACATE.** Resident(s) agrees that if they fail to vacate by the end of the termination date set forth in any proper notice of termination, then Resident(s) shall become hold over tenants (unlawfully withholding the premises with force) commencing on the first day after the expiration of the date set forth in the termination notice, and that Resident(s) shall be responsible for all losses/damages suffered by Landlord as well as, the losses/damages suffered by any displaced tenants who anticipated taking occupancy at the end of said notice period, including attorney's fees and costs incurred in conjunction with any litigation, including upon appeal.

**63. PROPERTY MANAGER/MANAGEMENT.** In the event the premises is/are managed by a property manager, property management company, or other real estate licensee, then, in the event of any eviction action, Landlord expressly acknowledges and represents that said property manager, property management company, or other real estate licensee shall have the right to procure and receive possession of the premises from tenant, and tenant acknowledges that said property manager, property management company, or other real estate licensee shall have the right to take possession of the premises from Resident(s), in the event Landlord and/or said property manager, property management company, or other real estate licensee succeeds in the eviction action.

**64. ATTORNEY FEES AND COSTS.** In the event of any suit or action to enforce this Rental Agreement and/or to pursue any remedies arising out of either parties' default and/or any applicable law, the prevailing party shall be entitled to all attorney's fees and costs incurred herein, including upon any appeal. Costs shall include, but are not limited to, court costs, legal charges, copying charges, court reporting fees, transcription fees, courier fees, etc.

**65. REMEDIES CUMULATIVE.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**66. ENTIRE AGREEMENT.** This Rental Agreement, together with all Addendums, constitutes the entire agreement of the parties and shall supersede and replace all prior agreements, representations, and/or warranties.

## Originals and Attachments, Additional Rights, and Signatures

**67. ORIGINALS AND ATTACHMENTS.** This Rental Agreement has been executed in multiple originals, with original signatures. We will provide you with a copy of the Rental Agreement. Your copy of the Rental Agreement may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Rental Agreement and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Rental Agreement are binding and hereby incorporated into and made part of the Rental Agreement between you and us. This Lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations.

**68. ADDITIONAL RIGHTS.** All of Landlord's rights, set forth within this Agreement, shall be in addition to, and not a limitation of, any other rights Landlord may have, pursuant to any applicable law.

Date form is filled out *(same as on top of page 1)*

08/09/2019

Name and address of locator service *(if applicable)*

Name and contact information for person to contact in the event of emergency or death of Resident (contact person should be over the age of 18, and must not be an occupant of the premises):

AL

If the foregoing blank is not filled in, and Resident previously provided to Landlord the name of a person to contact in the event of an emergency or death (including, without limitation, listing said person in an application), then the name of that person shall be deemed incorporated herein by reference as the person to contact in the event of emergency or death of Resident.

Address and phone number of owner's representative for notice purposes

805 NE Kane Dr

Gresham, OR 97030
(503) 489-5132

*Exhibit F3*

Yo         legally bound by this document. Read it carefully befo      ting.

**COMPREHENSION.** ) Resident has read and received an executed copy of this Rental Agreement, together with all Addendum(s) hereto. Resident acknowledges and warrants that all blanks have been accurately and completely filled in, unless marked "n/a."

Resident or Residents *(all sign below)*      Date of Signing Rental Agreement

3/7/2019

_____      _____

_____      _____

_____      _____

Landlord or Landlord's Representative *(signing on behalf of landlord)*      Date of Signing Rental Agreement

**SPECIAL PROVISIONS (CONTINUED FROM PAGE 3)** _____

*Exhibit F3*

# OREGON
# NOTICE OF
# FOR CAUSE TERMINATION




MULTIFAMILY NW
The Association Promoting Quality Rental Housing

DATE  09/08/2023    PROPERTY NAME / NUMBER  Gresham Park Apartments    503.489.5132

RESIDENT NAME(S)  James Jacobson

*also all other Occupants or persons unknown claiming any right or interest in the Premises.*

UNIT NUMBER  #109B    STREET ADDRESS  805 NE Kane Dr

CITY  Gresham    STATE  OR    ZIP  97030

---

Pursuant to Oregon landlord-tenant law, you are hereby notified that you are a) in material violation of your Rental Agreement; b) in material violation of the resident duties under ORS 90.325; and/or c) in violation of your obligation to pay rent. The acts or omissions constituting the violations are described as follows (provide specific factual detail for each violation):

The resident is in violation of obligation to pay rent and has an outstanding balance of $1587.93. Includes

Garage rent June 2023 $125.00

June Rent $408.00

Trash (05/01/23-05/31/23) $24.76

Water/Sewer (04/14/23-05/13/23 $48.59

Garage rent July 2023 $125.00

Month-to-Month Premium $18.00

Trash 06/01/23-06/30/23 $26.69

Water/Sewer05/14/23-06/15/23 $49.83

Late fee July 2023 $150.00

Garage rent Aug 2023 $150.00

Month-to-Month Aug $28.00

Trash 07/01/23-07/31/23 $24.81

Water/Sewer 06/16/23-07/16/23 $49.1

Late fee Aug 2023 $150.00

Garage rent Sept 2023 $125.00

LLI Sept 2023 9.50

Rent Sept 2023 $1445.00

Trash 08/01/23-08/31/23 $26.46

Water/sewer 07/17/23-08/14/23 $50.78

Late fee Sept 2023 $150.00

Said conduct is a violation of Section 1 (Rents) of your Rental Agreement which states "Unless another date is set forth above, all monthly charges are due and payable on the first of the month and must be paid on time. If rent is not paid by the end of the 4th day of the rental period a late in the amount stated on this Rental Agreement will be imposed and become due on the 5th day of the rental period and Owner/Agent may require the rent and late fee to be paid by certified check or money order

Form M023 OR Copyright © 2023 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)    PAGE 1 OF 2

*Exhibit F5*

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Tenant must pay remaining balance in full on or before expiration date.

_____

_____

_____

_____

_____

_____

_____

If you fail to cure the violations by _____09/22/2023_____*, your Rental Agreement will terminate on the date set forth below. If you timely cure the violations, your Rental Agreement will not terminate. Recurrence of substantially the same act or omission as any violation described above within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

*If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

If this termination notice is based upon a restriction regulating a portable cooling device allowed by law, the date of termination will be extended by one day for each day that there is an extreme heat event for the county of the premises. "Extreme heat event" means a day on which National Weather Service of the National Oceanic and Atmospheric Administration has predicted or indicated that there exists a heat index of extreme caution for the county. Information regarding days with an extreme heat event can be found on the website for the Housing and Community Services Department.

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____. or
                                                                                                                          DATE

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first class mail. The termination date is at least 31 days later at 11:59 p.m. on _10-8 . 2 5_. or
                                                                                                                          DATE

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____.
                                                                                                                          DATE

**Owner/Agent: Please note additional service requirements for subsidized residents as listed in "Subsidized Residents Only" section.**

☐ Section 8 Housing Choice Voucher

WARNING NOTICE: The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287

THANK YOU FOR YOUR COOPERATION

OWNER/AGENT X _____

ADDRESS 7710-B NE Vancouver Mall Drive

_____Vancouver, WA 98662_____

TELEPHONE 360.892.4000

EMAIL greshampark@tmgnorthwest.com

**SUBSIDIZED RESIDENTS SEE DISCLOSURES**

If the recipient of this document is a veteran of the armed forces, assistance may be available from a county veterans' service officer or community action agency. Contact information for a local county veteran's service officer and community action agency may be obtained by calling a 2-1-1 information service.

Form M020 OR Copyright © 2023 Multifamily NW! NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

## SUBSIDIZED RESIDENTS ONLY

**HUD DISCLOSURES**
If you remain in the leased unit on the date specified for termination, Owner/Agent will enforce the termination only by bringing a judicial action at which time you may present a defense. You have ten (10) days within which to discuss this eviction with Owner/Agent. This 10-day period commences on the earlier of the day this Notice is hand-delivered to your unit or the day after it is mailed. The discussion period does not extend the date for termination. Persons with disabilities have the right to request reasonable accommodation to participate in the hearing process.

**ADDITIONAL SERVICE REQUIREMENTS**
**SECTION 8 VOUCHERS:** Notice served by one of the methods listed above AND copy mailed to Public Housing Agency the same day.
**HUD (PROJECT BASED):** Notice served by one of the methods listed above, AND mailed to Unit, AND
1. Attempt to serve the Notice personally to any adult answering the door. If unable to do that:
2. Attempt to slide the Notice through the door (mail slot) or under the door. If unable to do that:
3. Post the Notice on the door at eye level.

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)    FOR CAUSE TERMINATION • PAGE 2 OF 2

*Exhibit F5*

# NOTICE RE: EVICTION FOR NONPAYMENT OF RENT

## THIS IS AN IMPORTANT NOTICE OF WHERE TO GET HELP IF YOU ARE FACING POTENTIAL EVICTION FOR NONPAYMENT

(Spanish) Este formulario está disponible en español en:

(Russian) Бланк этого документа можно получить на русском языке в:

(Vietnamese) Đơn này có bằng tiếng Việt tại:

(Traditional Chinese) 本表格的繁体中文版在:

(Korean) 한국어로 번역된 양식은 다음 웹 싸이트에서 찾을 수 있습니다:

https://www.courts.oregon.gov/forms/Pages/landlord-tenant.aspx

You must comply with deadlines identified in a notice of nonpayment or you risk losing your housing

Rental assistance and support services may be available. Dial 2-1-1 or go to www.211info.org. Find a local service provider at https://www.oregon.gov/ohcs/housing-assistance/pages/emergency-rental-assistance.aspx

Low-income tenants may be able to receive free or low-cost legal advice by contacting a legal aid organization. Go to https://oregonlawhelp.org to find an office near you. The Oregon State Bar provides information about legal assistance programs at www.osbar.org/public

*Exhibit F5*

 **MULTIFAMILY NW**
The Association Promoting Quality Rental Housing

OREGON
# NOTICE OF VIOLATION

 

DATE  08/17/2021    PROPERTY NAME / NUMBER  Gresham Park Apartments

RESIDENT NAME(S)  James Jacobson

UNIT NUMBER  #109B    STREET ADDRESS  805 NE Kane Dr

CITY  Gresham                                 STATE  OR    ZIP    97030

WARNING: Your Rental Agreement, the rental rules and regulations, and the landlord-tenant laws require all residents to follow basic rules to protect the safety and quiet enjoyment of all residents, prevent damage to property and retain a quality rental community. It has come to our attention that you are not complying with the following:

**NATURE OF VIOLATION** *(check all that apply):*

- [ ] Disturbances
- [ ] Damage to property
- [ ] Unsightly patio/balcony/porch
- [ ] Unit needs to be cleaned
- [ ] Satellite dish
- [ ] Unauthorized window coverings/signs
- [ ] Unauthorized occupant/guest
- [x] Other

Date & Time of Violation:  08/17/2021 around 9:10AM

Location of Violation:  Parking Lot of Gresham Park ( 805 NE Kane Dr.)

Describe Violation:

Resident(s) is using two parking spaces to work on their vehicle. These parking spaces do not correspond with the unit and working on vehicles are not allowed.

This is a violation to the rental agreement per section 22: #4 & #10. This is also a violation to the Community Rules Addendum.

Describe Cure:

Tenant must park in their own parking space. Stop working on their vehicle immediately. If the violation continue, per section 24, there could be non-compliance fee assets to the tenant's account.

The violation(s) is/are *(check which applies)*:
- [x] a separate and distinct violation
- [ ] a series or group of violations
- [ ] a continuous or ongoing violation

This notice was served on the date set forth above *(check which applies)*:
- [ ] Personally on the Resident at _____ (time)
- [x] If the written Rental Agreement allows, posted on the main entrance to the dwelling unit and mailed first class mail
- [ ] Mailed first class mail only

We hope it was simply an oversight on your part that resulted in the violation(s). However, you are required to discontinue the conduct listed above or correct the violation(s) immediately. Failure to discontinue the conduct, or correct the violation(s), or any reoccurrence of the conduct/violation(s) listed above, may result in termination of your tenancy pursuant to ORS 90.392, 90.398, 90.405 or 90.630.

For a continuous or ongoing violation, this notice will remain effective for 12 months and may be renewed with a new warning prior to the end of the 12-month period.

WARNING NOTICE: The conduct described above is a violation of your Rental Agreement. Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

THANK YOU FOR YOUR COOPERATION    OWNER/AGENT  X ~~[signature]~~

ADDRESS  7710-A NE Vancouver Mall Drive

Vancouver, WA 98662

TELEPHONE  (360) 892-4000

EMAIL

[ ] ON SITE    [ ] RESIDENT    [ ] MAIN OFFICE (IF REQUIRED)

Form MO440 OR Copyright © 2019 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 2/2/2019.

**Page 1**                                                                 **Exhibit F6**



**MULTIFAMILY NW**
The Association Promoting Quality Rental Housing

**OREGON**
# NOTICE OF VIOLATION




DATE **08/23/2021**    PROPERTY NAME / NUMBER **Gresham Park Apartments**

RESIDENT NAME(S) **James Jacobson**

UNIT NUMBER **#109B**    STREET ADDRESS **805 NE Kane Dr**

CITY **Gresham**    STATE **OR**    ZIP **97030**

---

WARNING: Your Rental Agreement, the rental rules and regulations, and the landlord-tenant laws require all residents to follow basic rules to protect the safety and quiet enjoyment of all residents, prevent damage to property and retain a quality rental community. It has come to our attention that you are not complying with the following:

**NATURE OF VIOLATION** *(check all that apply):*

| | | |
|---|---|---|
| ☐ Disturbances | ☐ Unit needs to be cleaned | ☐ Unauthorized occupant/guest |
| ☐ Damage to property | ☐ Satellite dish | ☒ Other |
| ☐ Unsightly patio/balcony/porch | ☐ Unauthorized window coverings/signs | |

Date & Time of Violation: **Sun 8/22/2021 1:54 PM**

Location of Violation: **Parking Lot of Gresham Park ( 805 NE Kane Dr.)**

Describe Violation:

Resident(s) is using two parking spaces to work on their vehicle. These parking spaces do not correspond with the unit and working on vehicles are not allowed.

This is a violation to the rental agreement per section 22: #4 & #10. This is also a violation to the Community Rules Addendum.

Describe Cure:

Tenant must park in their own parking space. Stop working on their vehicle immediately. If the violation continue, per section 24, there could be non-compliance fee assets to the tenant's account.

The violation(s) is/are *(check which applies):*

☐ a separate and distinct violation
☒ a series or group of violations
☐ a continuous or ongoing violation

This notice was served on the date set forth above *(check which applies):*

☐ Personally on the Resident at _____ (time)
☒ If the written Rental Agreement allows, posted on the main entrance to the dwelling unit and mailed first class mail
☐ Mailed first class mail only

We hope it was simply an oversight on your part that resulted in the violation(s). However, you are required to discontinue the conduct listed above or correct the violation(s) immediately. Failure to discontinue the conduct, or correct the violation(s), or any reoccurrence of the conduct/violation(s) listed above, may result in termination of your tenancy pursuant to ORS 90.392, 90.398, 90.405 or 90.630.

For a continuous or ongoing violation, this notice will remain effective for 12 months and may be renewed with a new warning prior to the end of the 12-month period.

---

WARNING NOTICE: The conduct described above is a violation of your Rental Agreement. Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

---

THANK YOU FOR YOUR COOPERATION

OWNER/AGENT X _____

ADDRESS **7710-A NE Vancouver Mall Drive**

**Vancouver, WA 98662**

TELEPHONE **(360) 892-4000**

EMAIL _____

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)

Form M040 OR Copyright © 2019 Multifamily NW; NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 2/27/2019.

**Exhibit F7**

**MULTIFAMILY NW**
The Association Promoting Quality Rental Housing

## OREGON
# RENEWAL OFFER/
# RENT INCREASE NOTICE

 TMG | The Management Group
PROPERTY MANAGEMENT SALES & LEASING

 EQUAL HOUSING OPPORTUNITY

DATE __04/29/2021__   PROPERTY NAME / NUMBER   __Gresham Park Apartments__
RESIDENT NAME(S) __James Jacobson__

UNIT NUMBER __#109B__   STREET ADDRESS   __805 NE Kane Dr__
CITY __Gresham__   STATE __OR__   ZIP __97030__

Thank you for your residency. We hope to continue this relationship with you into the future.
☐ Your current fixed-term lease expires on _____. ☒ You are currently on a month-to-month agreement.
We would like to offer you the opportunity to sign a new fixed-term lease with us. Please choose from one of the following options, which will take effect on __06/01/2021__ ("Effective Date"). **Lease term availability will be offered on a first-come, first-served basis.**

| CURRENT | | ☐ OPTION 1 (FIXED-TERM) | | ☐ OPTION 2 (FIXED-TERM) | | ☐ OPTION 3 (MONTH-TO-MONTH) | |
|---|---|---|---|---|---|---|---|
| | CHARGE | Available Term(s) 12 | | Available Term(s) | | | |
| | | INCREASE | NEW CHARGE | INCREASE | NEW CHARGE | INCREASE | NEW CHARGE |
| Rent | $ 1,313.00 | $ 0.00 | $ 1,313.00 | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ | $ |
| Pet Rent | $ | $ | $ | $ | $ | $ | $ |
| Parking Rent | $ | $ | $ | $ | $ | $ | $ |
| Storage Rent | $ | $ | $ | $ | $ | $ | $ |
| Utilities* | $ | $ | $ | $ | $ | $ | $ |
| Total | $ 1,313.00 | $ 0.00 | $ 1,313.00 | $ | $ | $ | $ |

*(Not Applicable — Option 2 and Option 3)*

If the month-to-month rent increase over the preceding 12-month period exceeds 7% plus the consumer price index, Owner/Agent is exempt as follows:
☐ The first certificate of occupancy for the dwelling unit was issued less than 15 years prior to the date of this notice:
Date of certificate of occupancy was _____
☐ Owner is providing reduced rent to Resident as part of the following federal, state or local program or subsidy: _____
Additional Information:
_____
_____
_____

The following additional terms will be incorporated into your Rental Agreement upon your renewal:
_____
_____

*Any current utility billing agreement will remain in effect unless specific changes are listed above.
**If renter's insurance will be required as an additional term, Oregon law provides that no insurance may be required if: a) the household income of all of the Residents in the Unit is equal to or less than 50 percent of the area median income, adjusted for family size as measured up to a five-person family; or b) if the dwelling unit has been subsidized with public funds, not including housing choice vouchers.
**Resident(s) may accept a fixed-term option only by signing a new rental agreement. If you do not sign a new fixed-term rental agreement by __05/31/2021__, on the Effective Date your monthly rent will be the month-to-month rate set forth above as Option 3.**
Please feel free to contact the Owner/Agent if you have any questions or simply want to talk about your options. Once again, thank you for your residency and we look forward to hearing from you soon.
Please note, if your total monthly rent has been increased above, this letter serves as the required written 90 days' rent increase notice to you. If your plans involve leaving, please remember that a written 30 day notice to vacate must be served on the Owner/Agent at least 30 days prior to the later of your move-out or lease end date.
☐ Section 8 Housing Choice Voucher
If you currently have a Housing Choice Voucher, and your total monthly rent has been increased above, this letter serves as the required rent increase notice to you and a copy has been mailed to the housing authority.
☐ This Notice has been served personally at least 91 days prior to the Effective Date **OR**
☐ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first class mail at least 91 days prior to the Effective Date **OR**
☐ This Notice has been served by first class mail at least 94 days prior to the Effective Date.

**City of Portland:** If the dwelling unit is located within the City of Portland, attach form M170 (Notice of City of Portland Renter Additional Protections).

OWNER/AGENT __X__ _(signature)_
ADDRESS __7710-A NE Vancouver Mall Drive__
__Vancouver, WA 98662__
TELEPHONE __(360) 892-4000__
EMAIL _____

☐ ON SITE   ☐ RESIDENT   ☐ MAIN OFFICE (IF REQUIRED)

Form M085 OR Copyright © 2021 Multifamily NW; NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 4/19/2021

Exhibit 58



Gresham Park Apartments
805 NE Kane Dr
Gresham, OR 97030

December 31, 2020

Dear Gresham Park Residents:

We would like to introduce our company, TMG Property Services NW (TMG).  Our company has been contracted by the property owner to manage Gresham Park Apartments.  We strive to make the transition from one manager to another as easy as possible. We look forward to providing you with exceptional management, including prompt maintenance service, as well as maintaining an enjoyable place to live.

Your current lease and payment terms will remain in effect. If you have questions or concerns regarding your apartment, rent, or have a maintenance request please call, text or email me.  We will establish new office hours at the property over the next few weeks and I will send out a notification letting you know what hours the office will be open.

Phone Number:  **503.912.6472**
Maintenance Emergency Phone: **833.280.4371**
Email:  **greshampark@tmgnorthwest.com**

**You will receive an email / text to activate your online portal no later than January 4, 2021.** This enables online payments, work orders, communication and signings.  If, for any reason, you do not receive your activation alert, please contact me @ **360.450.1772**

Thank you for your patience during the transition and I hope to meet you soon.

Sincerely,
Sidney Willard, Property Manager
TMG Northwest

*Exhibit F9*





December 31, 2020

Dear Gresham Park Resident(s):

We regret to inform you that effective December 31st, 2020, Affinity Property Management will no longer act as the managing agent for Gresham Park Apartments. In accordance with Oregon Real Estate Law, this letter is to inform you that your security deposit will be transferred and will be held by the new ownership group.

The new property management company will be The Management Group. Inc. The new ownership group will be introducing your new management team in the near future and we appreciate your patience through this transition.

Please continue to make your rent payment payable to Gresham Park Apartments and deliver your rent check to the leasing office. Please ensure you stop any recurring payments you may currently have set up. The Management Group, Inc. will be notifying you soon regarding the steps to submit rent and utility payments electronically. If you have any questions, please feel free to contact the office.

We have strived to provide you with a quality home and the highest level of customer service. It has been a pleasure serving your apartment housing needs!

Best,

*Dawn Mendenhall*
Dawn Mendenhall
Property Manager

Lydia Stiles
Portfolio Manager
Affinity Property Management, LLC

*Exhibit F9*



# gresham park
### APARTMENTS

## Valued Residents

We will have vendors on site on Tuesday,
1st between 6am-10am cleaning and s
breezeways. They will not be using vacu
other power equipment in order to keep
minimum. They will make every effort t
disturbing you.

We appreciate your patience.

# 24-HOUR NOTICE OF INTENT TO ENTER

**TODAY'S DATE:** 12/05/2020

**TO TENANTS:** James Jacobson

**UNIT ADDRESS:** 805 NE Kane Dr #109B , Gresham, OR  97030
**(PREMISES)**

This is to notify you that entry to the premises will be made as follows:

**Entry Information**

        **Entry Date From/To:**    12/07/2020 - 12/21/2020

        **Entry Time:**    9am-5pm

        **For Maintenance and/or Inspection described as follows:**

During the time frame indicated, Creative Contracting will only need full access to your patio space, and will not need entry into your apartment.  Deck construction on the above decks will require that your patio be clear of all items during the stated time frame.

The above is authorize by the landlord to enter upon demand or in the resident's absence for inspection until the report/maintenance is completed.

If this notice is served by mail ONLY, the foregoing dates include a minimum of three (3) additional days to allow for the delivery of the notice, not counting the date of mailing. This notice, if mailed, has been mailed by First Class Mail ONLY (not certified, registered, etc.).

**SERVICE METHOD:**
    [X] Posted on _12/05/2020____  2PM___ .

    [ ] Mailed to tenant via first class mail on _____.

    [ ] Posted and mailed to tenant via first class mail, with a second notice copy attached in a secure
        manner to the main entrance to that portion of the premises of which the tenant has possession, on
        ____ .

**LANDLORD/AGENT:** Gresham Park Apartments
**LANDLORD'S/AGENT'S  ADDRESS:** 805 NE Kane Dr, Gresham, OR 97030
**LANDLORD'S/AGENT'S TELEPHONE:**    (503) 489-5132

*Exhibit F9*



gresham **park**

A P A R T M E N T S

805 NE Kane Dr, Gresham, OR 97030
503.618.1705
greshamparkmanager@affinityproperty.com

Date of Notice:

Dear Valued Residents in # _109_ ,

Gresham Park would like your assistance with the beautification of the community!

We would like to ask that you please remove the item(s) in your front entry way and patio that are in violation with your lease. If you could please have this done within 48 hours we would greatly appreciate it. Patios are not to be used as storage; they are an outdoor extension of your home.

As a reminder, your lease allows you to have well maintained plants and outdoor patio furniture on the back patio, nothing can be stored or placed in the front entry way to your home (this includes plants or décor).
Any additional items are not permitted:

- **Under you lease agreement Smoking is NOT permitted on the property.**
- Patios and balconies must be kept neat and free from clutter: no trash, laundry, furniture (except that specifically designed for outdoor use), dead plants, empty boxes, etc.
- If you have plants on your balcony, do not set them on the railing. Unsecured plants can fall and injure people below. Plants must also be alive, we will ask you to remove all dead plants if you have not already.
- Bikes cannot be stored on patios.
- Hanging items (including plants) are not allowed.
- Nothing is to be kept in the front entry way of your home.

If the item(s) have not been removed in the above time frame, we will proceed with more drastic lease violation procedures, potentially termination of your lease agreement.

We appreciate your prompt attention and cooperation.

Sincerely,
Gresham Park
Management Team

*Exhibit F9*



*Exhibit F11*

# WARNING

## HIGH CONCENTRAT
## OF OZONE BEING U

## AVOID
## OVEREXPOSU

**ALLOW 2-3 HOURS AFTER MACHINE IS SHUT OF
WINDOWS HAVE BEEN OPENED BEFORE RE-**

Re-Entry Time:_____



OREGON
# NOTICE OF
# FOR CAUSE TERMINATION




DATE __10/26/2021__    PROPERTY NAME / NUMBER __Gresham Park Apartments__

RESIDENT NAME(S) __James Jacobson__

_also all other Occupants or persons unknown claiming any right or interest in the Premises._

UNIT NUMBER __#109B__    STREET ADDRESS __805 NE Kane Dr__

CITY __Gresham__    STATE __OR__    ZIP __97030__

**Pursuant to Oregon landlord-tenant law, you are hereby notified that you are a) in material violation of your Rental Agreement; b) in material violation of the resident duties under ORS 90.325; and/or c) in violation of your obligation to pay rent. The acts or omissions constituting the violations are described as follows (provide specific factual detail for each violation):**

You have been seen on several occasions with your vehicle inside your garage and passageway on 10/19/2021, 10/21/2021,

10/22/2021, 10/25/2021, and 10/26/2021.

Per your lease agreement, Community Policies, Rules and Regulations Addendum #7 – Fire Hazards, No person shall block or

obstruct any exit, aisle, passageway, hallway or stairway leading to or from any structure.

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)    PAGE 1 OF 2

_Exhibit F12_

Form M023 OR Copyright © 2020 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 4/22/2021.

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Park your vehicle inside the garage or your assigned parking space.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

If you fail to cure the violations by _____**10/26/2021**_____*, your Rental Agreement will terminate on the date set forth below. If you timely cure the violations, your Rental Agreement will not terminate. Recurrence of substantially the same act or omission as any violation described above within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

*If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____, or

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first class mail. The termination date is at least 31 days later at 11:59 p.m. on 11/20/21, or

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____

**Owner/Agent: Please note additional service requirements for subsidized residents as listed in "Subsidized Residents Only" section.**

☐ Section 8 Housing Choice Voucher

**WARNING NOTICE:** The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287

THANK YOU FOR YOUR COOPERATION

OWNER/AGENT  X _____

ADDRESS  7710-B NE Vancouver Mall Drive

_____  Vancouver, WA 98662

TELEPHONE  360.892.4000

EMAIL  greshampark@tmgnorthwest.com

If the recipient of this document is a veteran of the armed forces, assistance may be available from a county veterans' service officer or community action agency. Contact information for a local county veteran's service officer and community action agency may be obtained by calling a 2-1-1 information service.

**SUBSIDIZED RESIDENTS SEE DISCLOSURES**

Form M023 OR Copyright © 2020 Multifamily NW®. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 4/22/2021.

## SUBSIDIZED RESIDENTS ONLY

**HUD DISCLOSURES**

If you remain in the leased unit on the date specified for termination, Owner/Agent will enforce the termination only by bringing a judicial action at which time you may present a defense. You have ten (10) days within which to discuss this eviction with Owner/Agent. This 10-day period commences on the earlier of the day this Notice is hand-delivered to your unit or the day after it is mailed. The discussion period does not extend the date for termination. Persons with disabilities have the right to request reasonable accommodation to participate in the hearing process.

**ADDITIONAL SERVICE REQUIREMENTS**

**SECTION 8 VOUCHERS:** Notice served by one of the methods listed above AND copy mailed to Public Housing Agency the same day.

**HUD (PROJECT BASED):** Notice served by one of the methods listed above, AND mailed to Unit, AND

1. Attempt to serve the Notice personally to any adult answering the door. If unable to do that:
2. Attempt to slide the Notice through the door (mail slot) or under the door. If unable to do that:
3. Post the Notice on the door at eye level.

*Exhibit F12*

## THIS IS AN IMPORTANT NOTICE ABOUT YOUR RIGHTS
## TO PROTECTION AGAINST EVICTION FOR NONPAYMENT.

For information in Spanish, Korean, Russian, Vietnamese or Chinese, go to the Judicial Department website at www.courts.oregon.gov.

Until February 28, 2022, if you give your landlord documentation that you have applied for rental assistance at or before your first appearance in court, you may be temporarily protected from eviction for nonpayment. Documentation may be made by any reasonable method, including by sending a copy or photograph of the documentation by electronic mail or text message. "Documentation" includes electronic mail, a screenshot or other written or electronic documentation verifying the submission of an application for rental assistance.

To apply for rental assistance, go to www.oregonrentalassistance.org, dial 211 or go to www.211info.org. To find free legal assistance for low-income Oregonians, go to www.oregonlawhelp.org.

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you should take now: visit www.cfpb.gov/eviction or call a housing counselor at 800-569-4287.

*Exhibit F12*

GRESHAM PARK APARTMENTS
805 NE KANE DRIVE
GRESHAM, OR 97030

PORTLAND OR 972

26 OCT 2021 PM 1 L

James Jacobson
805 NE Kane Dr., #109B
Gresham, OR 97030

97030-595634

*Exhibit F12*



OREGON
# NOTICE OF VIOLATION




DATE __08/23/2021__ PROPERTY NAME / NUMBER __Gresham Park Apartments__

RESIDENT NAME(S) __James Jacobson__

UNIT NUMBER __#109B__ STREET ADDRESS __805 NE Kane Dr__

CITY __Gresham__ STATE __OR__ ZIP __97030__

**WARNING:** Your Rental Agreement, the rental rules and regulations, and the landlord-tenant laws require all residents to follow basic rules to protect the safety and quiet enjoyment of all residents, prevent damage to property and retain a quality rental community. It has come to our attention that you are not complying with the following:

**NATURE OF VIOLATION** *(check all that apply):*

| | | |
|---|---|---|
| ☐ Disturbances | ☐ Unit needs to be cleaned | ☐ Unauthorized occupant/guest |
| ☐ Damage to property | ☐ Satellite dish | ☒ Other |
| ☐ Unsightly patio/balcony/porch | ☐ Unauthorized window coverings/signs | |

Date & Time of Violation: __Sun 8/22/2021 1:54 PM__

Location of Violation: __Parking Lot of Gresham Park ( 805 NE Kane Dr.)__

Describe Violation:

Resident(s) is using two parking spaces to work on their vehicle. These parking spaces do not correspond with the unit and working on vehicles are not allowed.

This is a violation to the rental agreement per section 22: #4 & #10. This is also a violation to the Community Rules Addendum.

Describe Cure:

Tenant must park in their own parking space. Stop working on their vehicle immediately. If the violation continue, per section 24, there could be non-compliance fee assets to the tenant's account.

The violation(s) is/are *(check which applies):*

☐ a separate and distinct violation
☒ a series or group of violations
☐ a continuous or ongoing violation

This notice was served on the date set forth above *(check which applies):*

☐ Personally on the Resident at _____ (time)
☒ If the written Rental Agreement allows, posted on the main entrance to the dwelling unit and mailed first class mail
☐ Mailed first class mail only

We hope it was simply an oversight on your part that resulted in the violation(s). However, you are required to discontinue the conduct listed above or correct the violation(s) immediately. Failure to discontinue the conduct, or correct the violation(s), or any reoccurrence of the conduct/violation(s) listed above, may result in termination of your tenancy pursuant to ORS 90.392, 90.398, 90.405 or 90.630.

For a continuous or ongoing violation, this notice will remain effective for 12 months and may be renewed with a new warning prior to the end of the 12-month period.

**WARNING NOTICE:** The conduct described above is a violation of your Rental Agreement. Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

THANK YOU FOR YOUR COOPERATION

OWNER/AGENT X _____

ADDRESS __7710-A NE Vancouver Mall Drive__

__Vancouver, WA 98662__

TELEPHONE __(360) 892-4000__

EMAIL _____

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)

Form M040 OR Copyright © 2019 Multifamily NW; NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 2/27/2019.

James Jacobson
And all other Occupants
805 NE Kane Dr, Unit ##109B
Gresham , OR 97030

11003 Copyright © 2016 Tenant Technologies, Inc. Not to be reproduced without written permission. Revised 9/29/2016

**TMG** | The
Management
Group

PROPERTY MANAGEMENT
SALES | LEASING

**Pacific Business Center**
7710 NE Vancouver Mall Drive
Vancouver, WA 98662

PORTLAND OR 972

24 AUG 2021 PM 4 L

97030—595634



OREGON
## NOTICE OF VIOLATION

 

DATE __08/23/2021__    PROPERTY NAME / NUMBER __Gresham Park Apartments__

RESIDENT NAME(S) __James Jacobson__

UNIT NUMBER __#109B__    STREET ADDRESS __805 NE Kane Dr__

CITY __Gresham__    STATE __OR__    ZIP __97030__

WARNING: Your Rental Agreement, the rental rules and regulations, and the landlord-tenant laws require all residents to follow basic rules to protect the safety and quiet enjoyment of all residents, prevent damage to property and retain a quality rental community. It has come to our attention that you are not complying with the following:

**NATURE OF VIOLATION** *(check all that apply):*

| | | |
|---|---|---|
| ☐ Disturbances | ☐ Unit needs to be cleaned | ☐ Unauthorized occupant/guest |
| ☐ Damage to property | ☐ Satellite dish | ☒ Other |
| ☐ Unsightly patio/balcony/porch | ☐ Unauthorized window coverings/signs | |

Date & Time of Violation: __Sun 8/22/2021 1:54 PM__

Location of Violation: __Parking Lot of Gresham Park ( 805 NE Kane Dr.)__

Describe Violation:

Resident(s) is using two parking spaces to work on their vehicle. These parking spaces do not correspond with the unit and working on vehicles are not allowed.

This is a violation to the rental agreement per section 22: #4 & #10. This is also a violation to the Community Rules Addendum.

Describe Cure:

Tenant must park in their own parking space. Stop working on their vehicle immediately. If the violation continue, per section 24, there could be non-compliance fee assets to the tenant's account.

The violation(s) is/are *(check which applies):*

☐ a separate and distinct violation
☒ a series or group of violations
☐ a continuous or ongoing violation

This notice was served on the date set forth above *(check which applies):*

☐ Personally on the Resident at _____ (time)
☒ If the written Rental Agreement allows, posted on the main entrance to the dwelling unit and mailed first class mail
☐ Mailed first class mail only

We hope it was simply an oversight on your part that resulted in the violation(s). However, you are required to discontinue the conduct listed above or correct the violation(s) immediately. Failure to discontinue the conduct, or correct the violation(s), or any reoccurrence of the conduct/violation(s) listed above, may result in termination of your tenancy pursuant to ORS 90.392, 90.398, 90.405 or 90.630.

For a continuous or ongoing violation, this notice will remain effective for 12 months and may be renewed with a new warning prior to the end of the 12-month period.

WARNING NOTICE: The conduct described above is a violation of your Rental Agreement. Owner/Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

THANK YOU FOR YOUR COOPERATION

OWNER/AGENT X _____

ADDRESS __7710-A NE Vancouver Mall Drive__

__Vancouver, WA 98662__

TELEPHONE __(360) 892-4000__

EMAIL _____

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)

*Exhibit F13*

Form M040 OR Copyright © 2019 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 2/27/2019.

James Jacobson
And all other Occupants
805 NE Kane Dr, Unit ##109B
Gresham , OR 97030

T1003 Copyright © 2016 Tenant Technologies, Inc. Not to be reproduced without written permission. Revised 9/29/2016.

*Exhibit F13*

TMG | The
Management
Group

PROPERTY MANAGEMENT
SALES & LEASING

Pacific Business Center
7710 NE Vancouver Mall Drive
Vancouver, WA 98662

PORTLAND OR 972

24 AUG 2021 PM 4 L

97030~595634

*Exhibit F13*

**jim.jacobson@live.com**

| | |
|---|---|
| **From:** | jim.jacobson@live.com |
| **To:** | Melissa Garrett |
| **Subject:** | (draft) Notice of Intent to Sue |
| **Attachments:** | Filled - Notice of Small Claim.pdf |
| | |
| **Importance:** | High |

Hi Melissa:  Please review the attached and let me know if you have any comments.  I have been trying to reach you for a few weeks now, but the attached is at least one of the issues I wanted to discuss with you.

The attached represents the first of several lawsuits I intend to file over the next few weeks, and now this one is done, my attention now turns to an action I'm preparing for filing in Federal District Court regarding the proposed rental increase which I reject.

If you or anyone with decision making authority would like to discuss the attached, please contact me at (503) 740-0676.  I intent to file the attached as soon as this afternoon.

Regards,

1

**Exhibit F14**

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF __MULTNOMAH__
**Small Claims Department**

James E. Jacobson, Jr.

_____(s)
Plaintiff

*(Inmate SID #, if applicable, _____)*

v.

Gresham Park Apartments, LLC; BLF Holdings, LLC; and

TMG Property Management Services NW, LLC,
                                          Defendant
jointly and severally.    ☐ Defendant is a public body

Case No: _____

**SMALL CLAIM AND
NOTICE OF SMALL CLAIM**
Filing fee at ORS 46.570

☐ Subject to UTCR 5.180(3)
☐ Subject to ORS 646A.670(1) and UTCR 5.180(2)

**PLAINTIFF** (☐ Additional on attached page)

James E. Jacobson, Jr.
Name

805 NE Kane Dr., Apt 109
Street

Gresham, OR 97030
City / State / Zip

(503) 740-0676          Multnomah
Phone                          County

**DEFENDANT** (■ Additional on attached page)

Gresham Park Apartments, LLC, et al., (see: attachment).
Name (enter Registered Agent, if necessary, on next page)

_____
Street (do not use a P.O. Box)

_____
City / State / Zip

_____
Phone                          County

➤ *I need an interpreter:* ☐ *Spanish* ☐ *ASL* ☐ *other:* _____

I, Plaintiff, claim that on or about *(date)* 12/23/2020 , the above-named defendants owed me the sum of (or property valued at) $ $9,172.08 because of uncompensated casualty losses inflicted on plaintiff by intentional acts of defendant(s) and/or contractors or other agents acting on their behalf. As further described in the Continuation Sheet and Equipment List set forth below.

Plaintiff is a disabled/vulnerable person within the scope of ORS 124.100, *et seq.*

This is an action for financial damages as provided under ORS 120.124(2)(a) because the acts of defendants constitute financial abuse as provided under ORS 124.110.

Plaintiff is entitled to a claim for damages in the amount of $9,172.08 , and this amount is still due.

I have paid (or will pay):

filing fees of $ _____

and service costs of $ _____

| Claim | $ _____ |
| Fees | $ _____ |
| +Costs | $ _____ |
| TOTAL | $ _____ |

Small Claim and Notice of Small Claim
Page 1 of 3

**OJD OFFICIAL**

*Page 2*                                    *Exhibit F14*

| Attachment Defendant(s) | | |
|---|---|---|
| **Defendant:** | **Oregon Registration Information** | **Registered Agent** |
| Gresham Park Apartments, LLC 805 NE Kane Dr. Gresham, OR 97030 (503) 489-5132 | Registry No. 115436891. Domestic LLC, Jurisdiction: Oregon | Corporation Service Company 1127 Broadway ST NE, STE 310 Salem, OR 97301 |
| BLF Holdings (MHC), LLC* 18006 Sky Park Circle, Suite 200 Irvine, CA 92614 | Registry No. 947012-90. Foreign LLC, Jurisdiction: California | Corporation Service Company 1127 Broadway ST NE, STE 310 Salem, OR 97301 |
| TMG Property Management Services NW, LLC 7710 NE Vancouver Mall Dr. Vancouver WA 98662 (360) 892-4000 | Registry No. 570225-93. Foreign LLC, Jurisdiction: Washington | Carmen Villarma Pacific Corporate Center 15350 Sequoia Pkwy #200 Portland, OR 97224; or  7710 NE Vancouver Mall Dr. Vancouver WA 98662 |
| **Additional Service pursuant to ORS.124.100(6)**  Oregon Department of Justice Attorney General for the State of Oregon 1162 Court St. NE Salem, OR 97301-4096 | | |

*Gresham Park Apartments, LLC is a shell company managed by BLF Holdings, LLC. BLF Holdings, LLC is a California Based LLC which is managed by the Brian L. Fitterer Revokable Trust, wherein the sole trustee and beneficiary of said trust being Mr. Brian L. Fitterer, said trust, BLF Holdings, LLC, and Mr. Fitterer having a place of business located at 18006 Sky Park Circle, Suite 200, Irvine CA 92614. Mr. Brian L. Fitterer is the sole actual and beneficial owner of Gresham Park Apartments. Day-to-day management of Gresham Park Apartments is provided by TMG Property Management Services NW, LLC.

# DECLARATION OF GOOD FAITH EFFORT

I, Plaintiff, have made a good faith effort to collect this claim from the defendants before filing this claim with the court clerk.

Ms. Melissa Garrett is employed by defendant TMG Property Management Services NW, LLC as the Regional Manager for NW Oregon and has worked with Plaintiff on numerous unrelated issues in the past. Plaintiff first requested a telephone conference regarding this complaint several weeks ago, beginning on May 1st, 2023. Plaintiff has made numerous attempts to contact Ms. Garrett since that date. Ultimately, Plaintiff provided a copy of the full text of this complaint to Ms. Garrett for her review and comment more than 24 hours before the filing hereof.

**If this case is subject to ORS 646A.670(1) *(see the box at the top of page 1)***
See the Oregon Judicial Department website for information about debt collection cases:
www.courts.oregon.gov/debtcollection

☐ I have complied with ORS 646A.670(1) and UTCR 5.180. A completed *Consumer Debt Collection Disclosure Statement* is attached and incorporated into this pleading as required by UTCR 5.180(2)(iii).

**I hereby declare that the above statements are true to the best of my knowledge and belief. I understand they are made for use in court and I am subject to penalty for perjury.**

05/16/2023
Date

_____
Plaintiff Signature

James E. Jacobson, Jr.
Plaintiff Name (print)

**DEFENDANT'S REGISTERED AGENT:**

Gresham Park Apartments, LLC c/o Carmen Villarma
Name

Pacific Corporate Center
Street (do not use a P.O. Box)

15350 Sequoia Pkwy #200, Portland, OR 97224
City / State / Zip

(360) 892-4000                          Multnomah
Phone                                   County

# NOTICE TO DEFENDANT:
## READ THESE PAPERS CAREFULLY!

Within **14 DAYS\*** after receiving this notice you **MUST** do **ONE** of the following things in writing:

- Pay the claim plus filing fees and service expenses paid by plaintiff (send payment directly to the plaintiff, not to the court) **OR**
- Demand a hearing and pay the fee required (below) **OR**
- Demand a jury trial and pay the fee required (below). This option is available **only** if amount claimed is more than $750.

If you fail to do one of the above within <u>14 DAYS\*</u> after you get this notice, the plaintiff may ask the court to enter a judgment against you. The judgment will be for the amount of the claim, plus filing fees and service costs paid by the plaintiff, plus a prevailing party fee.  If you are not able to respond in time because you are in active military service of the United States, talk to a legal advisor about the Servicemembers Civil Relief Act.

## COURT NAME / ADDRESS / PHONE #

Multnomah County Circuit Court
Small Claims
1200 SW 1ˢᵗ Ave.
Portland, OR  97204
971-274-0545

**Defendant's Filing Fees** *(must be filled in by the PLAINTIFF)*:

| | |
|---|---|
| (1) To demand a hearing if the amount claimed is $2,500 or less | $ $57.00 |
| (2) To demand a hearing if the amount claimed is more than $2,500 | $ $57.00 |
| (3) To demand a jury trial (only if amount claimed is over $750) | $ $102.00 |

You can fill out and file your *Response* online at *www.courts.oregon.gov/iforms*. If you have questions about filing procedures, go to *www.courts.oregon.gov*. Or you may contact the court clerk.  The clerk *cannot* give you legal advice about the claim.

**\*NOTE:** If the plaintiff is an <u>adult in custody</u> (ORS 30.642) AND the defendant is a <u>government agency or other public body</u> (ORS 30.260), the defendant must respond within **30 days** after receiving this Notice.

Small Claim and Notice of Small Claim
Page 3 of 3

**OJD OFFICIAL**

*Page 5*

*Exhibit F14*

## CONTINUATION SHEET

Plaintiff was moved into (handicapped accessible) Apt 109 at Gresham Park Apartments in 2018, or more than a year prior to the acquisition of Gresham Park Apartments by its current owners. Plaintiff's annual Rental Agreement with the prior owners expired in Aug 2019. Plaintiff has never executed any document of any kind, including any kind of Rental Agreement with the current owners. Plaintiff was physically moved into Apt 109 by professional movers due to severe mobility limitations suffered by Plaintiff. Plaintiff cannot walk without an assisted mobility device.

Plaintiff has an informed belief that Gresham Park Apartments was acquired by Mr. Brian L. Fitterer, by and through a series of limited liability companies and a revocable real estate trust, sometime on or about January 1st, 2020. According to the records of the Oregon Secretary of State, Gresham Park Apartments, LLC is a manager managed LLC and the listed manager is BLF Holdings (MHC), LLC. Plaintiff discovered company registrations for BLF Holdings (MHC), LLC in at least five other states.

TMG Property Management Services NW, LLC assumed day-to-day management of Gresham Park Apartments, including maintenance, collection of rents and, issuance of notices around the same time as Mr. Fitterer acquired Gresham Park Apartments.

During the Autumn of 2020, Plaintiff responded to a forceful knock on his front door early one Monday Morning. The individual at the door identified himself as a foreman for Creative Construction of Boring, OR. The foreman stated his company had been retained to repair and/or replace the decks above Plaintiff's patio. The foreman asked whether Plaintiff had received notice of the planned construction activity and plaintiff responded he had not. The foreman stated that the Plaintiff was required to remove all his personal property from the back patio until further notice. Plaintiff responded that he was disabled and needed 24 hours to call a friend who could assist Plaintiff in re-locating his property.

Plaintiff's primary source of income is Social Security, but Since 1996, Plaintiff has earned supplemental income as a commercial artist, and as such, Plaintiff relies heavily on the back patio area for performing certain tasks such as sculpting stone, or applying various finishes which are inappropriate tasks for indoors. As such, at the time of Plaintiff's initial contact with Creative Construction, Plaintiff's patio area was quite crowded with at least two ATA style shipping cases with casters, used for storing various power tools such as Plaintiff's table saw, etc., a drill press, a Weber Propane grill, a camping chair, and a "Job Site Box" substantially the same as the one shown in the Equipment List below. The Job Site Box was used to store various electrical distribution components used by Plaintiff in the pursuit of his professional endeavors.

A few hours later, that same Monday Morning, the foreman returned and stated that in view of their scheduling pressures, he proposed that he would have his crew remove Plaintiff's Property from his patio and return Plaintiff's Property at the conclusion of the project. The deck project turned out to be unexpectedly massive and extended well into the winter after major portions of the deck were found to be structurally unsound.

Plaintiff's access to the back patio was blocked during the construction period. A clean-up crew did not arrive until just before Christmas 2020. Plaintiff first re-gained access to the back patio on or about December 23, 2020. Upon inspection, Plaintiff discovered that all his property had been returned, EXCEPT the Job Site Box and its contents. Plaintiff immediately notified the defendants as well as the Gresham Police and Creative Construction. To date, defendants will not acknowledge the issue, to wit, Plaintiff's property was taken into the custody and control of defendants, or the contractors and or other agents thereof, took Plaintiff's property under their possession and control and Plaintiff's property was never returned.

*Geiko/Travelers: Date of Theft: Dec 23, 2020. Reported Jan 13, 2021. Travelers Ref No. IPD2857.*

| Equipment List | | | |
|---|---|---|---|
| No. | Description | Source | Replacement Cost |
| 1 | Job Site Box  | Home Depot | $489.00 |
| 2 | Electric Distribution "Spider" CEP Construction Electrical Products 6506GU 6 Outlet 50-Amp Single Phase Power Box, Yellow  | Amazon | $667.70 |
| 3/4 | (Qty 2) 50 Amp 50 Feet Power Extension Cord, Generator Extension Cord, Heavy Duty STW Wire, NEMA 14-50P to SS2-50R Locking Connector (exemplary)  | Amazon | (2x) $185.99 = $371.98 |
| | Total | | $1528.68 |

**Exhibit F14**

**Damages**

| | | |
|---|---|---|
| Direct Economic Damages | $1528.68 | |
| Trebled Direct Damages | | $4,586.04 |
| | | |
| Non-Economic Damages (calculated @ 3x Direct Damages) | | $4,586.04 |
| | | |
| Total | | **$9,172.08** |

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Park your vehicle inside the garage or your assigned parking space.

If you fail to cure the violations by ____**10/26/2021**____·, your Rental Agreement will terminate on the date set forth below. If you timely cure
the violations, your Rental Agreement will not terminate  Recurrence of substantially the same act or omission as any violation described above
within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

·If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation
was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date
can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____. or
                                                                                                              DATE

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first
   class mail. The termination date is at least 31 days later at 11:59 p.m. on |1 |20| 21 . or
                                                                                    DATE

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____
                                                                                                                          DATE

**Owner/Agent: Please note additional service requirements for subsidized residents as listed in "Subsidized Residents Only" section.**

☐ Section 8 Housing Choice Voucher

WARNING NOTICE: The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/
Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding
the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you
should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287

THANK YOU FOR YOUR COOPERATION                OWNER/AGENT X

                                              ADDRESS  7710-B NE Vancouver Mall Drive

                                                       Vancouver, WA 98662

If the recipient of this document is a veteran of the armed
forces  ~ssistance may be available from a county

'020 Multifamily NW'. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION  Revised 4/22/2021.

**OREGON**
# NOTICE OF
# FOR CAUSE TERMINATION

**MULTIFAMILY NW**
The Association Promoting Quality Rental Housing





DATE ___09/08/2023___ PROPERTY NAME / NUMBER ___Gresham Park Apartments___            503.489.5132

RESIDENT NAME(S) ___James Jacobson___ _____ _____

                                                                also all other Occupants or persons unknown claiming any right or interest in the Premises.

UNIT NUMBER ___#109B___ STREET ADDRESS ___805 NE Kane Dr___

CITY ___Gresham___                                    STATE ___OR___ ZIP ___97030___

---

**Pursuant to Oregon landlord-tenant law, you are hereby notified that you are a) in material violation of your Rental Agreement; b) in material violation of the resident duties under ORS 90.325; and/or c) in violation of your obligation to pay rent. The acts or omissions constituting the violations are described as follows (provide specific factual detail for each violation):**

The resident is in violation of obligation to pay rent and has an outstanding balance of $1587.93. Includes

Garage rent June 2023 $125.00

June Rent $408.00

Trash (05/01/23-05/31/23) $24.76

Water/Sewer (04/14/23-05/13/23 $48.59

Garage rent July 2023 $125.00

Month-to-Month Premium $18.00

Trash 06/01/23-06/30/23 $26.69

Water/Sewer05/14/23-06/15/23 $49.83

Late fee July 2023 $150.00

Garage rent Aug 2023 $150.00

Month-to-Month Aug $28.00

Trash 07/01/23-07/31/23 $24.81

Water/Sewer 06/16/23-07/16/23 $49.1

Late fee Aug 2023 $150.00

Garage rent Sept 2023 $125.00

LLI Sept 2023 9.50

Rent Sept 2023 $1445.00

Trash 08/01/23-08/31/23 $26.46

Water/sewer 07/17/23-08/14/23 $50.78

Late fee Sept 2023 $150.00

Said conduct is a violation of Section 1 (Rents) of your Rental Agreement which states "Unless another date is set forth above, all

monthly charges are due and payable on the first of the month and must be paid on time. If rent is not paid by the end of the 4th

day of the rental period a late in the amount stated on this Rental Agreement will be imposed and become due on the 5th day of

the rental period and Owner/Agent may require the rent and late fee to be paid by certified check or money order

Form M023 OR Copyright © 2023 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

☐ ON SITE   ☐ RESIDENT   ☐ MAIN OFFICE (IF REQUIRED)                        PAGE 1 OF 2

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Tenant must pay remaining balance in full on or before expiration date.

_____

_____

_____

_____

_____

_____

_____

_____

If you fail to cure the violations by ___09/22/2023___*, your Rental Agreement will terminate on the date set forth below. If you timely cure
the violations, your Rental Agreement will not terminate. Recurrence of substantially the same act or omission as any violation described above
within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

*If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation
was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date
can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

If this termination notice is based upon a restriction regulating a portable cooling device allowed by law, the date of termination will be extended by
one day for each day that there is an extreme heat event for the county of the premises. "Extreme heat event" means a day on which National
Weather Service of the National Oceanic and Atmospheric Administration has predicted or indicated that there exists a heat index of extreme caution
for the county. Information regarding days with an extreme heat event can be found on the website for the Housing and Community Services
Department.

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____. or
                                                                                                        DATE

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first
class mail. The termination date is at least 31 days later at 11:59 p.m. on 10-8-23. or
                                                                            DATE

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____.
                                                                                                                        DATE

**Owner/Agent: Please note additional service requirements for subsidized residents as listed in "Subsidized Residents Only" section.**

☐ Section 8 Housing Choice Voucher

---

**WARNING NOTICE:** The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/
Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding
the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

---

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you
should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287

---

THANK YOU FOR YOUR COOPERATION

OWNER/AGENT X _____

ADDRESS  7710-B NE Vancouver Mall Drive

_____  Vancouver, WA 98662

TELEPHONE  360.892.4000

EMAIL  greshampark@tmgnorthwest.com

If the recipient of this document is a veteran of the armed
forces, assistance may be available from a county
veterans' service officer or community action agency.
Contact information for a local county veteran's service
officer and community action agency may be obtained
by calling a 2-1-1 information service.

**SUBSIDIZED RESIDENTS SEE DISCLOSURES**

Form MI23 OR Copyright © 2023 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

---

## SUBSIDIZED RESIDENTS ONLY

**HUD DISCLOSURES**
If you remain in the leased unit on the date specified for termination, Owner/Agent will enforce the termination only by bringing a judicial action
at which time you may present a defense. You have ten (10) days within which to discuss this eviction with Owner/Agent. This 10-day period
commences on the earlier of the day this Notice is hand-delivered to your unit or the day after it is mailed. The discussion period does not extend
the date for termination. Persons with disabilities have the right to request reasonable accommodation to participate in the hearing process.

**ADDITIONAL SERVICE REQUIREMENTS**
**SECTION 8 VOUCHERS:** Notice served by one of the methods listed above AND copy mailed to Public Housing Agency the same day.
**HUD (PROJECT BASED):** Notice served by one of the methods listed above, AND mailed to Unit, AND
    1. Attempt to serve the Notice personally to any adult answering the door. If unable to do that:
    2. Attempt to slide the Notice through the door (mail slot) or under the door. If unable to do that:
    3. Post the Notice on the door at eye level.

---

☐ ON SITE    ☐ RESIDENT    ☐ MAIN OFFICE (IF REQUIRED)        FOR CAUSE TERMINATION • PAGE 2 OF 2

*Page 2*                                                          *Exhibit F15*

# NOTICE RE: EVICTION FOR NONPAYMENT OF RENT

## THIS IS AN IMPORTANT NOTICE OF WHERE TO GET HELP IF YOU ARE FACING POTENTIAL EVICTION FOR NONPAYMENT

(Spanish) Este formulario está disponible en español en:

(Russian) Бланк этого документа можно получить на русском языке в:

(Vietnamese) Đơn này có bằng tiếng Việt tại:

(Traditional Chinese) 本表格的繁体中文版在:

(Korean) 한국어로 번역된 양식은 다음 웹 싸이트에서 찾을 수 있습니다:

https://www.courts.oregon.gov/forms/Pages/landlord-tenant.aspx

You must comply with deadlines identified in a notice of nonpayment or you risk losing your housing

Rental assistance and support services may be available. Dial 2-1-1 or go to www.211info.org. Find a local service provider at https://www.oregon.gov/ohcs/housing-assistance/pages/emergency-rental-assistance.aspx

Low-income tenants may be able to receive free or low-cost legal advice by contacting a legal aid organization. Go to https://oregonlawhelp.org to find an office near you. The Oregon State Bar provides information about legal assistance programs at www.osbar.org/public

Rental Assistance Notice
Page 1 of 1

**OJD Official**

(Mar 2023)

*Exhibit F15*

**OREGON**
# NOTICE OF
# FOR CAUSE TERMINATION

MULTIFAMILY NW
The Association Promoting Quality Rental Housing

TMG | The Management Group
PROPERTY MANAGEMENT
SALES | LEASING



DATE ___10/09/2023___ PROPERTY NAME / NUMBER ___Gresham Park Apartments___    503.489.5132

RESIDENT NAME(S) __James Jacobson__

also all other Occupants or persons unknown claiming any right or interest in the Premises.

UNIT NUMBER ___#109B___ STREET ADDRESS __805 NE Kane Dr__

CITY __Gresham__                                          STATE ___OR___ ZIP ___97030___

Pursuant to Oregon landlord-tenant law, you are hereby notified that you are a) in material violation of your Rental Agreement; b) in material violation of the resident duties under ORS 90.325; and/or c) in violation of your obligation to pay rent. The acts or omissions constituting the violations are described as follows (provide specific factual detail for each violation):

The resident is in violation of obligation to pay rent and has an outstanding balance of $1587.93. Includes

Garage rent June 2023 $125.00

June Rent $408.00

Trash (05/01/23-05/31/23) $24.76

Water/Sewer (04/14/23-05/13/23 $48.59

Garage rent July 2023 $125.00

Month-to-Month Premium $18.00

Trash 06/01/23-06/30/23 $26.69

Water/Sewer05/14/23-06/15/23 $49.83

Late fee July 2023 $150.00

Garage rent Aug 2023 $150.00

Month-to-Month Aug $18.00

Trash 07/01/23-07/31/23 $24.81

Water/Sewer 06/16/23-07/16/23 $49.1

Late fee Aug 2023 $150.00

Garage rent Sept 2023 $125.00

Month-To-Month Sept 2023 $18.00

Rent Sept 2023 $1445.00

Trash 08/01/23-08/31/23 $26.46

Water/sewer 07/17/23-08/14/23 $50.78

Late fee Sept 2023 $150.00

Garage rent Oct $125.00

Month-To-Month $18.00

Trash 09/01/23-09/25/23 $26.91

Water/sewer 08/14/23-09/13/23 $49.54

Late fee Oct 2023 $150.00

Said conduct is a violation of Section 1 (Rents) of your Rental Agreement which states "Unless another date is set forth above, all monthly charges are due and payable on the first of the month and must be paid on time. If rent is not paid by the end of the 4th day of the rental period a late in the amount stated on this Rental Agreement will be imposed and become due on the 5th day of

Form M203 OR Copyright © 2023 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

☐ ON SITE   ☐ RESIDENT   ☐ MAIN OFFICE (IF REQUIRED)                    PAGE 1 OF 2

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Tenant must pay remaining balance in full on or before expiration date.

_____

_____

_____

_____

_____

_____

_____

If you fail to cure the violations by _____**10/23/2023**_____ *, your Rental Agreement will terminate on the date set forth below. If you timely cure
the violations, your Rental Agreement will not terminate. Recurrence of substantially the same act or omission as any violation described above
within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

*If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation
was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date
can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

If this termination notice is based upon a restriction regulating a portable cooling device allowed by law, the date of termination will be extended by
one day for each day that there is an extreme heat event for the county of the premises. "Extreme heat event" means a day on which National
Weather Service of the National Oceanic and Atmospheric Administration has predicted or indicated that there exists a heat index of extreme caution
for the county. Information regarding days with an extreme heat event can be found on the website for the Housing and Community Services
Department.

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____. or

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first
class mail. The termination date is at least 31 days later at 11:59 p.m. on __**11/9/23**__ . or

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____,

**Owner/Agent: Please note additional service requirements for subsidized residents as listed in "Subsidized Residents Only" section.**

☐ Section 8 Housing Choice Voucher

---

WARNING NOTICE: The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/
Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding
the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

---

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you
should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287.

---

THANK YOU FOR YOUR COOPERATION

| | |
|---|---|
| | OWNER/AGENT X _(signature)_ |
| | ADDRESS 7710-B NE Vancouver Mall Drive |
| | Vancouver, WA 98662 |
| | TELEPHONE 360.892.4000 |
| | EMAIL greshampark@tmgnorthwest.com |

If the recipient of this document is a veteran of the armed
forces, assistance may be available from a county
veterans' service officer or community action agency.
Contact information for a local county veteran's service
officer and community action agency may be obtained
by calling a 2-1-1 information service.

**SUBSIDIZED RESIDENTS SEE DISCLOSURES**

Form M203 OR Copyright © 2023 Multifamily NW® NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

---

# SUBSIDIZED RESIDENTS ONLY

## HUD DISCLOSURES

If you remain in the leased unit on the date specified for termination, Owner/Agent will enforce the termination only by bringing a judicial action
at which time you may present a defense. You have ten (10) days within which to discuss this eviction with Owner/Agent. The 10-day period
commences on the earlier of the day this Notice is hand-delivered to your unit or the day after it is mailed. The discussion period does not extend
the date for termination. Persons with disabilities have the right to request reasonable accommodation to participate in the hearing process.

## ADDITIONAL SERVICE REQUIREMENTS

**SECTION 8 VOUCHERS:** Notice served by one of the methods listed above AND copy mailed to Public Housing Agency the same day.

**HUD (PROJECT BASED):** Notice served by one of the methods listed above, AND mailed to Unit, AND

1. Attempt to serve the Notice personally to any adult answering the door. If unable to do that:

2. Attempt to slide the Notice through the door (mail slot) or under the door. If unable to do that:

3. Post the Notice on the door at eye level.

**SEND PAYMENT TO**

**Gresham Park Apartments**
7710 NE Vancouver Mall Dr Ste B
Vancouver, WA 98662

(503) 489-5132

https://greshamparkapts.com/

Please address billing disputes and written inquiries to Gresham
Park Apartments, 7710 NE Vancouver Mall Dr Ste B,
Vancouver, WA 98662. For other questions, call (503) 489-5132

**STATEMENT AS OF SEPTEMBER 20, 2023**

**STATEMENT FOR**

**James Jacobson**
805 NE Kane Drive - #109B
Gresham, OR 97030

Tenant may inspect the utility providers bill at a reasonable time and
place. Tenant may request to inspect the bill at the onsite leasing
office or TMG's corporate office, and tenant can make a copy of
providers bill by making a request to the landlord.

**TOTAL AMOUNT DUE**

# $1,587.93

**PAY THIS BILL ONLINE AT**
https://tmgoregon.appfolio.com/connect

| DATE | DESCRIPTION | TIME PERIOD | AMOUNT | BALANCE |
|---|---|---|---|---|
| **PAST DUE CHARGES** | | | | |
| 01 JUN | TRASH | 05/01/2023 - 05/31/2023 | $24.76 | $24.76 |
| 01 JUN | WATER AND SEWER | 04/14/2023 - 05/13/2023 | $48.59 | $73.35 |
| 01 JUN | RENT | JUNE 2023 - RENT | $283.00 | $356.35 |
| 01 JUN | GARAGE & PARKING RENT | JUNE 2023 - GRESHAM PARK GARAGE #9 | $125.00 | $481.35 |
| 01 JUL | TRASH | 06/01/2023 - 06/30/2023 | $26.69 | $508.04 |
| 01 JUL | WATER AND SEWER | 05/14/2023 - 06/15/2023 | $49.83 | $557.87 |
| 01 JUL | MTM ADDITIONAL FEE | JULY 2023 - MTM | $18.00 | $575.87 |
| 01 JUL | GARAGE & PARKING RENT | JULY 2023 - GRESHAM PARK GARAGE #9 | $125.00 | $700.87 |
| 05 JUL | LATE FEE | LATE FEE FOR JUL 2023 | $150.00 | $850.87 |
| 01 AUG | TRASH | 07/01/2023 - 07/31/2023 | $24.81 | $875.68 |
| 01 AUG | WATER AND SEWER | 06/16/2023 - 07/16/2023 | $49.01 | $924.69 |
| 01 AUG | MTM ADDITIONAL FEE | AUGUST 2023 - MTM | $18.00 | $942.69 |
| 01 AUG | GARAGE & PARKING RENT | AUGUST 2023 - GRESHAM PARK GARAGE #9 | $125.00 | $1,067.69 |
| 05 AUG | LATE FEE | LATE FEE FOR AUG 2023 | $150.00 | $1,217.69 |
| 01 SEP | TRASH | 08/01/2023 - 08/31/2023 | $26.46 | $1,244.15 |
| 01 SEP | WATER AND SEWER | 07/17/2023 - 08/14/2023 | $50.78 | $1,294.93 |
| 01 SEP | RENT | SEPTEMBER 2023 - RENT | $9.50 | $1,304.43 |
| 01 SEP | GARAGE & PARKING RENT | SEPTEMBER 2023 - GRESHAM PARK GARAGE #9 | $124.00 | $1,428.43 |
| 01 SEP | INSURANCE | SEPTEMBER 2023 - LIABILITY | $9.50 | $1,437.93 |

*Exhibit F17*

| | | TO LANDLORD INSURANCE | | |
|---|---|---|---|---|
| 05 SEP | LATE FEE | LATE FEE FOR SEP 2023 | $150.00 | $1,587.93 |

**CURRENT & UPCOMING CHARGES**

| | | | | |
|---|---|---|---|---|
| 01 OCT | GARAGE & PARKING RENT | OCTOBER 2023 - GRESHAM PARK GARAGE #9 | $125.00 | $1,712.93 |
| 01 OCT | MTM ADDITIONAL FEE | OCTOBER 2023 - MTM | $18.00 | $1,730.93 |
| 01 OCT | RENT | OCTOBER 2023 - RENT | $1,445.00 | $3,175.93 |
| 01 OCT | INSURANCE | OCTOBER 2023 - LIABILITY TO LANDLORD INSURANCE | $9.50 | $3,185.43 |
| 01 OCT | MISCELLANEOUS EXPENSE | OCTOBER 2023 | -$9.50 | $3,175.93 |
| 01 OCT | TRASH | 09/01/2023 - 09/25/2023 | $26.91 | $3,202.84 |
| 01 OCT | WATER AND SEWER | 08/14/2023 - 09/13/2023 | $49.54 | $3,252.38 |

ns invoice is not from your utility company and reflects allocated utility usage. Petal Public Utilities  Gresham Sanitary Service, City of Gresham

**Exhibit F17**

**MULTIFAMILY NW**
The Association Promoting Quality Rental Housing

OREGON
**NOTICE OF**
**FOR CAUSE TERMINATION**

TMG | The Management Group
PROPERTY MANAGEMENT SALES & LEASING

DATE __10/09/2023__    PROPERTY NAME / NUMBER __Gresham Park Apartments__    503.489.5132

RESIDENT NAME(S) __James Jacobson__

_also all other Occupants or persons unknown claiming any right or interest in the Premises._

UNIT NUMBER __#109B__    STREET ADDRESS __805 NE Kane Dr__

CITY __Gresham__    STATE __OR__    ZIP __97030__

Pursuant to Oregon landlord-tenant law, you are hereby notified that you are a) in material violation of your Rental Agreement; b) in material violation of the resident duties under ORS 90.325; and/or c) in violation of your obligation to pay rent. The acts or omissions constituting the violations are described as follows (provide specific factual detail for each violation):

The resident is in violation of obligation to pay rent and has an outstanding balance of $1587.93. Includes

Garage rent June 2023 $125.00

June Rent $408.00

Trash (05/01/23-05/31/23) $24.76

Water/Sewer (04/14/23-05/13/23 $48.59

Garage rent July 2023 $125.00

Month-to-Month Premium $18.00

Trash 06/01/23-06/30/23 $26.69

Water/Sewer05/14/23-06/15/23 $49.83

Late fee July 2023 $150.00

Garage rent Aug 2023 $150.00

Month-to-Month Aug $18.00

Trash 07/01/23-07/31/23 $24.81

Water/Sewer 06/16/23-07/16/23 $49.1

Late fee Aug 2023 $150.00

Garage rent Sept 2023 $125.00

Month-To-Month Sept 2023 $18.00

Rent Sept 2023 $1445.00

Trash 08/01/23-08/31/23 $26.46

Water/sewer 07/17/23-08/14/23 $50.78

Late fee Sept 2023 $150.00

Garage rent Oct $125.00

Month-To-Month $18.00

Trash 09/01/23-09/25/23 $26.91

Water/sewer 08/14/23-09/13/23 $49.54

Late fee Oct 2023 $150.00

Said conduct is a violation of Section 1 (Rents) of your Rental Agreement which states "Unless another date is set forth above, all monthly charges are due and payable on the first of the month and must be paid on time. If rent is not paid by the end of the 4th day of the rental period a late in the amount stated on this Rental Agreement will be imposed and become due on the 5th day of

_Form M003 OR Copyright © 2023 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023._

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Tenant must pay remaining balance in full on or before expiration date.

---------------------------------------------------------------

---------------------------------------------------------------

---------------------------------------------------------------

---------------------------------------------------------------

---------------------------------------------------------------

---------------------------------------------------------------

---------------------------------------------------------------

If you fail to cure the violations by _____**10/23/2023**_____ *, your Rental Agreement will terminate on the date set forth below. If you timely cure
                                              DATE
the violations, your Rental Agreement will not terminate. Recurrence of substantially the same act or omission as any violation described above
within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

*If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation
was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date
can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

If this termination notice is based upon a restriction regulating a portable cooling device allowed by law, the date of termination will be extended by
one day for each day that there is an extreme heat event for the county of the premises. "Extreme heat event" means a day on which National
Weather Service of the National Oceanic and Atmospheric Administration has predicted or indicated that there exists a heat index of extreme caution
for the county. Information regarding days with an extreme heat event can be found on the website for the Housing and Community Services
Department.

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____. **or**
                                                                                                            DATE

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first
   class mail. The termination date is at least 31 days later at 11:59 p.m. on __11/9/23__ . **or**
                                                                               DATE

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____.
                                                                                                                          DATE

**Owner/Agent: Please note additional service requirements for subsidized residents as listed in "Subsidized Residents Only" section.**

☐ Section 8 Housing Choice Voucher

---

**WARNING NOTICE:** The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/
Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding
the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

---

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you
should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287.

THANK YOU FOR YOUR COOPERATION             OWNER/AGENT  X _____

                                           ADDRESS    7710-B NE Vancouver Mall Drive

                                                       Vancouver, WA 98662

If the recipient of this document is a veteran of the armed     TELEPHONE  360.892.4000
forces, assistance may be available from a county
veterans' service officer or community action agency.          EMAIL  greshampark@tmgnorthwest.com
Contact information for a local county veteran's service
officer and community action agency may be obtained
by calling a 2-1-1 information service.

                                                       **SUBSIDIZED RESIDENTS SEE DISCLOSURES**

---

# SUBSIDIZED RESIDENTS ONLY

**HUD DISCLOSURES**

If you remain in the leased unit on the date specified for termination, Owner/Agent will enforce the termination only by bringing a judicial action
at which time you may present a defense. You have ten (10) days within which to discuss this eviction with Owner/Agent. This 10-day period
commences on the earlier of the day this Notice is hand-delivered to your unit or the day after it is mailed. The discussion period does not extend
the date for termination. Persons with disabilities have the right to request reasonable accommodation to participate in the hearing process.

**ADDITIONAL SERVICE REQUIREMENTS**

**SECTION 8 VOUCHERS:** Notice served by one of the methods listed above AND copy mailed to Public Housing Agency the same day.

**HUD (PROJECT BASED):** Notice served by one of the methods listed above, AND mailed to Unit, AND

1. Attempt to serve the Notice personally to any adult answering the door. If unable to do that:
2. Attempt to slide the Notice through the door (mail slot) or under the door. If unable to do that:
3. Post the Notice on the door at eye level.

Form M023 OR Copyright © 2023 Multifamily NW®. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

# <u>NOTICE RE: EVICTION FOR NONPAYMENT OF RENT</u>

## THIS IS AN IMPORTANT NOTICE OF WHERE TO GET HELP IF YOU ARE FACING POTENTIAL EVICTION FOR NONPAYMENT

(Spanish) Este formulario está disponible en español en:

(Russian) Бланк этого документа можно получить на русском языке в:

(Vietnamese) Đơn này có bằng tiếng Việt tại:

(Traditional Chinese) 本表格的繁体中文版在:

(Korean) 한국어로 번역된 양식은 다음 웹 싸이트에서 찾을 수 있습니다:

https://www.courts.oregon.gov/forms/Pages/landlord-tenant.aspx

You must comply with deadlines identified in a notice of nonpayment or you risk losing your housing

Rental assistance and support services may be available. Dial 2-1-1 or go to www.211info.org. Find a local service provider at https://www.oregon.gov/ohcs/housing-assistance/pages/emergency-rental-assistance.aspx

Low-income tenants may be able to receive free or low-cost legal advice by contacting a legal aid organization. Go to https://oregonlawhelp.org  to find an office near you. The Oregon State Bar provides information about legal assistance programs at www.osbar.org/public

# NOTICE RE: EVICTION FOR NONPAYMENT OF RENT

## THIS IS AN IMPORTANT NOTICE OF WHERE TO GET HELP IF YOU ARE FACING POTENTIAL EVICTION FOR NONPAYMENT

(Spanish) Este formulario está disponible en español en:

(Russian) Бланк этого документа можно получить на русском языке в:

(Vietnamese) Đơn này có bằng tiếng Việt tại:

(Traditional Chinese) 本表格的繁体中文版在:

(Korean) 한국어로 번역된 양식은 다음 웹 싸이트에서 찾을 수 있습니다:

https://www.courts.oregon.gov/forms/Pages/landlord-tenant.aspx

You must comply with deadlines identified in a notice of nonpayment or you risk losing your housing

Rental assistance and support services may be available. Dial 2-1-1 or go to www.211info.org. Find a local service provider at https://www.oregon.gov/ohcs/housing-assistance/pages/emergency-rental-assistance.aspx

Low-income tenants may be able to receive free or low-cost legal advice by contacting a legal aid organization. Go to https://oregonlawhelp.org to find an office near you. The Oregon State Bar provides information about legal assistance programs at www.osbar.org/public

OJD Official
(Mar 2023)

Exhibit F19

These violations can be cured by doing the following (describe actions that will cure the violations, and if no cure is possible, so state):

Tenant must pay remaining balance in full on or before expiration date with certified funds

If you fail to cure the violations by _____06/22/2023_____ *, your Rental Agreement will terminate on the date set forth below. If you timely cure
the violations, your Rental Agreement will not terminate. Recurrence of substantially the same act or omission as any violation described above
within six months from the date of this Notice may result in termination of your Rental Agreement with a 10-day notice and no opportunity to cure.

*If the violation is ongoing, the cure date must be at least 14 days (17 days if the notice is served by mail only) from the day after the date of service. If the violation
was conduct that was a separate and distinct act or omission that is not ongoing or sufficiently repetitive over time that it could be considered ongoing, the cure date
can be as early as the date of delivery of the notice (or 3 days from the day after the date of service if served by mail only.)

If this termination notice is based upon a restriction regulating a portable cooling device allowed by law, the date of termination will be extended by
one day for each day that there is an extreme heat event for the county of the premises. "Extreme heat event" means a day on which National
Weather Service of the National Oceanic and Atmospheric Administration has predicted or indicated that there exists a heat index of extreme caution
for the county. Information regarding days with an extreme heat event can be found on the website for the Housing and Community Services
Department.

☐ This Notice has been served personally and the termination date is at least 31 days later at 11:59 p.m. on _____, or
                                                                                                        DATE

☑ If written Rental Agreement allows, this Notice has been served by posting on the main entrance door of the dwelling unit and mailed first
   class mail. The termination date is at least 31 days later at 11:59 p.m. on _6.10.23_, or
                                                                           DATE

☐ This Notice has been served by first class mail only and the termination date is at least 34 days later at 11:59 p.m. on _____
                                                                                                                        DATE

**Owner/Agent: Please note additional service requirements for subsidized residents as listed in "Subsidized Residents Only" section.**

☐ Section 8 Housing Choice Voucher

WARNING NOTICE: The conduct described above is a violation of your Rental Agreement. If you cure this violation as provided above, Owner/
Agent may choose to terminate your tenancy at the end of the fixed term if there are three or more violations within a 12-month period preceding
the end of the fixed term. Correcting the third or subsequent violations is not a defense to termination under ORS 90.427(7).

Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you
should take now: visit www.cfpb.gov/eviction [cfpb.gov] or call a housing counselor at 800-569-4287

THANK YOU FOR YOUR COOPERATION

OWNER/AGENT X _[signature]_

ADDRESS 7710-B NE Vancouver Mall Drive

Vancouver, WA 98662

TELEPHONE 360.892.4000

EMAIL greshampark@tmgnorthwest.com

If the recipient of this document is a veteran of the armed
forces, assistance may be available from a county
veterans' service officer or community action agency.
Contact information for a local county veteran's service
officer and community action agency may be obtained
by calling a 2-1-1 information service.

SUBSIDIZED RESIDENTS SEE DISCLOSURES

Form M023 OR Copyright © 2023 Multifamily NW. NOT TO BE REPRODUCED WITHOUT WRITTEN PERMISSION. Revised 3/27/2023.

## SUBSIDIZED RESIDENTS ONLY

**HUD DISCLOSURES**

If you remain in the leased unit on the date specified for termination, Owner/Agent will enforce the termination only by bringing a judicial action
at which time you may present a defense. You have ten (10) days within which to discuss this eviction with Owner/Agent. This 10-day period
commences on the earlier of the day this Notice is hand-delivered to your unit or the day after it is mailed. The discussion period does not extend
the date for termination. Persons with disabilities have the right to request reasonable accommodation to participate in the hearing process.

**ADDITIONAL SERVICE REQUIREMENTS**

**SECTION 8 VOUCHERS:** Notice served by one of the methods listed above AND copy mailed to Public Housing Agency the same day.

**HUD (PROJECT BASED):** Notice served by one of the methods listed above, AND mailed to Unit, AND

1. Attempt to serve the Notice personally to any adult answering the door. If unable to do that:
2. Attempt to slide the Notice through the door (mail slot) or under the door. If unable to do that:
3. Post the Notice on the door at eye level.

*Exhibit F19*